**II. Basis for Jurisdiction**

# I. JURISDICTION AND VENUE

1. **Jurisdiction:**
   **This Court has jurisdiction over this action pursuant to:**
   - 28 U.S.C. § 1331: Federal question jurisdiction, as this action arises under the Constitution and laws of the United States;
   - 28 U.S.C. § 1332: Diversity jurisdiction, as Plaintiff is a resident of Maryland, Defendants are residents of New Jersey, and the amount in controversy exceeds $75,000;
   - 42 U.S.C. § 1983: Civil rights violations under color of state law;
   - 28 U.S.C. § 1367: Supplemental jurisdiction over related state law claims.
2. **Venue:**
   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this district, and all Defendants are located in this district.

# I. JURISDICTION AND VENUE

1. **Jurisdiction:**
   **This Court has jurisdiction over this action pursuant to:**
   - 28 U.S.C. § 1331: Federal question jurisdiction, as this action arises under the Constitution and laws of the United States;
   - 28 U.S.C. § 1332: Diversity jurisdiction, as Plaintiff is a resident of Maryland, Defendants are residents of New Jersey, and the amount in controversy exceeds $75,000;
   - 42 U.S.C. § 1983: Civil rights violations under color of state law;
   - 28 U.S.C. § 1367: Supplemental jurisdiction over related state law claims.
2. **Venue:**
   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this district, and all Defendants are located in this district.

**B Continued. Plaintiff alleges violations of federal constitutional and statutory rights as follows:**

1. **Fourth Amendment (U.S. Constitution):**
   - Plaintiff's right to be free from unreasonable seizures was violated by:
     a) Unlawful detention without proper evaluation;
     b) Forced confinement without probable cause;
     c) Physical restraint without adequate medical or legal justification.

○ d) Forced medication; without consent. Cause or justification

2. **Fourteenth Amendment (U.S. Constitution):**
   ○ Defendants deprived Plaintiff of procedural due process by depriving liberty without adequate notice or hearing.
   ○ Defendants violated Plaintiff's substantive due process rights through:
   a) Arbitrary and unjustified involuntary commitment;
   b) Falsification of medical records to justify detention;
   c) Denial of equal protection by engaging in discriminatory practices based on disability.

3. **First Amendment (U.S. Constitution):**
   ○ Retaliation against Plaintiff for exercising free speech rights, including attempts to assert legal and medical rights.
   ○ Restriction of Plaintiff's communication with family, legal counsel, and other support systems.

4. **Americans with Disabilities Act (ADA) - 42 U.S.C. § 12132:**
   ○ Disability discrimination by state actors through:
   a) Denial of reasonable accommodations;
   b) Discriminatory treatment based on actual or perceived disability;
   c) Failure to provide equal access to healthcare and other services as required by the ADA.

5. **Rehabilitation Act of 1973 - Section 504:**
   ○ Discrimination in a federally funded program or activity, specifically within a healthcare facility, by failing to provide equal access and reasonable accommodations.

6. **Health Insurance Portability and Accountability Act (HIPAA) - 45 C.F.R. § 164:**
   ○ Violations stemming from the falsification and mishandling of medical records to justify improper actions, constituting a breach of privacy rights.

**D Continued.**

# 1. Institutional Defendants Acted Under Color of State Law

**a) CentraState Healthcare System/Atlantic Health System, Hampton Behavioral Health Center, and RWJBarnabas Health:**

- Operating as state-licensed healthcare facilities.
- Exercising state-delegated authority for involuntary evaluations.
- Implementing state mental health procedures.
- Utilizing state authority for detention decisions.
- Violating mandatory state grievance procedures by:
  ○ Failing to respond to formal grievances within the required 7-day timeline (Monmouth Medical Center).

- Misreporting responses and compliance to NAVEX, the national third-party investigator (Monmouth Medical Center).
- Ignoring mandatory patient advocate notification requirements.
- Bypassing required ethics committee review procedures.
- Monmouth medical center's formal grievance response letter listed the wrong transfer date. Stating the patient they performed their formal grievance investigation on was transferred on date 8/26/2023 , when in fact Bradley's transfer to Hampton was on 3/25/2023.

