## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRADLEY CLONAN,<br><br>               Plaintiff<br>   v.<br><br>CentraState Healthcare System/Atlantic Health System; RWJBarnabas Health – Monmouth Medical Center; Hampton Behavioral Health Center, et al.<br><br>              Defendants. | Civil Docket No.: 3:24-cv-11399-RK-RLS |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND FED. R. CIV. P. 12(B)(1) BY DEFENDANT HAMPTON BEHAVIORAL HEALTH CENTER**

**BUCHANAN INGERSOLL & ROONEY PC**

Michael W. Bootier, Esquire
Joshua T. Calo, Esquire
Caitlin L. Cardene, Esquire
700 Alexander Park Drive, Ste. 300
Princeton, New Jersey 08540
Telephone: (609) 987-6800
Fax: (609) 520-0360
michael.bootier@bipc.com
joshua.calo@bipc.com
caitlin.cardene@bipc.com

*Attorneys for Defendant Hampton Behavioral Health Center*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

STANDARD OF REVIEW ...................................................................................................... 6

I.      FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6). ............................................ 6

II.     FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1). ............................................ 7

ARGUMENT ........................................................................................................................ 8

I.      PLAINTIFF'S COMPLAINT MUST BE DISMISSED PURSUANT TO
        RULE 12(B)(6) BECAUSE IT IS A SHOTGUN PLEADING THAT FAILS TO
        SATISFY RULES 8(A) AND 10(B). ............................................................................ 8

II.     PLAINTIFF'S § 1983 CLAIMS MUST BE DISMISSED PURSUANT TO
        RULE 12(B)(6) BECAUSE RESPONDING DEFENDANT IS NOT A STATE
        ACTOR. ..................................................................................................................... 13

        A.      Plaintiff Has No Cause of Action for Alleged Violations of the Fourth and
                Fourteenth Amendment. ............................................................................... 14

                1.      Hampton is not a State Actor. .............................................................. 14

                2.      Plaintiff's Complaint fails to sufficiently plead a cause of action
                        against the Hampton for violations of the Fourth Amendment. ............ 18

                3.      Plaintiff's Complaint fails to sufficiently plead a cause of action
                        against Hampton for violations of the Fourteenth Amendment. ............. 19

        B.      Plaintiff Has No Cause of Action for Alleged First Amendment
                Violations. ................................................................................................... 21

III.    PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE REHABILITATION
        ACT, CLAIMS FOR THE FALSIFICATION OF MEDICAL RECORDS, AND
        MEDICAL MALPRACTICE MUST BE DISMISSED PURSUANT TO
        RULE 12(B)(6). ......................................................................................................... 22

        A.      Plaintiff Fails to State a Claim for Violations of the Rehabilitation Act. ........... 22

                1.      Plaintiff's Cause of Action for Violations of the Rehabilitation Act
                        Fails to Comply with Federal Pleading Standards. .................................. 23

2

B.     Plaintiff Fails to State a Claim for Falsification of Medical Records. .................. 23

C.     Plaintiff Fails to State a Claim for Medical Malpractice. ..................................... 25

IV.    PLAINTIFF'S CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AND PLAINTIFF'S CLAIM UNDER HIPAA MUST BE DISMISSED PURSUANT TO RULE 12(B)(1). ........................................................................ 26

A.     Plaintiff Lacks Standing to Bring a Claim under Title III of the Americans with Disabilities Act. .......................................................................... 26

B.     Plaintiff Lacks Standing to Bring a Claim for the Violation of HIPAA. .............. 29

V.     PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED PURSUANT TO RULE 12(B)(6). ........................................................................ 29

CONCLUSION ...................................................................................................... 30

# INDEX

**Copies of Unpublished Opinions**

*Arthur v. D.C. Hous. Auth.*,
   No. 18-cv-2037, 2020 WL 1821111 (D.D.C. Apr. 11, 2020)

*Bodor v. Horsham Clinic, Inc.*,
   No. Civ. A. 94-7210, 1995 WL 424906 (E.D. Pa. July 19, 1995)

*D'Altilio v. Dover Township*,
   2007 WL 2845073 (M.D.Pa. September 26, 2007)

*Doby v. Decrescenzo*,
   No. Civ. A. 94–3991, 1996 WL 510095 (E.D.Pa. Sept.9, 1996), aff'd, 118
   F.3d 1575 (3rd Cir.1997)

*Doe v. Nat'l Bd. of Med. Examiners*,
   210 Fed.Appx. 157 (3d Cir. 2006)

*Foulke v. Twp. of Cherry Hill*,
   No. 23-CV-2543, 2024 WL 3568841 (D.N.J. July 29, 2024)

*Harris v. Pennsylvania Dep't of Corr.*,
   No. 13-2888, 2014 WL 941351 (E.D. Pa. Mar. 11, 2014)

*Heinzl v. Starbucks Corp.*,
   No. Civ. A. 14-1316, 2015 WL 1021125 (W.D. Pa. Mar. 9, 2015)

*Hollinger v. Reading Health System*,
   No. 15-5249, 2016 WL 3762987 (E.D. Pa. July 14, 2016)

*Hooper v. City of St. Paul*,
   2019 WL 4015443 (D. Minn. Aug. 26, 2019)

*Madison v. Jefferson Hosp.*,
   373 Fed. App'x 141 (3d Cir. 2010)

*Miller v. City of Philadelphia*,
   No. Civ. A. 96–3578.1996 WL 683827 (E.D.Pa.1996)

*Miller v. Hoffman*,
   1998 WL 404034 (E.D.Pa.1998)

*Miretskaya v. Rutgers, State Univ. of New Jersey*,
   No. CV 20-14856 (RK) (JTQ), 2024 WL 3896627 (D.N.J. Aug. 21, 2024)

*Morales v. New Jersey*,
   No. 21-11548 (JXN) (AME), 2023 WL 5003891 (D.N.J. Aug. 3, 2023)

*N.M. v. Wyo. Valley W. Sch. Dist.*,
    No. 3:15-CV-01585, 2016 WL 2757395 (M.D. Pa. May 11, 2016)

*Pellecchia v. Cnty. of Burlington*,
    No. 22-4707 (CPO)(MJS), 2022 WL 17667906 (D.N.J. Dec. 13, 2022)

*Phillips v. St. Mary's Medical Center*,
    No. 12–2363, 2013 WL 1124372 (E.D. Pa. March 19, 2013)

*Radhakrishnan v. Pugliese*,
    No. 20-220 (ES) (MAH), 2021 WL 11593799 (D.N.J. May 21, 2021)

*Reddick v. Hicks*,
    No. 22-6926 (ZNQ) (RLS), 2023 WL 4579884 (D.N.J. July 18, 2023)

*Rivera v. Tennis*,
    No. 09-0888, 2010 WL 2838603 (M.D. Pa. May 20, 2010)

*Savacool v. Delaware Cnty. Dep't of Mental Health & Mental Retardation*,
    No. Civ. A. 92-2142, 1993 WL 21209 (E.D. Pa. Jan. 25, 1993)

*Toussaint v. Szeto*,
    No. 22-2446, 2022 WL 1541545 (D.N.J. May 13, 2022)

*Voth v. Hoffman*,
    No. 14-7582, 2016 WL 7535374 (D.N.J. Apr. 28, 2016)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Franklin Institute*,
185 F.Supp.3d 628 (E.D. Pa. 2016) ......................................................................26

*Anderson v. Macy's Inc.*,
943 F.Supp.2d 531 (W.D. Pa. 2013)...............................................................27, 28

*Arthur v. D.C. Hous. Auth.*,
No. 18-cv-2037, 2020 WL 1821111 (D.D.C. Apr. 11, 2020)................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................6, 7, 20

*Ayres v. Jacobs & Crumplar, P.A.*,
99 F.3d 565 (3d Cir. 1996)......................................................................................1

*Bartol v. Barrowclough*,
251 F. Supp. 3d 855 (E.D. Pa. 2017) ......................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................6,7, 20

*Benn v. Universal Health Sys., Inc.*,
371 F.3d 165 (3d Cir. 2004)........................................................14, 15, 16, 17

*Bodor v. Horsham Clinic, Inc.*,
No. Civ. A. 94-7210, 1995 WL 424906 (E.D. Pa. July 19, 1995).........................17

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001)...............................................................................................14

*Brower v. Cnty. of Inyo*,
489 U.S. 593 (1989)...............................................................................................18

*Chainey v. St.*,
523 F.3d 200 (3d Cir. 2008).................................................................................13

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998)...............................................................................................20

*D'Altilio v. Dover Township*,
2007 WL 2845073 (M.D.Pa. September 26, 2007) ...............................................21

*D.E. v. Dauphin Sch. Dist.*,
765 F.3d 260 (3d Cir. 2014)...........................................................................22, 23

*I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*,
   842 F.Supp.2d 762 (M.D.Pa.2012) ...................................................................6

*Diegene Corp. v. Ventana Med. Sys., Inc.*,
   476 F. Supp. 2d 444 (D. Del. 2007) ...............................................................10

