UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRADLEY CLONAN, ET AL., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 3:24-CV-11399-RK-RLS |
| | ) | |
| v. | ) | |
| | ) | |
| CENTRASTATE HEALTHCARE | ) | Amended Complaint Demarco Clarification |
| SYSTEM/ATLANTIC HEALTHCARE | ) | |
| SYSTEM, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Dated : April 7th, 2025

Dear Honorable Judge Robert Kirsch,

I, Bradley Clonan, declare under penalty of perjury: am the Plaintiff in this action, and have under extreme anxiety filed to the best of my abilities. Additionally I have personal knowledge of the facts stated herein and could testify competently to them if called as a witness. Throughout discovery I can facilitate records and recordings that aren't possible to upload through ADS.

**INTRODUCTION**

1. Plaintiff Bradley Clonan brings this action pro se to seek redress for the violation of his constitutional and statutory rights in connection with his medical evaluation, detention, and treatment beginning on or about March 24, 2023, and continuing effects thereof.

2. All defendants have been served to the best of our ability while maintaining issued cease of contact and desist letters. Issued by Monmouth medical center "Attorney Defendants". As well as a letter from CentraState Healthcare system, demanding all communication go through Security Manager Robert Orro. .

**Amendment to Complaint Regarding Defendant Detective Demarco:**

Plaintiff acknowledges that Defendant Detective Demarco has not been timely served within the period prescribed by the original complaint deadline. Consequently, Plaintiff respectfully requests that Detective Demarco be removed as a named defendant in this action. However, Plaintiff maintains that Detective Demarco (#8578), at all relevant times, was acting within his official capacity as a New Jersey State Police Officer and under color of state law. Therefore, Plaintiff requests that Detective Demarco be retained solely as a witness to the events in question.

Plaintiff initiated internal investigations regarding Detective Demarco's actions, documentation of which is available upon the Court's request or through the discovery process. Plaintiff has consulted the Office of Public Affairs, which reaffirmed that complaints against officers must be filed within a 45-day window, thereby necessitating this amendment.

Plaintiff seeks relief for monetary damages and injunctive relief arising from actions taken under color of state law, specifically relating to Detective Demarco's provision of information influencing the commitment decision. Plaintiff is prepared to fully comply with all discovery requests and provide the Court with comprehensive records from the internal affairs investigation as needed.

3. Matter of Public Concern : this case is not only a matter of personal importance but also a **matter of public concern**. The issues at stake extend beyond my individual circumstances and involve broader implications related to procedural fairness, transparency, and accountability within the legal system.

**PARTIES**

2. Plaintiff Bradley Clonan is an individual residing at 2604 W Rhododendron Drive, Abingdon, Maryland 21009. Plaintiff is legally handicapped and considered permanently disabled.

**Defendants** (Listed based on original complaint attachment Doc 1-2, pages 21-23)

3. Defendant CentraState Healthcare System/Atlantic Health System ("CentraState") is a healthcare corporation organized under New Jersey law with its principal place of business at 901 West Main Street, Freehold, NJ 07728. Plaintiff sues this Defendant in its official capacity for the purposes of seeking monetary damages injunctive relief and to address policies and customs that led

to the constitutional violations alleged herein, acting under color of state law through its participation in the state-regulated commitment process and in concert with state officials.

4. Defendant RWJBarnabas Health - Monmouth Medical Center ("Monmouth Medical" or "MMC") is a healthcare corporation organized under New Jersey law with its principal place of business at 300 Second Avenue, Long Branch, NJ 07740. Plaintiff sues this Defendant in its official capacity for the purposes of seeking  monetary damages injunctive relief and to address policies and customs that led to the constitutional violations alleged herein, acting under color of state law through its performance of state-mandated screening functions and in concert with state officials.

5. Defendant Hampton Behavioral Health Center ("Hampton Behavioral") is a mental health clinic operating at 650 Rancocas Rd, Westampton Township, NJ 08060. Plaintiff sues this Defendant in its official capacity for the purposes of seeking monetary damages, injunctive relief and to address policies and customs that led to the constitutional violations alleged herein, acting under color of state law by detaining Plaintiff pursuant to a judicial order.

6. Defendant Dr. Steven Guillen, MD, was at all relevant times an Attending Provider at Defendant CentraState. Plaintiff sues this Defendant in his individual capacity for monetary damages and in his official capacity for injunctive relief related to actions taken under color of state law through his participation in the state-regulated commitment process and in concert with state officials.

7. Defendant Dr. Stephen Van Pelt, MD, was at all relevant times an Attending Provider at Defendant CentraState. Plaintiff sues this Defendant in his individual capacity for monetary damages and in his official capacity for injunctive relief related to actions taken under color of state law through his participation in the state-regulated commitment process and in concert with state officials.

8. Defendant Estate of Dr. Mohsen Rehim, MD (sued as Dr. Mohsen Rehim, MD), was at all relevant times Chairman of the Department of Psychiatry at Defendant Monmouth Medical Center. Plaintiff sues this Defendant (via the Estate) in his individual capacity for completeness regarding actions taken.

9. Defendant Dr. Chris Fabian was at all relevant times a Screening Psychiatrist affiliated with Defendant Monmouth Medical Center, performing evaluations via telehealth for patients at Defendant CentraState. Plaintiff sues this Defendant in his individual capacity for monetary damages and in his official capacity for injunctive relief related to actions taken under color of state law through his performance of state-mandated screening functions.

10. Defendant Dr. Michael P Houdart, DO, was at all relevant times a physician at Defendant Hampton Behavioral. Plaintiff sues this Defendant in his individual capacity for monetary damages and in his official capacity for injunctive relief

related to actions taken under color of state law through his participation in the state-regulated treatment and detention pursuant to a judicial order.

