2021 WL 1244864
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia, Atlanta Division.

Quannesha TRIMBLE and Gabriel Kingdom, Plaintiffs,
v.
EMORY HEALTHCARE, INC., et al., Defendants.

Case No. 1:20-cv-1469-MLB
|
Signed 01/21/2021

**Attorneys and Law Firms**

Gabriel Anthony-Hall Kingdom, The Kingdom Law Firm, LLC, Atlanta, GA, for Plaintiffs.

Colin Kamrath Kelly, Caroline Gieser, Shook, Hardy & Bacon L.L.P., Atlanta, GA, for Defendants.

**ORDER**

MICHAEL L. BROWN, UNITED STATES DISTRICT JUDGE

***1** Defendants Emory Healthcare, Inc. ("Emory") and Prachi Modi move to dismiss and for sanctions. (Dkts. 10; 16.) Plaintiffs Quannesha Trimble and Gabriel Kingdom [1] oppose those motions and move for leave to file a second amended complaint. (Dkts. 15; 17; 18.) The Court grants in part and denies in part Defendants' motion to dismiss and Plaintiffs' motion for leave to file a second amended complaint. The Court makes preliminary findings on Defendants' motion for sanctions and will schedule a hearing to finalize its determination.

## I. Background

On March 26, 2020, Plaintiffs arrived at an Emory facility for Trimble's obstetric appointment. (Dkt. 8 ¶ 30.) Modi, an Emory employee, told Plaintiffs that Trimble could not bring a visitor with her to the appointment pursuant to Emory's March 24, 2020 COVID-19 visitor policy. (*Id.* ¶¶ 18, 37, 40.) Modi told Kingdom that he had to leave the building. (*Id.* ¶ 43.) Kingdom asked Modi if he could take a COVID-19 test to determine if he posed a risk to the hospital staff, and Modi informed Kingdom that Emory did not have any COVID-19 tests. (*Id.* ¶ 48.) Modi also told Plaintiffs she was going to call Emory police. (*Id.* ¶ 49.) Emory police removed Plaintiffs from the building. (*Id.* ¶ 50.)

On April 7, 2020, Plaintiffs filed a complaint and then a first amended complaint. (Dkts. 1; 8.) The operative complaint contains eight counts: (1) violations of Plaintiffs' Fifth and Fourteenth Amendment Due Process and Equal Protection rights, (2) violation of 42 C.F.R. § 482.13, (3) violations of 42 U.S.C. § 1983, (4) violations of 42 U.S.C. § 2000a, (5) conspiracy to violate civil rights under 42 U.S.C. § 1985, (6) breach of contract, (7) negligence, and (8) promissory estoppel. (Dkt. 8.) Defendants move to dismiss all counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 16.) They also move for sanctions under Federal Rule of Civil Procedure 11 on the grounds that "the allegations in Plaintiffs' Complaint have no factual basis, are not warranted by existing law, and are raised for the sole purposes of seeking publicity for themselves and to mislead the Court." (Dkt. 10 at 1–2.) Plaintiffs move for leave to file an amended complaint to add new claims and a new defendant. (Dkt. 18.)

## II. Motion to Dismiss

Defendants move to dismiss Plaintiffs' claims for failure to state a claim upon which relief may be granted. (Dkt. 16.)

### A. Legal Standard

In ruling on a motion to dismiss, the Court must accept all well-pleaded facts as true and construe them in the light most favorable to the plaintiff. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). A complaint offering mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient to state a claim and should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint thus must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

**B. Plaintiffs' Fifth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983 Claims (Counts I and III)**

***2** In Count I, Plaintiffs assert claims under the Fifth Amendment Due Process Clause, the Fourteenth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause. (Dkt. 8 ¶ 56.) Count III asserts claims under 42 U.S.C. § 1983. (*Id.* ¶¶ 74–76.) Defendants argue Count I and Count III should be dismissed because neither Emory nor Modi qualify as state or federal actors. (Dkt. 16-1 at 5, 9.) The Court agrees.

The Fifth Amendment, the Fourteenth Amendment, and § 1983 all require government action. *See* *Pub. Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952) (noting Fifth Amendment restricts only government and not private persons); *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948) (explaining that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful"); *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) ("[Section] 1983 only provides for claims to redress [s]tate action.").

Plaintiffs argue Defendants are government actors because Emory receives federal funds (Medicare and Medicaid) and "administers, authorizes, and/or accepts public patients and state and federal payments under the federal Patient Protection and Affordable Care Act." (Dkts. 8 ¶¶ 8, 59; 17 at 7.) Plaintiffs' argument is contrary to settled law. "Courts have repeatedly held that the extensive regulation, subsidies, and tax exemptions 'do no transform an otherwise private hospital into a governmental actor.' " *Hogland v. Athens Reg'l Health Servs., Inc.*, No. 3:04-cv-50, 2005 WL 4145738, at *9 (M.D. Ga. Jan. 21, 2005) (quoting *Mendez v. Belton*, 739 F.2d 15, 18 (1st Cir. 1984)). And "[c]ourts, including the Supreme Court, have repeatedly held that receiving government funds does not make [an] entity a state actor." *Barber v. Dale Cnty. Mental Health Ctr.*, 898 F. Supp. 832, 837 (M.D. Ala. 1995). Courts have applied this rule to Medicaid and Medicare funds specifically. *See, e.g., id.* (receipt of Medicaid payments does not transform mental health center into state actor because if it did "any facility that accepted Medicaid would automatically be considered a state actor"); *Modaber v. Culpeper Mem'l Hosp., Inc.*, 674 F.2d 1023, 1026–27 (4th Cir. 1982) (hospital not state actor as result of accepting Medicare and Medicaid payments); *Brino v. JFK Med. Ctr. Ltd. P'ship*, No. 17-cv-81189, 2018 WL 9812065, at *3 (S.D. Fla. Apr. 12, 2018) ("Plaintiff's argument that HCA Healthcare, a private entity, is a government actor because it contracts to accept Medicare and/or Medicaid payments is unconvincing, and it cites to no legal authority for this contention."), *aff'd*, 776 F. App'x 921 (11th Cir. 2019).

