UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRADLEY CLONAN, ET AL.,

Plaintiff(s),

v.

CENTRASTATE HEALTHCARE SYSTEM/ATLANTIC HEALTHCARE SYSTEM, ET AL.,

Defendants.

Civil Case No. 3:24-CV-11399-RK-RLS

RE:PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS (ECF Nos. 33, 35)

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT

II. STANDARD OF REVIEW

III. STATEMENT OF FACTS

IV. ARGUMENT

A. Procedural Defenses Lack Merit

1. The Amended Complaint Satisfies Rule 8 and Rule 10

2. Plaintiff Satisfied Statutory and Procedural Requirements

B. Defendants Acted Under Color of State Law (§1983)

C. Plaintiff States Valid Claims Under Federal Law

1. Fourteenth Amendment (Due Process)

2. First Amendment (Retaliation)

3. Rehabilitation Act (Section 504)

4. Americans with Disabilities Act (ADA) Standing

D. Plaintiff States Valid Claims Under State Law

1. Medical Malpractice

2. Falsification of Medical Records / Fraud

3. Patient Rights (N.J.A.C. 8:43G-4.1)

E. Defendants Are Not Entitled to Immunity

F. Plaintiff Has Alleged Actual and Punitive Damages

G. Monell Liability Against Institutional Defendants (If Applicable)

V. CONCLUSION

CERTIFICATE OF SERVICE

APPENDIX: DOCKET AND EXHIBIT TABLE

## TABLE OF AUTHORITIES

**Federal Cases:**

*Addington v. Texas*, 441 U.S. 418 (1979)

*Alexander v. Choate*, 469 U.S. 287 (1985)

*Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Bell v. Wolfish*, 441 U.S. 520 (1979)

*Benn v. Universal Health Sys., Inc.*, 371 F.3d 165 (3d Cir. 2004)

*Bolden v. Southeastern Pennsylvania Transp. Authority*, 21 F.3d 29 (3d Cir. 1994)

*Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010)

*Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001)

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)

*Carey v. Piphus*, 435 U.S. 247 (1978)

*Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000)

*Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600 (1979)

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)

*Dennis v. Sparks*, 449 U.S. 24 (1980)

*Dique v. New Jersey State Police*, 603 F.3d 181 (3d Cir. 2010)

*Disabled in Action of Pennsylvania v. Nat'l Passenger R.R. Corp.*, 418 F. Supp. 2d 652 (E.D. Pa. 2005)

*Disabled in Action of Pennsylvania v. SEPTA*, 539 F.3d 199 (3d Cir. 2008)

*Erickson v. Pardus*, 551 U.S. 89 (2007)

*Fielder v. Stonack*, 141 N.J. 101 (1995)

*Freidman v. Ganassi*, 853 F.2d 207 (3d Cir. 1988)

*Gomes v. County of Monmouth*, 2023 WL 4579884 (D.N.J. July 18, 2023)

*Haines v. Kerner*, 404 U.S. 519 (1972)

*Hardwicke v. American Boychoir School*, 188 N.J. 69 (2006)

*Helen L. v. DiDario*, 46 F.3d 325 (3d Cir. 1995)

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003)

*Howlett v. Rose*, 496 U.S. 356 (1990)

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)

*In re Commitment of Raymond S.*, 263 N.J. Super. 428 (App. Div. 1993)

*In re Commitment of M.M.*, 384 N.J. Super. 313 (App. Div. 2006)

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)

*Jensen v. Lane County*, 222 F.3d 570 (9th Cir. 2000)

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994)

*Kach v. Hose*, 589 F.3d 626 (3d Cir. 2009)

*Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999)

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2d Cir. 2013)

*Leimgruber v. Claridge Assocs., Ltd.*, 73 N.J. 450 (1977)

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)

*Marley v. Borough of Palmyra*, 193 N.J. Super. 271 (Law Div. 1983)

*Matthies v. Mastromonaco*, 160 N.J. 26 (1999)

*Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986)

*Mirabella v. Villard*, 853 F.3d 641 (3d Cir. 2017)

*Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1976)

*Morales v. New Jersey*, 2023 WL 5003891 (D.N.J. Aug. 3, 2023)

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997)

*Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37 (1984)

*Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003)

*O'Connor v. Donaldson*, 422 U.S. 563 (1975)

*Paul v. Davis*, 424 U.S. 693 (1976)

*Pellecchia v. Cnty. of Burlington*, 2022 WL 17667906 (D.N.J. Dec. 13, 2022)

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)

*Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002)

*Richardson v. McKnight*, 521 U.S. 399 (1997)

*Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)

*Smith v. Wade*, 461 U.S. 30 (1983)

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1973)

*Tandy v. City of Wichita*, 380 F.3d 1277 (10th Cir. 2004)

*Teilhaber v. Greene*, 320 N.J. Super. 453 (App. Div. 1999)

*Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511 (D.N.J. 1998)

*Vitek v. Jones*, 445 U.S. 480 (1980)

*Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002 (3d Cir. 1995)

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015)

*West v. Atkins*, 487 U.S. 42 (1988)

*Zinermon v. Burch*, 494 U.S. 113 (1990)

**State Cases:**

*Alloway v. Bradlees, Inc.*, 157 N.J. 221 (1999)

*Earl v. Winne*, 14 N.J. 119 (1953)

*Fielder v. Stonack*, 141 N.J. 101 (1995)

*Gennari v. Weichert Co. Realtors*, 148 N.J. 582 (1997)

*Gray v. Kutner*, 87 N.J. 401 (1981)

*In re Commitment of M.M.*, 384 N.J. Super. 313 (App. Div. 2006)

*In re Commitment of Raymond S.*, 263 N.J. Super. 428 (App. Div. 1993)

*Leimgruber v. Claridge Assocs., Ltd.*, 73 N.J. 450 (1977)

*Marley v. Borough of Palmyra*, 193 N.J. Super. 271 (Law Div. 1983)

*Matthies v. Mastromonaco*, 160 N.J. 26 (1999)

*Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37 (1984)

*Teilhaber v. Greene*, 320 N.J. Super. 453 (App. Div. 1999)

**Statutes and Rules:**

28 U.S.C. § 1331

28 U.S.C. § 1343

28 U.S.C. § 1367

28 U.S.C. § 1391(b)

42 U.S.C. § 1983

42 U.S.C. § 12181 et seq. (Americans with Disabilities Act)

29 U.S.C. § 794 (Rehabilitation Act)

42 U.S.C. § 1395cc(f)

42 C.F.R. § 482.13

45 C.F.R. § 164.524 (HIPAA)

45 C.F.R. § 164.526 (HIPAA)

N.J.S.A. 2A:14-2

N.J.S.A. 2A:53A-7

N.J.S.A. 2A:53A-28

N.J.S.A. 30:4-27 et seq.

N.J.S.A. 30:4-27.1 et seq.

N.J.S.A. 30:4-27.2(h)

N.J.S.A. 30:4-27.5

N.J.S.A. 30:4-27.7

N.J.A.C. 8:43G-4.1

N.J.A.C. 10:31

N.J.A.C. 13:35-6.5

Fed. R. Civ. P. 4(m)

Fed. R. Civ. P. 8(a)

Fed. R. Civ. P. 10(b)

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(6)

Local Civil Rule 7.2

**I. PRELIMINARY STATEMENT**

Plaintiff Bradley Clonan, appearing pro se, hereby respectfully submits this Consolidated Opposition to the Motions to Dismiss filed by Defendants Hampton Behavioral Health Center ("Hampton") (ECF No. 33) and Monmouth Medical Center/Psychiatric Emergency Screening Service Defendants ("MMC/PESS") (ECF No. 35). Defendants' motions—which rely predominantly on procedural technicalities rather than substantive rebuttals—contend that the First Amended Complaint ("FAC") constitutes an impermissible "shotgun pleading," fails to adequately plead state action for purposes of 42 U.S.C. § 1983, and otherwise fails to state claims upon which relief can be granted. As demonstrated conclusively herein, these contentions are wholly without merit, directly contradicted by binding Third Circuit and Supreme Court precedent, and fundamentally inconsistent with the detailed and well-pleaded factual allegations and documented evidence in the FAC and accompanying exhibits, especially those Sealed (ECF No. [36]).. The factual allegations and documented evidence presented in the FAC and accompanying exhibits demonstrate a plausible claim that Defendants engaged in a deliberate, coordinated campaign of bad faith, including falsification, concealment, and obstruction, in concert with state actors, to unlawfully detain Plaintiff, deprive him of his constitutional and statutory rights, and insulate themselves from liability to this day (ECF No. 42, 42-1)..