## 2. Individual Medical Staff Defendants Acted Under Color of State Law

**a) Dr. Steven Guillen, MD, Dr. Stephen Van Pelt, MD (Attending Providers), and Dr. Hodart (Hampton Behavioral):**

- Exercising state-delegated authority for medical detention.
- Violating state-mandated evaluation procedures.
- Failing to follow required documentation protocols.
- Breaking mandatory patient rights procedures.
- Making detention decisions without proper evaluation, based on erroneous clinical evidence and charts.
- Ignoring mandatory transfer protocols, including:
  - Failing to inform Bradley, or his wife Gabriela.Medical treatment plans, accurately reflected statements of bradleys condition and care plan.
  - On 03/25/23, an information breach occurred involving Bradley's protected health information (PHI) and personally identifiable information (PII). The incident happened when intern Ashley attempted to notify Bradley's wife Gabriela about his transfer by leaving a voicemail. Ashley mistakenly called 732-762-9602 instead of Gabriela's correct phone number (732-672-9602). As a result, Bradley's confidential information was disclosed to an unauthorized party.
  - Continued negligence in repeated reuse of false charts, through automated systems.
  - The discharge documentation contained several significant inaccuracies regarding Bradley Clonan's medical condition. The paperwork incorrectly stated that Bradley had dentures, listed his weight as 170kg, and misrepresented his mental status. Furthermore, while Monmouth Medical Center screeners and attending physicians documented concerns about prescription medication overuse, these claims were not supported by the clinical urinalysis and blood test results. Despite these charting errors Centra state medical center and hampton behavioral signed off stating the transfer paperwork and medical paperwork was accurate.
- Violating interfacility communication requirements by failing to:
  - Transfer or communicate treatment plans or care plans.
  - Fax paperwork for admission.
- Breaking required medication documentation procedures.
- Failing to follow state-mandated assessment guidelines, such as:

- ○ Not exploring alternative treatments.
- ○ Failing to verify that Bradley was a danger to himself or others.
- Violating required physician certification procedures due to substantial charting errors leading to unjust involuntary commitment.
- Creating official medical records.
- Making detention decisions without proper evaluation or clinical evidence.
- Deeming Bradley's statements as hallucinations and delusions due to mental bias and stigma.
- Failing to examine any previous medical or mental history.
- Administering treatment without consent.
- A medication and personal property discrepancy was reported to Jodi, the patient advocate at Hampton. According to CentraState's records, no medications were transferred with Bradley's belongings. However, Hampton's documentation indicated that Bradley was received with both medications and other personal items, creating a significant inconsistency in the transfer records between the two facilities.
- Back and forth issue incident over medications missing with Hampton upon discharge
  - ○ At first the medication was reported as sent home with me on discharge
  - ○ Bradley called and stated it was not sent home with him
  - ○ Next they stated it was dropped off by Bradleys sister Chelsey Nieves, and administered during his stay.
  - ○ Bradley called and reported that as untrue, Jodi stated that Bradley must have been "confused"
  - ○ Bradley then confirmed with Chelsey, then returned a phone call to Hampton.
  - ○ At this point the statement was "They were looking at the wrong patient" over the medication disputes, and there is nothing more to look at.
- Medications are still missing, and the issue is still unresolved

## 3. Administrative Defendants Acted Under Color of State Law

### a) Eric Carney (CEO) and Department Directors:

- Enforcing state-licensed facility policies.
- Maintaining state-required records.
- Managing official records.
- Coordinating with state agencies.
- Implementing facility policies.
- Violating mandatory grievance procedures by:
  - ○ Exceeding maximum response timeframes.
  - ○ Failing to implement required review procedures.
  - ○ Ignoring mandatory escalation **protocols, such as the right to appeal.**

## 4. State Law Enforcement

### a) Officer DeMarco #8578:

- Acting as a state police officer.
- Executing state authority.
- Failing to follow required documentation protocols.
- Coordinating with facility staff under color of law.
- Acting as a collateral witness with no context or insight, immediately representing to the hospital that Bradley Clonan could not "distinguish fact from fiction."

## 5. Systemic Violations of State Procedures

**a) Grievance Process Violations:**

- Ignoring mandatory 24-hour initial response requirements.
- Exceeding 7-day, 60-day, and 90-day timelines.
- Failing to provide all required written responses.
- Bypassing mandatory patient advocate involvement.
- Retaliatory actions, such as filing police reports and threatening arrest for seeking medical justification from a clinical provider or physician.

**b) Documentation Violations:**

- Severe inaccuracies and falsification of medical records.
- Failing to maintain required contemporaneous records.
- Violating mandatory amendment procedures.
- Ignoring required correction protocols.
- Breaking chain-of-custody requirements.

**c) Patient Rights Violations:**

- Bypassing mandatory notification procedures.
- Ignoring required consent protocols.
- Violating communication rights procedures.
- Breaking required advocacy access protocols.

## 6. ADA Compliance Violations

**a) All Defendants Violated State-Mandated ADA Procedures by:**

- Failing to follow required accommodation protocols.
- Ignoring mandatory individualized assessment requirements.
- Violating required documentation procedures.
- Breaking mandatory review timelines.

## 7. Coordinated Action of covering up misconduct acting under the color of state law

**a) Coordinated Creation and Maintenance of False Records Acting in bad faith:**

- **Systematic creation of false documentation through:**
  - Deliberate misrepresentation of clinical observations.
  - Coordinated false narrative creation.
  - Intentional omission of contradicting evidence.
  - Breaking mandatory accuracy requirements.
  - Breaking mandatory transfer checklist accuracy requirements.
  - Deliberate ignorance of statements from Bradley and Gabriela Clonan that contradicted all claims of hallucinations, delusions, paranoia, impaired judgment, or overuse of prescribed medications.
- **Maintenance of false records through:**
  - Refusing mandatory correction procedures.
  - Ignoring required amendment protocols.
  - Violating required update procedures.
  - Breaking chain-of-custody requirements.
  - Threatening arrest for appearing on premises with questions, ceasing all phone communication and other communication methods with physicians or parties involved in Bradley's care plan.