*Doby v. Decrescenzo*,
   No. Civ. A. 94–3991, 1996 WL 510095 (E.D.Pa. Sept.9, 1996), aff'd, 118
   F.3d 1575 (3rd Cir.1997) .............................................................................17

*Doe v. Nat'l Bd. Of Med Examiners*,
   199 F.3d at 153 .............................................................................................27

*Doe v. Nat'l Bd. of Med. Examiners*,
   210 Fed.Appx. 157 (3d Cir. 2006) ...............................................................27

*Erickson v. Pardus*,
   551 U.S. 89 (2007) .........................................................................................6

*Feldman v. Philadelphia Housing Authority*,
   43 F.3d 823 (3d Cir.1994) ............................................................................30

*Flagg Bros., Inc. v. Brooks*,
   436 U.S. 149 (1978) .....................................................................................13

*FOCUS v. Allegheny County Court of Common Pleas*,
   75 F.3d 834 (3d Cir.1996) .............................................................................8

*Foulke v. Twp. of Cherry Hill*,
   No. 23-CV-2543, 2024 WL 3568841 (D.N.J. July 29, 2024)......................10

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009).......................................................................7, 8

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) .......................................................................................8

*Great W. Mining Co. v. Fox Rothschild LLP*,
   615 F.3d 159 (3d Cir. 2010)..........................................................................7

*Groman v. Twp. of Manalapan*,
   47 F.3d 628 (3d Cir. 1995)...........................................................................13

*Harris v. Pennsylvania Dep't of Corr.*,
   No. 13-2888, 2014 WL 941351 (E.D. Pa. Mar. 11, 2014) ...................24

*Harvey v. Harvey*,
   949 F.2d 1127 (11th Cir.1992) ...............................................................15, 17

*Harvey v. Plains Twp. Police Dep't*,
    635 F.3d 606 (3d Cir. 2011)..................................................................13

*Heinzl v. Starbucks Corp.*,
    No. Civ. A. 14-1316, 2015 WL 1021125 (W.D. Pa. Mar. 9, 2015) ........................27

*Hill v. Borough of Kutztown*,
    455 F.3d 225 (3d Cir. 2006)..................................................................19

*Hollinger v. Reading Health System*,
    No. 15-5249, 2016 WL 3762987 (E.D. Pa. July 14, 2016) ..............................27, 28

*Hooper v. City of St. Paul*,
    2019 WL 4015443 (D. Minn. Aug. 26, 2019) ..................................................23

*Jackson v. Metropolitan Edison Co.*,
    419 U.S. 345 (1974)............................................................................16

*Janicsko v. Pellman*,
    774 F.Supp. 331 (M.D.Pa.1991), aff'd, 970 F.2d 899 (3d Cir.1992) ................15, 17

*Judge v. Shikellamy Sch. Dist.*,
    135 F. Supp. 3d 284 (M.D. Pa. 2015), aff'd, 905 F.3d 122 (3d Cir. 2018) ..........21

*Keenan v. City of Philadelphia*,
    983 F.2d 459 (3d Cir.1992)...................................................................21

*Komlodi v. Picciano*,
    217 N.J. 387 (2014) ..........................................................................26

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)................................................................13, 15, 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...............................................................8, 27, 28

*Madison v. Jefferson Hosp.*,
    373 Fed. App'x 141 (3d Cir. 2010).............................................................7

*Mala v. Crown Bay Marina, Inc.*,
    704 F.3d 239 (3d Cir. 2013)....................................................................7

*Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*,
    34 F.4th 190 (3d Cir. 2022) ..................................................................13

*Michigan v. Chestnut*,
    486 U.S. 567 (1988)..........................................................................18

*Miller v. City of Philadelphia*,
　　1996 WL 683827 (E.D.Pa.1996) ........................................................................18

*Miller v. Hoffman*,
　　1998 WL 404034 (E.D.Pa.1998) ........................................................................18

*Miretskaya v. Rutgers, State Univ. of New Jersey*,
　　No. CV 20-14856 (RK) (JTQ), 2024 WL 3896627 (D.N.J. Aug. 21, 2024)....................15, 16

*Moore v. Casselberry*,
　　584 F. Supp. 2d 580 (W.D.N.Y. 2008) ...............................................................24

*Morales v. New Jersey*,
　　No. 21-11548 (JXN) (AME), 2023 WL 5003891 (D.N.J. Aug. 3, 2023)................................9

*Mortensen v. First Fed. Sav. and Loan Ass'n*,
　　549 F.2d 884 (3d Cir.1977)..........................................................................7,8

*N.M. v. Wyo. Valley W. Sch. Dist.*,
　　No. 3:15-CV-01585, 2016 WL 2757395 (M.D. Pa. May 11, 2016).....................................23

*Natale v. Camden Cnty. Corr. Facility*,
　　318 F.3d 575 (3d Cir. 2003)..........................................................................26

*O'Connor v. Ortega*,
　　480 U.S. 709 (1987)..................................................................................18

*O'Shea v. Littleton*,
　　414 U.S. 488 (1974)..................................................................................27

*In re Orthopedic "Bone Screw" Prod. Liab. Litig.*,
　　132 F.3d 152 (3d Cir.1997)............................................................................8

*Pellecchia v. Cnty. of Burlington*,
　　No. 22-4707 (CPO)(MJS), 2022 WL 17667906 (D.N.J. Dec. 13, 2022) ................................9

*Phillips v. St. Mary's Medical Center*,
　　No. 12–2363, 2013 WL 1124372 (E.D. Pa. March 19, 2013) .........................................27

*Polanco v. Omnicell, Inc.*,
　　988 F. Supp. 2d 451 (D.N.J. 2013) ..................................................................29

*Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*,
　　123 F.3d 111 (3d Cir.1997)..........................................................................8, 27

*Radhakrishnan v. Pugliese*,
　　No. 20-220 (ES) (MAH), 2021 WL 11593799 (D.N.J. May 21, 2021) .................................9

*Reddick v. Hicks*,
No. 22-6926 (ZNQ) (RLS), 2023 WL 4579884 (D.N.J. July 18, 2023)....................................9

*Rivera v. Tennis*,
No. 09-0888, 2010 WL 2838603 (M.D. Pa. May 20, 2010)......................................................24

*Rockwell v. Cape Cod Hosp.*,
26 F.3d 254 (1st Cir.1994)..............................................................................................15, 17

*Rosenberg v. C.R. Bard, Inc.*,
387 F. Supp. 3d 572 (E.D. Pa. 2019) ......................................................................................10

*S.H. v. Lower Merion Sch. Dist.*,
729 F.3d 248 (3d Cir. 2013)..............................................................................................22, 23

*Salyers v. A.J. Blosenski, Inc.*,
731 F. Supp. 3d 670 (E.D. Pa. 2024) ........................................................................................9

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir.2010)........................................................................................................7

*Savacool v. Delaware Cnty. Dep't of Mental Health & Mental Retardation*,
No. Civ. A. 92-2142, 1993 WL 21209 (E.D. Pa. Jan. 25, 1993) .............................................17

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*,
422 F.3d 141 (3d Cir. 2005)....................................................................................................18

*Smith v. Wade*,
461 U.S. 30 (1983).....................................................................................................................30

*Spencer v. Lee*,
864 F.2d 1376 (7th Cir.1989) ............................................................................................15, 17

*Steel Co. v. Citizens for Better Env't*,
523 U.S. 83 (1998).......................................................................................................................8

*Toussaint v. Szeto*,
No. 22-2446, 2022 WL 1541545 (D.N.J. May 13, 2022)........................................................19

*U.S. Dept. of Transp. v. Paralyzed Veterans of Am.*,
477 U.S. 597 (1986)............................................................................................................22, 23

*U.S. Sec. & Exch. Comm'n v. Mintz*,
723 F. Supp. 3d 386 (D.N.J. 2024) ...........................................................................................9

*Vibe Micro, Inc. v. Shabanets*,
878 F.3d 1291 (11th Cir. 2018) ...............................................................................................12

*Victory Outreach Ctr. v. Melso*,
    371 F. Supp. 2d 642 (E.D. Pa. 2004) ...................................................................18

*Voth v. Hoffman*,
    No. 14-7582, 2016 WL 7535374 (D.N.J. Apr. 28, 2016) ......................................29

*Washington v. Warden SCI-Greene*,
    608 F. App'x 49 (3d Cir. 2015) ..............................................................................8

*Weiland v. Palm Beach Cnty. Sheriff's Office*,
    792 F.3d 1313 (11th Cir. 2015) .........................................................................9, 10

*West v. Atkins*,
    487 U.S. 42 (1988)..................................................................................................13

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir.1996)........................................................................................8

**Statutes**

Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1325, § 1325 Relationship
    Between Rule 8(d)(2) and Rule 10(b) (4th Ed.) ......................................................9

**Rules**

Fed. R. Civ. P. 8 ............................................................................................6,8, 9,12,16

Fed. R. Civ. P. 10(b) ..........................................................................................8,9,12

Fed. R. Civ. P. 12(b)(1).............................................................................1, 7, 26, 29

Fed. R. Civ. P. 12(b)(6)........................................................................................6,7,8

## **PRELIMINARY STATEMENT**

Defendant Hampton Behavioral Health Center ("Hampton" or "Responding Defendant"), files this brief in support of its Motion to Dismiss Plaintiff's Complaint pursuant to the Federal Rules of Civil Procedure 12(b)(6) and Federal Rules of Civil Procedure 12(b)(1).[1]

Plaintiff's "shotgun" Complaint is directed to thirty-four individually named defendants, and purports to assert several causes of action pursuant to 42 U.S.C. § 1983 related to his involuntary commitment in March of 2023. However, the Complaint does not contain any counts directed to any individual defendant, and it is rife with conclusory allegations. The Complaint accordingly fails to place Responding Defendant on notice of the claims being made against it and the basis for those claims. This certainly fails to comply with both Federal Rules of Civil Procedure 8 and Federal Rules of Civil Procedure 10.