11. Defendant Dr. Atta-ur Rehman, MD, was at all relevant times a physician at Defendant Hampton Behavioral. Plaintiff sues this Defendant in his individual capacity for monetary damages and in his official capacity for injunctive relief related to actions taken under color of state law through his participation in the state-regulated treatment and detention pursuant to a judicial order.

12. Defendant Larissa Spishock, PA, was at all relevant times a Physician Assistant providing care to Plaintiff at Defendant CentraState on March 24, 2023. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials.

13. Defendant Heather Guzy, PA, was at all relevant times a Physician Assistant providing care to Plaintiff at Defendant CentraState from March 24-25, 2023. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials.

14. Defendant Aradla Tabasko, PA-C, was at all relevant times a Physician Assistant providing care to Plaintiff at Defendant CentraState on March 25, 2023. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials.

15. Defendant Antonella Salony, RN, was at all relevant times a Registered Nurse providing care to Plaintiff at Defendant CentraState from March 24-25, 2023. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials.

16. Defendant Nichole Perez, RN, was at all relevant times a Registered Nurse providing care to Plaintiff at Defendant CentraState on March 25, 2023. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials.

17. Defendant Lori Conrad, LPN, was at all relevant times a Licensed Practical Nurse providing care to Plaintiff at Defendant CentraState on March 25, 2023. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials.

18. Defendant Jordan White, RN, was at all relevant times a Registered Nurse providing care to Plaintiff at Defendant CentraState. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials.

19. Defendant Lauren Richard, RN, was at all relevant times a Registered Nurse providing care to Plaintiff at Defendant CentraState. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials.

20. Defendant Mariecarmel Carre-Lee, MHT, was at all relevant times a Mental Health Technician providing care to Plaintiff at Defendant CentraState. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the initial detention in concert with state officials and documentation of information from a state actor.

21. Defendant Eric Carney was at all relevant times President and Chief Executive Officer of RWJBarnabas Health (parent of Defendant Monmouth Medical Center). Plaintiff sues this Defendant in his individual capacity for monetary damages and in his official capacity for injunctive relief related to actions taken under color of state law through his oversight of Monmouth Medical Center's state-mandated screening functions and grievance procedures.

22. Defendant Robert Orro was at all relevant times Security Manager of Defendant CentraState. Plaintiff sues this Defendant in his individual capacity for monetary damages and in his official capacity for injunctive relief related to actions taken under color of state law through his participation in the initial detention in concert with state officials.

23. Defendant Marie Levasseur was at all relevant times a Patient Advocate of Defendant CentraState. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her role in the grievance process.

24. Defendant Cheryl Craig was at all relevant times Director of Behavioral Health of Defendant CentraState. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her role in the grievance process and oversight of the initial detention.

25. Defendant Lynda McDonald was at all relevant times Supervisor Patient Experience Department of Defendant CentraState. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for

injunctive relief related to actions taken under color of state law through her role in the grievance process.

26. Defendant Tracey B. Deaner, MSN, RN, NEA-BC, was at all relevant times Director Patient/Resident Experience Department of. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her role in the grievance process and oversight at CentraState Healthcare System.

27. Defendant Virginia Heggen was at all relevant times a Patient Advocate of Defendant Monmouth Medical Center. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her role in the grievance process.

28. Defendant Margaret Nielsen was at all relevant times Director of Risk Management of Defendant Monmouth Medical Center. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her role in the grievance process and initiation of legal action.

29. Defendant Johanna Rosario was at all relevant times Director of Patient Satisfaction of Defendant Monmouth Medical Center. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her role in the grievance process and denial of record correction.

30. Defendant Lauren H. Zalepka, Esq., is an attorney with the law firm Ronan, Tuzzio & Giannone, P.C., who at relevant times represented Defendant Monmouth Medical Center. Plaintiff sues this Defendant individually for actions taken under color of state law by threatening legal action in response to Plaintiff's attempts to assert his rights. As well as willful negligence through coordinated actions of maintaining falsified medical records and misconduct.

31. Defendant David A. De Simone is. Plaintiff sues this Defendant in his/her individual capacity for monetary damages and in his/her official capacity for injunctive relief related to actions taken under color of state law through his/her affiliation with.

32. Defendant Anita Giunta, LSW, was at all relevant times a Social Worker at Defendant Hampton Behavioral. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief related to actions taken under color of state law through her participation in the treatment and detention pursuant to a judicial order.

33. Defendant Jodi "Doe" was at all relevant times a patient advocate worker at Defendant Hampton Behavioral. Plaintiff sues this Defendant in her individual capacity for monetary damages and in her official capacity for injunctive relief

related to actions taken under color of state law through her participation in the treatment and detention pursuant to a judicial order.

34. Defendant John Doe 1, known as "Theo," was at all relevant times a Screening Evaluator employed by or affiliated with Defendant Monmouth Medical Center, performing screening services related to Plaintiff's commitment. Plaintiff sues this Defendant in his individual capacity for monetary damages and in his official capacity for injunctive relief related to actions taken under color of state law through his performance of state-mandated screening functions.

35. Defendants John/Jane Does 2-11 are presently unknown medical staff, administrative staff, security personnel (e.g., Intern Ashley, Kareem Aldep), or other agents of the institutional Defendants who participated in Plaintiff's evaluation, treatment, detention, record-keeping, or grievance process related to the events described herein. Plaintiff will seek to amend this Complaint to name these individuals once their identities are ascertained through discovery and will sue them in their individual and official capacities as appropriate for actions taken under color of state law.

## JURISDICTION AND VENUE

37. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) as this action arises under 42 U.S.C. § 1983 and the Constitution and laws of the United States, including the Americans with Disabilities Act and the Patient Self-Determination Act.

38. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367, as these claims arise from the same common nucleus of operative facts.

39. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and many Defendants reside or are located in this district.

## FACTUAL ALLEGATIONS

40. On March 22, 2023, Plaintiff and his neighbor, Ryan W. (a DC police officer), observed a suspicious individual dressed in all black recording near Plaintiff's residence in Abingdon, Maryland. Plaintiff's wife, Gabriela Clonan, reported this incident to the Bel Air, Maryland Police Department (CFS: 202300074121). (Doc 22, Ex 3).

41. On March 23, 2023, Plaintiff, concerned about data security issues he had previously reported to his former employer (160over90) and Valvoline following his recent termination, traveled with his family from Maryland to Philadelphia, PA, to attempt to return company computer equipment. This travel is confirmed by EZ

Pass records showing passage through a Delaware toll plaza on 03/23/23 (Doc 22, Ex 1). The employer refused to accept the equipment. (Doc 22, p.3).

42. On the evening of March 23, 2023, Plaintiff and his family traveled from Philadelphia to Millstone Township, NJ, to stay with relatives.

43. On March 24, 2023, Plaintiff was experiencing significant stress related to his job loss, the data security concerns (including potential deletion of employment records and attribution of hours to others), and the suspicious incident near his home. Following concerns expressed by family, Plaintiff voluntarily agreed to ambulance transport for the purpose of seeking a medical assessment at Defendant CentraState. Plaintiff arrived via ambulance at the ED of Defendant CentraState at approximately 6:37 PM. Plaintiff was not under any police custody or legal compulsion to seek this assessment. Despite medical records stating otherwise.

44. Upon arrival and during his time at Defendant CentraState's ED, Plaintiff underwent comprehensive medical evaluations, including blood tests (Comprehensive Metabolic Panel, CBC w/ Auto Differential, Alcohol Test) and urine tests (Urinalysis, Drug Screen).

45. The results of these tests (atlanticscans.pdf p. 7-9) were largely within normal limits and did not indicate acute intoxication or overdose sufficient to impair judgment or cause psychosis. Notably, the alcohol test was negative (<10 mg/dL). The urine drug screen was positive only for amphetamines (consistent with Plaintiff's prescription for Adderall) and cannabinoids (consistent with Plaintiff's state-authorized medical marijuana use), but negative for other illicit or non-prescribed substances. These results contradicted later assertions used to justify commitment.

46. During his initial hours at Defendant CentraState, Plaintiff was observed and documented by nursing staff, including Defendant RN Antonella Salony and Defendant RN Jordan White, as being calm, resting comfortably, coherent, and denying pain. Records indicate Plaintiff was assessed as alert and oriented x3 or x4 throughout his stay at CentraState.

47. Based on the clinical observations and the results of the medical tests, Plaintiff was medically cleared by Defendant CentraState medical staff, including Defendant PA Larissa Spishock. Staff initially assessed Plaintiff as not presenting a danger to himself or others. Plaintiff's medical chart from CentraState lacks documentation indicating Plaintiff was a danger to himself or others, unable to care for himself, or lacking a support network (Doc 22, p.3). Plaintiff was immediately placed under continuous video monitoring, assigned a one on one and restrained in an isolated cement screening room where he was not allowed to leave, there was only one locked door.

48. Believing he was free to go after being medically cleared, Plaintiff informed Defendant CentraState staff, specifically, of his desire to leave the facility on or about the evening of March 24, 2023. Plaintiff's wife, Gabriela Clonan and mother Christine Clonan, was waiting for him outside the hospital. Both were denied access to see or speak to the plaintiff. Due to hospital staff stating this was policy.

49. Despite being medically stable, having presented voluntarily, not meeting criteria for dangerousness, and expressing his wish to leave, Plaintiff's request was denied by Defendant CentraState staff, specifically nurses on staff, without providing Plaintiff with a legally sufficient explanation or justification for continued detention, in violation of his liberty interests. This initial detention by Defendant CentraState, a private entity, became action under color of state law through its participation in the state-regulated commitment process initiated shortly thereafter and in concert with state officials, including Defendant Officer Demarco and the anticipated state-mandated screening by Defendant Theo.

50. Plaintiff was immediately upon intake moved and confined by Defendant CentraState staff, including Jane/John Does Staff, to a secured isolation room within the ED against his will.

51. This secured isolation environment involved continuous video surveillance, restricted access through locked doors, reinforced glass barriers separating staff from patients, and an uncomfortably cold temperature, creating conditions akin to detention rather than voluntary medical care. Plaintiff was not permitted to leave this secured area, even to step outside.

52. While confined, Defendant CentraState staff, prevented Plaintiff from making telephone calls, including attempts to contact his wife, Gabriela Clonan, who was waiting nearby.

53. Plaintiff made multiple requests to Defendant CentraState staff, including Lynda McDonald, for information regarding hospital policies, his patient rights (including the right to an explanation of his condition and treatment under N.J.A.C. 8:43G-4.1), and the legal basis or procedures for his continued confinement, but these requests were ignored or denied, and no adequate explanations were provided.

54. While seeking medical or legal justification plaintiff and wife Gabriela Clonan visited centrastate .During interactions with law enforcement present at CentraState, staff allegedly falsely represented that Plaintiff had retained legal counsel, potentially to limit communication (as allegedly captured on bodycam footage - Doc 22).

55. On or about March 25, 2023, Defendant John Doe 1 ("Theo"), an employee or agent of Defendant Monmouth Medical Center performing screening services for Defendant CentraState under state-mandated protocols, conducted a screening assessment of Plaintiff. Defendant Theo, acting under color of state law by

performing this state-regulated screening function, generated a screening document used to justify Plaintiff's commitment.