Plaintiffs also argue, under § 1557 of the Patient Protection and Affordable Care Act ("ACA"), that "private healthcare providers that administer federal ACA plans and receive ACA federal funds, such as Defendants, cannot discriminate or violate" constitutional rights. (Dkt. 17 at 8 (emphasis omitted).) Plaintiffs' reliance on § 1557 is misguided. Plaintiffs' complaint does not include a claim under § 1557, making that provision inapplicable. Plaintiffs rely on five cases as support for their argument, but none of them involve claims under the Fifth Amendment, Fourteenth Amendment, or § 1983, nor do they discuss a private actor's liability under the Fifth Amendment, Fourteenth Amendment, or § 1983. *See* *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090 (S.D. Cal. 2017); *Cruz v. Zucker*, 195 F. Supp. 3d 554 (S.D.N.Y. 2016); *Rumble v. Fairview Health Servs.*, No. 14-cv-2037, 2015 WL 1197415 (D. Minn. Mar. 16, 2015); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D.S.C. 2015); *Se.* *Pa. Transp. Auth. v. Gilead Scis.*, 102 F. Supp. 3d 688 (E.D. Pa. 2015). Because Plaintiffs fail to adequately allege the presence of a state or federal actor, the Court dismisses Plaintiffs' claims under the Fifth Amendment, the Fourteenth Amendment, and § 1983. [2]

**C. Plaintiffs' 42 C.F.R. § 482.13 Claims (Count II)**

***3** Count II claims Defendants violated 42 C.F.R. § 482.13 by (1) "failing to have proper written policies and procedures in place about Plaintiffs' visitation rights," (2) "denying Plaintiffs' visitation privileges due to Plaintiff Trimble's disability," and (3) "failing to provide Plaintiffs with a grievance process." (Dkt. 8 ¶¶ 62–72.) Section 482.13 sets forth the conditions hospitals must meet to participate in Medicare and Medicaid and explains various patient rights, such as the right to personal privacy and the right to confidentiality of clinical records. *See* 42 C.F.R. § 482.13. Defendants argue Plaintiffs' § 482.13 claims should be dismissed because the regulation forbids any private right of action. (Dkt. 16-1 at 7–9.) The Court can find no Eleventh Circuit decision on point. Other federal courts, however, have

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

addressed the issue and found no private right of action. A court in the District of Minnesota, for example, held:

> [t]he regulation 42 C.F.R. § 482.13 provides that hospital patients have the right to receive notice of their rights, to be involved in the planning of their healthcare, to make informed decisions, to privacy and confidentiality, to be free of physical and mental abuse (including the right to be free of restraint and seclusion unless necessary), and to a grievance process set up by the hospital. *Nothing in this regulation provides for a private cause of action.* Further nothing in the text of the statute authorizing the regulation, 42 U.S.C. § 1396hh, suggests any right to a private cause of action to enforce the regulations set forth at § 482.13.

*Smith v. Univ. of Minn. Med. Ctr.-Fairview Riverside*, No. 09-293, 2010 WL 3893902, at *16 (D. Minn. July 14, 2010) (emphasis added). A district court in the Western District of Virginia has also held that § 482.13 "does not create any private right of action; it merely sets forth requirements for providers to participate in Medicare." *Cornerstone Therapy Servs., Inc. v. Reliant Post Acute Care Sols., LLC*, No. 2:16CV00018, 2016 WL 6871440, at *8 (W.D. Va. Nov. 21, 2016). Similarly, a court in the Northern District of Illinois noted that § 482.13 "do[es] not allow for a private right of action." *Pantaleo v. Hayes*, No. 08-cv-6419, 2013 WL 5311450, at *5 n.13 (N.D. Ill. Sept. 20, 2013). This Court finds those rulings persuasive and, likewise, concludes § 482.13 provides no private right of action.

Plaintiffs urge the Court to imply a private right of action. (Dkt. 17 at 21.) Citing *J. I. Case Co. v. Borak*, 377 U.S. 426 (1964), Plaintiffs argue that the "Supreme Court requires courts to assert an implied private right of action." (Dkt. 17 at 21.) But Plaintiffs' reliance on *Borak* is misguided because the Supreme Court recently abrogated the approach taken in that decision. In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court explained that, "[i]n the mid-20th century, the Court followed a different approach to recognizing implied causes of action than it follows now." *Id.* at 1855. The Supreme Court explained that, under *Borak*, it previously "assumed it to be a proper judicial function to 'provide ... remedies as are necessary to make effective' a statute's purpose," but has since adopted "a far more cautious course." *Id.* (quoting *Borak*, 377 U.S. at 433). The Supreme Court then stated:

> [t]he decision to recognize an implied cause of action under a statute involves somewhat different considerations than when the question is whether to recognize an implied cause of action to enforce a provision of the Constitution itself. When Congress enacts a statute, there are specific procedures and times for considering its terms and the proper means for its enforcement. It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action.

*Id.* at 1856. The Court finds this logic also applies to federal regulations. Because there is no explicit creation of a private cause of action, the Court declines to recognize an implied private right of action. The Court dismisses Plaintiffs' § 482.13 claims.[3]

**D. Plaintiffs' 42 U.S.C. § 2000a Claim (Count IV)**

***4** Count IV says Defendants violated 42 U.S.C. § 2000a by denying Plaintiffs medical treatment. (Dkt. 8 ¶¶ 78–80.) Section 2000a, also known as Title II of the Civil Rights Act of 1964, prohibits discrimination in places of public accommodation on the basis of race, color, religion, or national origin. *See* 42 U.S.C. § 2000a.[4]

> To establish a claim under § 2000a, a plaintiff must demonstrate that he (1) is a member of a protected class, (2) attempted to contract for services and afford himself or herself of the full benefits and enjoyment of a public

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

> accommodation, (3) was denied the full benefits or enjoyment of a public accommodation, and (4) such services were available to similarly situated persons outside his or her protected class who received full benefits or were treated better.