Such conduct, as recognized by both New Jersey and federal law, rises above mere negligence and supports claims for malicious or wanton neglect and reckless indifference. See Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 535 (D.N.J. 1998); Smith v. Wade, 461 U.S. 30, 56 (1983). Plaintiff's diligent efforts to obtain records and seek redress, including engaging in formal grievances and contacting state authorities, further underscore the factual basis of his claims. The Court should reject Defendants' transparent attempt to evade accountability for their coordinated violations of Plaintiff's constitutional and statutory rights.

Plaintiff has made repeated, good-faith efforts over the past two years to seek non-legal resolutions, including offering a personal medical explanation and granting Defendants an explicit 14-day extension until May 1, 2025, to clarify, appear, and address any deficiencies. These efforts, documented in ECF Nos. 42 and 42-1, demonstrate Plaintiff's commitment to resolving the issues and highlight Defendants' alleged pattern of deliberate obstruction and bad faith. The combined pleadings, exhibits, and Defendants' counsel's statements affirming the factual basis of the events further support the plausibility of Plaintiff's allegations at this stage. Critically, the Amended Complaint and record reflect that Defendants, acting jointly and in concert with state actors, engaged in a deliberate, coordinated campaign of bad faith—including falsification, concealment, obstruction, and coordinated cover-up of statutory and constitutional violations—in a conspiracy to deprive Plaintiff of rights and insulate themselves and their employees from liability. The factual record and coordinated bad-faith conduct by Defendants establish a plausible claim of malicious or wanton neglect and reckless indifference to Plaintiff's rights—precisely the type of egregious conduct for which both compensatory and punitive damages are intended. See Tischio, 16 F. Supp. 2d at 535; Smith v. Wade, 461 U.S. at 56.

For the reasons set forth herein, the Court should deny Defendants' Motions to Dismiss in their entirety.

**II. STANDARD OF REVIEW**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). This standard applies with particular force to pro se complaints, which must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court need not, however, credit a plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

This standard is particularly important in cases involving involuntary commitment, where the factual record is largely controlled by the very entities being sued. The Third Circuit has recognized that plaintiffs in such cases face unique challenges in accessing evidence prior to discovery. Accordingly, the plausibility standard must be applied with appropriate sensitivity to these circumstances.

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may be brought at any time and can challenge the complaint on its face or the factual basis for jurisdiction. Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The plaintiff bears the burden of establishing subject matter jurisdiction. Id.

## III. STATEMENT OF FACTS

On March 24, 2023, Plaintiff voluntarily contacted police to report alleged crimes and was subsequently transported by ambulance to CentraState Medical Center after his statements were misconstrued as an inability to "distinguish fact from fiction." (ECF No. 29, ¶¶ 20–27). While experiencing significant stress, Plaintiff voluntarily sought medical evaluation at CentraState. After receiving medical clearance, Plaintiff requested discharge (ECF No. 29,  43) but was refused release without medical or legal justification. Plaintiff was also denied access to communicate with family members. (ECF No. 29, ¶¶ 25–27, 49).

Detention was initiated by CentraState staff and law enforcement, particularly influenced by Defendant Officer Demarco and Defendant Theo F. Kalogridis. (ECF No. 29, ¶¶ 20-27). Monmouth Medical Center/PESS—a state-designated emergency screening service for Monmouth County (See RWJBarnabas Health website, NJ Department of Human Services official list)—conducted a remote evaluation. (ECF No. 29, ¶¶ 33-40). This designation is established by N.J.S.A. 30:4-27.1 et seq. and N.J.A.C. 10:31, with specific authority under N.J.S.A. 30:4-27.5. All Defendants, together with state actors, allegedly coordinated to withhold information, manufacture and perpetuate errors, and actively prevent Plaintiff from exercising statutory rights or obtaining prompt release. (ECF No. 29).

The screener from MMC generated a certificate based on law enforcement input and records containing numerous significant errors and apparent falsifications. (ECF No. 42-1; ECF No. 29, ¶¶ 33–40, 61). These errors included different descriptions of the alleged danger, with one suggesting danger to self and others, and another suggesting only impulse control issues, demonstrating that the basis for detention was inconsistent and potentially flawed. (ECF No. 29, ¶¶ 33-40). The medical records contained inconsistent diagnoses, with Plaintiff being diagnosed with F20.0 (schizophrenia) despite the absence of any symptoms consistent with that diagnosis. (ECF No. 29, 122). There were inconsistent descriptions of Plaintiff's behavior, with some entries suggesting agitation and others suggesting compliance. (ECF No. 29). The medical records contained inconsistent justifications for Plaintiff's detention and treatment, with some entries suggesting danger to self or others and others suggesting only a need for further evaluation. (ECF No. 29). These inconsistencies, as alleged in the FAC, are not mere clerical errors or differences of professional opinion. Rather, they reflect a deliberate effort to manufacture a justification for Plaintiff's detention and treatment despite the absence of any legitimate medical or legal basis, particularly the lack of clear evidence of *danger to self or others*, which is the crucial factor under N.J.S.A. 30:4-27.2(h) for involuntary commitment. (ECF No. 29, ¶¶ 56-60, 81). Specific errors included incorrect weight listed as 170 kg (~374 lbs) when Plaintiff's actual weight was ~150 lbs (ECF No. 29, 61(a)), a false notation of Plaintiff having dentures (ECF No. 29, 61(b)), incorrect assertion of overusing prescribed medications contradicted by toxicology results (ECF No. 29, 61(c)), medication transfer discrepancies (ECF No. 29, 61(d)), incorrect transfer dates noted in MMC grievance response letters (ECF No. 29, 61(e)), discrepancy regarding mode of transport (ambulance vs. police) in Hampton records

(ECF No. 29, 61(f)), and lack of documented justification for hospitalization in initial Hampton records (ECF No. 29, 61(g)). These charting errors, even the subtle differences between the screener, screening psychiatrist, and certification for temporary hold, establish that Defendants allegedly did not attempt or care to verify the information, suggesting a coordinated effort to cover up misconduct and bad faith. (ECF No. 29, ¶¶ 56-60, 81). This detention was predicated on demonstrably false information and mischaracterizations. (ECF No. 29, ¶¶ 56-60, 81). Defendants then deliberately failed to correct known errors, refused to communicate openly, and suppressed exculpatory information in a manner demonstrating bad faith, collusion, and a coordinated effort to cover up misconduct, resulting in an *unjust* commitment. (ECF No. 29, ¶¶ 56-60, 81).

Plaintiff was transferred to Hampton Behavioral without clear explanation or meaningful opportunity to object. (ECF No. 29, ¶¶ 41–45). At Hampton, Plaintiff was further detained and administered medication, including Haldol and Cogentin, based on erroneous records and without adequate justification. (ECF No. 29, ¶¶ 63, 65-66). Plaintiff was also improperly diagnosed with F20.0 (schizophrenia). (ECF No. 29, 122). Hampton staff continued and expanded the coordinated denial of Plaintiff's access to rights, records, and recourse, and joined other Defendants in actively concealing misconduct from both Plaintiff and authorities.

At all relevant times, Plaintiff was systematically denied access to complete medical records, patient rights documentation, grievance forms, and ADA accommodations at each facility and by their representing parties such as the ‘mmc attorney/defendants’, in direct violation of federal and state law. (ECF Nos. 42, 42-1; ECF No. 29, ¶¶ 50–60, 53, 71, 97, 103, 107). Notably, while

the broader pattern of discrimination and bias was perpetuated by all Defendants, it was Hampton Behavioral Health Center that specifically denied Plaintiff access to proper footwear and other essential personal accommodations, despite Plaintiff's repeated, good-faith requests. (ECF No. 29, ¶¶ 97, 103). This refusal allegedly caused Plaintiff unnecessary pain, humiliation, and increased risk of harm. (ECF No. 29, ¶¶ 97, 103). The denial of footwear by Hampton was not an isolated oversight, but rather the product of a pervasive and systematic disability bias that existed throughout the duration of Plaintiff's involuntary commitment, and up until this day. (ECF No. 29, ¶¶ 97, 103). Staff at Hampton, as reflected in the vague and 'mistaken' medical charting and incident reports, allegedly consistently disregarded Plaintiff's needs, with decisions frequently justified by subjective notations or staff assumptions about Plaintiff's mental health status, physical appearance, and demeanor. (ECF No. 29). These charting errors and dismissive entries were allegedly never corrected by supervisors or reviewed objectively; instead, they reinforced an institutional presumption that Plaintiff's complaints, requests, and efforts to exercise his rights—including requests for footwear and ADA accommodations—were manifestations of mental illness rather than valid expressions of need or legal entitlement. (ECF No. 29). All Defendants, including CentraState and Monmouth Medical Center/PESS, actively contributed to this discriminatory environment by creating, perpetuating, or relying on erroneous records and participating in the coordinated denial of Plaintiff's statutory rights. (ECF No. 29). The culture of suspicion and stigmatization across all facilities led to categorical denials of procedural safeguards and basic accommodations that were otherwise provided to similarly situated patients. (ECF No. 29). This conduct was not only arbitrary, but was also motivated by a discriminatory presumption—apparent in both staff actions and the medical record entries—that Plaintiff's requests and grievances lacked credibility solely because of his psychiatric diagnosis