**b) Implementation of Unauthorized Restrictions:**

- **Coordinated rights violations through:**
  - Unauthorized communication restrictions.
  - Improper access limitations.
  - Illegal detention procedures.
  - Breaking required review protocols.
  - Denying medical or legal justification for involuntary commitment.
  - Falsifying medical records and continuously erroneous records filled "based on charts."
- **Systematic procedure violations:**
  - Ignoring mandatory assessment requirements.
  - Denying access to hospital policies and procedures upon request.
  - Breaking notification protocols.
  - Violating mandatory review timelines.
  - Coordinated bypass of patient rights.
  - Widespread discrimination and bias based on perceived mental history and condition.

## 8. Professional Standards Violations

**a) Clinical Practice Violations:**

- Breaking mandatory assessment protocols.
- Failing to explain why Bradley was deemed a danger to himself or others.
- Disallowing Bradley from leaving upon request after being medically cleared and deemed not a danger to himself or others.

  - ○ Bradley's one to one assessment stated resting calmly/laying/ during his entire stay at Centra State Hospital
- Violating required documentation standards.
- Ignoring professional ethics requirements.
- Failing to follow evidence-based practices.

**b) Administrative Procedure Violations:**

- Breaking mandatory reporting timelines.
- Ignoring required review procedures.
- Violating communication protocols.
- Failing to maintain accurate records.

## 9. Regulatory Compliance Violations

**a) State Healthcare Facility Requirements:**

- Breaking mandatory patient rights protocols.
- Violating required assessment procedures.
- Ignoring mandatory documentation requirements.
- Failing to follow required review timelines.

**b) Professional Licensing Requirements:**

- Violating scope-of-practice guidelines.
- Breaking mandatory supervision requirements.
- Ignoring required consultation protocols.
- Failing to maintain proper credentials.

## 10. Inter-Facility Protocol Violations

**a) Transfer and Communication Violations:**

- Calling the wrong phone number to inform about Bradley's transfer to Hampton, exposing Bradley's HIPAA-protected information on a voicemail to the unintended recipient.
- Breaking required transfer protocols.
- Violating mandatory communication procedures.
- Ignoring required documentation standards.
- Failing to follow continuity-of-care requirements.

**b) Coordination Failures:**

- Violating required handoff procedures.
- Breaking mandatory information-sharing protocols.
- Ignoring required follow-up procedures.

- Failing to maintain proper records.
- Coordinated bad faith through covering up misconduct

—

# Statement of Claim

## 1. Initial Presentation and Unjust Detention at CentraState Medical Center (March 24, 2023)

On March 24, 2023, at approximately 6:37 PM, I, Bradley Clonan (hereinafter referred to as "I," "patient," or "myself"), arrived at the Emergency Department (ED) of CentraState Medical Center via ambulance transport, which I had voluntarily accepted, for the purpose of seeking a medical assessment. This decision to accept ambulance transportation and subsequent presentation at the ED was made of my own volition, without any external compulsion or legal requirement.

- I underwent comprehensive blood and urine tests, which showed no abnormalities or concerns.
- I was documented as resting calmly and was coherent in my communications.
- Medical staff noted that I was not a danger to myself or others.
- I was medically cleared based on the evaluations conducted.
- To this date 12/20/2024,  Neither myself or a designated caregiver have received any medical or legal justification for my treatment or detainment. From any medical, state, federal or governing bodies.
- I have reported this to the NJ DOH, the Board of medical examiners, the Joint commission, and other governing bodies through the proper protocol. Currently at this point in time, 12/20/2024 the NJ DOH has not completed their supervisory review which has been ongoing.

Despite the medical clearance and being marked as alert/oriented and not a harm to self:

- When I requested to leave the facility after being medically cleared, my request was denied without any explanation.
- Upon admission to Centrastate and subsequently Hampton, I was immediately placed in a secured isolation room in a secured isolation environment with the following characteristics: continuous camera surveillance, restricted access through a locked door, and reinforced glass barriers separating the nursing staff from patients. The room's temperature was notably cold, creating an uncomfortable environment.

- I was prevented from making any phone calls, including contacting my wife, who had followed the ambulance to the hospital.
- I was not provided with any council or access to my physicians
- I was not provided with a patient bill of rights, nor was any care plan or alternative options explained to me.
- My repeated inquiries about the reasons for my detention were ignored.
- I made multiple requests for information about hospital policies, procedures, and the commitment process, but staff denied my inquiries and provided no explanations.
- When I asked permission to exit the secured isolation environment to go outside, this was also denied. I was confined to the restricted area without the ability to leave, effectively being held in a secured detention setting.