In addition to the procedural failures of the Complaint, Plaintiff's claims against Responding Defendant also fail substantively. Responding Defendant is not a state actor for the purposes of § 1983, as Hampton Behavioral Health Center is a private entity.[2] Further, Plaintiff fails to plead any facts to establish that Responding Defendant acted under color of state law. Lastly, Plaintiff lacks standing to bring a claim under the Americans with Disabilities Act and the Health Information Portability and Accountability Act.

---

[1] Plaintiff's complaint lists a number of individuals that Plaintiff may purport to name as parties, including Michael Houdart, DO, Att-ur Rahman, MD, and Anita Giunta. However, no summons has been issued as to any of these individuals, and they have not been properly joined or served pursuant to Fed. R. Civ. P. 4(e). Therefore, this Court lacks personal jurisdiction over Dr. Hodart, Dr. Rahman, and Ms. Giunta. *Ayres v. Jacobs & Crumplar, P.A*., 99 F.3d 565, 569 (3d Cir. 1996). "The failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal. . ." *Id*. To the extent to which Plaintiff contends that Dr. Hodart, Dr. Rahman, and/or Ms. Giunta are parties, Responding Defendant respectfully requests that this Court dismiss those individuals pursuant to Fed. R. Civ. P. 12(b)(2).
[2] It is questionable whether they are parties, but even if they are, Dr. Houdart, Dr. Rahman, and Ms. Giunta are privately employed.

For the reasons set forth more fully below, Responding Defendant respectfully asks that this Court grant its Motion to Dismiss Plaintiff's Complaint, with prejudice.

## **BACKGROUND**

This matter was initiated upon the filing of a "shotgun" Complaint in the District Court of New Jersey on December 20, 2024 by *pro se* Plaintiff, Bradley Clonan ("Plaintiff"), on the basis of both federal question and alleged diversity of citizenship.[3] While the precise alleged facts underlying Plaintiff's Complaint are not immediately clear from the face of the pleading, it appears that Plaintiff's claims stem from his hospitalization and subsequent involuntary commitment spanning the time frame of March 24, 2023 to March 30, 2023. (Dkt. 1-1, p. 4).

Plaintiff's Complaint purports to name thirty-four (34) individually named defendants,[4] whose identities and status as alleged defendants are not revealed until the twentieth page of the Complaint. (Dkt. 1-2,[5] p. 20). Under the "Basis for Jurisdiction" inquiry, Plaintiff indicated that he is bringing the following claims pursuant to 42 U.S.C. § 1983:

> (1) Fourth Amendment;
> (2) Fourteenth Amendment;
> (3) First Amendment;
> (4) Americans with Disabilities Act – 42 U.S.C. § 12132;
> (5) Rehabilitation Act of 1973 – Section 504; and
> (6) Health Insurance Portability and Accountability Act ("HIPAA") – 45 C.F.R. § 164.

(Dkt. 1-2, p. 1-2). While this section is technically intended to provide the basis for jurisdiction, the Plaintiff puts forth conclusions of law related to each claim, which are directed to no particular defendant. *Id.*

---

[3] Plaintiff claims that there is complete diversity between him and all thirty-four defendants, yet provides no basis for this assertion.

[4] To date, a summons as only been issued to four of the named defendants. Dkt. 5.

[5] Plaintiff also filed a second Complaint on December 20, 2024, Dkt. 1-4. The Complaint is identical to the Complaint docketed as Dkt. 1-2, and therefore, this Motion to Dismiss should be construed to be responsive to both Dkt. 1-2 and Dkt. 1-4.

Then, in response to the "Color of Law" inquiry, Plaintiff lists ten (10) subsections with the following titles:

> (1) "Institutional Defendants Acted Under Color of State Law";
> (2) "Individual Medical Staff Defendants Acted Under Color of State Law";
> (3) "Administrative Defendants Acted Under Color of State Law";
> (4) "State Law Enforcement";
> (5) "Systemic Violations of State Procedures";
> (6) "ADA Compliance Violations";
> (7) "Coordinated Action of covering up misconduct acting under color of state law.";
> (8) "Professional Standards Violations";
> (9) "Regulatory Compliance Violations"; and
> (10) "Inter-Facility Protocol Violations."

(Dkt. 1-2, p. 2-8). Despite being listed under the "Color of Law" inquiry, Plaintiff puts forth a host of conclusory allegations, which sound in several theories of liability. *Id*. Subsection 1(a) is titled "CentraState Healthcare System/Atlantic Health System, Hampton Behavioral Health Center, and RWJBarnabas Health." In this subsection, Plaintiff makes conclusory allegations about the actions and omissions, purportedly directed to the above-named entities, but fails to attribute any of these conclusory allegations towards a specific entity. *Id*. Subsection 2(a) is plagued with a similar issue. Directed to "Dr. Steven Guillen, MD, Dr. Stephen Van Pelt, MD (Attending Providers), and Dr. Houdart (Hampton Behavioral)," this section simply lists conclusory allegations, without specifying to whom these allegations are directed. (Dkt. 1-2, p. 3). Additionally, these sections plead no plausible facts to establish that Hampton acted under color of state law. Because Hampton Behavioral Health Center is a private entity, and because Dr. Houdart, Dr. Att-ur, and Ms. Giunta, the individuals referenced in the Complaint, are privately employed individuals, Plaintiff is required to plead facts sufficient to establish that they are state actors. Plaintiff has not met this burden.

Despite being listed under the "Color of Law" inquiry, subsections five through ten sound in several potential theories of liability, to include ADA violations, falsification of records,

medical/professional malpractice, and regulatory compliance violations. (Dkt. 1-2, p. 5-8). The entirety of the "Color of Law" discussion in Plaintiff's Complaint is rife with conclusions of law and overall fails to plead plausible facts sufficient to place any defendant on notice of the claims being made against them.

Plaintiff's "Statement of Claim" begins on page eight (8) of the Complaint and contains seven (7) subsections which are titled as follows:

> (1) Initial Presentation and Unjust Detention at CentraState Medical Center;
> (2) False Information Leading to Continued Detention;
> (3) Documentation Errors and Falsification of Medical Records;
> (4) Medical Staff Timeline and Actions;
> (5) Continuation of Rights Violations and Denial of Due Process;
> (6) Relevant Regulations and Statutes Violated;
> (7) Impact on My Health and Well-Being.

(Dkt. 1-2, p. 8-12). Despite containing subsections, the "Statement of Claim" section is completely devoid of any counts and further devoid of any counts directed at Responding Defendant. Further, none of these subsections put forth a short and plain statement of what claims are being alleged.

Subsection one, which by title is directed to CentraState Medical Center, contains a rambling set of conclusory allegations. (Dkt. 1-2, p. 8). After seven bullet points, Plaintiff makes a singular mention of Hampton: "Upon admission to Centrastate and subsequently Hampton, I was immediately placed in a secured isolation room in a secured isolation environment. . ." (Dkt. 1-2, p. 8, ¶1). The remainder of this subsection fails to make clear to whom the allegations are directed. Subsection two contains no allegations directed to Hampton. (Dkt. 1-2, p. 9, ¶2). Subsection three, which purports to relate to documentation errors and falsification of medical records, provides a list of the alleged falsities and inaccuracies of the Atlantic Medical Imaging Records. (Dkt. 1-2, p. 10, ¶3). Instead of putting forth factually supported allegations, Plaintiff makes the conclusory allegation that "[t]he following medical professionals and facilities were involved in creating or

maintaining these false records:" *Id*. Plaintiff then lists a series of medical providers, including Dr. Houdart, and also directs this conclusory allegation to "[a]ll clinal(sic) and representative offices listed in this complaint." *Id*. Aside from this, Plaintiff makes no specific allegations towards any Responding Defendant regarding the circumstances of the alleged falsification of records.[6]

Subsection four lists six (6) different nurses and the dates and times in which they provided care. (Dkt. 1-2, p. 10-11). Instead of asserting any specific allegations as to these providers, Plaintiff impermissibly lumps them together and asserts vague and conclusory allegations. Subsection five discusses Plaintiff's "continued detention" at Hampton Behavioral Health and mentions alleged interactions with Dr. Houdart and "Anita." (Dkt. 1-2, p. 11). Without pleading any plausible facts to support the allegation, Plaintiff then simply concludes that his patient rights were violated through the denial of access to his medical records, unwarranted communication restrictions, and withholding of critical information necessary to his care. *Id*. He further states that attempts to resolve these issues were met with non-answers, threats of legal action, retaliation, communication blocks, access restrictions, and threats of arrest. *Id*. Importantly, this subsection is entirely devoid of any well-pleaded facts to show how Hampton allegedly violated his patient rights and fails to provide any details regarding his allegations that his communications were restricted. His allegations regarding his "attempts to resolve" are similarly devoid of any facts.