56. In the screening document (atlanticscans.pdf p. 15-16), Defendant Theo included the statement that Plaintiff was "overtaking prescribed medications". This assertion lacked basis in and was contradicted by Plaintiff's blood and urine tests showing results consistent with prescribed use or medical use, and negative results for non-prescribed substances.

57. Defendant Theo also included in the screening document that Plaintiff drove "wife and 6 year old daughter from MD to NJ believing his previous employed was gone to harm his family," listing this under "Dangerous to others." This statement was factually incorrect regarding the travel path (MD-PA-NJ) and misrepresented Plaintiff's stated concerns about data security and potential repercussions as a direct intent by the employer to physically harm the family. The screening document also inaccurately cited "significant weight loss" despite Plaintiff explaining prior gastrointestinal issues and Hampton records later noting "No Weight Loss".

58. During assessments by Defendant CentraState staff, Defendant Theo, and Defendant Dr. Chris Fabian (performing a telehealth psychiatric evaluation for commitment screening purposes), Plaintiff made several statements regarding recent life events which were documented as "paranoid," "delusional," or "hallucinations". These included the data breach report to Valvoline/employer (Doc 22, Ex 2), the attempt to return company property, and the suspicious person report near his home (Doc 22, Ex 3).

59. Despite the potential for verification (Plaintiff offered access to his laptop containing evidence, police report availability, witness corroboration), these statements were summarily dismissed as symptoms of psychosis by evaluating staff, including Defendant Theo and Defendant Dr. Fabian, without adequate investigation into their factual basis. Defendant Dr. Fabian, acting under color of state law by performing the state-required psychiatric certification for commitment, relied on these mischaracterizations and the flawed screening document. Largely due to perceived mental bias and false medical records leading up to the screening.

60. Defendant Officer Demarco #8578, acting under color of state law, provided collateral information to medical/screening staff (documented by MHT Carre-Lee, Doc 16, Ex 10), stating Plaintiff was "unable to distinguish fact from fiction," which was incorporated into the assessment and used to support the commitment decision, despite the factual basis for Plaintiff's statements. This influence by a state actor on the private medical evaluations further establishes the "color of state law" for the actions of the private defendants involved in the commitment process.

61. Plaintiff's medical records created and maintained by Defendants CentraState, Monmouth Medical (screening documents), and Hampton Behavioral contain numerous significant errors and apparent falsifications, demonstrating a systemic failure or reckless disregard for accuracy. There has been a repeated pattern of willful negligence throughout formal grievance proceedings as well as retaliatory actions taken on account of Defendant Lauren zalpeka. These errors include:

   a. Incorrect weight listed as 170 kg (~374 lbs) in CentraState transfer documents (Doc 22, Ex 5). Plaintiff's actual weight is ~150 lbs.

   b. False notation of Plaintiff having dentures on CentraState transfer checklist (Doc 22, Ex 6).

   c. Incorrect assertion of overusing prescribed medications in screening/commitment documents, contradicted by toxicology. d. Medication transfer discrepancies: CentraState records indicate no medications transferred, while Hampton Behavioral records indicate Plaintiff arrived with medications.

   d. Incorrect transfer dates noted in MMC grievance response letters (August 26, 2023 instead of March 25, 2023).

   e. f. Discrepancy regarding mode of transport *with or without police* (ambulance vs. police) in Hampton records (Doc 16, point 5).

   f. Lack of documented justification for hospitalization in initial Hampton Behavioral records (Doc 16, point 1, Exhibit 1). *( no care plan)***

   g. Hampton Behavioral records noting "No Weight Loss" despite commitment paperwork citing weight loss (Doc 16, point 6-9, Exhibit 5).

62. These documentation errors and alleged falsifications were created, relied upon, or perpetuated by multiple Defendants, including specific physicians (Guillen, Van Pelt, Fabian, Houdart, Rehman), PAs (Spishock, Guzy, Tabasko), RNs (Salony, Perez, White, Richard), LPN (Conrad), MHT (Carre-Lee), screening staff (Theo), and the institutional Defendants through their staff, agents, policies, and procedures.

63. Based substantially on the allegedly false information from Defendant Theo, the misinterpretation of Plaintiff's factual statements as delusions (supported by Defendant Officer Demarco's statement), the erroneous medical records, and the psychiatric certification by Defendant Dr. Fabian, Plaintiff was involuntarily committed and transferred against his will from Defendant CentraState to Defendant Hampton Behavioral on March 25, 2023. This involuntary commitment, initiated by private actors under the influence of a state actor and pursuant to state-mandated procedures, constitutes action under color of state law.

64. During the transfer process on March 25, 2023, an employee or agent of Defendant CentraState, identified as Intern Ashley (John/Jane Doe), negligently

called an incorrect phone number (732-762-9602) instead of Gabriela Clonan's correct number (732-672-9602) and left a voicemail disclosing Plaintiff's PHI to an unauthorized third party.

65. Upon arrival and during his stay at Defendant Hampton Behavioral, Plaintiff continued to be detained involuntarily pursuant to a judicial order for involuntary commitment, constituting state action. Initial evaluations by Defendant Dr. Rehman allegedly lacked documented justification for continued hospitalization. Automated computer utilized at defendant Hampton behavioral systems largely contributed to diagnosis errors in which defendants Dr. Hodart and Dr. Rehman relied upon without actually screening the plaintiff for intake upon arrival.

66. At Defendant Hampton Behavioral, Plaintiff was administered Haldol 5mg and Cogentin 1mg by Dr. Hodart and given a diagnosis of paranoid schizophrenia (F20.0) by Defendant Dr. Rehman, allegedly without adequate medical explanation, justification, or consideration of the flawed basis for his commitment (Doc 16, point 2, Exhibit 2).