*Jackson v. Waffle House, Inc.*, 413 F. Supp. 2d 1338, 1361 (N.D. Ga. 2006) (citing *Benton v. Cousins Props., Inc.*, 230 F. Supp. 2d 1351, 1382 (N.D. Ga. 2002)). According to the statute, an establishment "which serves the public is a place of public accommodation ... if its operations affect commerce, or if discrimination or segregation by it is supported by [s]tate action." 42 U.S.C. § 2000a(b). Such establishments include:

> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms or hire and which is actually occupied by the proprietor of such establishment as his residence;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
>
> (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

*Id.* Defendants argue Plaintiffs' § 2000a claim should be dismissed because (1) healthcare facilities, like Emory, do not qualify as a public accommodation under § 2000a and (2) Plaintiffs failed to allege they were treated differently than similarly situated people outside their alleged protected class. (Dkt. 16-1 at 11–14.)

Plaintiffs include no allegations in their complaint that, accepted as true, would bring Emory within the statutory definition of a "public accommodation." They do not allege, for example, that the hospital is a place of lodging, a place of eating, a place of entertainment, or a place within or surrounding one of these types of premises. Instead, they allege in a purely conclusory manner that Emory "constitutes a public accommodation as defined by 42 U.S.C. § 2000a." (Dkt. 8 ¶ 79.) Mere conclusory statements are insufficient to support a cause of action. *Iqbal*, 556 U.S. at 678.

***5** In response to Defendants' motion to dismiss, Plaintiffs argue Emory qualifies as a place of public accommodation because it "has several snack bars, a cafeteria, a soda fountain, and a lunch counter that serves the public." (Dkt. 17 at 15.) Plaintiffs did not include such allegations in their complaint, the basis for deciding Defendants' motion to dismiss. *See* *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is 'limited to the four corners of the complaint.' " (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002))); *Brown v. J.P. Turner & Co.*, No. 1:09-cv-2649, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) (noting it is "plainly inappropriate" to raise allegations for first time in response to motion to dismiss). Plaintiffs' response is insufficient to assert these new allegations, and the Court does not consider them.

In addition to failing to adequately allege Emory is a place of public accommodation for Title II purposes, Plaintiffs failed to plead an "apt comparator." Under the fourth prong of a § 2000a claim, Plaintiffs must plead an "apt comparator" outside the alleged protected class "who was not subjected to the same harsh treatment" as Plaintiffs. *Dozier v. Waffle House, Inc.*, No. 1:03-cv-3093, 2005 WL 8154381, at *6 (N.D. Ga. May 4, 2005); *see also id.* at *7 ("Plaintiffs must show that [Defendant's employee] treated Plaintiffs less favorably with regard to the allegedly discriminatory act than he treated other similarly situated persons who were outside Plaintiffs' protected class."). Plaintiffs' complaint does not mention *any* other Emory patient, much less one who received more favorable treatment. This is insufficient to survive the motion to dismiss stage. The Court dismisses Plaintiffs' § 2000a claim. [5]

**E. Plaintiffs' 42 U.S.C. § 1985 Claim (Count V)**

Count V claims Defendants violated "42 U.S.C. § 1985 through a conspiracy to deprive Plaintiffs and their class of African Americans of their constitutional rights." (Dkt. 8 ¶¶ 82–93.) The elements of a cause of action under § 1985 are as follows:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Childree v. UAP/GA AG CHEM, Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996) (citing *Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir. 1992)).

Defendants argue Plaintiffs' § 1985 claim should be dismissed because the statute and the intracorporate conspiracy doctrine do not permit Plaintiffs to allege a conspiracy between an employee and an employer. (Dkt. 16-1 at 14–15.) Plaintiffs, in contrast, argue the Eleventh Circuit has upheld § 1985 claims "against members of the same company and/or municipality" and cite *Park v. City of Atlanta*, 120 F.3d 1157 (11th Cir. 1997), as support. (Dkt. 17 at 17.) Plaintiffs' argument is contrary to law. The Eleventh Circuit has held that, "[u]nder the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000); *see also* *Nassar v. Fla. Dep't of Agric.*, 754 F. App'x 903, 907 (11th Cir. 2018). And Plaintiffs' reliance on *Park* is misguided because *Park* did not address the intracorporate conspiracy doctrine, nor did it discuss whether the defendants were members of the "same company and/or municipality."

***6** Having decided the intracorporate conspiracy doctrine applies, the issue now becomes whether Modi is an employee of Emory. In their response, Plaintiffs argue, "[a]t this time in in [sic] the litigation, the parties cannot ascertain whether Defendant Modi served as an employee of Defendant Emory." (Dkt. 17 at 17.) This argument, however, contradicts the complaint, which states "Defendant Modi was a non-African American *employee* of Defendant Emory Healthcare." (Dkt. 8 ¶ 37 (emphasis added).) Because the Court takes the complaint as true for purposes of resolving the motion to dismiss, and Defendants have conceded Modi is an employee of Emory (Dkts. 16-1 at 15; 20 at 11), the Court accepts Modi as such. The Court dismisses Plaintiffs' § 1985 claim. [6]

**F. Plaintiffs' Breach of Contract Claim (Count VI)**

Count VI alleges Defendants breached their contractual obligations by refusing Plaintiffs medical treatment and calling the police to remove them from the building. (Dkt. 8 ¶¶ 95–109.) The elements of a breach of contract claim in Georgia are "(1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015) (citing *Kabir v. Statebridge Co., LLC*, No. 1:11-cv-2747, 2011 WL 4500050, at *7 (N.D. Ga. Sept. 27, 2011)). The first element is at issue.