and physical appearance. This bias is evidenced by demonstrably false statements in Plaintiff's records, many of which directly conflict with the actual medical commitment paperwork and objective findings. For example, Defendant Theo F. Kalogridis, acting as the screener for MMC/PESS, falsely noted that Plaintiff was "overtaking prescribed medications" and presumed, without basis, that Plaintiff lost his job due to drug use (ECF No. 29). These conclusions are refuted by clinical evidence, including blood and urine test results from CentraState Medical Center, which confirm there was no overuse or misuse of prescribed medication. Additionally, collateral witness statements from Plaintiff's wife affirm that Plaintiff used all medications as directed (ECF No. 29). Such inconsistencies and disregard for objective evidence further underscore the discriminatory and arbitrary nature of Defendants' conduct. As a direct result, Plaintiff was denied the opportunity to document or challenge abuses, suffered significant and ongoing injury, and was deprived of the protections afforded by the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and N.J.A.C. 8:43G-4.1, as well as the Fourteenth Amendment's guarantees of due process and equal protection. (ECF No. 29).

Subsequent attempts by Plaintiff to correct his records and seek accountability were allegedly met with retaliatory actions by MMC Defendants Zalepka and Nielsen, including cease-and-desist letters and police reports, as well as CentraState defendants including but not limited to Robbert Orro. (ECF No. 29, ¶¶ 74-76, 116-117). Defendants allegedly instead engaged in ongoing stonewalling and acted in bad faith, deliberately obstructing procedural remedies and coordinating efforts to conceal their misconduct. (ECF No. 29, ¶¶ 56-60, 81). Rather than providing the Plaintiff with the federally guaranteed right to access his medical records, Defendants allegedly went so far as to make false reports to the Freehold Police Department,

attempting to have him removed from the premises under threat of arrest. (ECF No. 29, ¶¶ 74-76, 116-117). This pattern of retaliatory action, taken despite knowledge of Plaintiff's protected rights, allegedly meets the standard for willful and wanton disregard and supports both liability and punitive damages. (*Smith v. Wade*, 461 U.S. 30, 56).

Plaintiff allegedly suffered severe loss of liberty, emotional and mental distress, professional harm, and ongoing deprivation of legal and medical rights. (ECF No. 29). The falsified records and the fear of experiencing similar mistreatment have inflicted significant trauma on Plaintiff, resulting in ongoing emotional distress and a pervasive sense of vulnerability. (ECF No. 29). This conduct by Defendants has allegedly created a lasting deterrent effect, effectively preventing Plaintiff from seeking necessary future treatment at these facilities or similar ones. (ECF No. 29). Moreover, the existence and maintenance of false medical records by Defendants have allegedly led to a systematic distrust of the healthcare system, compounding Plaintiff's apprehension and fear of being further misdiagnosed or subjected to retaliatory actions. (ECF No. 29). As a direct result, Plaintiff is now allegedly reluctant to access critical medical care, fearing the continuation of these unlawful practices and the ongoing harm to his health and legal rights. (ECF No. 29). All such damages were further exacerbated and prolonged by the deliberate, coordinated bad faith and conspiracy among Defendants and state actors. (ECF No. 29).

Plaintiff has made repeated, good-faith efforts over the past two years to obtain his complete medical records and an understandable physician explanation of care—efforts that long predate this litigation and reflect a sincere attempt to resolve the matter outside of court. (ECCF Nos. 42,

42-1). Notably, on April 30 and again on May 1, 2025, Plaintiff explicitly extended an additional 14-day window to Defendants to clarify, appear, and address outstanding deficiencies. (ECF Nos. 42, 42-1). These communications, included in the record, demonstrate Plaintiff's efforts to seek non-legal resolution and document the hospital's continued failure to comply with both federal and state patient rights statutes. (ECF Nos. 42, 42-1). These records, along with Defendants' own admissions regarding limited production and refusal to explain the medical screening certificate (see ECF No. 30), reinforce Plaintiff's allegations of deliberate obstruction and bad faith, and further support the plausibility of his claims at this stage. Plaintiff's email correspondence with Defendants' counsel (ECF No. 42-1) further details the specific requests for complete medical records, physician explanations, and institutional policies, and highlights the difficulties encountered in obtaining this information, including counsel citing the pending litigation as a reason for non-compliance and ambiguities regarding proper service methods. (ECF No. 42-1). As of the filing of this opposition on May 19, 2025, Plaintiff has not received a response to the May 1, 2025 email requesting a meeting to review medical records with a physician, demonstrating an ongoing pattern of denying Plaintiff's statutory and regulatory rights to access medical records and explanations, separate from litigation discovery.

## IV. ARGUMENT

### A. Procedural Defenses Lack Merit

#### 1. The Amended Complaint Satisfies Rule 8 and Rule 10

Defendants' characterization of the FAC as a "shotgun pleading" is demonstrably incorrect and ignores the detailed, organized structure of the pleading. The FAC is not a "shotgun pleading" but rather a comprehensive and well-organized complaint that clearly delineates the factual

allegations against each Defendant and the legal claims arising from those allegations. The Third Circuit has recognized that "shotgun pleadings" are those that fail to distinguish between defendants or counts, making it impossible to determine which defendants are responsible for which acts or omissions. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (cited with approval by the Third Circuit). Here, the FAC meticulously identifies each Defendant's role in the alleged misconduct, the specific actions taken by each Defendant, and the legal claims arising from those actions. (ECF No. 29). The FAC includes detailed factual allegations regarding each Defendant's involvement in Plaintiff's involuntary commitment, the denial of his rights, and the subsequent retaliation. (ECF No. 29). These allegations are organized chronologically and by Defendant, allowing the Court and Defendants to clearly understand the nature of the claims against each Defendant. Moreover, the Supreme Court has emphasized that Rule 8 "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. *Twombly*, 550 U.S. at 556. The FAC easily satisfies this standard, providing detailed factual allegations that, if proven, would establish Defendants' liability under the various legal theories asserted. Furthermore, the Third Circuit has consistently held that technical pleading rules should not be applied rigidly, particularly in cases involving pro se litigants. *Erickson*, 551 U.S. at 94; *Haines*, 404 U.S. at 520-21. As the Supreme Court has emphasized, "the primary purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). The FAC clearly satisfies this purpose, providing Defendants with fair notice of the

claims against them and the factual basis for those claims. Defendants' motion to dismiss on Rule 8 and Rule 10 grounds should therefore be denied.

### 2. Plaintiff Satisfied Statutory and Procedural Requirements

Defendants' technical and filing arguments lack merit and should be rejected. Defendants contend that the FAC should be dismissed due to alleged deficiencies in service of process, alleged failure to comply with the affidavit of merit requirement, and other procedural technicalities. These contentions are without merit and should be rejected.

First, with respect to service of process, the FAC alleges that Plaintiff made diligent efforts to effectuate service on all Defendants, including providing an explicit 14-day extension until May 1, 2025, to clarify and cure any issues. (ECF Nos. 42, 42-1). The Third Circuit has recognized that "the rules governing service of process are to be construed liberally to effectuate service if actual notice has been received by the defendant." *Freidman v. Ganassi*, 853 F.2d 207, 209 (3d Cir. 1988). The FAC alleges that all Defendants received actual notice of the lawsuit, as evidenced by their appearance and participation in the litigation. (ECF No. 29). Moreover, Federal Rule of Civil Procedure 4(m) provides that if a defendant is not served within 90 days after the complaint is filed, the court "must extend the time for service for an appropriate period" if the plaintiff shows good cause for the failure. The FAC alleges good cause for any delay in service, including Defendants' alleged obstruction and bad faith. (ECF No. 29, ¶¶ 56-60, 81). The Third Circuit has recognized that a defendant's evasion of service constitutes good cause for extending the time for service. *Pellecchia v. Cnty. of Burlington*, 2022 WL 17667906, at *2 (D.N.J. Dec. 13, 2022). Plaintiff's email correspondence (ECF No. 42-1) documents good faith

attempts to coordinate service with Defendants' counsel and highlights the difficulties encountered, further demonstrating good cause for any delay.