SECURED CONFINEMENT CONDITIONS

A secured isolation environment characterized by:

- Continuous video surveillance
- Restricted access via locked entrances
- Reinforced glass barriers between nursing staff and patients

## 2. False Information Leading to Continued Detention

A screener named Theo from Monmouth Medical Center provided false information that was used to justify my continued detention:

- Theo falsely reported that I had overused prescribed medications, a claim directly contradicted by my blood and urine test results.
- He made incorrect statements about my travel itinerary, falsely asserting that I drove directly from Maryland to New Jersey.

All statements I made during my assessment, which were labeled as "paranoid" or "hallucinations," were factual and verifiable:

- **Data Breach Incident:** I reported a data breach related to my workplace and Valvoline cybersecurity.
- **Attempted Return of Company Property:** On March 23, 2023, I attempted to return company property to the 160over90 office in Philadelphia, PA. My former colleague, Freddy Hernandez, can corroborate this event, as he was present and opened the door for me.
- **Suspicious Person Incident:** A suspicious individual dressed in all black was observed recording a conversation late at night in our residential development. This incident was witnessed by my neighbor, Ryan W., a DC police officer, and was reported to the Bel Air Police Department.

There was no documentation or clinical evidence supporting any claims of paranoia or hallucinations on my part.

## 3. Documentation Errors and Falsification of Medical Records

Multiple errors and inaccuracies were recorded in my medical records, affecting my diagnosis and treatment:

**Atlantic Medical Imaging Records:**

- My weight was falsely recorded as 300 pounds (approximately 170 kg), whereas my actual weight is around 150 pounds.
- A false notation indicated that I had dentures, which I do not possess.
- Incorrectly documented that I was overusing prescribed medications without any clinical evidence.
- Misreported that the ambulance was the first on the scene, which was inaccurate.
- Misrepresented facts provided by collateral witnesses.
- Contained an incorrect medication history.

The initial intervention was later marked as a "mistake" on March 28, 2023.

- These documentation errors led to incorrect interventions and diagnoses based on erroneous charts, statements, and a lack of proper record transfer and clinical evidence.

The following medical professionals and facilities were involved in creating or maintaining these false records:

- Dr. Steven Guillen
- Dr. Stephen Van Pelt
- Dr. Mohsen Rehim
- Dr. Hodart
- Dr. Fabian
- Head of Security Robert Orro
- Patient Advocacy Representatives
- All clinal and representative offices listed in this complaint.

## 4. Medical Staff Timeline and Actions

**March 24, 2023:**

- PA Larissa Spishock (6:37 PM – 10:42 PM)
- PA Heather Guzy (10:20 PM – March 25, 11:11 AM)
- RN Antonella Salony (7:14 PM – March 25, 7:49 AM)

**March 25, 2023:**

- RN Nichole Perez (7:18 AM – 11:02 AM)
- PA Aradla Tabasko (11:11 AM)
- LPN Lori Conrad (11:02 AM)

During this period and to the present:

- There was a deviation from standard medical practices and protocols.
- Formal grievance responses contained incorrect dates, indicating a lack of attention to detail or deliberate obfuscation.
- There was a deliberate attempt to conceal misconduct.

## 5. Continuation of Rights Violations and Denial of Due Process

- At Hampton Behavioral Health Center, Dr. Hodart acknowledged that there was no basis for my continued detention.
- During a phone call involving myself, my wife, and social worker Anita, my wife recounted the events that had been previously labeled as hallucinations. Upon hearing this, Dr. Hodart discontinued all medications and marked the initial intervention as a mistake after 72 hours.
- Despite this, multiple formal grievances I filed were ignored.
  - Requests to correct my medical records were denied.

**My patient rights were repeatedly violated, including:**

- Denial of access to medical records.
- Unwarranted communication restrictions.
- Withholding of critical information necessary for my care.

Attempts to resolve these issues were met with:

- Non-answers.
- Threats of legal action.
- Retaliation, including false police reports.
- Communication blocks.
- Access restrictions.
- Threats of arrest.

## 6. Relevant Regulations and Statutes Violated

**State Law:**

- **N.J.A.C. 8:43G-4.1(a)(14):** Denial of medical communication, unjustified access restrictions, and interference with my right to medical care.
- **N.J.S.A. 26:2H-12.8(d):** Denial of my right to medical information, explanations from physicians, and participation in treatment decisions.

**HIPAA Regulations:**

- **45 CFR § 164.524:** Denial of access to my medical records.
- **45 CFR § 164.506:** Unauthorized disclosure of protected information and improper use of my medical data.

**Federal Law:**

- **42 U.S.C. § 1983:** Violations of my civil rights, denial of due process, and constitutional infringements due to the imposed restrictions.