Subsection six lists state law violations, federal law violations, HIPAA violations, and other violations. (Dkt. 1-2, p. 11, ¶6). Again, Plaintiff's merely lists a single sentence for each violation, which contains a conclusory allegation. *Id*. The entire subsection fails to make clear who carried out these alleged violations and pleads no plausible facts. Subsection seven is logically construed as a request for relief that notes how the Plaintiff was impacted. (Dkt. 1-2, p. 12).

---

[6] To the extent to which Plaintiff purports to claim that the records were fraudulent, the Complaint fails to meet the specificity required under Fed.R.Civ.P. 9(b).

As to the injuries he sustained, Plaintiff claims that he was forcibly administered medication, which required subsequent weaning, and resultant anxiety and emotional distress. (Dkt. 1-2, p. 12). Plaintiff fails to make any allegations regarding the circumstances surrounding the alleged forcible administration of medication. *Id*. Plaintiff further claims that he has suffered "professional/career" injuries and loss of the enjoyment of life. (Dkt. 1-2, p. 13).[7]

For these alleged harms, Plaintiff demands $18,000,000 in compensatory damages, and also requests remedial actions which include the correction of "false" medical documentation, and a formal written public apology. (Dkt. 1-2, p. 16-18). While punitive damages are not specifically demanded, Plaintiff also makes reference to "punitive considerations." (Dkt. 1-2, p. 16).

## STANDARD OF REVIEW

### I.    FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. "A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist*., 842 F.Supp.2d 762, 769–70 (M.D.Pa.2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677–78. Pursuant to Rule 8(a)(2), the statement must give the defendant fair notice of the plaintiff's claim and the grounds for the same. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels,

---

[7] Plaintiff also claims that he has been harmed because his access to medical records was blocked, but pleads no plausible facts identify who is alleged to have restricted his access to medical records (Dkt. 1-2, 14-15).

conclusions, and a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). A Complaint must "show" that an individual is entitled to relief with its facts. *Id*.

The Third Circuit requires a multi-step analysis when reviewing a Rule 12(b)(6) motion. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir.2010) (quoting *Iqbal*, 556 U.S. at 675 & 679). Second, the Court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. *Fowler,* 578 F.3d at 210-11. "Conclusory allegations are not entitled to the assumption of truth." *Madison v. Jefferson Hosp.*, 373 Fed. App'x 141, 142 (3d Cir. 2010). Lastly, the Court must determine whether the remaining well-pleaded facts sufficiently show that the plaintiff "has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Great W. Mining Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010). Even where a plaintiff has *pro se* status, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013).

## II.    FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint or portions of a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884,

891 (3d Cir.1977). Further, it is plaintiff's burden to establish that the court has subject matter jurisdiction. *Mortensen*, 549 F.2d at 891.

Standing "is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir.1997); *see also Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 102 (1998). Plaintiff's burden of proof to establish standing is "the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996).

At the pleading stage, therefore, the plaintiff must allege facts sufficient to establish his standing to invoke the court's jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). If a court lacks subject matter jurisdiction, it must dismiss the case without prejudice. *In re Orthopedic "Bone Screw" Prod. Liab. Litig.*, 132 F.3d 152, 155–56 (3d Cir.1997).

## ARGUMENT

## I.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE IT IS A SHOTGUN PLEADING THAT FAILS TO SATISFY RULES 8(A) AND 10(B).

Plaintiff's Complaint, a 'shotgun pleading,' fails to articulate claims with sufficient clarity and accordingly fails to comply with Federal Rule of Civil Procedure Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Washington v. Warden SCI-Greene*, 608 F. App'x 49 (3d Cir. 2015). Rule 8 "underscore[s] the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir.1996). Additionally, the Complaint fails to comply with Rule 10(b), which requires that:

> A party must state its claim or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b); *see also* Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1325, § 1325 Relationship Between Rule 8(d)(2) and Rule 10(b) (4th Ed.) ("Federal Rule of Civil Procedure 10(b) is a mandatory rule and requires separate counts for claims arising out of different transactions[.]").

Courts in the Third Circuit have defined a 'shotgun pleading' as a Complaint that "fails to specify which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Morales v. New Jersey*, No. 21-11548 (JXN) (AME), 2023 WL 5003891, at *4 (D.N.J. Aug. 3, 2023) (cleaned up) (citing *Radhakrishnan v. Pugliese*, No. 20-220 (ES) (MAH), 2021 WL 11593799, at *1 (D.N.J. May 21, 2021)). Further, Courts throughout the Third Circuit have referred to shotgun pleadings as impermissible "group" pleadings. *See, e.g.*, *Salyers v. A.J. Blosenski, Inc.,* 731 F. Supp. 3d 670 (E.D. Pa. 2024); *U.S. Sec. & Exch. Comm'n v. Mintz,* 723 F. Supp. 3d 386 (D.N.J. 2024); *Reddick v. Hicks*, No. 22-6926 (ZNQ) (RLS), 2023 WL 4579884, at *3 (D.N.J. July 18, 2023); *Pellecchia v. Cnty. of Burlington*, No. 22-4707 (CPO)(MJS), 2022 WL 17667906, at *2 (D.N.J. Dec. 13, 2022). The term is frequently used to refer to "[c]omplaints that violate either Rule 8(a)(2) or Rule 10(b), or both." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has developed an extensive body of case law, and therefore, District Courts sitting in the Third Circuit often cite to the Eleventh Circuit. *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, n.3 (E.D. Pa. 2017).

The Eleventh Circuit identifies four primary categories of shotgun pleadings, which are widely cited as persuasive authority on the issue:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does "not separat[e] into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." The "unifying characteristic" of these four types of shotgun pleadings "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

*Id.* at 859 (quoting *Weiland*, 792 F.3d at 1321-23); *see also Diegene Corp. v. Ventana Med. Sys., Inc.*, 476 F. Supp. 2d 444, 448 & n.36 (D. Del. 2007) (relying on "shotgun pleading" case law from the Eleventh Circuit); *see also Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572, 582 (E.D. Pa. 2019) (explaining Third Circuit has criticized "shotgun pleading" approaches to complaints).

Citing to the above four categories, the District Court of New Jersey has found that shotgun pleadings that "assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against" violates Rule 8. *Foulke v. Twp. of Cherry Hill*, No. 23-CV-2543 (RMB/SAK), 2024 WL 3568841, at *8 (D.N.J. July 29, 2024).

Plaintiff's Complaint falls into categories two, three, and four, and altogether fails to articulate claims with sufficient clarity and fails to give the Defendants adequate notice of the claims against them. The Complaint purports to assert claims against a host of thirty-four (34) defendants.[8] Yet, Plaintiff fails to identify all of the thirty-four defendants until page twenty (20) of the Complaint. (Dkt. 1-2, p. 20 – 23). The first eight pages of the Complaint are replete with conclusory and vague allegations. *Id*. at pgs. 1–8. Plaintiff purports to allege allegations of violations of the Fourth Amendment, Fourteenth Amendment, First Amendment, Americans with

---

[8] To date, a summons has only been issued as to four of the named Defendants. Dkt. 5.

Disabilities Act ("ADA"), Rehabilitation Act, and Health Insurance Portability and Accountability Act ("HIPAA"). *Id*. at p. 2. The "Color of Law" portion of Plaintiff's Complaint seemingly alleges violations of state procedures, violations of professional standards, violations of inter-facility protocols, falsification of records, and regulatory compliance violations. *Id*. at p. 5-8. As to all these purported causes of action, Plaintiff sets forth nothing more than vague, conclusory allegations directed to no particular defendant. The Complaint is further replete with immaterial facts. *Id*. at p. 9, ¶2.

Plaintiff's Complaint additionally fails to separate his causes of action into separate counts. *Id*. The Complaint is entirely devoid of any count asserting how any defendant, let alone Responding Defendant, violated his First Amendment rights, the Americans with Disabilities Act, the Rehabilitation Act, and HIPAA. Further, to the extent that any of the subsections in Plaintiff's "Statement of Claim" section can be construed as "counts", these subsections, which principally suggest violations of the Fourth and Fourteenth Amendment, appear to contain allegations related to falsification of medical records, professional malpractice, and First Amendment violations, which are entirely distinct causes of action. *Id*. at p. 8-10.