67. On or about March 27, 2023, documentation by Defendant Hampton Behavioral staff, specifically social worker Anita Giunta, and Dr. Hodart, indicates that Plaintiff's care plan and interventions related to the initial diagnosis were inactivated because they were "added by mistake" (Doc 16, point 3, Exhibit 3).

68. On or about March 28, 2023, during a phone call involving Plaintiff, his wife Gabriela Clonan, and Defendant Hampton Behavioral social worker Anita Giunta, LSW, Plaintiff's wife recounted the factual basis for the events previously labeled as hallucinations. Upon hearing this corroboration, Defendant Dr. Michael P Houdart acknowledged there was no basis for Plaintiff's continued detention, discontinued all psychotropic medications (including Haldol), and documented the initial intervention leading to commitment as a "mistake" (Doc 16, point 3).

69. Despite Defendant Dr. Houdart's acknowledgment and actions on March 28, Plaintiff remained detained at Hampton Behavioral until March 30, 2023, under the authority of the judicial commitment order, constituting continued state action.

70. Following his discharge, Plaintiff filed multiple formal grievances with Defendant CentraState and Defendant Monmouth Medical Center via their required reporting systems (e.g., EthicsPoint) on various dates between June 2024 and August 2024, detailing the alleged rights violations, falsified records, and improper detention (Doc 21, Ex 2).

71. Defendants CentraState and Monmouth Medical, through their agents and employees including Defendants Heggen, Nielsen, Rosario, and Carney, failed to properly investigate or respond to Plaintiff's grievances within the timeframes mandated by state and federal regulations (e.g., 42 CFR § 482.13), ignored mandatory patient advocate involvement, failed to provide adequate written

responses, and provided responses containing factual errors (incorrect transfer date).

72. Plaintiff also submitted formal requests to Defendants CentraState, Monmouth Medical, to review, amend and correct the demonstrably false information contained within his medical records, as is his right under HIPAA (45 CFR § 164.526) and state law (e.g., N.J.A.C. 8:43G-4.1).

73. These requests for correction were subsequently denied by representatives of the Defendant institutions, including, without providing a valid basis for the denial. Defendant Monmouth Medical, through its counsel, explicitly stated the records were reviewed and deemed accurate.

74. As Plaintiff continued to seek accountability, correction of his records, and explanations for his treatment as per N.J.A.C. 8:43G-4.1, he received a cease-and-desist letter dated September 9, 2024, from Defendant Lauren H. Zalepka, Esq., an attorney representing Defendant Monmouth Medical Center.

75. This letter demanded Plaintiff immediately stop all contact with anyone at Monmouth Medical Center or its screening service (PESS) and threatened potential criminal or civil action related to alleged recordings (Doc 1-1, 1-3, 1-4). This action followed Plaintiff's attempts to exercise his right to seek redress and information. Subsequently, Defendant Margaret Nielsen filed a police report regarding alleged recordings (Doc 11).

76. Plaintiff perceives the cease-and-desist letter from Defendant Zalepka and the police report initiated by Defendant Nielsen as retaliation for attempting to assert his rights under state law, federal law (including the Patient Self-Determination Act, 42 U.S.C. § 1395cc(f)), and the First Amendment.

77. The actions and inactions of the Defendants have caused Plaintiff significant harm, including loss of liberty, emotional distress, anxiety, panic attacks, damage to his professional reputation, loss of income due to required FMLA leave (Doc 21, Ex 4), being placed on a Performance Improvement Plan at work, and placing his family's financial stability at risk, including facing potential foreclosure (Doc 22, 24).

**CLAIMS FOR RELIEF**

**COUNT I – Violation of Fourth Amendment Rights – Unreasonable Seizure (42 U.S.C. § 1983) (Against Defendants CentraState, Monmouth Medical, Officer Demarco, Dr. Fabian, Dr. Guillen, Dr. Van Pelt, John Doe 1 "Theo", and involved CentraState Staff [John/Jane Does])**

78. Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

79. The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable seizures. An involuntary civil commitment constitutes a seizure.

80. Defendants Officer Demarco (state actor), Dr. Fabian, and John Doe 1 ("Theo") (acting under color of state law by performing state-mandated screening functions), and Defendants CentraState, Monmouth Medical, Dr. Guillen, Dr. Van Pelt, and involved CentraState Staff (acting under color of state law by participating in the state-regulated commitment process and/or acting in concert with state officials), seized Plaintiff on March 24-25, 2023, by detaining him against his will at Defendant CentraState after he was medically cleared and had requested to leave, and effectuated his involuntary commitment and transfer based on insufficient grounds.

81. This seizure was unreasonable because it lacked probable cause. As detailed in the Factual Allegations, it was predicated on demonstrably false information (re: medication use, travel), significant documentation errors (re: weight, dentures), the mischaracterization of Plaintiff's factual statements as delusions (influenced by Defendant Officer Demarco's statement), and evaluations that failed to establish Plaintiff met the legal criteria for involuntary commitment (danger to self/others). Jane and John Doe Defendants within Hampton behavioral health center through perceived mental bias noted the plaintiff as delusional due to only having a associates degree in criminal justice and stating plaintiff was a technical architect. Despite a decade long career in technology for several reputable companies such as Deloitte consulting, pwc, 160over90, photon, interviews with NASA, among others. Plaintiff currently serves as a software architect at Mariner finance.

82. The institutional Defendants CentraState and Monmouth Medical are liable for the actions of their employees/agents and/or maintained policies or customs that resulted in this unreasonable seizure.

83. As a direct and proximate result of these Defendants' actions violating his Fourth Amendment rights, Plaintiff suffered damages.