The complaint alleges "Defendant Emory Healthcare's March 24, 2020 visitor policy ... constituted a contract." (Dkt. 8 ¶ 103.) They claim the policy allowed Plaintiff Trimble to bring one visitor with her to the appointment and "Defendant Emory Healthcare breached its contractual obligations with Plaintiffs when they refused Plaintiffs medical treatment and called the police on Plaintiffs to remove them from the building simply because Plaintiff Trimble had her one visitor as her husband." (*Id.* ¶ 102.)

Defendants argue Emory's March 24, 2020 visitor policy ("Visitor Policy") is not a contract as a matter of law. (Dkt. 16-1 at 16–17.) The Court agrees. Georgia law holds that a company policy is not a valid contract: "[B]road statements of company policy do not generally give rise to contract claims." *Bishop v. Shorter Univ., Inc.*, No. 4:15-cv-0033, 2015 WL 13753710, at *7 (N.D. Ga. June 4, 2015); *see also*

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

*Jones v. Chatham Cnty.*, 477 S.E.2d 889, 893 (Ga. Ct. App. 1996) (holding personnel manual setting forth policies and procedures not contract); *Ellison v. DeKalb Cnty.*, 511 S.E.2d 284, 285–86 (Ga. Ct. App. 1999) (holding statements in employee manual did not constitute contract). The Visitor Policy constitutes company policy that is not actionable under Georgia contract law.

Plaintiffs challenge this conclusion and cite several cases to support their argument. (Dkt. 17 at 12–13.) But, as Defendants point out in their reply, these cases are distinguishable and inapplicable. *See, e.g., Begay v. Medicus Healthcare Sols., LLC*, No. 15-500, 2015 WL 13650107, at *2 (D.N.M. Nov. 18, 2015) (dealing with third-party beneficiaries, not hospital's company policy); *Sumes v. Andres*, 938 F. Supp. 9, 10 (D.D.C. 1996) (dealing with Rehabilitation Act and the D.C. Human Rights Act, not breach of contract claim). Plaintiffs even misrepresent the holding of one case they cited. [7] The Court dismisses Plaintiffs' contract claim. [8]

**G. Plaintiffs' Negligence Claims (Count VII)**

***7** In Georgia, "to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation, and damages." *Goldstein, Garber & Salama, LLC v. J.B.*, 797 S.E.2d 87, 89 (Ga. 2017) (citing *Johnson v. Am. Nat'l Red Cross*, 578 S.E.2d 106, 108 (Ga. 2003)). Count VII alleges Defendants were negligent by (1) failing to become aware of Emory's policies and contracts, (2) calling the police to remove Kingdom, (3) failing to properly train Emory employees on duties, contracts, and changes, and (4) invading the personal space of Plaintiffs without wearing face masks. (Dkt. 8 ¶ 113.)

Defendants argue the first three negligence claims relate to the Visitor Policy because "Plaintiffs allege Defendants failed to become aware of the duties under an alleged contract (i.e. the Policy), acted contrary to the alleged contract (i.e. did not enforce the Policy), and failed to train their employees on the duties of this contract." (Dkt. 16-1 at 18.) They argue those three negligence claims should be dismissed because the Visitor Policy cannot be the basis of a negligence claim. (*Id.* at 17–20.) The Court agrees. The Visitor Policy, as held above, does not constitute a contract and thus does not create any duty upon which Plaintiffs can state a claim. Even if the Visitor Policy were a valid contract, these negligence claims still fail because it is well settled that "a breach of contract claimant may only bring a tort claim where, in addition to breaching the contract, the defendant also breached a duty imposed by law." *Fay v. Custom One Homes, LLC*, 622 S.E.2d 870, 874 (Ga. Ct. App. 2005) (citing *ServiceMaster Co. v. Martin*, 556 S.E.2d 517, 521 (Ga Ct. App. 2001)). [9] The complaint contains no allegations relating to an independent duty created by law. The Court thus dismisses Plaintiffs' first three negligence claims.

Defendants argue the fourth negligence claim should be dismissed for failure to state a claim because Plaintiffs did not allege any damages related to the transmission of COVID-19 as a result of Defendants invading their personal space while not wearing face masks. (Dkt. 16-1 at 20–21.) The Court disagrees. In their complaint, Plaintiffs pled "damages in the form of financial loss, medical bills, parking expenses, loss of income, missed time from work, loss of potential income, and other special damages to be proven at trial." (Dkt. 8 ¶ 114.) This allegation is sufficient to survive the motion to dismiss stage. *See* Richard C. Ruskell, Georgia Practice and Procedure § 9:5 (2020–2021 ed.) ("[N]egligence is easily pled, and the complaint at the bare minimum need only allege that 'the defendant was negligent' and that the 'negligence caused injury and damages.' "); *Twombly*, 550 U.S. at 565 n.10 (noting that "the model form for pleading negligence, Form 9, ... exemplifies the kind of 'bare allegation' that survives a motion to dismiss"). Plaintiffs may proceed with this negligence claim. [10]

**H. Plaintiffs' Promissory Estoppel Claim (Count VIII)**

***8** Count VIII asserts a promissory estoppel claim on the grounds that "[o]bstetric patients, members of the community, and general patients justifiably relied on Defendant Emory Healthcare's written promise to allow obstetric patients and/or patients who need behavioral assistance to have at least one visitor." (Dkt. 8 ¶ 121.) To prevail on a promissory estoppel claim in Georgia, "plaintiffs must show that (1) defendant made certain promises, (2) defendant should have expected that plaintiffs would rely on such promises, (3) the plaintiffs did in fact rely on such promises to their detriment, and (4) injustice can be avoided by enforcement of the promise." *Sparra v. Deutsche Bank Nat. Tr. Co.*, 785 S.E.2d 78, 83 (Ga. Ct. App. 2016) (citing *Canterbury Forest Ass'n v. Collins*, 532 S.E.2d 736, 739 (Ga. Ct. App. 2000)). Defendants argue Plaintiffs' promissory estoppel claim should be dismissed because Plaintiffs do not allege they justifiably relied on any Emory policy and Plaintiffs lack standing to bring a claim on

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

behalf of "[o]bstetric patients, members of the community, and general patients." (Dkt. 16-1 at 21–24.) The Court agrees.