Second, with respect to the affidavit of merit requirement, New Jersey law provides that an affidavit of merit is not required in cases where "the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit." N.J.S.A. 2A:53A-28. The FAC alleges that Defendants failed to provide Plaintiff with complete medical records despite his repeated requests. (ECF No. 29, ¶¶ 71, 97, 103, 107). This allegation, if proven, would exempt Plaintiff from the affidavit of merit requirement. Moreover, as also discussed above, the Third Circuit has recognized that the affidavit of merit requirement is a substantive state law that does not apply in federal court when jurisdiction is based on federal question rather than diversity. *Chamberlain v. Giampapa*, 210 F.3d 154, 158-61 (3d Cir. 2000). The FAC alleges federal question jurisdiction based on Plaintiff's § 1983, ADA, and Rehabilitation Act claims. (ECF No. 29). These federal claims provide an independent basis for jurisdiction, rendering the affidavit of merit requirement inapplicable.

Third, with respect to the statute of limitations, the FAC alleges that Plaintiff's claims are timely, as the events giving rise to the claims occurred on or after March 24, 2023, and the FAC was filed within the applicable limitations period. (ECF No. 29). The Third Circuit has recognized that the statute of limitations for § 1983 claims in New Jersey is two years. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). The FAC alleges that Plaintiff's § 1983 claims were filed within two years of the events giving rise to those claims. (ECF No. 29). The Third Circuit has also recognized that the statute of limitations for ADA and Rehabilitation Act claims

in New Jersey is two years. *Disabled in Action of Pennsylvania v. SEPTA*, 539 F.3d 199, 208 (3d Cir. 2008). The FAC alleges that Plaintiff's ADA and Rehabilitation Act claims were filed within two years of the events giving rise to those claims. (ECF No. 29). New Jersey law provides that the statute of limitations for tort claims is two years. N.J.S.A. 2A:14-2. The FAC alleges that Plaintiff's state law tort claims were filed within two years of the events giving rise to those claims. (ECF No. 29).

Fourth, Defendants' contention that this Court lacks jurisdiction due to Plaintiff's Maryland residency is without merit. Federal courts have subject matter jurisdiction over cases arising under federal law, regardless of the parties' residency. 28 U.S.C. § 1331. The FAC alleges claims under federal law, including § 1983, the ADA, and the Rehabilitation Act, providing a basis for federal question jurisdiction. (ECF No. 29). Moreover, federal courts have supplemental jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The FAC alleges state law claims that arise from the same facts and circumstances as the federal claims, providing a basis for supplemental jurisdiction. (ECF No. 29). With respect to personal jurisdiction, the Supreme Court has recognized that a court may exercise personal jurisdiction over a defendant when the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The FAC alleges that all Defendants have sufficient contacts with New Jersey to support personal jurisdiction, as they reside or conduct business in New Jersey and the events giving rise to the claims occurred in New Jersey. (ECF No. 29). The Supreme Court has also recognized that a state has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by

out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). While Plaintiff is a resident of Maryland, the FAC alleges that the injuries were inflicted by New Jersey actors in New Jersey, giving New Jersey a manifest interest in providing a forum for redressing those injuries. (ECF No. 29). Finally, with respect to venue, federal law provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The FAC alleges that a substantial part of the events or omissions giving rise to the claims occurred in New Jersey, making the venue proper in this district. (ECF No. 29).

For these reasons, Defendants' technical and filing arguments lack merit and should be rejected.

## B. Defendants Acted Under Color of State Law

Defendants' contention that they did not act under color of state law for purposes of § 1983 is contradicted by both the factual allegations in the FAC and binding Third Circuit precedent. The Supreme Court has recognized that private actors may be deemed state actors for purposes of § 1983 when they act in concert with state officials or when their actions are "fairly attributable" to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The Third Circuit has specifically addressed the state action requirement in the context of involuntary commitment in *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 171-72, 174 (3d Cir. 2004). While the court in *Benn* ultimately found that the private hospital in that case was not a state actor, it emphasized that the determination depends on the specific facts of each case, particularly the extent of state involvement in the commitment process. The court noted that state action may be found where private actors "exercise powers that are traditionally the exclusive prerogative of the state" or where there is a "close nexus between the state and the challenged action." *Id.* at 171.

Here, the FAC alleges facts that, if proven, would establish that Defendants acted under color of state law. Specifically, the FAC alleges that:

1. Defendants acted jointly and in concert with state officials, including Monmouth Medical Center's Psychiatric Emergency Screening Service ("PESS") and law enforcement officers Detective Demarco, to effectuate Plaintiff's involuntary commitment (ECF No. 29, ¶¶ 20-27);
2. Defendants utilized state-created procedures and forms to initiate and maintain Plaintiff's involuntary commitment (ECF No. 29, ¶¶ 33-40);
3. Defendants exercised powers traditionally reserved to the state, namely, the power to deprive individuals of their liberty through involuntary commitment (ECF No. 29, ¶¶ 41-45);
4. Defendants' actions were "fairly attributable" to the state, as they were taken pursuant to state law and with the active participation of state officials (ECF No. 29, ¶¶ 56-60);
5. Monmouth Medical Center/PESS is a state-designated emergency screening service for Monmouth County (See RWJBarnabas Health website, NJ Department of Human Services official list), explicitly authorized by the state to perform governmental functions related to involuntary commitment (ECF No. 29). This designation is established by N.J.S.A. 30:4-27.1 et seq. and N.J.A.C. 10:31, with specific authority under N.J.S.A. 30:4-27.5.

These allegations distinguish this case from *Benn*, where the court found insufficient state involvement in the commitment process. Here, by contrast, the FAC alleges a deliberate, coordinated effort and conspiracy between private actors and state officials to deprive Plaintiff of his liberty without due process.

Moreover, the Third Circuit has recognized that private actors may be deemed state actors when they "willfully participate in joint action with the state or its agents." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1255 (3d Cir. 1994).

The FAC alleges precisely such joint action and conspiracy, with Defendants working in concert with state officials notably to effectuate Plaintiff's involuntary commitment and to deny him his constitutional and statutory rights Defendant Theo F. Kalogridis ([ECF No. 26]). The Supreme Court has also recognized that private actors may be deemed state actors when they are "entwined with governmental policies" or when the government "is entwined in [their] management or control." *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295-96 (2001). The FAC alleges such entwinement, with Defendants acting pursuant to state law and in coordination with state officials to implement state policies regarding involuntary commitment. In *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), the Supreme Court held that private parties who conspire with state officials to deprive individuals of their constitutional rights act under color of state law for purposes of § 1983. The FAC alleges such a conspiracy, with Defendants working in concert with state officials to deprive Plaintiff of his constitutional and statutory rights. Finally, the Third Circuit has recognized that private actors may be deemed state actors when they perform functions that are "traditionally the exclusive prerogative of the state." *Kach v. Hose*, 589 F.3d 626, 643-44 (3d Cir. 2009). The power to involuntarily commit individuals is traditionally a state function, and Defendants' exercise of this power, as alleged in the FAC, supports a finding of state action. The state-designated status of Monmouth Medical Center PESS creates a clear nexus that connects all three hospitals in the commitment process: CentraState transferred Plaintiff to Monmouth Medical Center PESS (the state-designated

screener); Monmouth Medical Center PESS, acting under state authority, screened and processed Plaintiff; and Hampton Behavioral received and detained Plaintiff based on the state-designated screener's certification. The actions of PESS (specifically Screener Theo and Dr. Fabian) while performing this state-delegated function, including relying on/perpetuating false information (ECF No. 29, ¶¶ 33-40, 56-60, 61, 63, 81), constitute state action. Even without Officer Demarco's involvement, the state-designated status of Monmouth Medical Center PESS independently satisfies the state action requirement for § 1983 purposes.

For these reasons, the FAC adequately alleges that Defendants acted under color of state law for purposes of § 1983, and Defendants' motion to dismiss on this ground should be denied.

## C. Plaintiff States Valid Claims Under Federal Law

### 1. Fourteenth Amendment (Due Process)

The FAC adequately pleads violations of Plaintiff's Fourteenth Amendment due process rights. The Supreme Court has recognized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). This protection includes both procedural and substantive due process rights.

Procedurally, individuals facing involuntary commitment are entitled to notice, an opportunity to be heard, and other procedural safeguards. *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980). The FAC alleges that Defendants denied Plaintiff these procedural protections by failing to provide him with notice of the basis for his commitment, an opportunity to challenge the commitment, and access to legal counsel. (ECF No. 29, ¶¶ 50-60). The alleged falsification of records and denial

of access to information directly violated the right to be heard and challenge the commitment, which are core components of procedural due process in this context. (*Zinermon v. Burch*, 494 U.S. 113, 131 (1990)). The lack of *accurate* information made the procedural safeguards meaningless.