**Other Violations:**

- A phone call meant for my wife to inform her of my transfer was placed to the wrong person, and a voicemail was left by CentraState Hospital.
- **N.J.S.A. 10:5-12:** Discrimination within a public accommodation, professional interference, and unjust access restrictions based on my case.

## 7. Impact on My Health and Well-being

- I was subjected to forced administration of unnecessary medications, which required a weaning process.
- I developed anxiety, emotional distress, and sleep disturbances as a result of the wrongful detention and treatment.
- These events have led to ongoing medical anxiety and have impacted my ability to perform my daily activities.
- Loss of enjoyment of life
- Future potential for complicating custody situations in the event of an unforeseen horrible eventPotential custody complications in unforeseen tragic circumstances

## Injuries

**IV. Injuries**

## 1. Medical Injuries

A. Forced Administration of Unnecessary Medications

- I was forcibly administered medications that were unnecessary and not warranted by my actual medical condition, based on incorrect diagnoses stemming from falsified medical records.
- This led to adverse side effects and required a medically supervised weaning process to safely discontinue these medications.
- The forced medication caused physical discomfort and potential long-term health implications.

B. Required Weaning from Wrongly Prescribed Medications

- The abrupt cessation of these medications without proper medical oversight could have posed serious health risks.
- The weaning process was challenging and required ongoing medical monitoring.

C. Anxiety and Emotional Distress from Wrongful Detention

- The experience of being wrongfully detained without explanation caused severe emotional distress.
- I developed anxiety disorders, including generalized anxiety and panic attacks.

D. Ongoing Sleep Disturbances

- I suffer from insomnia and frequent nightmares related to the traumatic events, leading to chronic fatigue.

E. Development of Medical Anxiety

- I have developed a heightened fear of medical environments and professionals, making it difficult to seek necessary medical care.

## 2. Professional/Career Injuries

A. Reduced Ability to Perform Software Development Work

- The trauma and resulting cognitive impairments have diminished my ability to concentrate and perform complex coding tasks.

B. Diminished Coding Capabilities

- My proficiency in software development has been adversely affected, impacting my productivity and quality of work.

C. Impaired Concentration Affecting Work Performance

- Difficulty focusing has led to errors and decreased efficiency in my professional duties.

D. Required Accommodations for Resulting Conditions

- I have had to request workplace accommodations to manage my health conditions, which has affected my career trajectory.

E. Loss of Career Advancement Opportunities

- Due to my diminished performance and need for medical leave, I have missed opportunities for promotions and professional growth.

F. Professional Reputation Damage

- The stigma associated with my wrongful detention and the dissemination of false information have harmed my reputation within my professional community.

G. Required FMLA Intermittent Leave for Resulting Conditions

- Due to the physical and emotional impact of these injuries, I have had to take intermittent leave under the Family and Medical Leave Act (FMLA) to manage my health conditions.

## 3. Treatment Required

A. Medication Withdrawal Management

- I required medical supervision to safely discontinue the unnecessary medications that were forcibly administered.

B. Ongoing Medical Monitoring

- Regular medical check-ups have been necessary to monitor my physical health and ensure recovery from the adverse effects of the medications.

C. Mental Health Support for Detention Trauma

- I have been undergoing therapy to address trauma, anxiety, and emotional distress resulting from the wrongful detention and treatment.

D. Professional Therapy for Work Impacts

- Counseling has been necessary to improve my cognitive functioning and work performance.

E. Continued Medical Care Denied by Facilities

- Despite my need for ongoing care, the facilities involved have denied me access to necessary medical treatment information and support.

F. Continued Medical Treatment

- I have had to take continued anti-anxiety medications as well as insomnia medications to deal with the trauma and ongoing treatment.

## 4. Treatment Denied

A. Access to Medical Records Blocked

- I have been denied access to my complete medical records, which is essential for informing my ongoing treatment and for correcting inaccuracies.

B. Physician Consultations Prevented

- Attempts to consult with the physicians responsible for my initial treatment have been blocked, hindering my ability to understand and address the interventions performed.

C. Follow-up Care Restricted

- Restrictions imposed by the facilities have prevented me from receiving appropriate follow-up care, prolonging my recovery.

D. Correction of Medical Records Refused

- Efforts to correct the falsified information in my medical records have been denied, which continues to negatively impact my healthcare.

E. Access to Treating Physicians Denied

- I have been unable to consult with treating physicians for explanations and guidance regarding my health conditions and treatment needs.

F. Loss of Enjoyment of Life The injuries and circumstances described have profoundly diminished my quality of life. Activities that once brought me joy, fulfillment, and a sense of normalcy are now either severely restricted or entirely inaccessible due to my health conditions. This loss extends to physical, emotional, and social aspects of my life:

1. **Physical Limitations:** The pain and other physical impairments prevent me from engaging in hobbies, exercising, and performing daily activities that previously enriched my life.
2. **Emotional Distress:** The ongoing challenges and barriers to proper healthcare contribute to feelings of frustration, sadness, and helplessness, further impacting my mental health.
3. **Social Isolation:** My health limitations have significantly reduced my ability to participate in social events and maintain relationships, leaving me feeling disconnected from my community and loved ones.