Despite being directed to thirty-four (34) defendants, the Complaint fails to make allegations as to each of the individual Answering Defendants. *See*, Plaintiff's Complaint, (Dkt. 1-2). In fact, Hampton Behavioral Health System is listed in a subheading of Plaintiff's "Color of Law" section, along with CentraState Healthcare System/Atlantic Health System, and RWJBarnabas Health. (Dkt. 1-2, p. 2). To the extent this subheading can be construed as a count, it fails to specify which defendants are responsible for the alleged conduct. Further, under the section of the Complaint labeled, "Statement of Claim," Plaintiff lists the subheading titled, "Initial Presentation and Unjust Detention at CentraState Medical Center." *Id*. at p. 8, ¶1. The title of the subheading suggests that the section is directed to CentraState Medical Center, however, there is

a singular reference to Hampton. *Id*. This section outlines allegations, which are arguably conclusory and vague, but fails to make clear which defendants are responsible for the alleged acts and omissions. Accordingly, it is unclear what allegations in the subheading, if any, are directed Hampton. Similarly, Dr. Houdart is included in a subheading with Dr. Steven Guillen, and Dr. Steven Van Pelt. (Dkt. 1-2, p. 3).[9] Again, to the extent this subheading can be construed as a count, it fails to specify which defendants are responsible for the alleged conduct. This certainly violates Rule 8.

Lastly, there are no counts that plead specific, plausible facts as to Hampton. The Complaint contains scattershot references to Hampton throughout. In fact, Plaintiff's Complaint arguably contains no counts at all. This plainly violates Rule 10(b). In sum, Plaintiff's causes of action against the Responding Defendant is nearly impossible to ascertain. Accordingly, Plaintiff fails to provide notice of what defendants are purportedly responsible for what acts or omissions, and on what basis. The imprecise Complaint sows confusion about Plaintiff's theories of liability as to Responding Defendant, which wastes judicial resources, "inexorably broaden[s] the scope of discovery, wreak[s] havoc on ... court dockets, and undermine[s] the public's respect for the courts." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (cleaned up) (citation omitted). Accordingly, Plaintiff's Complaint against Responding Defendant should be dismissed, with prejudice.

As outlined below, each of Plaintiff's claims against Responding Defendant fails on numerous substantive grounds. However, due to the substantial and prejudicial pleading deficiencies, the Complaint should be dismissed in its entirety as a shotgun pleading.

---

[9] No summons has been issued as to any of these individuals, and at this stage, none can be considered parties.

II.    **PLAINTIFF'S § 1983 CLAIMS MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE RESPONDING DEFENDANT IS NOT A STATE ACTOR.**

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Therefore, to state a claim under § 1983, a plaintiff must allege that defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *see also Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also Chainey v. St.,* 523 F.3d 200 (3d Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). A private actor is only liable if they are "fairly said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923 (1982). "In other words, a plaintiff must show such a tight connection between a state and the challenged action that the state could be held responsible for that action." *Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*, 34 F.4th 190, 195 (3d Cir. 2022). The state action doctrine has also been referred to as acting under "color of state law."

"The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Therefore, to the extent that Plaintiff alleges that Responding Defendant violated his Fourth, Fourteenth, and First Amendment rights, he must first establish that Hampton acted "under color of state law" with regard to these claims. As set forth more fully below, Plaintiff has pleaded no plausible facts to establish that Responding Defendant was acting under color of state law, and therefore, any and all of Plaintiff's claims under § 1983 must be dismissed with prejudice.

However, even assuming, *arguendo*, that Plaintiff's Complaint makes sufficient allegations that Responding Defendant was a state actor (it does not), Plaintiff otherwise fails to satisfy the federal pleading standards related to these causes of action.

> **A.    Plaintiff Has No Cause of Action for Alleged Violations of the Fourth and Fourteenth Amendment.**

While Plaintiff's Complaint fails to articulate claims with sufficient clarity, interpreted liberally, the Complaint purports to set forth claims for violations of the Fourth Amendment and Fourteenth Amendment. Plaintiff claims that he was subject to an unlawful seizure and further claims he was deprived of procedural and substantive due process when he was involuntarily committed. (Dkt. 1-2, p.1, 2). Before assessing the sufficiency of the pleading related to these claims, the threshold issue that the Court must decide is whether Responding Defendant was a state actor. These claims must be dismissed because Hampton is not a state actor.

> **1.    Hampton is not a State Actor.**

Plaintiff has pleaded no facts to establish, as a threshold issue, that Hampton acted under color of state law when it allegedly violated Plaintiff's Fourth and Fourteenth Amendment rights. A "host of facts" can bear on the color of law determination:

> We have. . .held that a challenged activity may be state action when it results from the State's exercise of coercive power, when the State provides significant encouragement, either overt or covert, or when a private actor operates as a willful participant in joint activity with the State or its agents .... We have treated a nominally private entity as a state actor when it is controlled by an agency of the State, when it has been delegated a public function by the State ... when it is entwined with governmental policies, or when government is entwined in [its] management or control....

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)(internal quotation marks and citations omitted).

In *Benn v. Universal Health Sys., Inc.*, the Third Circuit analyzed each of these factors to determine whether a private Pennsylvania healthcare clinic, its parent corporation, its doctor, and

its counselor could be considered state actors in the context of an involuntary commitment. 371 F.3d 165, 169–70 (3d Cir. 2004). Confronted with similar facts, the District Court of New Jersey also analyzed each of these factors. *Miretskaya v. Rutgers, State Univ. of New Jersey*, No. CV 20-14856 (RK) (JTQ), 2024 WL 3896627 (D.N.J. Aug. 21, 2024). In both cases, the Courts determined that the private defendants were not state actors.

In *Benn*, the Third Circuit determined that none of the factors supported a finding of state action. *Benn*, 371 F.3d at 171. As to the first factor, the Court found that the Pennsylvania Mental Health Procedures Act ("MHPA") did not coerce the defendants to file the application that led to the plaintiff's commitment, nor did the MHPA provide "significant encouragement." *Id*. While the MHPA permitted defendants to file such an application, there is nothing in the MHPA that compels or even encourages individuals to do so. In fact, several courts have expressly held that there is no compulsion where state law permits physicians to petition for involuntary commitment. *See Rockwell v. Cape Cod Hosp*., 26 F.3d 254, 258 (1st Cir.1994) (no compulsion where state law merely permits physicians to petition for involuntary commitment but does not mandate that they do so); *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir.1992) (no compulsion or encouragement where state statutes not enacted to encourage commitment); *Spencer v. Lee*, 864 F.2d 1376, 1379 (7th Cir.1989) (same); *Janicsko v. Pellman*, 774 F.Supp. 331, 338–39 (M.D.Pa.1991) ("this court cannot hold that the standards set by the MHPA rise to the level of coercion"), aff'd, 970 F.2d 899 (3d Cir.1992).

As to the "joint activity" factor, relying on *Lugar*, the Court in *Benn* found that where the plaintiff points to private misuse of a state statute, that conduct is not attributable to the state. *Benn*, 371 F.3d at 172. Since plaintiff argued that defendants violated his constitutional rights for failing to comply with the MHPA, the claim was insufficient to establish state action. *Id*. The Court further found that the application for the involuntary commitment was not a "public function." In assessing

whether an action is considered a "public function", courts look at whether the challenged action relates to a function that has been "traditionally the exclusive prerogative of the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974). The Court determined that there was no basis to conclude that the petitioning for involuntary commitment is or was the exclusive prerogative of the state. *Benn*, 371 F.3d at 172. The Court also determined that Plaintiff did not plead facts sufficient to establish "entwinement" or a "symbiotic"/mutually beneficial relationship. *Id.* at 173.

Similarly, in *Mirestkaya*, the District Court of New Jersey determined that none of the factors supported a finding of state action. *Miretskaya*, 2024 WL 3896627. As to the coercion factor, the Court reasoned that while two New Jersey laws "permit" medical professionals to petition a court for an order involuntary committing an individual, neither "compels or even significantly encourages the filing of an application," and thus the discretionary decision to commit an individual did not constitute state action. *Id.* at p. 8. The Court further reasoned that "private misuse of a statute does not describe conduct that can be attributed to the State." *Id.* (quoting *Lugar*, 457 U.S. at 940). "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* (quoting *Jackson*, 419 U.S. at 350). The plaintiff in *Mirestkaya* did not allege that the private defendants were controlled by an agency of the state, nor did plaintiff plead facts sufficient to establish a symbiotic relationship of mutual benefit.