**COUNT II – Violation of Fourteenth Amendment Rights – Procedural Due Process (42 U.S.C. § 1983) (Against Defendants CentraState, Monmouth Medical, Hampton Behavioral, Dr. Fabian, Dr. Guillen, Dr. Van Pelt, Dr. Houdart, Dr. Rehman, John Doe 1 "Theo", Carney, Heggen, Nielsen, Rosario, Levasseur, Craig, McDonald, Deaner, Giunta, Jodi Doe, and involved staff [John/Jane Does])**

84. Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

85. The Fourteenth Amendment to the United States Constitution prohibits state actors from depriving individuals of liberty without due process of law. Plaintiff was never read of offered his bill of rights.

86. Defendants, acting under color of state law (through direct state employment or participation in state-regulated commitment, treatment, and grievance processes, and detention pursuant to a judicial order), deprived Plaintiff of his significant liberty interest through his involuntary detention, commitment, treatment, and the handling of his subsequent grievances from March 24, 2023, onwards.

87. These Defendants failed to provide Plaintiff with adequate procedural due process by, among other things:

   a.  Failing to provide adequate and timely notice of the specific factual and legal grounds justifying his continued detention and involuntary commitment (Defendants involved in initial detention/commitment).

   b.  Failing to provide a meaningful opportunity to be heard or contest the allegedly false information prior to or promptly following his deprivation of liberty (Defendants involved in initial detention/commitment).

   c.  Basing the commitment decision on records containing significant factual errors and misrepresentations (Defendants involved in commitment).

   d.  Failing to follow established state-mandated procedures for involuntary commitment evaluations and documentation (Defendants involved in commitment/screening).

   e.  Failing by Defendants to adhere to mandatory grievance procedures and timelines required by state and federal regulations (e.g., 42 CFR § 482.13), thus denying Plaintiff a meaningful process to address the alleged violations post-detention.

   f.  Failing by Defendants to provide Plaintiff with explanations of his condition and treatment in understandable terms as required by N.J.A.C. 8:43G-4.1.

88. As a direct and proximate result of these Defendants' failure to provide procedural due process, Plaintiff suffered damages.

**COUNT III – Violation of Fourteenth Amendment Rights – Substantive Due Process (42 U.S.C. § 1983) (Against Defendants CentraState, Monmouth Medical, Hampton Behavioral, Dr. Fabian, Dr. Guillen, Dr. Van Pelt, Dr. Houdart, Dr. Rehman, John Doe 1 "Theo", and involved staff [John/Jane Does])**

89. Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

90. The Fourteenth Amendment's guarantee of substantive due process protects individuals against arbitrary governmental action that shocks the conscience.

91. Defendants, acting under color of state law, engaged in arbitrary and conscience-shocking conduct by:

a. Fabricating or recklessly disregarding the truth concerning Plaintiff's medication use and travel history (Defendant Theo).

b. Deliberately mischaracterizing Plaintiff's factual statements as delusions or hallucinations without proper investigation (Defendants Theo, Fabian, Officer Demarco, others involved in evaluation).

c. Creating, maintaining, or relying upon medical records containing known or obvious significant errors to justify or continue Plaintiff's detention and treatment (Defendants CentraState, Hampton, specific individuals).

d. Detaining Plaintiff involuntarily without a constitutionally adequate basis demonstrating he posed a danger to self or others due to mental illness (Defendants involved in commitment).

e. Administering psychotropic medication (Haldol) and diagnosing Plaintiff with paranoid schizophrenia without adequate justification or explanation at Defendant Hampton Behavioral (Defendant Dr. Rehman And Defendant Dr Houdart).

f. Continuing Plaintiff's detention at Hampton Behavioral even after Defendant Dr. Houdart acknowledged no basis for it and deemed the initial intervention a "mistake" (Defendants Hampton, Dr. Houdart, Dr. Rehman, staff).

92. Such conduct represents a departure from accepted professional judgment, practice, or standards, and was not rationally related to any legitimate government interest, thereby shocking the conscience.

93. As a direct and proximate result of these Defendants' violation of his substantive due process rights, Plaintiff suffered damages.

**COUNT IV – Violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. (Against Defendants CentraState, Monmouth Medical, Hampton Behavioral)**

94. Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

95. Plaintiff is a qualified individual with a disability as defined by the ADA. For both his actual disability, and perceived. Defendants (currently unknown staff) refused proper footwear, causing immense pain while being held within Defendant Hampton behavioral health center, due to his club foot and over 13 surgeries.

96. Defendants CentraState, Monmouth Medical, and Hampton Behavioral are public accommodations and/or public entities subject to the requirements of the ADA. (Allege basis, e.g., receiving federal funds like Medicare/Medicaid, if known).

97. Defendants discriminated against Plaintiff on the basis of his disability by, among other things: a. Failing to provide reasonable accommodations during his evaluation and detention. b. Subjecting Plaintiff to involuntary commitment and treatment based, in part, on misinterpretations or biases related to his disability

or perceived mental state. c. Failing to ensure effective communication regarding his rights, condition, and treatment options. d. Maintaining policies or practices that resulted in discriminatory treatment or denial of benefits.

98. As a direct and proximate result of these Defendants' violations of the ADA, Plaintiff suffered damages and seeks injunctive relief to prevent future violations. Due to the traumatic experience and negative effects on plaintiffs career future earning potential is substantially diminished and warrants injunctive relief.

## COUNT V – Violation of the Rehabilitation Act of 1973, Section 504, 29 U.S.C. § 794 (Against Defendants CentraState, Monmouth Medical, Hampton Behavioral)

99. Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

100. Plaintiff is an individual with a disability as defined by the Rehabilitation Act.

101. Defendants CentraState, Monmouth Medical, and Hampton Behavioral are recipients of federal financial assistance.

102. Plaintiff was otherwise qualified for the services provided by Defendants.

103. Defendants excluded Plaintiff from participation in, denied him the benefits of, or subjected him to discrimination under their programs or activities solely by reason of his disability by failure to accommodate proper footwear, basing decisions on bias, failure to communicate effectively, and a lack of care plan. This discrimination was intentional or occurred with deliberate indifference.