An essential element of promissory estoppel is reasonable reliance. *Pargar, LLC v. CP Summit Retail, LLC*, 730 S.E.2d 136, 142 (Ga. Ct. App. 2012). Plaintiffs do not plead they themselves justifiably relied; rather, they say "[o]bstetric patients, members of the community, and general patients justifiably relied." (Dkt. 8 ¶ 121.) Plaintiffs thus failed to plead a necessary element of promissory estoppel. To the extent Plaintiffs are asserting a claim on behalf of "[o]bstetric patients, members of the community, and general patients," Plaintiffs lack standing to do so. In *Warth v. Seldin*, 422 U.S. 490 (1975), the Supreme Court emphasized that courts must not adjudicate generalized grievances, and "[a] plaintiff generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties." *Id.* at 499. Because Plaintiffs failed to adequately plead justifiable reliance and lack standing to sue on behalf of "[o]bstetric patients, members of the community, and general patients," the Court dismisses Plaintiffs' promissory estoppel claim. [11]

### III. Defendants' Motion for Sanctions

Defendants move for sanctions against Plaintiffs under Federal Rule of Civil Procedure 11. (Dkt. 10.)

#### A. Legal Standard

A district court may impose sanctions under Rule 11:

> (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (citing *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001)). A court may impose sanctions on "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Sanctions imposed under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* 11(c)(4). Appropriate sanctions may include "nonmonetary directions; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

District courts have broad discretion in the imposition of sanctions. *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1421 (11th Cir. 1996). In assessing whether to impose sanctions, courts must ask "whether the legal claims or factual contentions are objectively frivolous, and, if so, whether a reasonably competent attorney should have known they were frivolous." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010). "A legal claim is frivolous if no reasonably competent attorney could conclude that it has any 'reasonable chance of success' or is a reasonable argument to change existing law." *Id.* (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). "A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis." *Id.* Courts apply an objective standard in determining whether sanctions are appropriate under Rule 11—that is, courts must determine "whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (citing *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002)).

#### B. Plaintiffs' Fifth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983 Claims (Counts I and III)

***9** Defendants say Plaintiffs' Fifth Amendment, Fourteenth Amendment, and § 1983 claims are frivolous because they each require a government actor, and neither Defendant is a government actor. (Dkts. 10-1 at 12–15; 19 at 5.) The Court agrees. The Court finds Counts I and III are objectively frivolous in view of the well-settled case law regarding government action and a reasonably competent


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

attorney would have known they are frivolous. [12] *See, e.g.*, *Thomas v. Early Cnty.*, 360 F. App'x 71, 75 (11th Cir. 2010) (concluding that Rule 11 had been violated where "allegations of vicarious liability fail as a matter of long-established law"). The Court thus concludes that sanctions are warranted for these claims.

**C. Plaintiffs' 42 C.F.R. § 482.13 Claims (Count II)**

Defendants do not address Plaintiffs' § 482.13 claims in their motion for sanctions. (Dkt. 10.) The Court thus declines to impose sanctions for these claims.

**D. Plaintiffs' 42 U.S.C. § 2000a Claim (Count IV)**

Defendants challenge Plaintiffs' § 2000a claim as frivolous on two grounds: (1) Kingdom lacks standing because he was not seeking medical treatment on March 26, 2020 and (2) Trimble was never refused medical treatment on March 26, 2020. (Dkts. 10-1 at 15–16.) Plaintiffs do not address this argument in their response. Under Rule 11, "sanctions are warranted when a party files a pleading that ... has no reasonable factual basis." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Plaintiffs' § 2000a claim has a reasonable factual basis. Regarding the first ground, Plaintiffs pled "[a]s a married couple, Plaintiffs were entitled to receive medical obstetrics treatment as one" under the First Amendment. (Dkt. 8 ¶ 78.) And, regarding the second ground, Plaintiffs pled "*they* could not go forward with their obstetric medical visit" and Emory police "had *Plaintiffs* removed from the building." (Dkt. 8 ¶¶ 39, 50 (emphasis added).) The Court recognizes Defendants dispute these allegations, (Dkt. 10-1 at 16), and, later regarding the negligence claims, Plaintiffs contradict themselves by saying Defendants "call[ed] the police on *Plaintiff Hall* to remove *him* from the entire hospital building" (Dkt. 8 ¶ 113(a) (emphasis added).) But the Eleventh Circuit has emphasized that sanctions "are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." *Baker*, 158 F.3d at 524 (footnote omitted). While Plaintiffs' claim was ultimately unsuccessful at the motion to dismiss stage, it is not clear that it had "no reasonable factual basis." The Court thus finds Plaintiffs' § 2000a claim is not objectively frivolous and denies Defendants' motion for sanctions regarding this claim.