Substantively, the Supreme Court has held that "a State cannot constitutionally confine without more a non dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." *O'Connor v. Donaldson*, 422 U.S. 563, 575-76 (1975). The FAC alleges that Defendants confined Plaintiff despite the absence of any evidence that he posed a danger to himself or others, and despite his ability to survive safely in freedom. (ECF No. 29, ¶¶ 43, 63). The Third Circuit has recognized that involuntary commitment implicates fundamental liberty interests and that the state must have a compelling interest to justify such commitment. *Benn*, 371 F.3d at 174. The FAC alleges that Defendants lacked any compelling interest to justify Plaintiff's commitment, as he posed no danger to himself or others and was capable of surviving safely in freedom. (ECF No. 29, ¶¶ 43, 63). Moreover, the Third Circuit has held that substantive due process protects against "arbitrary action of government" that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 840, 847 (1998). The FAC alleges conduct that, if proven, would shock the conscience, including the deliberate falsification of medical records, the administration of unnecessary medication, and the coordinated effort to deprive Plaintiff of his liberty without justification. (ECF No. 29, ¶¶ 56-60, 63, 65-66, 81). The FAC also alleges that Defendants' conduct was deliberately indifferent to Plaintiff's constitutional rights, a standard that the Third Circuit has recognized as sufficient to

establish a substantive due process violation in the context of involuntary commitment. *Benn*, 371 F.3d at 174.

The FAC alleges that Defendants knowingly relied on false, inconsistent, and conflicting information to justify Plaintiff's involuntary commitment, in deliberate indifference to his constitutional rights. (ECF No. 29,). The medical records and screening certificates show a clear pattern of omissions and discrepancies: three different screeners—MMC/PESS Defendant Theo F. Kalogridis (MMC PESS), MMC/PESS Defendant Dr. Chris Fabian, and Hampton Behavioral Health Center Defendant Dr. Hodart—each documented materially different rationales for Plaintiff's detention. For example, the initial remote screening certificate by MMC/PESS Defendant Theo F. Kalogridis and Dr. Fabian contained conflicting statements about Plaintiff's suicidal ideation and alleged danger to self or others, which is the required basis for involuntary commitment under N.J.S.A. 30:4-27.2(h). Notably, Dr. Fabian's record denied specific suicidal ideation for the same input cited by MMC/PESS Defendant Theo F. Kalogridis as justification for commitment. The subsequent petition by Dr. Hodart at Hampton Behavioral further shifted the stated basis for detention, relying on prior falsified statements made by Detective Demarco and MMC/PESS Defendant Theo F. Kalogridis

Clinical test results from CentraState Hospital directly contradicted Defendants' claims of drug or medication overuse, as blood and urine screens were negative for misuse and collateral witness statements confirmed proper use as prescribed. (ECF No. 29). Throughout the commitment process, required fields in the screening forms were routinely left as "unspecified," "unknown," or inconsistently described Plaintiff's supposed danger, with varying explanations including "impulse control," "unable to satisfy basic needs," or referencing only charts/records

rather than direct observation. (See ECF Nos. 29, 36). This pervasive lack of factual support, along with contradictory clinical evidence and inconsistent documentation across multiple required forms and screeners, underscores a deliberate pattern of omissions and misrepresentations designed to justify Plaintiff's detention in the absence of any lawful or medical basis. The Plaintiff was within health weight for his height, weight and age and was fully medically cleared. (See ECF Nos. 29)

The medical records contained inconsistent diagnoses, with Plaintiff being diagnosed with F20.0 by Defendant Dr Chris Fabian; (schizophrenia) despite the absence of any symptoms consistent with that diagnosis (ECF No. 29, 122) than later marked as a mistake (ECF No. 26 hampton medical paperwork). There were inconsistent descriptions of Plaintiff's behavior, with some entries suggesting agitation and others suggesting compliance (ECF No. 29). The medical records contained inconsistent justifications for Plaintiff's detention and treatment, with some entries suggesting danger to self or others and others suggesting only a need for further evaluation (ECF No. 29). These inconsistencies, as alleged in the FAC, are not mere clerical errors or differences of professional opinion. Rather, they reflect a deliberate effort to manufacture a justification for Plaintiff's detention and treatment despite the absence of any legitimate medical or legal basis, particularly the lack of clear evidence of *danger to self or others*. (ECF No. 29, ¶¶ 56-60, 81). Specific errors included incorrect weight listed on transfer checklist from Centra State Medical Center listed as 170 kg (~374 lbs) when Plaintiff's actual weight was ~150 lbs (ECF No. 29, 61(a)), a false notation of Plaintiff having dentures (ECF No. 29, 61(b)), incorrect assertion of overusing prescribed medications contradicted by toxicology results (ECF No. 29, 61(c)), medication transfer discrepancies (ECF No. 29, 61(d)), incorrect transfer dates noted in MMC grievance response letters (ECF No. 29, 61(e)),

discrepancy regarding mode of transport (ambulance vs. police) in Hampton records (ECF No. 29, 61(f)), and lack of documented justification for hospitalization in initial Hampton records (ECF No. 29, 61(g)). These charting errors, even the subtle differences between the screener, screening psychiatrist, and certification for temporary hold, establish that Defendants allegedly did not attempt or care to verify the information, suggesting a coordinated effort to cover up misconduct and bad faith. (ECF No. 29, ¶¶ 56-60, 81). This detention was predicated on demonstrably false information and mischaracterizations. (ECF No. 29, ¶¶ 56-60, 81). Defendants then deliberately failed to correct known errors, refused to communicate openly, and suppressed exculpatory information in a manner demonstrating bad faith, collusion, and a coordinated effort to cover up misconduct, resulting in an *unjust* commitment. (ECF No. 29, ¶¶ 56-60, 81). The entire commitment process, from the initial screening based on inconsistent and allegedly false information to the continued detention at Hampton, was rendered unjust by the lack of a proper legal basis (danger to self or others) and the systematic denial of Plaintiff's rights.

For these reasons, the FAC adequately pleads violations of Plaintiff's Fourteenth Amendment due process rights, and Defendants' motion to dismiss on this ground should be denied.

### 2. First Amendment (Retaliation)

The FAC adequately pleads violations of Plaintiff's First Amendment rights, alleging that Defendants at Monmouth Medical Center ("MMC"), CentraState, and Hampton Behavioral Health Center engaged in retaliatory actions in response to Plaintiff's protected speech and advocacy. The Third Circuit has recognized that "retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution." Mirabella v. Villard,

853 F.3d 641, 649 (3d Cir. 2017). To state a First Amendment retaliation claim, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the protected conduct and the retaliatory action. Id.; Borough of Duryea v. Guarnieri, 564 U.S. 379, 387 (2011); Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 615 (1979).

Here, the FAC details Plaintiff's constitutionally protected conduct, including seeking to correct medical records, filing grievances, and advocating for his rights. (ECF No. 29, ¶¶ 71, 97, 103, 107). In direct response to these activities, Defendants Lauren Zalepka (counsel for MMC) and Margaret Nielsen (Director of Risk Management, MMC) issued cease-and-desist letters and filed police reports against Plaintiff ([ECF No. 29], ¶¶ 74–76, 116–117). Defendant Robert Orro of CentraState threatened Plaintiff and his wife with arrest simply for seeking answers at the hospital, issued further cease-and-desist communications, and ceased all contact.

Additionally, Hampton Behavioral Health Center engaged in adverse and retaliatory conduct, including denying Plaintiff access to medical records, failing to provide proper discharge procedures, and neglecting to file an incident report regarding missing medications, even after Plaintiff's formal complaint to patient advocacy representative Jodi Doe ([ECF No. 29]). These actions would deter a person of ordinary firmness from exercising their constitutional rights and occurred in direct retaliation for Plaintiff's exercise of statutory rights to access, amend, and grieve inaccuracies in his medical records and treatment, as protected by the First Amendment, the Health Insurance Portability and Accountability Act ("HIPAA"), 45 C.F.R. § 164.524, and New Jersey law, N.J.A.C. 8:43G-4.1, -4.2, and -15.3. The FAC further establishes a causal link,

as these retaliatory actions were explicitly linked to, and followed immediately after, Plaintiff's protected conduct.

For these reasons, the FAC adequately pleads violations of Plaintiff's First Amendment rights through retaliatory actions, and Defendants' motion to dismiss on this ground should be denied.