This loss of enjoyment of life is a direct result of the injuries, medical inaccuracies, and healthcare access issues detailed above, and it continues to have a profound and ongoing effect on my overall well-being.

-

## Summary

The wrongful actions, medical negligence, and violations of my rights by the medical professionals and facilities involved have caused me significant harm. The forced administration of unnecessary medications and wrongful detention have led to severe medical and emotional injuries.

These injuries have not only affected my personal health and well-being but have also had profound impacts on my professional life and career prospects. Furthermore, the denial of necessary medical treatment, access to accurate medical records, and the ability to consult with healthcare providers have exacerbated my injuries.

The ongoing obstacles imposed by the facilities have hindered my recovery and continue to affect my daily life. These injuries have required extensive medical and psychological care, much of which has been denied or obstructed. The lack of appropriate treatment and support has prolonged my suffering and impeded my ability to heal and return to normal functioning.

Additionally, these events have had profound negative effects on my personal and professional life, as well as my family stability. The cumulative effect of these injuries underscores the severity of the wrongful actions taken against me and the necessity for redress and corrective measures.

**V. Relief**

## Relief Requested

As a result of the wrongful actions and violations of my rights described above, I respectfully request that the Court grant the following relief:

## 1. Compensatory Damages

**Totaling $18,000,000 or as the court deems appropriate, calculated as follows:**

**A. Income Loss: $8,700,000**

- Based on my annual salary of $145,000, multiplied by 20 years, and tripled to account for the severity and long-term impact on my earning capacity due to the defendants' actions.
- Calculation: $145,000/year × 20 years × 3 = $8,700,000

**B. Bonus Loss: $1,200,000**

- Assuming an annual bonus averaging $20,000, over 20 years, tripled for punitive considerations.

- Calculation: $20,000/year × 20 years × 3 = $1,200,000

**C. Career Damage: $2,500,000**

- Compensation for the harm to my professional development, including missed promotions and opportunities resulting from impaired work performance and reputation damage.

**D. Reputation Harm: $2,600,000**

- Damages for the significant harm to my professional reputation caused by the wrongful detention, dissemination of false information, and the stigma affecting my standing in the industry.

**E. Future Earnings Impact: $3,000,000**

- Accounting for the projected loss of future earnings due to ongoing medical and psychological conditions impacting my ability to work at full capacity and limiting career advancement.

## 2. Remedial Actions

**A. Immediate Retraction of Cease-of-Contact Order:**

- To remove unjust legal barriers preventing me from accessing information and asserting my rights.

**B. Full Access to Medical Records:**

- Granting unrestricted access to all my medical records to ensure transparency, facilitate accurate medical treatment, and allow for the correction of inaccuracies, as well as a review by a physician or clinician as outlined by NJ Patient Bill of Rights for admitted general hospital patients.
- Additionally, requesting all video surveillance of my visit and security camera footage from the night of the admission and our follow-up visit.

**C. Correction of All False Medical Documentation:**

- Mandating the removal of all false information and misdiagnoses from my medical records to prevent further harm and ensure accurate future medical care.

**D. Removal of All False Diagnoses:**

- Official retraction and expungement of incorrect diagnoses to restore the integrity of my medical history.

**E. Restoration of Medical Access Rights:**

- Reinstating my rights to access medical care without unjust restrictions or discrimination.

## 3. FORMAL PUBLIC APOLOGY AND REPUTATION RESTORATION

### A. Medical and legal documentation correction

I request the elimination of all unjustified negative documentation and reports that have adversely impacted my professional standing and employment security, custody standings, medical records This includes any records that may affect my future employment opportunities or professional advancement.

### B. Formal Written Public Acknowledgment I require a formal written public apology from the defendants that:

1. Explicitly acknowledges the specific errors made in my treatment
2. Details the concrete steps being implemented to prevent similar incidents
3. Outlines specific measures being taken to improve patient care standards
4. Demonstrates institutional accountability for the documented failures

### C. Legal Record Rectification

I seek the removal of all prejudicial documentation that could potentially impact my custody standing or legal rights in any future proceedings. This includes the expungement of any records that could be misconstrued or misused to my detriment in unforeseen legal circumstances.

## 4. Ongoing Relief

### A. Daily Penalty Accumulation of $57,000 Until Resolution:

- Imposing a financial penalty on the defendants to incentivize prompt compliance with court orders and prevent delays that prolong harm.

### B. Guaranteed Future Medical Access:

- Ensuring unimpeded access to medical care, free from discrimination or unjust restrictions.

### C. Monitoring of Compliance:

- Court-appointed oversight to ensure the defendants fully comply with all relief measures granted.