Just as the Third Circuit in *Benn* concluded that the defendants were not state actors, and just as the District Court of New Jersey in *Mirestkaya* concluded that the defendants were not state actors, this Court must determine that Hampton was not a state actor for the purposes of § 1983. As a preliminary matter, all of Plaintiff's allegations regarding state action are conclusions of law that fail to comply with Rule 8 and Rule 10 and should therefore be disregarded by this Court. To the extent that this Court concludes that the allegations regarding state action comply with the

federal pleading standards, Plaintiff's Complaint fails to plead any plausible factual allegations which establish that any New Jersey law "coerced" or "significantly encouraged" Responding Defendant to undertake any evaluation or application for involuntary commitment. Plaintiff's complaint only makes a conclusory allegation that a group of defendants "exercis[ed] state-delegated authority for involuntary evaluations." (Dkt. 1-2, p. 2, ¶1(a); p. 3, ¶2(a)). As noted above, the Third Circuit, and federal circuit courts of appeal across the country, make clear that state law merely permitting a private actor to do something is not enough for state action. Further, general allegations that defendants "made detention decisions without proper evaluation" and "failed to follow state-mandated assessment guidelines" is also not enough to satisfy the "joint activity" test. *Benn*, 371 F.3d at 172. Here, Plaintiff makes no plausible allegations to suggest that involuntary commitment is a prerogative of the state of New Jersey, nor does the Complaint plead any facts to suggest "entwinement" or a "symbiotic" relationship between the State of New Jersey and Responding Defendant.

Finding that Hampton is not a state actor is consistent with the Third Circuit, district courts of the Third Circuit, and other federal circuit courts of appeal. See *Rockwell v. Cape Cod Hosp.*, 26 F.3d at 257–58; *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir.1992); *Spencer*, 864 F.2d at 1380–81; *Doby v. Decrescenzo*, No. Civ. A. 94–3991, 1996 WL 510095 (E.D.Pa. Sept.9, 1996), aff'd, 118 F.3d 1575 (3rd Cir.1997); *Bodor v. Horsham Clinic, Inc.*, No. Civ. A. 94-7210, 1995 WL 424906 (E.D. Pa. July 19, 1995) (thoroughly analyzing the "state actor" question); *Savacool v. Delaware Cnty. Dep't of Mental Health & Mental Retardation,* No. Civ. A. 92-2142, 1993 WL 21209, at *6 (E.D. Pa. Jan. 25, 1993); *Janicsko v. Pellman*, 774 F.Supp. 331, 339 (M.D.Pa.1991), aff'd, 970 F.2d 899 (3d Cir.1992). Accordingly, this Court should hold that Hampton is not a state actor for the purpose of § 1983.

2.    **Plaintiff's Complaint fails to sufficiently plead a cause of action against the Hampton for violations of the Fourth Amendment.**

Assuming, *arguendo*, that Plaintiff plead facts sufficient to establish that Hampton is a state actor, Plaintiff's § 1983 claims nonetheless fails to state a claim for both the violation of Plaintiff's Fourth Amendment right to be free from seizures and Fourteenth Amendment due process rights.[10]

The Fourth Amendment applies to seizures in civil, as well as criminal, proceedings. *See O'Connor v. Ortega*, 480 U.S. 709, 714–15 (1987). To state a claim for seizure under the Fourth Amendment, a plaintiff must plead facts that demonstrate (1) "a reasonable person would have believed he was not free to leave," *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 147 (3d Cir. 2005) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)), and (2) the seizure was intentional. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989).

On page one of Plaintiff's Complaint, Section B(1) puts forth "unadorned" "defendant-unlawfully-harmed-me" accusations regarding the purported Fourth Amendment violations. (Dkt. 1-2, p. 1, ¶B(1)). The section is noticeably devoid of any factual allegations, and even fails to direct the threadbare legal conclusions towards any particular defendant. *Id*. Further, in subsection one under Plaintiff's "Statement of Claim" section, which is seemingly directed to CentraState Medical Center, Plaintiff alleges that "Upon admission to Centrastate and subsequently Hampton, I was immediately placed in a secured isolation room in a secured isolation environment…" (Dkt. 1-2, p. 8 ¶1). The section then goes on to make general allegations, and it is unclear to whom these allegations are directed. *Id*. p. 8. Aside from the singular mention of "Hampton," this section does not discuss the conduct of Responding Defendant. Further, the Complaint is entirely devoid of any

---

[10] While vicarious liability as to Hampton is not specifically pleaded, to the extent that Plaintiff's Complaint can be construed to plead *respondeat superior* related to any of Plaintiff's claims asserted pursuant to Section 1983, private corporations cannot be held liable in a Section 1983 suit based on *respondeat superior. Victory Outreach Ctr. v. Melso*, 371 F. Supp. 2d 642, 646 (E.D. Pa. 2004); *see also, Miller v. City of Philadelphia*, 1996 WL 683827 (E.D.Pa.1996); *see also, Miller v. Hoffman*, 1998 WL 404034, *5 (E.D.Pa.1998).

allegations that any Responding Defendant acted intentionally. Accordingly, Plaintiff fails to provide notice of what defendants are purportedly responsible for what acts or omissions, and on what basis.

Because Hampton is not a state actor, and additionally, because Plaintiff's Fourth Amendment claim as to Hampton fails to meet the federal pleading standards, this Court should dismiss this claim with prejudice.

3.    **Plaintiff's Complaint fails to sufficiently plead a cause of action against Hampton for violations of the Fourteenth Amendment.**

Plaintiff's claims that Hampton violated his procedural and substantive due process through his involuntary commitment also fail to satisfy the federal pleading standards. "To state a claim for deprivation of procedural due process, a plaintiff must plead plausible facts to demonstrate that (1) he was deprived of an individual interest included within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Toussaint v. Szeto*, No. 22-2446, 2022 WL 1541545, at *2 (D.N.J. May 13, 2022) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)). Again, at the outset of the Complaint, Plaintiff puts forth "unadorned" "defendant-unlawfully-harmed-me" accusations regarding the purported Fourteenth Amendment violations. (Dkt. 1-2, p. 2, ¶2). This paragraph contains only conclusions of law and makes no factual allegations about how any specific defendant, let alone Responding Defendant, violated his Fourteenth Amendment rights of procedural due process. *Id*. Again, in the section seemingly directed to CentraState Medical Center, Plaintiff claims that "Upon admission to Centrastate and subsequently Hampton, I was immediately placed in a secured isolation room in a secured isolation environment…" (Dkt. 1-2, p. 8 ¶1). The section then goes on to make general allegations, and it is unclear to whom these allegations are directed. *Id*. p. 8. Aside from the singular mention of "Hampton," this section does not discuss the conduct of any other Responding Defendant. On

19

page 11, section five of Plaintiff's Complaint, titled, "Continuation of Rights Violations and Denial of Due Process," Plaintiff makes several allegations regarding conversations with Dr. Houdart and "Anita," but fails to plead any facts that establish that Responding Defendant deprived him of an individual liberty interest. (Dkt. 1-2, p. 11, ¶2). The Complaint otherwise fails to set forth any factual allegations as to Responding Defendant regarding alleged violations of procedural due process.

The test for assessing substantive due process violations in the context of involuntary commitments is whether an incident "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Once again, Plaintiff's Complaint is entirely devoid of any well-pleaded facts to establish that the actions or omissions of Responding Defendant "shocked the conscience" related to his involuntary commitment. Instead, he puts forth conclusions of law, directed at no particular defendant, alleging that "Defendants" subjected him to "arbitrary and unjustified involuntary commitment," "falsification of medical records to justify detention,"[11] and "denial of equal protection by engaging in discriminatory practices." (Dkt. 1-2, p. 2, ¶2). These conclusions of law fail to satisfy the federal pleading standards and fail to provide Hampton with notice of the allegations being made against it and the factual basis of those allegations[12][13].

---

[11] In addition to failing to plead plausible facts under *Iqbal* and *Twombly*, the claims of falsified records likewise fail to meet the pleading standard under Fed.R.Civ.P. 9(b).

[12] Plaintiff also makes generalized allegations, directed to no particular defendant, that he was forcibly administered medications that were unnecessary. (Dkt. 1-2, p. 12, ¶IV(1)). Plaintiff pleads no facts to establish who administered these medications, where these medications were administered, and what medication was administered, which fails to satisfy the federal pleading standards.

[13] Plaintiff's Complaint contains a single sentence which makes the conclusory allegation that he was denied "equal protection by engaging in discriminatory practices based on disability." (Dkt. 1-2, p. 2, ¶2). Plaintiff makes no allegations that Hampton acted under color of state law in denying him equal protection under the Fourteenth Amendment. (Dkt. 1-2, p. 2-3, ¶D(1)(a.)). His claim fails on this basis alone. Additionally, Plaintiff's Complaint also entirely fails to satisfy the pleading standards related to this claim. To state an equal protection claim a plaintiff must allege that (1) he or she is a member of a protected class and (2) he or she received different treatment

Because Hampton is not a state actor, and additionally, because Plaintiff's Fourteenth Amendment claims as to Hampton fail to meet the federal pleading standards, this Court should dismiss these claims with prejudice.

**B.    Plaintiff Has No Cause of Action for Alleged First Amendment Violations.**

Plaintiff's Complaint purports to plead a cause of action for the violation of his First Amendment rights. At the outset of the Complaint, Plaintiff sets forth a conclusory paragraph generally claiming that he experienced retaliation for exercising his free speech rights and that his communication was restricted. (Dkt. 1-2, p. 2, ¶3). Because of the insufficiency of the pleading on its face, it is nearly impossible to discern the basis for Plaintiff's cause of action for First Amendment violations as to the Responding Defendant.