104. As a direct and proximate result of these Defendants' violations of the Rehabilitation Act, Plaintiff suffered damages.

## COUNT VI – Violation of Patient Rights under N.J.A.C. 8:43G-4.1 (Against Defendants CentraState, Monmouth Medical, Hampton Behavioral, and specific physicians/staff involved, e.g., Dr. Guillen, Dr. Van Pelt, Dr. Fabian, Dr. Houdart, Dr. Rehman, Estate of Dr. Rehim)

105. Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

106. New Jersey Administrative Code § 8:43G-4.1(a)(14) guarantees hospital patients the right "To receive from the patient's physician(s) or clinical practitioner(s) -- in terms that the patient understands an explanation of his or her complete medical condition, recommended treatment, risk(s) of the treatment, expected results and reasonable medical alternatives."

107. All Defendants, including but not limited to "attorney/defendants" Lauren Zalpeka , failed to provide Plaintiff or his designated representative (his wife, Gabriela Clonan BSNRN a registered nurse in NJ) with explanations regarding his condition, the basis for his involuntary commitment, the rationale for specific diagnoses (e.g., paranoid schizophrenia), and the risks/benefits of administered

treatments (e.g., Haldol) in terms he could understand, despite repeated and ongoing to this day requests.

108.    As a direct and proximate result of these Defendants' violation of Plaintiff's state-law rights, Plaintiff suffered damages, including continued confusion, anxiety, and inability to make informed decisions or seek appropriate redress.

**COUNT VII – Violation of Grievance Procedures under 42 CFR § 482.13 (Against Defendants CentraState, Monmouth Medical, Carney, Heggen, Nielsen, Rosario, Levasseur, Craig, McDonald, Deaner, Robert Orro)**

109.    Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

110.    Federal regulation 42 CFR § 482.13 requires hospitals participating in Medicare/Medicaid to establish a process for prompt resolution of patient grievances, including specific time frames and written notice of decisions.

111.    Defendants CentraState and Monmouth Medical, as participating hospitals, and their responsible administrators (Defendants Carney, Heggen, Nielsen, Rosario, Levasseur, Craig, McDonald, Deaner, Robbert Orro ) failed to adhere to the requirements of 42 CFR § 482.13 regarding the grievances filed by Plaintiff between June and August 2024. To this date there has been no medical or legal justification explained to plaintiff or his wife.

112.    Specifically, these Defendants failed to provide prompt review and resolution, exceeded reasonable time frames, failed to provide adequate written notice of decisions (or provided responses with factual errors like incorrect dates), and failed to properly utilize the established grievance process, including patient advocate involvement.

113.    As a direct and proximate result of these Defendants' violation of federal regulations regarding patient grievances, Plaintiff was denied a meaningful process to address the underlying violations and suffered prolonged distress and uncertainty.

**COUNT VIII – First Amendment Retaliation (42 U.S.C. § 1983 and State Law) (Against Defendants Monmouth Medical Center, Lauren H. Zalepka, Esq., Margaret Nielsen)**

114.    Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

115.    Plaintiff engaged in constitutionally protected activity under the First Amendment and activity protected under state law and the federal Patient Self-Determination Act by seeking redress for grievances, requesting correction

of his medical records, and attempting to obtain explanations for his medical treatment from Defendants Monmouth Medical Center and its agents/employees.

116.    Defendants Lauren H. Zalepka (counsel for MMC) and Margaret Nielsen (Director of Risk Management for MMC), acting individually and/or on behalf of or in concert with Defendant Monmouth Medical Center (and potentially under color of state law by involving law enforcement/threatening criminal process), took adverse action against Plaintiff likely to deter a person of ordinary firmness from continuing that protected activity.

117.    Specifically, Defendant Zalepka sent Plaintiff a cease-and-desist letter threatening criminal prosecution and barring communication with MMC providers shortly after Plaintiff pursued grievances and record corrections. Defendant Nielsen initiated a police report regarding alleged recordings related to Plaintiff's attempts to communicate.

118.    This adverse action was motivated, at least in part, by Plaintiff's protected activity, constituting unlawful retaliation.

119.    As a direct and proximate result of these Defendants' retaliatory actions, Plaintiff suffered damages, including chilled speech, emotional distress, continued panic attacks, PTSD, and and impediment to seeking redress.

**COUNT IX – State Law Claim for Medical Negligence/Malpractice (Against Defendants CentraState, Hampton Behavioral, Dr. Guillen, Dr. Van Pelt, Dr. Fabian, Dr. Houdart, Dr. Rehman, PAs Spishock, Guzy, Tabasko, RNs Salony, Perez, White, Richard, LPN Conrad, MHT Carre-Lee, John Doe 1 "Theo", John/Jane Does 2-11)**

120.    Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

121.    Defendants **Defendants CentraState, Hampton Behavioral, Dr. Guillen, Dr. Van Pelt, Dr. Fabian, Dr. Houdart, Dr. Rehman, PAs Spishock, Guzy, Tabasko, RNs Salony, Perez, White, Richard, LPN Conrad, MHT Carre-Lee, John Doe 1 "Theo"** owed Plaintiff a duty to exercise the degree of care, knowledge, and skill ordinarily possessed and exercised by reasonably careful healthcare providers in similar circumstances.

122.    These Defendants breached their duty of care by, among other things: failing to conduct adequate evaluations; failing to consider or verify information provided by Plaintiff; relying on inaccurate information or misinterpretations; making diagnoses (e.g., paranoid schizophrenia) without sufficient basis; administering medications (e.g., Haldol) without proper justification or informed consent; creating and maintaining inaccurate medical records (e.g., incorrect weight, dentures, medication status); failing to follow appropriate procedures for involuntary commitment; failing to communicate effectively; and failing to ensure continuity of care during and after transfer/discharge.