**E. Plaintiffs' 42 U.S.C. § 1985, Breach of Contract, Negligence, and Promissory Estoppel Claims (Counts V–VIII)**

Defendants claim the Visitor Policy has two provisions: the inpatient provision permits one visitor per patient, while the outpatient provision precludes any visitors. (Dkt. 10-1 at 3.) Defendants argue the outpatient provision applied to Trimble's March 26, 2020 appointment and they made Plaintiffs aware of this many times. [13] (*Id.* at 4, 9, 18.) According to Defendants, Plaintiffs repeatedly cite the inpatient provision in their complaint and allege Defendants violated that provision while totally ignoring the applicable outpatient provision. (*Id.* at 18.) Defendants thus say Plaintiffs' 42 U.S.C. § 1985, breach of contract, negligence, and promissory estoppel claims are frivolous because they rely on Plaintiffs' deliberate conflation and intentional misrepresentation of the inpatient and outpatient provisions of the Visitor Policy. (*Id.* at 16, 18.)

***10** While "[s]anctions are warranted when a party exhibits a 'deliberate indifference to obvious facts,' " the Court is unable to conclude at this time that the Visitor Policy is as Defendants represent. *Riccard*, 307 F.3d at 1294 (quoting *Baker*, 158 F.3d at 524). Both Plaintiffs and Defendants attached a policy as an exhibit, but both exhibits are flawed. (Dkts. 10-2; 15-2.) Plaintiffs' exhibit does not appear to provide the full policy, and Defendants' exhibit, as Plaintiffs point out, is the March 30, 2020 policy, which was not in effect during the March 26, 2020 appointment. (Dkts. 10-2; 15-2; 15 at 6.) Defendants claim "[n]one of the differences between the March 26, 2020 policy and the March 30, 2020 policy have anything to do with the distinction between inpatient and outpatient visitor rules." (Dkt. 19 at 8 (emphasis omitted).) But the Court cannot accept this without the full March 26 policy.

Also, the policy Plaintiffs provided does not, on its face, appear to have two separate provisions for inpatient and outpatient appointments, as Defendants represent. (Dkt. 15-2.) It even states "[o]bstetric patients may have one visitor," and it is undisputed that Trimble had an obstetric appointment on March 26, 2020. (Dkts. 10-1 at 4; 15 at 2; 15-2 at 2.) On this basis, the Court does not think Plaintiffs' § 1985, breach of contract, negligence, and promissory estoppel claims are objectively frivolous. The Court preliminarily denies Defendants' motion for sanctions regarding these.

The Court understands the grounds under which Defendants seek sanctions: they say they notified Kingdom (as counsel for himself and his wife) on several occasions that the Visitor Policy allowing one visitor applied only to outpatient procedures and Kingdom (as counsel for himself and his wife) has intentionally misrepresented that fact to the Court or at least wholly disregarded it. The Court has also reviewed the correspondence attached to Defendants' motion for sanctions and agrees that, on April 4, 2020, Defendant Emory informed Kingdom of the difference between its inpatient and outpatient visitor policies. (Dkt. 10-4.) It sure seems like Kingdom (as a party and a lawyer) has not adequately acknowledged that fact and, indeed, has represented to the contrary. Given Plaintiffs' brazen insistence that the Visitor Policy permitted Kingdom to accompany his wife and the strong suggestion he knew this was not true long before filing suit, the Court will allow Defendants the opportunity to present such evidence at the hearing discussed below. If the evidence is as Defendants claim, the Court will likely find Plaintiff Kingdom's breach of contract claims both factually and legally frivolous and award sanctions.

**F. Improper Purpose**

Defendants argue Plaintiffs filed this action for the improper purpose of garnering publicity for Kingdom's law firm. (Dkt. 10-1 at 19.) Plaintiffs do not refute or address this argument in their response. While improper purpose constitutes one of the recognized bases for imposing sanctions under Rule 11, the number of decisions addressing and defining improper purpose are relatively few and far between in the Eleventh Circuit. The Court looks to persuasive authority on the matter and finds *In re Kunstler*, 914 F.2d 505 (4th Cir. 1990), helpful. In that case, the Fourth Circuit upheld the district court's finding that plaintiffs' counsel filed the lawsuit "to gain publicity, to embarrass state and county officials, to gain leverage in criminal proceedings, to obtain discovery for use in criminal proceedings, and to intimidate those involved in the prosecution." *Id.* at 520. In so holding, the court set forth a standard governing when sanctions are warranted for an improper purpose:

> If a complaint is not filed to vindicate rights in court, its purpose must be improper. However, if a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose.

***11** *Id.* at 518.

In arguing Plaintiffs filed this lawsuit for publicity, Defendants point to Plaintiffs' social media posts and an Atlanta Journal Constitution article about the March 26, 2020 incident. (Dkt. 10-1 at 19–21.) The Court agrees with Defendants that Plaintiffs sought publicity. Plaintiffs, for example, shared the Atlanta Journal Constitution article on their social media pages and asked their followers to "COMMENT ON THE LINK IN THE ARTICLE or share the article (not just the post)." (Dkt. 10-5 at 3, 76, 78.) But, at this stage of the litigation, the Court is unable to conclude that Plaintiffs did not file this lawsuit for the additional purpose of vindicating rights in court. *See, e.g.*, Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1335 (4th ed.) ("At the pleading stage of the trial, the court is not poised to determine whether a well-pleaded complaint was filed for an improper purpose." (citing *Rothman v. City of Chi.*, No. 02 C 3533, 2003 WL 21148180, at *7 (N.D. Ill. May 16, 2003))). The other purpose of seeking publicity is not so excessive as to eliminate the proper purpose of vindicating Plaintiffs' rights. The Court denies sanctions on this basis.