### 3. Rehabilitation Act (Section 504)

The FAC adequately pleads violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Section 504 prohibits discrimination against individuals with disabilities in programs or activities receiving federal financial assistance. To state a claim under Section 504, a plaintiff must allege that: (1) he is a "handicapped individual" under the Act, (2) he is "otherwise qualified" for participation in the program or activity at issue, (3) the program or activity receives federal financial assistance, and (4) he was denied the benefits of, or subject to discrimination under, the program or activity. *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1010 (3d Cir. 1995). The FAC alleges that Plaintiff is a "handicapped individual" under the Act due to his alleged mental health condition. (ECF No. 29). The FAC further alleges that Plaintiff was "otherwise qualified" for participation in the programs and activities at issue, namely, the medical and psychiatric services provided by Defendants. (ECF No. 29). The FAC alleges that Defendants' programs and activities receive federal financial assistance, as they accept Medicare and Medicaid payments. (ECF No. 29). The Third Circuit has recognized that acceptance of Medicare and Medicaid payments constitutes receipt of federal financial assistance for purposes of Section 504. *Wagner*, 49 F.3d at 1010; *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Finally, the FAC alleges that Plaintiff was denied the benefits of, and subject to discrimination under, Defendants' programs and activities due to his disability. Specifically, the FAC alleges that Defendants denied Plaintiff access to proper footwear and other essential personal accommodations, despite his

repeated requests. (ECF No. 29, ¶¶ 97, 103). The FAC further alleges that Defendants' denial of Plaintiff's rights was motivated by discriminatory assumptions regarding Plaintiff's mental health status, physical appearance, and demeanor. (ECF No. 29). For example, Defendant Jane Doe of Hampton Behavioral Health Center diagnosed Plaintiff with "delusion" solely because Plaintiff identified himself as an architect despite holding only an associate's degree. (ECF No. 29). Another Scenario MCC/PESS Defendant Screener Theo F. Kalogridis noted Plaintiff had suspected job loss due to drug overuse with no clinical evidence. (ECF No. 26 screener theo documents) The Supreme Court has recognized that Section 504 requires recipients of federal funds to provide "meaningful access" to their programs and activities. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). The FAC alleges that Defendants failed to provide Plaintiff with meaningful access to their programs and activities by denying him essential accommodations and by creating a discriminatory environment that presumed his requests and grievances were not credible due to his psychiatric diagnosis and appearance. (ECF No. 29). The Third Circuit has recognized that Section 504 prohibits not only intentional discrimination but also actions that have a discriminatory effect. *Helen L. v. DiDario*, 46 F.3d 325, 333 (3d Cir. 1995). The FAC alleges that Defendants' actions had a discriminatory effect on Plaintiff, preventing him from accessing necessary accommodations and services. (ECF No. 29, ¶¶ 97, 103).

For these reasons, the FAC adequately pleads violations of Section 504 of the Rehabilitation Act, and Defendants' motion to dismiss on this ground should be denied.

### 4. Americans with Disabilities Act (ADA) Standing

The FAC adequately pleads that Plaintiff has standing to seek injunctive relief under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq. To establish standing for

injunctive relief, a plaintiff must demonstrate a "real and immediate threat" of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). In the context of the ADA, the Third Circuit has recognized that a plaintiff has standing to seek injunctive relief when he or she demonstrates an intent to return to the place where the ADA violation occurred or would occur. *Disabled in Action of Pennsylvania v. Nat'l Passenger R.R. Corp.*, 418 F. Supp. 2d 652, 657 (E.D. Pa. 2005) (citing *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137-38 (9th Cir. 2002)). The FAC alleges that Plaintiff has a continuing need for medical and psychiatric services and that Defendants' facilities are the primary providers of such services in his area. (ECF No. 29). The FAC further alleges that Plaintiff has a reasonable expectation of returning to Defendants' facilities in the future, either voluntarily or involuntarily, due to his ongoing medical and psychiatric needs. (ECF No. 29).

Moreover, the FAC alleges that Defendants maintain policies and practices that discriminate against individuals with mental health conditions, creating a continuing threat of future discrimination against Plaintiff (ECF No. 29). The FAC specifically alleges that Defendants maintain a culture of suspicion and stigmatization that leads to categorical denials of procedural safeguards and basic accommodations to individuals with mental health conditions (ECF No. 29).

The Second Circuit has recognized that a plaintiff has standing to seek injunctive relief under the ADA when he or she faces a "deterrent effect" that prevents the plaintiff from returning to the defendant's facility. Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 188 (2d Cir. 2013). The FAC alleges that Defendants' discriminatory conduct has created a deterrent effect, preventing Plaintiff from seeking necessary medical care at Defendants' facilities due to fear of further discrimination and mistreatment (ECF No. 29).

The Tenth Circuit has similarly recognized that a plaintiff has standing to seek injunctive relief under the ADA when he or she faces a "real and immediate threat" of future discrimination, even if the plaintiff does not intend to return to the defendant's facility. Tandy v. City of Wichita, 380 F.3d 1277, 1283-84 (10th Cir. 2004). The FAC alleges that Plaintiff faces a real and immediate threat of future discrimination by Defendants, as he may need to access their services in the future due to his ongoing medical and psychiatric needs (ECF No. 29).

For these reasons, the FAC adequately pleads that Plaintiff has standing to seek injunctive relief under the ADA, and Defendants' motion to dismiss on this ground should be denied.

## D. Plaintiff States Valid Claims Under State Law

### 1. Medical Malpractice

The FAC adequately pleads claims for medical malpractice under New Jersey law. To state a claim for medical malpractice, a plaintiff must allege: (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. Teilhaber v. Greene, 320 N.J. Super. 453, 463 (App. Div. 1999); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 580–81 (3d Cir. 2003).

Here, the FAC alleges that Defendants, as healthcare providers, owed Plaintiff a duty of care to provide appropriate medical and psychiatric treatment in accordance with professional standards. (ECF No. 29). This duty extended before, during, and after Plaintiff's involuntary commitment, including the obligation to maintain accurate medical records, follow established procedures for

involuntary commitment, ensure timely and proper responses to formal grievances, and provide access to and release of medical information as required by law. (N.J.A.C. 13:35-6.5, 8:43G-4.1).

The FAC further alleges that Defendants breached this duty in several ways, including:

Failing to properly evaluate Plaintiff's condition;

Administering unnecessary and inappropriate medication;

Failing to provide appropriate accommodations for Plaintiff's needs;

Failing to obtain informed consent;

Failing to follow applicable standards and regulations regarding involuntary commitment, patient rights, and medical record-keeping;

Failing to respond to formal grievances and release medical information in a timely and lawful manner. By multiple defendants .(ECF No. 29, ¶¶ 43, 50–60, 63, 65–66, 81, 97, 103).

New Jersey law recognizes that medical malpractice claims may be based on a healthcare provider's failure to obtain informed consent (Matthies v. Mastromonaco, 160 N.J. 26, 35-36 (1999)) and failure to follow applicable standards and regulations (In re Commitment of M.M., 384 N.J. Super. 313, 337 (App. Div. 2006)). The FAC alleges that Defendants' breach of their duty of care caused Plaintiff to suffer harm, including unnecessary detention, inappropriate medication, physical discomfort, and emotional distress. (ECF No. 29). The FAC further alleges that Plaintiff suffered damages as a result of Defendants' malpractice, including loss of liberty, physical and emotional harm, and ongoing difficulties accessing appropriate medical care. (ECF No. 29)

The FAC specifically details a pattern of medical errors and recordkeeping failures, including:

Inconsistent diagnoses, such as Plaintiff being diagnosed with F20.0 schizophrenia by MMC Defendant Dr. Chris Fabian despite the absence of any supporting symptoms (ECF No. 29, 122), later acknowledged as a mistake in Hampton Defendant Anita Guinita marking the records as a mistake and updating them records (ECF No. 26);

Contradictory descriptions of Plaintiff's behavior, with some entries suggesting agitation and others compliance (ECF No. 29); Inconsistent and manufactured justifications for detention and treatment—some entries cite danger to self or others, others merely note a need for further evaluation, despite the statutory requirement for clear evidence of danger under N.J.S.A. 30:4-27.2(h) (ECF No. 29, ¶¶ 56–60, 81); Charting and factual errors including:
Incorrect weight listed as 170 kg (~374 lbs) when Plaintiff's actual weight was ~150 lbs (ECF No. 29,  61(a)); False notation of Plaintiff having dentures (ECF No. 29,  61(b)); Incorrect assertions of overusing prescribed medications, refuted by toxicology results (ECF No. 29,  61(c)); Medication transfer discrepancies (ECF No. 29,  61(d)); Incorrect transfer dates noted in MMC grievance response letters (ECF No. 29,  61(e)); Discrepancy regarding mode of transport (ambulance vs. police) in Hampton records (ECF No. 29,  61(f)); Lack of documented justification for hospitalization in initial Hampton records (ECF No. 29,  61(g)).

These inconsistencies, as alleged in the FAC, are not mere clerical errors or differences of professional opinion. Rather, they reflect a deliberate effort to manufacture a justification for Plaintiff's detention and treatment despite the absence of any legitimate medical or legal basis, particularly the lack of clear evidence of danger to self or others. (ECF No. 29, ¶¶ 56-60, 81). Defendants failed to correct known errors, refused to communicate openly with Plaintiff or his

representatives, and suppressed exculpatory information, further demonstrating bad faith, collusion, and a coordinated effort to conceal misconduct, resulting in an unjust commitment.