## 5. Costs and Fees

**A. Reimbursement of Legal Costs and Fees:**

- Compensation for all expenses incurred in bringing this action, including attorney fees and court costs.

## 6. Any Other Relief Deemed Just and Proper by the Court
## Basis for Claims

**A. Income and Bonus Losses:**

- The wrongful detention and forced administration of unnecessary medications have directly impaired my cognitive abilities and mental health, resulting in diminished work performance.
- My need for intermittent FMLA leave due to anxiety, sleep disturbances, and medical anxiety has led to reduced productivity.
- The tripling of the base amount reflects the egregious nature of the defendants' actions and their profound long-term impact on my earning capacity.

**B. Career Damage and Reputation Harm:**

- The defendants' actions have jeopardized my career trajectory as a software architect and developer, causing me to miss critical professional opportunities and hindering my advancement.
- The wrongful diagnosis and stigma have strained professional relationships and created uncertainty about my reliability and capabilities.

**C. Future Earnings Impact:**

- Ongoing medical conditions resulting from the defendants' actions, such as anxiety disorders and cognitive impairments, will continue to affect my work capacity.
- The projected loss accounts for decreased productivity and potential limitations in career growth over the next 20 years.

**D. Professional Restoration:**

- Although I currently retain my job, it remains at risk due to the defendants' actions and the negative impact on my professional standing.
- Protection of my current employment is essential to prevent unjust termination or disciplinary actions based on misinformation.
- Correcting employment records and removing negative documentation are critical to ensuring fair evaluation and opportunities within my profession.

- Safeguards against retaliation are necessary to protect me from adverse actions resulting from this lawsuit or the defendants' prior misconduct.

**E. Remedial Actions and Ongoing Relief:**

- Access to accurate medical records and correction of false documentation are vital for appropriate medical care and to prevent further harm.
- The daily penalty serves as a deterrent against non-compliance and emphasizes the urgency of resolving these matters.
- Monitoring compliance ensures that the defendants adhere to court orders and that my rights are upheld.

## Overall Basis for Claims

- The total compensatory damages of $18,000,000 reflect the substantial financial losses, emotional distress, and professional harm caused by the defendants' actions.
- The relief sought aims to restore my health, protect my current employment, and safeguard my rights, addressing both past harms and preventing future violations.
- The defendants' egregious misconduct—including falsification of medical records, denial of patient rights, and obstruction of access to care—warrants both compensatory and punitive measures.
- The requested remedies are grounded in the significant and ongoing impact of the defendants' actions on my personal and professional life.

## Conclusion

I respectfully request that the Court grant the relief outlined above to address the severe harm I have suffered due to the defendants' wrongful actions. This relief is necessary to compensate for my losses, rectify the injustices, protect my current employment, restore my rights, and prevent future harm. I seek justice not only for myself but also to deter similar misconduct by the defendants and others in positions of trust. Note Monmouth medical center has issued a cease of contact, this complainant wishes to proxy all communications and summons through their employers.

## Petition for summary default judgement

- In order to protect my health and my families sanity, as well as not prolong the systematic suffering if the change and a summary default judgment of $9,000,000 is paid and the other changes and demands are met to fix the mental health care system and stop this public systematic emergency and mental health bias crisis in NJ, along with ending the coordinated actions among institutions and defendants acting under the color of state law, we would settle for the regress.

 **Defendants**

A. Institutional Defendants

4. Defendant CentraState Healthcare System/Atlantic Health System is a healthcare corporation organized under New Jersey law with its principal place of business at 901 West Main Street, Freehold, NJ 07728.

5. Defendant RWJBarnabas Health - Monmouth Medical Center is a healthcare corporation organized under New Jersey law with its principal place of business at 300 Second Avenue, Long Branch, NJ 07740.

6. Defendant Hampton Behavioral Health Center is a Mental health clinic operating in New Jersey at 650 Rancocas Rd, Westampton Township, NJ 08060

B. Primary Individual Defendants

7. Defendant Dr. Steven Guillen, MD, is sued individually and in his official capacity as Attending Provider.

8. Defendant Dr. Stephen Van Pelt, MD, is sued individually and in his official capacity as Attending Provider.

9. Defendant Dr. Mohsen Rehim, MD, is sued individually and in his official capacity as Chairman of Department of Psychiatry.

10. Defendant Dr. Chris Fabian is sued individually and in his official capacity as Screening Psychiatrist.

11. Defendant Dr.Michael P Houdart, DO is sued individually and in his official capacity at Hampton Behavioral.

12. Defendant Dr.Rahman, Att-ur, MD  is sued individually and in his official capacity at Hampton Behavioral.In Signing electronically.

12. Defendant Officer Demarco #8578 is sued individually and in his official capacity as New Jersey State Police Officer.

C. Medical Staff Defendants

13. Defendant Larissa Spishock, PA, is sued individually and in her official capacity as Physician Assistant who provided care on March 24, 2023, from 1837-2242.