The first step is to determine whether Responding Defendant was a state actor for the purposes of his claims for violations of his First Amendment rights. As explained above, the Complaint is entirely devoid of any allegations that would support a finding that Hampton was a state actor for the purpose of those claims.

Assuming, *arguendo*, that Plaintiff could plead significant facts to allege that Hampton was a state actor for the purpose of these claims (it is not), Plaintiff's purported First Amendment violations fail to satisfy the federal pleading standards. Aside from making bald conclusory allegations, Plaintiff's Complaint fails to plausibly allege how Hampton violated his First Amendment rights. *Id*. p. 2, ¶3, p. 6, ¶b. None of the subsections of the "Statement of Claim"

---

than that received by other similarly situated individuals. *Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir.1992)*. To avoid dismissal, a plaintiff must allege both protected-class status and differential treatment of similarly situated non-class members. *D'Altilio v. Dover Township*, 2007 WL 2845073, at *8, (M.D.Pa. September 26, 2007); see also, *Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284 (M.D. Pa. 2015), aff'd, 905 F.3d 122 (3d Cir. 2018). Aside from the single conclusory sentence, directed to no particular defendant, Plaintiff's Complaint is devoid of any facts to support an equal protection claim. Plaintiff does not plead that he is a member of a protected class and fails to plead that he received different treatment from other similarly situated individuals.

portion of the Complaint mention allegations related to Plaintiff's right to free speech. In fact, this portion of the Complaint, construed liberally, makes a single conclusory statement that he experienced "communication blocks." (Dkt. 1-2, p. 11, ¶5). Therefore, these claims must also be dismissed.

III.   **PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE REHABILITATION ACT, CLAIMS FOR THE FALSIFICATION OF MEDICAL RECORDS, AND MEDICAL MALPRACTICE MUST BE DISMISSED PURSUANT TO RULE 12(B)(6).**

A.     **Plaintiff Fails to State a Claim for Violations of the Rehabilitation Act.**

Plaintiff's Complaint contains a conclusory paragraph which claims that defendants violated Section 504 of the Rehabilitation Act of 1973. Because Plaintiff fails to plead any facts sufficient to establish a claim under the Act, this Court must dismiss this claim pursuant to Rule 12(b)(6).

To state a claim under the Act, a plaintiff must show that (1) they are an individual with a disability; (2) they are otherwise qualified for participation in the program or activity, or for the position sought; (3) they were excluded from the position sought, denied the benefits of, or subject to discrimination under the program or activity solely by reason of their disability; and (4) the relevant program or activity receives federal financial assistance. *U.S. Dept. of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986). A plaintiff must plausibly allege *intentional* discrimination on the basis of a disability. *D.E. v. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (citing *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)). The intentional discrimination standard requires a showing of at least "deliberate indifference, either intentionally, or with deliberate indifference, denied benefits to which [plaintiff] was entitled, or that [plaintiff] was 'otherwise subject to discrimination because of [his] disability.'" *N.M. v. Wyo. Valley W. Sch. Dist.*, No. 3:15-CV-01585, 2016 WL 2757395, at *11 (M.D. Pa. May 11, 2016).

Here, Plaintiff's Complaint contains a singular, conclusory reference to the Rehabilitation Act in the "Basis for Jurisdiction" section. (Dkt. 1-2, p. 2, ¶5). The Rehabilitation Act is not discussed in the "Statement of Claim" section. To the extent that the single reference to the Act can be considered a cause of action, this reference is entirely devoid of any allegations to establish that Responding Defendant violated the Act.

1.    **Plaintiff's Cause of Action for Violations of the Rehabilitation Act Fails to Comply with Federal Pleading Standards.**

Plaintiff does not plead that he has a disability, he does not plead that he is qualified to participate in a program, he does not plead that he was excluded from a program, and nor does he plead that the relevant program receives federal assistance. Plaintiff simply makes bald, factually unsupported assertions. (Dkt. 1-2, p. 2, ¶5). Furthermore, Plaintiff fails to even direct this claim to any specific individual or entity, aside from asserting that he has a cause of action pursuant to the Act. Beyond these threshold deficiencies, Plaintiff further fails to allege any intentional discrimination on the basis of a disability. *D.E. v. Dauphin Sch. Dist.*, 765 F.3d at 269 (citing *S.H. v. Lower Merion Sch. Dist*., 729 F.3d 248, 263 (3d Cir. 2013)). Accordingly, this Court must dismiss Plaintiff's purported cause of action for the violation of the Rehabilitation Act[14]. *See, U.S. Dept. of Transp.*, 477 U.S. at 605.

B.    **Plaintiff Fails to State a Claim for Falsification of Medical Records.**

Plaintiff's Complaint claims that his medical records were falsified. (Dkt. 1-2, p.5-6, ¶7 p. 10, ¶3). It is unclear what statute, if any, Plaintiff relies upon in making this claim. Therefore, Hampton is unable to ascertain whether Plaintiff is alleging a violation of his constitutional rights

---

[14] Additionally, there is no basis to impute vicarious liability to Hampton for the actions of its staff. Multiple courts have held that the Rehabilitation Act does not permit vicarious liability. See *Arthur v. D.C. Hous. Auth*., No. 18-cv-2037, 2020 WL 1821111, at *11 (D.D.C. Apr. 11, 2020); *Hooper v. City of St. Paul*, 2019 WL 4015443, at *9-14 (D. Minn. Aug. 26, 2019).

versus a violation of New Jersey or federal statutory law. Moreover, Plaintiff fails to plead facts with specificity alleging that the records were falsified as required by Fed.R.Civ.P. 9(b).

However, Plaintiff's Complaint does contain a section titled, "Coordinated Action of covering up misconduct acting under the color of state law." (Dkt 1-2, p. 5, ¶7). Subsection "a." is titled, "Coordinated Creation and Maintenance of False Records Acting in bad faith." *Id.* at ¶7(a). Construed liberally, it appears that Plaintiff is attempting to assert a cause of action pursuant to § 1983, though this is not specifically plead, and it again lacks the specificity required by Rule 9(b).

The allegation of falsification of medical records, without more, is not sufficient to sustain a claim for the violation of the Eighth Amendment. *Moore v. Casselberry*, 584 F. Supp. 2d 580, 582 (W.D.N.Y. 2008)("There is no basis for a constitutional claim alleging the mere filing of a false report."); *see also Harris v. Pennsylvania Dep't of Corr.*, No. 13-2888, 2014 WL 941351, at *5 (E.D. Pa. Mar. 11, 2014) ("This allegation of falsifying medical reports, without more, does not support the inference that Robinson was deliberately indifferent to Plaintiff's serious medical need."); *Rivera v. Tennis*, No. 09-0888, 2010 WL 2838603, at *7 (M.D. Pa. May 20, 2010) (dismissing claims based on allegations that "defendant [] filed false medical reports, and/or that [plaintiff] disagreed with her course of treatment").

To the extent that Plaintiff claims the alleged falsification of medical records violated his constitutional rights, he would still have the threshold burden of establishing that Hampton was a state actor. The Complaint is devoid of any allegations that Hampton acted under color of state law when allegedly falsifying his medical records.

Furthermore, Plaintiff fails to plead any cause of action for the falsification of medical records against Responding Defendant. Plaintiff's Complaint makes conclusory "defendant-harmed-me" allegations that his medical records were falsified yet provides no well-pleaded facts to establish the same. (Dkt. 1-2, p. 5, ¶7)(Dkt. 1-2, p. 10, ¶3). Instead, he makes bald conclusory

statements that his records were falsified. Further, the "Color of Law" portion of the Complaint fails to make clear to whom these allegations are directed and further fails to allege any facts to support the claim that Hampton falsified his records. Additionally, Plaintiff's "Statement of Claim," subsection three, claims that his records were false, but cites only to the Atlantic Medical Center records. (Dkt. 1-2, p. 10, ¶3). Atlantic Medical Center is separate and distinct from Responding Defendant. Further, this subsection similarly fails to plead any plausible facts demonstrating that Hampton allegedly falsified his records, apart from the conclusory statement asserting that a list of individuals were "involved in creating or maintaining these false records." *Id*. Plaintiff has failed to plead a claim for the falsification of medical records as to Hampton that is plausible on its face, and therefore, this Court must dismiss this claim as to Responding Defendant.

### C.    Plaintiff Fails to State a Claim for Medical Malpractice.

While not specifically plead, Plaintiff's Complaint makes general allegations of "Professional Standards Violations." (Dkt. 1-2, p. 6). Additionally, the "Color of State Law" section directed to doctors Steven Guillen, Steven Van Pelt, and Dr. Houdart makes conclusory allegations that those individuals "[made] detention decisions without proper evaluation…", "[failed] to follow state-mandated assessment guidelines", and "failed to examine previous medical or mental history", and "administered treatment without consent." (Dkt. 1-2, p. 3-4, ¶2(a)). To the extent that these allegations can be construed as a cause of action for medical malpractice, Plaintiff fails to state a claim for relief.