123.    As a direct and proximate result of these Defendants' negligence, Plaintiff suffered injuries and damages, including wrongful detention, physical and emotional distress, administration of unnecessary medication, and damage to his personal and professional life. (Plaintiff acknowledges the requirement to file an Affidavit of Merit pursuant to N.J.S.A. 2A:53A-27 for state law negligence claims against licensed professionals). However, due to the severe amount of false medical records such as weighing 300 lbs, and requiring dentures (plaintiff has real teeth and does not own dentures) it would appear as if the entirely wrong patient was transferred, and committed.

**COUNT X – State Law Claim for False Imprisonment (Against Defendants CentraState, Hampton Behavioral, Dr. Guillen, Dr. Van Pelt, Dr. Fabian, Dr. Houdart, Dr. Rehman, John Doe 1 "Theo", and involved staff [John/Jane Does])**

124.    Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

125.    Defendants Hampton behavior health, and Centrastate intentionally confined Plaintiff against his will within the secured ED room at CentraState and subsequently at Hampton Behavioral from March 24, 2023, to March 30, 2023.

126.    Plaintiff was aware of this confinement, and did not consent to it after requesting to leave CentraState and/or after Defendant Dr. Houdart determined there was no basis for continued detention at Hampton.

127.    The confinement was not legally privileged or justified because, as alleged herein, it was based on false information, erroneous records, mischaracterization of facts, and lacked sufficient medical or legal basis, particularly after Plaintiff was medically cleared and after Defendant Dr. Houdart determined commitment was a mistake. Upon confirming on a phone conference with plaintiffs wife that plaintiff was reporting factual information, not experiencing hallucinations or delusions.

128.    As a direct and proximate result of this false imprisonment, Plaintiff suffered damages, including loss of liberty and emotional distress, PTSD, and ongoing anxiety attacks.

**COUNT XI – State Law Claim for Breach of Confidentiality / Invasion of Privacy (Against Defendant CentraState and John/Jane Doe "Intern Ashley")**

129.    Plaintiff repeats and realleges paragraphs 1 through 77 as if fully set forth herein.

130.    Defendant CentraState, through its employee/agent identified as Intern Ashley (John/Jane Doe), owed Plaintiff a duty to maintain the confidentiality of his Protected Health Information (PHI).

131.    Defendant CentraState, through Intern Ashley, breached this duty on March 25, 2023, by negligently calling an incorrect phone number and leaving a voicemail message containing Plaintiff's PHI, thereby disclosing sensitive information related to his mental health status and location to an unauthorized third party.

132.    This unauthorized disclosure constituted a breach of confidentiality and an invasion of Plaintiff's privacy.

133.    As a direct and proximate result of this breach, Plaintiff suffered damages, including emotional distress and potential reputational harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bradley Clonan respectfully requests that this Court enter judgment in his favor and against the Defendants, jointly and severally where appropriate, granting the following relief:

A. Compensatory damages in an amount to be determined at trial, but believed to be no less than $18,000,000, for injuries including loss of liberty, emotional distress, psychological harm, damage to reputation, professional and career damages, loss of income, loss of enjoyment of life, and other related harms;

**Calculated as follows :**

**I:  Income loss :  $8,700,000**

**Based on my annual salary of $145,000 (previously 218,000 yr), multiplied by 20 years, and tripled to account for the severity and long-term impact on my earning capacity due to the defendants' actions.**

**Calculation: $145,000/year × 20 years × 3 = $8,700,000**

**II : Bonus Loss: $1,200,000**

**Assuming an annual bonus averaging $20,000, over 20 years, tripled for punitive considerations.**

**Calculation: $20,000/year × 20 years × 3 = $1,200,000**

**III : Career Damage: $2,500,000**

**Compensation for the harm to my professional development, including missed promotions and opportunities resulting from impaired work performance and reputation damage.**

**IV.  Reputation Harm: $2,600,000**

**Damagesfor the significant harm to my professional reputation caused by the wrongful detention, dissemination of false information, and the stigma affecting my standing in the industry.**

**V. Future Earnings Impact: $3,000,000**

**Accounting for the projected loss of future earnings due to ongoing medical and psychological conditions impacting my ability to work at full capacity and limiting career advancement.**

B. Punitive damages against the individual Defendants sued in their individual capacities (excluding the Estate of Dr. Rehim), in an amount sufficient to punish their wrongful conduct and deter future similar misconduct;

C. An order mandating Defendants CentraState, Monmouth Medical, and Hampton Behavioral to correct all false, inaccurate, and misleading information contained in Plaintiff's medical and psychiatric records related to the March 2023 incidents;

D. An order declaring the actions of Defendants violated Plaintiff's rights;

E. An order requiring Defendant Monmouth Medical Center and its counsel, Defendant Lauren H. Zalepka, Esq., to immediately retract the cease-and-desist order dated September 9, 2024, and to cease any further attempts to prevent Plaintiff from lawfully communicating regarding his care and records;

F. An order granting Plaintiff complete and unrestricted access to his full medical records, including any video or audio recordings, related to his evaluation and detention from Defendants CentraState, Monmouth Medical, and Hampton Behavioral;

G. Reimbursement for the costs of this action;

H. Any other and further relief the Court deems just, equitable, and proper.

I. A formal written public apology outlining what went so wrong, and the steps defendants will be taking to ensure this does happen again.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 7, 2025

Respectfully submitted,

_____

Bradley Clonan

Plaintiff, Pro Se

2604 W Rhododendron Drive

Abingdon, MD 21009

732-476-9555

Clonanxyz@gmail.com