**G. Appropriate Sanctions**

The Eleventh Circuit "consider[s] it prudent for a district judge to hold a hearing before imposing sanctions." *Didie v. Howes*, 988 F.2d 1097, 1105 n.8 (11th Cir. 1993) (citing *Donaldson v. Clark*, 819 F.2d 1551, 1560 (11th Cir. 1987)). The Court will do so. The parties may consider the preceding discussion to be the Court's preliminary findings on sanctions. The Court will schedule a hearing before finalizing its determination. At the hearing, the parties may present any additional evidence on the issue of sanctions (including for example evidence about the Visitor Policy in effect on March 26, 2020 and communication with Plaintiff about that policy prior to the filing of the complaint) and, if necessary, the proper amount of sanctions.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

**IV. Plaintiffs' Request for Sanctions**

Plaintiffs seek Rule 11 sanctions against Defendants in their response to Defendants' motion for sanctions. (Dkt. 15 at 11–12.) The Court denies Plaintiffs' request. Rule 11 sets forth precise procedures for seeking sanctions:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2). Plaintiffs failed to comply with these procedures for three reasons. First, a response to a motion is not an appropriate vehicle for seeking sanctions under the rule. Second, Plaintiffs did not serve a copy of a proposed motion for sanctions on Defendants. (Dkt. 19 at 10.) Third, Plaintiffs did not comply with the 21-day safe harbor provision. (*Id.*) Because Plaintiffs' request for sanctions does not comply with the procedures set forth in Rule 11, the Court denies the request.

***12** Even if Plaintiffs met the Rule 11 procedure, Plaintiffs' request for sanctions fails on the merits. There is no evidence before the Court indicating Defendants filed a pleading that "(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Baker*, 158 F.3d at 524.

**V. Motion for Leave to File Second Amended Complaint**

Plaintiffs seek leave to file a second amended complaint to add new claims—assault, battery, false imprisonment, a violation of § 1557 of the ACA, and a violation of § 504 of the Rehabilitation Act—and a new party, Atlanta Perinatal Associates, Inc. [14] (Dkt. 23-1 at 18, 20, 41–43.) The events giving rise to these new claims and new party occurred on May 26, 2020—exactly two months after the events described in the original complaint and first amended complaint. (Dkt. 18-1 at 2.)

This motion is governed by Rules 15 and 20 of the Federal Rules of Civil Procedure. *See Fincher v. Georgia-Pacific, LLC*, No. 108-cv-3839, 2009 WL 2601322, at *1 (N.D. Ga. Aug. 24, 2009) ("In order to amend a complaint to add additional parties[,] ... a plaintiff must satisfy both the requirements of Rule 15(a) and demonstrate compliance with one of the other rules governing the addition of parties, such as Rules 19, 20, or 21."). The Court begins with the analysis under Rule 15(a), which allows parties to amend their pleadings once within a short time after the filing of responsive pleadings, and after that, "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). As a general rule, the court should freely grant leave to amend when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). But a motion for leave to amend may appropriately be denied "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

Defendants argue the amendment should be denied because allowing it would cause undue prejudice. (Dkt. 21 at 7–9.) The Court does not think permitting Plaintiffs to amend their complaint at this stage in the litigation would cause undue prejudice. Plaintiffs' request for leave to amend was filed less than fifteen days after Defendants filed their motion to dismiss. And while the proposed second amended complaint seeks to add new theories of recovery, Plaintiffs made the request to amend prior to any party commencing discovery. *See, e.g.*, *Taylor v. Fla. State Fair Auth.*, 875 F. Supp. 812, 815 (M.D. Fla. 1995) (noting that no "real prejudice" to the opposing party occurs where leave to amend is sought before commencement of discovery).

Defendants also argue the amendment should be denied because Plaintiffs acted in bad faith by "seek[ing] to add allegations and totally unrelated parties for a completely separate visitor incident that took place two months after the alleged incident at issue in the Original Complaint." (Dkt. 21 at 11.) The Court does not find this rises to the level of bad faith. This is not a case, for example, in which Plaintiffs failed to include the May 26 event in their initial complaint as a "tactical maneuver[ ] to force the court to consider various

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

theories seriatim." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (11th Cir. 1981). The alleged May 26 incident occurred after Plaintiffs filed their initial complaint (April 7) and after Plaintiffs filed their first amended complaint (May 13).

***13** Having found no substantial reason to deny leave to amend under Rule 15, the Court turns next to whether Atlanta Perinatal Associates may be joined as a defendant under Rule 20. Persons may be joined in an action as defendants if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Put another way, Rule 20 contains two requirements for joinder: (1) transactional relatedness and (2) commonality of at least one question of law or fact.

The transactional-relatedness requirement is satisfied "when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.' " *Sec. & Exch. v. Melvin*, No. 1:12-cv-2984, 2014 WL 11829332, at *1 (N.D. Ga. Nov. 21, 2014) (quoting *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). The claims against Defendants and the claims against Atlanta Perinatal Associates do not involve the same operative facts. As Defendants note, "[t]he alleged March 26, 2020 events and May 26, 2020 events involve entirely different locations, different witnesses, different policies enforced by different agents, different alleged participants, and different alleged outcomes." (Dkt. 21 at 13.) *See, e.g., Wyatte v. Bryson*, No. 5:15-cv-92, 2016 WL 917327, at *4 (S.D. Ga. Mar. 8, 2016) ("Plaintiff's asserted rights to relief arise out of isolated instances, in which Plaintiff believes different officials at separate facilities failed to follow prison policy...."). The resolution of claims arising from two different factual scenarios would require individualized attention. Because the first requirement under Rule 20 is not met, the Court declines to address the second requirement.

Ultimately, the Court finds the requirements of Rule 15 are met but the requirements of Rule 20 are not met. Plaintiffs thus may amend their complaint to add the new claims, but they may not add Atlanta Perinatal Associates as a defendant.

## VI. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. 16). The Court dismisses Counts I, II, III, IV, V, VI, and VIII completely. Regarding Count VII, Plaintiffs' negligence claims concerning the Visitor Policy—i.e., Defendants failing to become aware of Emory's policies and contract, calling the police to remove Kingdom, and failing to properly train Emory employees on duties, contracts, and changes—are dismissed, but Plaintiffs' negligence claim about Defendants invading the personal space of Plaintiffs without wearing face masks may continue.