As a direct and proximate result of these breaches, Plaintiff suffered harm including unnecessary detention, inappropriate medication, physical discomfort, emotional distress, loss of liberty, and ongoing difficulties accessing appropriate medical care. (ECF No. 29).

While Defendants, including MMC, may note that N.J.S.A. 2A:53A-27 requires an affidavit of merit in medical malpractice cases, this requirement is procedural, not substantive, and does not affect the sufficiency of the pleadings at the motion to dismiss stage. Chamberlain v. Giampapa, 210 F.3d 154, 158–61 (3d Cir. 2000). Even if applicable, the statute provides a 60-day period after the filing of the answer to provide the affidavit, and thus is not grounds for dismissal at this stage. N.J.S.A. 2A:53A-27.

For these reasons, the FAC adequately pleads claims for medical malpractice under New Jersey law, and Defendants' motion to dismiss on this ground should be denied.

### 2. Falsification of Medical Records / Fraud

The FAC adequately pleads claims for falsification of medical records under both federal and state law. Under federal law, the Health Insurance Portability and Accountability Act (HIPAA) and its implementing regulations establish standards for the accuracy and integrity of medical records. 45 C.F.R. § 164.524 (providing individuals with the right to amend inaccurate or incomplete protected health information).

The FAC alleges that Defendants deliberately falsified Plaintiff's medical records by including inaccurate and misleading information about his condition, behavior, and treatment. (ECF No. 29, ¶¶ 56-60, 81). The FAC further alleges that Defendants refused to correct these inaccuracies despite Plaintiff's repeated requests, in violation of his rights under HIPAA. (ECF No. 29, ¶¶ 71, 97, 103, 107). Under New Jersey law, healthcare providers have a duty to maintain accurate and complete medical records. N.J.A.C. 13:35-6.5 (establishing standards for medical records). The FAC alleges that Defendants violated this duty by deliberately falsifying Plaintiff's medical records and by refusing to correct known inaccuracies. (ECF No. 29, ¶¶ 56-60, 81). The FAC also alleges that Defendants' falsification of medical records constitutes fraud under New Jersey law. To state a claim for fraud under New Jersey law, a plaintiff must allege: (1) a material misrepresentation of a presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) an intention that the other person rely on it, (4) reasonable reliance thereon by the other person, and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). The FAC alleges that Defendants made material misrepresentations in Plaintiff's medical records regarding his condition, behavior, and treatment. (ECF No. 29, ¶¶ 56-60, 81). The FAC further alleges that Defendants knew these representations were false, as they were directly contradicted by the actual facts and circumstances of Plaintiff's case. (ECF No. 29, ¶¶ 56-60, 81). The FAC alleges that Defendants intended for others to rely on these false representations, including other healthcare providers, insurance companies, and legal authorities. (ECF No. 29). The FAC further alleges that others did reasonably rely on these false representations, resulting in Plaintiff's continued detention and mistreatment. (ECF No. 29). Finally, the FAC alleges that Plaintiff suffered damages as a result of Defendants' falsification of his medical records,

including loss of liberty, emotional distress, and ongoing harm to his reputation and ability to access appropriate medical care. (ECF No. 29).

For these reasons, the FAC adequately pleads claims for falsification of medical records under both federal and state law, and Defendants' motion to dismiss on this ground should be denied.

### 3. Patient Rights (N.J.A.C. 8:43G-4.1)

The FAC adequately pleads violations of New Jersey's Patient Rights regulations, N.J.A.C. 8:43G-4.1. These regulations establish a comprehensive set of rights for patients in New Jersey hospitals, including the right to receive an understandable explanation of their condition and treatment, the right to participate in their care and treatment planning, and the right to be free from mental and physical abuse. N.J.A.C. 8:43G-4.1(a). The FAC alleges that Defendants violated Plaintiff's rights under these regulations by failing to provide him with an understandable explanation of his condition and treatment (ECF No. 29, ¶¶ 50-60), denying him the opportunity to participate in his care and treatment planning (ECF No. 29, ¶¶ 41-45, 63, 65-66), failing to provide information for informed consent (ECF No. 29, ¶¶ 50-60), denying access to medical records and explanations (ECF No. 29, ¶¶ 71, 97, 103, 107), subjecting him to unnecessary detention and medication (ECF No. 29, ¶¶ 41-45, 63, 65-66, 97, 103), and refusing to address his grievances (ECF No. 29, ¶¶ 71, 97, 103, 107). New Jersey courts have recognized that violations of administrative regulations can support claims for negligence per se. *Alloway v. Bradlees, Inc.*, 157 N.J. 221, 236 (1999)). These violations, when combined with other allegations, support Plaintiff's claims for medical malpractice and violations of his constitutional and statutory rights. Furthermore, Plaintiff's continued efforts to obtain medical records and physician explanations, including the May 1, 2025 email to Defendants' counsel (ECF No. 42-1)

to which no response was received within 14 days, demonstrate an *ongoing* pattern of denying Plaintiff's statutory and regulatory rights to access medical records and explanations, separate from litigation discovery. This ongoing denial of access to information and refusal to address grievances is a direct violation of N.J.A.C. 8:43G-4.1 and 45 C.F.R. § 164.524.

For these reasons, the FAC adequately pleads violations of New Jersey's Patient Rights regulations, and Defendants' motion to dismiss on this ground should be denied.

### E. Defendants Are Not Entitled to Immunity

Defendants' contention that they are entitled to immunity is without merit. Defendants assert various forms of immunity, including qualified immunity, statutory immunity, and common law immunity. These assertions are without merit and should be rejected.

Private entities like Hampton and Monmouth Medical Center are not entitled to qualified immunity. Richardson v. McKnight, 521 U.S. 399, 412 (1997) (holding that private prison guards are not entitled to qualified immunity); Jensen v. Lane County, 222 F.3d 570, 580 (9th Cir. 2000) (extending Richardson to private healthcare providers).With respect to qualified immunity, the Supreme Court has recognized that qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, qualified immunity is not available to private actors, even when they act under color of state law for purposes of § 1983. *Richardson v. McKnight*, 521 U.S. 399, 412 (1997); *Jensen v. Lane County*, 222 F.3d 570, 580 (9th Cir. 2000). The FAC alleges that

Defendants are private actors, not government officials, and therefore are not entitled to qualified immunity. (ECF No. 29). Even if Defendants were entitled to assert qualified immunity, the FAC alleges conduct that violates clearly established statutory and constitutional rights of which a reasonable person would have known, including the right to be free from unjustified involuntary commitment, the right to procedural and substantive due process, and the right to be free from discrimination based on disability. (ECF No. 29, ¶¶ 50-60, 56-60, 81).

Second, with respect to statutory immunity, New Jersey law provides limited immunity for individuals involved in the involuntary commitment process. N.J.S.A. 30:4-27.7. However, this immunity does not extend to conduct that constitutes "gross negligence, recklessness, or willful misconduct." *In re Commitment of Raymond S.*, 263 N.J. Super. 428, 431 (App. Div. 1993). The FAC alleges conduct that, if proven, would constitute gross negligence, recklessness, or willful misconduct, including the deliberate falsification of medical records, the administration of unnecessary medication, and the coordinated effort to deprive Plaintiff of his liberty without justification. (ECF No. 29, ¶¶ 56-60, 63, 65-66, 81). These allegations, if proven, would preclude statutory immunity.

Third, with respect to common law immunity, New Jersey recognizes various forms of common law immunity, including good faith immunity and discretionary immunity. However, these immunities do not extend to conduct that is undertaken in bad faith or that constitutes an abuse of discretion. *Fielder v. Stonack*, 141 N.J. 101, 132 (1995). The FAC alleges conduct that, if proven, would demonstrate bad faith and abuse of discretion, including the deliberate falsification of medical records, the administration of unnecessary medication, and the coordinated effort to

deprive Plaintiff of his liberty without justification. (ECF No. 29, ¶¶ 56-60, 63, 65-66, 81). These allegations, if proven, would preclude common law immunity.

Fourth, Defendants are not entitled to immunity under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., because they are private entities, not public entities or employees. *Marley v. Borough of Palmyra*, 193 N.J. Super. 271, 294-95 (Law Div. 1983); *Gomes v. County of Monmouth*, 2023 WL 4579884, at *3 (D.N.J. July 18, 2023).

Fifth, the Charitable Immunity Act, N.J.S.A. 2A:53A-7, provides immunity to non-profit entities for negligence, but this immunity does not extend to claims of gross negligence or willful/wanton misconduct. *Hardwicke v. American Boychoir School*, 188 N.J. 69, 98 (2006). The FAC alleges conduct that, if proven, would constitute gross negligence or willful/wanton misconduct, precluding charitable immunity.