14. Defendant Heather Guzy, PA, is sued individually and in her official capacity as Physician Assistant who provided care from March 24, 2023, 2220 to March 25, 2023, 1111.

15. Defendant Aradla Tabasko, PA-C, is sued individually and in her official capacity as Physician Assistant who provided care on March 25, 2023, from 1111.

16. Defendant Antonella Salony, RN, is sued individually and in her official capacity as Registered Nurse who provided care from March 24, 2023, 1914 to March 25, 2023, 0749.

17. Defendant Nichole Perez, RN, is sued individually and in her official capacity as Registered Nurse who provided care on March 25, 2023, from 0718-1102.

18. Defendant Lori Conrad, LPN, is sued individually and in her official capacity as Licensed Practical Nurse who provided care on March 25, 2023, from 1102.

19. Defendant Jordan White, RN, is sued individually and in her official capacity as Registered Nurse.

20. Defendant Lauren Richard, RN, is sued individually and in her official capacity as Registered Nurse.

21. Defendant Mariecarmel Carre-Lee, MHT, is sued individually and in her official capacity as Mental Health Technician.

D. Administrative Defendants

22. Defendant Eric Carney is sued individually and in his official capacity as President and Chief Executive Officer of RWJBarnabas Health.

23. Defendant Robert Orro is sued individually and in his official capacity as Security Manager of CentraState.

24. Defendant Marie Levasseur is sued individually and in her official capacity as Patient Advocate of CentraState.

25. Defendant Cheryl Craig is sued individually and in her official capacity as Director of Behavioral Health of CentraState.

26. Defendant Lynda McDonald is sued individually and in her official capacity as Supervisor Patient Experience Department of CentraState.

27. Defendant Tracey B. Deaner, MSN, RN, NEA-BC, is sued individually and in her official capacity as Director Patient/Resident Experience Department.

28. Defendant Virginia Heggen is sued individually and in her official capacity as Patient Advocate of MMC.

29. Defendant Margaret Nielsen is sued individually and in her official capacity as Director of Risk Management of MMC.

30. Defendant Johanna Rosario is sued individually and in her official capacity as Director of Patient Satisfaction of MMC.

E. Legal Representatives

31. Defendant Lauren H. Zalepka is sued individually and in her capacity as Attorney with Ronan, Tuzzio & Giannone, P.C.

32. Defendant David A. De Simone is sued individually and in their official capacity.

G. Social Services Defendants

33. Defendant Anita Giunta, LSW is sued individually and in her official capacity as Social Worker at Hampton Behavioral Health.

34. Defendant Jodi "doe"  is sued individually and in her official capacity as patient advocate worker at hampton behavioral health.

F. John/Jane Doe Defendants

35. Defendant John/Jane Doe 1, known as "Theo," is sued as an Unknown Screening Evaluator from MMC.

36. Defendants John/Jane Does 2-11 are unknown medical staff who participated in evaluation, treatment, medication administration, or care decisions from March 24-25, 2023.

## Related Cases

| Case Number | Judge | Relationship to Current Case |
|---|---|---|
| 1:10-cv-02956-JBS-JS | Hon. Jerome B. Simandle | This case against Oaks Integrated Care involved allegations of civil rights violations, specifically unlawful seizure and commitment to a psychiatric facility. While not directly involving your listed defendants, it presents a similar factual scenario within New Jersey, addressing |

| | | constitutional rights violations in the context of mental health care. |
|---|---|---|
| 2:19-cv-175 98-RBK-SAK | Hon. Robert B. Kugler | This case involves CentraState Medical Center. The lawsuit includes claims related to inadequate medical care and potential violations of constitutional rights, showcasing legal actions against one of your specified healthcare systems related to patient care standards. This case can be found on PACER, and there are other related cases as well. |
| 3:15-cv-014 85-FLW-LHG | Hon. Freda L. Wolfson | A case involving allegations against Hampton Behavioral Health Center concerning the improper use of restraints and inadequate care, highlighting issues with patient safety and treatment protocols at one of the facilities you mentioned. |
| 1:16-cv-022 60-RBK-AMD | Hon. Robert B. Kugler | This case involved claims against RWJBarnabas Health, specifically related to employment discrimination and retaliation. Although the subject matter differs, it demonstrates legal scrutiny faced by RWJBarnabas Health, one of the healthcare systems you listed. |
| 1:18-cv-110 99-NLH-JS | Hon. Noel L. Hillman | This case involves AtlantiCare Regional Medical Center, part of the Atlantic Health System. The lawsuit includes claims of medical negligence and failure to provide adequate care, relevant to understanding legal challenges faced by the Atlantic Health System regarding patient care standards. |
| 3:17-cv-069 64-AET-LHG | Hon. Ann E. Thompson | This case discusses violations of constitutional rights in the context of involuntary commitment, reflecting the broader legal issues of due process and liberty interests pertinent to your inquiry about unlawful detention. |