To plead a cause of action in a medical malpractice case, a plaintiff must plead facts sufficient to establish: the standard of care, that a defendant's deviation from that standard caused an injury, and resulting damages. *Komlodi v. Picciano*, 217 N.J. 387, 409 (2014); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 579 & n.3 (3d Cir. 2003).

Here, Plaintiff fails to plead a cognizable cause of action for medical malpractice. As demonstrated above, Plaintiff makes only conclusory allegations and plainly states that there were "professional standards violations," yet provides no facts to support this allegation. Further, Plaintiff conflates these conclusory allegations against more than one defendant. Lastly, Plaintiff's Complaint fails to allege any facts to establish that Hampton, or any provider at Hampton, breached a standard of care. Therefore, any claims sounding in medical or professional malpractice must be dismissed.

IV.     **PLAINTIFF'S CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AND PLAINTIFF'S CLAIM UNDER HIPAA MUST BE DISMISSED PURSUANT TO RULE 12(B)(1).**

    A.     **Plaintiff Lacks Standing to Bring a Claim under Title III of the Americans with Disabilities Act.**

Plaintiff's Complaint purports to assert a cause of action for violation of the Americans with Disabilities Act, despite the fact that no such allegations appear under Plaintiff's "Statement of Claim" portion of the Complaint. Under the "Basis for Jurisdiction" section, Plaintiff simply puts for the conclusory statement that he is bringing a cause of action pursuant to the Act. This is directed to no particular defendant and is comprised purely of conclusions of law. To the extent that Plaintiff's Complaint can be construed to put forth a cause of action for the same, the Court must dismiss this claim for both lack of standing and plausibility.

"To state a claim of disability discrimination under Title III of the Americans with Disabilities Act ("ADA"), a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Anderson v. Franklin Institute*, 185 F.Supp.3d 628, 642 (E.D. Pa. 2016) (citations omitted). The remedy for a private ADA Title III violation is injunctive relief; monetary damages are unavailable to private plaintiffs. *Anderson v. Macy's Inc.*, 943 F.Supp.2d 531, 538

(W.D. Pa. 2013). Of note, it is not clear what type of relief, if any, Plaintiff is asserting in this matter related to his purported ADA claim. Since the Complaint is silent as to the relief sought, we will analyze this claim based upon the only possible grounds for relief—injunctive relief.

To the extent that Plaintiff seeks to plead an ADA claim, the threshold consideration in Title III ADA cases is whether the plaintiff has standing. *Pub. Interest Research Grp. of N.J., Inc.* 123 F.3d at 117. In this context, standing is derived from the 'case or controversy' language of Article III of the Constitution. *Id.*

"Because the [only] remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations." *Heinzl v. Starbucks Corp.,* No. Civ. A. 14-1316, 2015 WL 1021125, at *5 (W.D. Pa. Mar. 9, 2015). "Plaintiffs seeking prospective injunctive relief must demonstrate a 'real and immediate threat' of injury in order to satisfy the 'injury in fact' requirement of standing. *Id.* (citing *Anderson*, 943 F.Supp.2d at 538)." "[F]or purposes of establishing standing in an action for injunctive relief, 'a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct.'" *Hollinger v. Reading Health System*, No. 15-5249, 2016 WL 3762987, at *10 (E.D. Pa. July 14, 2016) (citation omitted). "Past illegal conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'" *Doe v. Nat'l Bd. of Med. Examiners*, 210 Fed.Appx. 157, 159-60 (3d Cir. 2006) (citations omitted); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

"In order to state a basis for a claim for injunctive relief, the complaint must allege that injury to plaintiff[ ] is 'certainly impending.'" *Phillips v. St. Mary's Medical Center*, No. 12–2363, 2013 WL 1124372, at *2 (E.D. Pa. March 19, 2013) (citing *Lujan*, 504 U.S. at 564 n.2 (1992)). "A stated intent to return 'someday' to the source of the alleged injury is not sufficient." *Id.* (citing

*Lujan*, 504 U.S. at 564 n. 2). Accordingly, the injury must be personal, actual and imminent, and cannot be speculative. *Doe v. Nat'l Bd. Of Med Examiners,* 199 F.3d at 153.

To satisfy the injury in fact requirement, a plaintiff must demonstrate a 'real and immediate threat' of injury. *Hollinger*, 2016 WL 3762987, at *10. "A plaintiff can meet the imminent injury burden in a Title III ADA case using one of two methods: the intent to return method or the deterrent effect doctrine." *Id*. (citation omitted).

The intent to return method requires a plaintiff to show that:

> (1) the plaintiff has alleged that the defendant engaged in past discriminatory conduct that violates the ADA; (2) it is reasonable to infer from allegations in the complaint that the discriminatory conduct will continue, and (3) it is reasonable to infer based on past patronage, proximity of the public accommodation to the plaintiff's home, business, or personal connections to the area, that the plaintiff intends to return to the public accommodation in the future.

*Id*.

"Under the deterrent effect doctrine, a plaintiff has suffered an actual and imminent injury sufficient to confer standing where the plaintiff was 'deterred from patronizing a public accommodation because of a defendant's failure to comply with the ADA.'" *Id*. at 11 (citation omitted). Further, "[e]ven under the deterrent effect test, a plaintiff **must still show that he or she has an intent to return to the place of alleged discrimination**." *Hollinger*, 2017 WL 429804 (emphasis added). "[T]he plaintiff must put forth a definitive, uncontested intent to return before filing the complaint to establish standing." *Anderson*, 943 F.Supp.2d at 540.

Here, Plaintiff failed to put forth any definitive statement of the intent to return to Hampton Behavioral Health. Plaintiff's Complaint purports to allege, in part, that he should not have been involuntarily committed. (Dkt. 1-2). In addition to failing to put forth any definitive statement of an intent to return, Plaintiff's Complaint suggests that he has no desire to return. Therefore,

pursuant to Rule 12(b)(1), Plaintiff's count for violations of the ADA must be dismissed with prejudice for lack of standing.

Further, standing issues aside, Plaintiff's Complaint fails to set forth any facts which would establish that he suffered discrimination on the basis of his disability at the hands of the Responding Defendant. He further fails to assert that he suffered discrimination in the "full and equal enjoyment" of any place of public accommodation by the owner, lessor, or operator. As an additional point, Dr. Houdart, Dr. Rahman, and Anita Giunta are not the owners, lessors, or operators of Hampton Behavioral Health Center, and accordingly, Plaintiff cannot assert a plausible claim against them for violations of the ADA.

### B. Plaintiff Lacks Standing to Bring a Claim for the Violation of HIPAA.

Plaintiff's Complaint purports to plead a cause of action for the breach of the Health Insurance Portability and Accountability Act ("HIPAA"). However, this Court must dismiss this claim for lack of standing.

"The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA complaint, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens." *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 469 (D.N.J. 2013); *see also*, *Voth v. Hoffman*, No. 14-7582, 2016 WL 7535374, at *7 n.6 (D.N.J. Apr. 28, 2016) Put differently, there is no private right of action with respect to alleged violations of HIPAA. *Id*. Accordingly, Plaintiff's claim must be dismissed for lack of standing pursuant to Rule 12(b)(1).

### V. PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED PURSUANT TO RULE 12(B)(6).

Finally, this Court should strike Plaintiff's demands for punitive damages against Responding Defendant as factually and legally unsupported, even if any underlying claims survive. In a §1983 action, a jury may be permitted to assess punitive damages when the defendant's

conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Feldman v. Philadelphia Housing Authority*, 43 F.3d 823, 833 (3d Cir.1994)(citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

Because Plaintiff's Complaint fails to allege any allegations that Responding Defendant was motivated by evil motive or intent and fails to allege that Responding Defendant was recklessly or callously indifferent to the federal protected rights of Plaintiff, Plaintiff's demand for punitive damages should be stricken.

<u>**CONCLUSION**</u>

Plaintiff's shotgun Complaint fails to articulate any cause of action against the Responding Defendant. Plaintiff's Complaint lists thirty-four defendants yet fails to plead any specific allegations as to Hampton. Further, Plaintiff's Complaint otherwise fails substantively and procedurally.

For any or all of the foregoing reasons, this Court should grant Responding Defendant's Motion to Dismiss the Complaint against it, in its entirety, without leave to amend.

Respectfully submitted,

Date: January 24, 2025                    By: */s/ Michael W. Bootier*
                                              Michael W. Bootier, Esquire
                                              Joshua T. Calo, Esquire
                                              Caitlin L. Cardene, Esquire
                                              700 Alexander Park Drive, Ste. 300
                                              Princeton, New Jersey 08540
                                              (215) 665-8700
                                              (215) 665-8760
                                              michael.bootier@bipc.com
                                              joshua.calo@bipc.com
                                              caitlin.cardene@bipc.com

                                              *Attorneys for Defendant Hampton Behavioral*
                                              *Health Center*