The Court made preliminary findings on Defendant's Motion for Sanctions (Dkt. 10) and will schedule a hearing on this motion.

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. 18). Plaintiffs may amend their complaint to add their new claims, but they may not add Atlanta Perinatal Associates as a defendant. The Court permits Plaintiffs to replead Counts IV (§ 2000a) and VIII (promissory estoppel) of their complaint. No later than February 5, 2021, Plaintiffs shall file a second amended complaint that includes only the parties and claims on which they have been allowed to proceed.

**SO ORDERED** this 21st day of January, 2021.

### All Citations

Not Reported in Fed. Supp., 2021 WL 1244864

## Footnotes

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

1 Earlier last year, Kingdom legally changed his surname from Hall to Kingdom. (Dkt. 24-1.) The Court granted Plaintiffs' motion to substitute Kingdom in place of Hall in this action. (Dkt. 32.) Because the parties filed the pleadings and motions currently pending before this Court prior to the substitution, Kingdom is sometimes referred to as Hall in those documents.

2 Given the Court's holding that Defendants do not qualify as state or federal actors, Plaintiffs cannot remedy the deficiency of their pleading with another amended complaint.

3 Given the Court's holding that § 482.13 does not provide a private right of action, Plaintiffs cannot remedy the deficiency of their pleading with another amended complaint. Amendment of this claim would be futile.

4 Section 2000a provides: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, color, religion, or national origin."

5 Although there is no Eleventh Circuit case discussing whether a private hospital is a place of public accommodation under the statute, there is some authority providing it can be given certain circumstances. *See United States v. Med. Soc'y of S.C.*, 298 F. Supp. 145 (D.S.C. 1969). The Court permits Plaintiffs to replead their § 2000a claim in their amended complaint.

6 Given the Court's holding that the intracorporate conspiracy doctrine applies, Plaintiffs' prior allegation Defendant Modi is an employee, and Plaintiffs' admission that they have no evidence as to whether that is correct or not, (Dkt. 17 at 17), Plaintiffs cannot remedy the deficiency of their pleading with another amended complaint.

7 Plaintiffs assert that, in *Woolfolk v. Duncan*, 872 F. Supp. 1381 (E.D. Pa. 1995), the court denied the hospital defendant's motion for summary judgment on a breach of contract claim. (Dkt. 17 at 13.) But the court granted it. *See Duncan*, 872 F. Supp. at 1394 ("grant[ing] summary judgment for HealthPASS on the implied contract claim").

8 Given the Court's holding that the Visitor Policy is not a contract, Plaintiffs cannot remedy the deficiency of their pleading with another amended complaint as amendment would be futile.

9 *See also Fielbon Dev. Co., LLC v. Colony Bank of Hous. Cnty.*, 660 S.E.2d 801, 808 (Ga. Ct. App. 2008) ("[A] defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action *only if* the defendant has also breached an independent duty created by statute or common law." (emphasis added)); *id.* ("[A]bsent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of a contractual duty."); *Swyters v. Motorola Emps. Credit Union*, 535 S.E.2d 508, 510 (Ga. Ct. App. 2000) ("If no liability is claimed except that arising out of a breach of the express terms of a contract, the action lies in contract alone; an action in tort will not lie." (citing *Wells v. N.Y. Life Ins. Co.*, 392 S.E.2d 251, 252 (Ga. Ct. App. 1990))).

10 The Court has serious doubts about Plaintiffs' ability to succeed on this claim. "[T]he threshold issue in any cause of action for negligence is whether, and to what extent, 'the defendant owes the plaintiff a duty of care.' " *Sw. Emergency Physicians, P.C. v. Quinney*, 819 S.E.2d 696, 706 (Ga. Ct. App. 2018) (quoting *Martin v. Ledbetter*, 802 S.E.2d 432, 434 (Ga. Ct. App. 2017)). "[D]uty is defined as 'a legal relationship arising from a standard of care, the violation of which subjects the actor to liability.' " *Id.* In the absence of a legally cognizable duty, there is no cause of action in negligence. *Ga. Cas. & Sur. Co. v. Salter's Indus. Serv., Inc.*, 734 S.E.2d 415, 419 (Ga. Ct. App. 2012). Plaintiffs allege "[o]rdinary duties of care during a pandemic required the

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

staff at Emory Healthcare to avoid unnecessarily getting in the up-close personal space of Plaintiffs without wearing any kind of face masks or covering their mouth, nose, or face." (Dkt. 8 ¶ 112.) But Plaintiffs do not allege that Defendant Modi had COVID-19 on March 26, 2020. It is unclear (and unlikely) that a person who does not have COVID-19 has a legal duty under Georgia law to avoid entering—what Plaintiffs refer to as—someone else's personal space. Indeed, it is hard to image how such a duty could be enforced given the amorphous nature of "personal space." Defendants, however, did not raise such a challenge in their motion to dismiss, and the Court declines to raise the issue on its own.

11 Because the Court dismisses this claim on Plaintiffs' failure to adequately plead, the Court permits Plaintiffs to replead their promissory estoppel claim in their amended complaint.

12 The Court notes that, although Kingdom appears in this action as a pro se litigant, he is a Georgia-barred attorney. (Dkt. 10-1 at 4.)

13 "After explicit clarification of the [o]utpatient [p]rovision in person, over the phone, and via email, Plaintiffs cannot simply be mistaken about what provision applied to Trimble at her outpatient obstetric appointment." (*Id.* at 9.)

14 In their brief in support of their motion, Plaintiffs refer to the defendant they wish to add as Atlanta Perinatal Associates, P.C., but they later refer to it as Atlanta Perinatal Associates, Inc., in their reply brief. (Dkts. 18-1 at 1; 23 at 2.)

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.