Moreover, the Supreme Court has recognized that immunities available under state law do not necessarily apply to federal claims. *Howlett v. Rose*, 496 U.S. 356, 375 (1990). The FAC alleges federal claims under § 1983, the ADA, and the Rehabilitation Act, which are not subject to state law immunities. (ECF No. 29).

For these reasons, Defendants are not entitled to immunity, and their motion to dismiss on this ground should be denied.

F. Plaintiff Has Alleged Actual and Punitive Damages

The FAC adequately pleads actual damages suffered by Plaintiff as a result of Defendants' alleged misconduct. The FAC alleges that Plaintiff suffered severe loss of liberty, emotional and mental distress, professional harm, and ongoing deprivation of legal and medical rights. (ECF No. 29). The Third Circuit has recognized that damages for emotional distress are recoverable in § 1983 actions. *Bolden v. Southeastern Pennsylvania Transp. Authority*, 21 F.3d 29, 34 (3d Cir. 1994). The FAC alleges that Plaintiff suffered emotional distress as a result of Defendants' violations of his constitutional and statutory rights. (ECF No. 29). The Third Circuit has also recognized that damages for loss of liberty are recoverable in § 1983 actions. *Sample v. Diecks*, 885 F.2d 1099, 1112 (3d Cir. 1989). The FAC alleges that Plaintiff suffered loss of liberty as a result of his unlawful detention by Defendants. (ECF No. 29, ¶¶ 41-45). The Third Circuit has further recognized that damages for professional harm are recoverable in § 1983 actions. *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000). The FAC alleges that Plaintiff suffered professional harm as a result of Defendants' violations of his constitutional and statutory rights. (ECF No. 29). New Jersey law recognizes that damages for emotional distress are recoverable in tort actions. *Gennari*, 148 N.J. at 610. The FAC alleges that Plaintiff suffered emotional distress as a result of Defendants' tortious conduct. (ECF No. 29). New Jersey law also recognizes that damages for loss of liberty are recoverable in false imprisonment actions. *Earl v. Winne*, 14 N.J. 119, 128-29 (1953). The FAC alleges that Plaintiff suffered loss of liberty as a result of his unlawful detention by Defendants. (ECF No. 29, ¶¶ 41-45). The FAC also alleges medical expenses as a result of Defendants' conduct, which are compensable damages. (*Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)). The FAC alleges harm to reputation, which is compensable under

§1983 when accompanied by other tangible loss. (*Paul v. Davis*, 424 U.S. 693, 701 (1976)). The FAC alleges physical harm as a result of unnecessary medication, which is a recognized form of actual damage. (*Carey*, 435 U.S. at 257-58).

The FAC adequately pleads entitlement to punitive damages under both federal and state law. Under federal law, punitive damages are available in § 1983 actions when the defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The FAC alleges conduct that, if proven, would demonstrate evil motive or intent and reckless or callous indifference to Plaintiff's federally protected rights. Specifically, the FAC alleges that Defendants engaged in a deliberate, coordinated campaign of bad faith, including falsification, concealment, and obstruction, to unlawfully detain Plaintiff and deprive him of his constitutional and statutory rights. (ECF No. 29, ¶¶ 56-60, 81). The FAC further alleges that Defendants acted with knowledge of the falsity of the information used to justify Plaintiff's detention and with the intent to deprive him of his liberty without justification. (ECF No. 29, ¶¶ 56-60, 81). Under New Jersey law, punitive damages are available when the defendant's conduct is "wantonly reckless or malicious." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49 (1984). The FAC alleges conduct that, if proven, would demonstrate wanton recklessness or malice. Specifically, the FAC alleges that Defendants deliberately falsified medical records, administered unnecessary medication, and engaged in a coordinated effort to deprive Plaintiff of his liberty without justification. (ECF No. 29, ¶¶ 56-60, 63, 65-66, 81). The FAC also alleges that Defendants' conduct was motivated by a discriminatory animus against individuals with mental health conditions, as evidenced by their categorical denials of procedural safeguards and basic

accommodations to Plaintiff based on his psychiatric diagnosis and appearance. (ECF No. 29). Such discriminatory animus, if proven, would support an award of punitive damages under both federal and state law. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536-37 (1999); *Leimgruber v. Claridge Assocs., Ltd.*, 73 N.J. 450, 454 (1977).

For these reasons, the FAC adequately pleads entitlement to punitive damages, and Defendants' motion to dismiss on this ground should be denied.

### G. Monell Liability Against Institutional Defendants

The FAC adequately pleads facts sufficient to establish municipal or corporate liability against the institutional Defendants (CentraState, Monmouth Medical, Hampton Behavioral). The FAC alleges that the institutional Defendants are liable for the actions of their employees/agents and/or maintained policies or customs that resulted in the alleged violations. (ECF No. 29, 82). A municipality or other local government unit is a "person" for purposes of § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Institutional liability under §1983 can be established by demonstrating that the constitutional violation was caused by the entity's official policy or custom. *Id.* at 694. A policy or custom can be shown through an official proclamation, a widespread practice that is so permanent and well settled as to constitute a custom, or the decision of a municipal policymaker. *Id.* at 690-91. The FAC alleges a pattern of conduct, including systemic failures in record keeping, denial of patient rights and access to information, and retaliation, which, if proven, could constitute a widespread practice or de facto policy of the institutional Defendants. (ECF No. 29, ¶¶ 56-60, 81, 82, 97, 103, 107). These

allegations are sufficient to state a plausible claim for institutional liability at the motion to dismiss stage.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss should be denied in their entirety. The FAC, when liberally construed as required for pro se pleadings, states plausible claims for violations of Plaintiff's constitutional and statutory rights. Defendants' arguments to the contrary either mischaracterize the FAC or impose pleading standards that exceed what is required at this stage, particularly for a pro se plaintiff. Should the Court find any technical pleading deficiencies, Plaintiff respectfully requests leave to file a further amended complaint to cure such defects, rather than suffer dismissal, especially dismissal with prejudice, recognizing the Court's obligation to construe pro se pleadings liberally and the potential for technical errors in such filings.

Respectfully submitted,

*Bradley Clonan, Pro Se*

*2604 W Rhododendron Drive*

*Abingdon, Maryland 21009*

*732-476-9555*

**APPENDIX: DOCKET AND EXHIBIT TABLE**

| ECF No. | Description | Filing Date | Pages/Paragraphs Referenced in Brief | Relevant Content/Notes (What to look for) |
|---|---|---|---|---|
| 29 | First Amended Complaint | 04/08/2025 | ¶¶ 1-133 | Contains the core factual allegations, claims for relief, and identifies defendants. Look for specific paragraphs cited in the brief for details on events, actions, damages. |
| 30 | Letter from Robert Orro (CentraState Security) | 04/10/2025 | Referenced | Contains the letter from Robert Orro prohibiting entry/contact, referenced as evidence of communication obstacles and alleged retaliation. |
| 33 | Hampton Motion to Dismiss & Brief | 04/28/2025 | Referenced | This is the Motion to Dismiss filed by Hampton Behavioral Health Center and their supporting brief. Review to understand their specific arguments for dismissal. |
| 35 | MMC Motion to Dismiss & Brief | 04/28/2025 | Referenced | This is the Motion to Dismiss filed by Monmouth Medical Center/PESS and |

| ECF No. | Description | Filing Date | Pages/Paragraphs Referenced in Brief | Relevant Content/Notes (What to look for) |
|---|---|---|---|---|
| | | | | their supporting brief. Review to understand their specific arguments for dismissal. |
| 41 | Text Order (Judge Kirsch) | 05/05/2025 | Referenced | This is the Court's order reopening the case, setting the opposition deadline, and noting previous filings were not proper oppositions. |
| 42 | Statement: Records/Service Efforts | 05/05/2025 | Referenced | Documents good-faith efforts to obtain medical records and explanations, referenced as evidence of good-faith attempts and ongoing denial of rights. |
| 42-1 | Email/Document Exhibit Compilation | 05/05/2025 | Referenced | Documents good-faith efforts, communication with counsel, servicechallenges, and ongoing denial of rights (including the May 1, 2025 email). |

| ECF No. | Description | Filing Date | Pages/Paragraphs Referenced in Brief | Relevant Content/Notes (What to look for) |
|---|---|---|---|---|
| 30 | Letter from BRADLEY CLONAN regarding ongoing breach by multiple hospitals. | 05/05/2025 | Referenced | Documents good-faith efforts, communication with counsel, service challenges, and ongoing denial of rights. |
| 36 | Exhibit(s) | | | Sealed documents and exhibits including but not limited to Centrastate initial screening certificate.Hampton Behavioral Medical Records, MMC/PESS Screening Certificate |