# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY (TRENTON)

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

**CASE NO.: 3:24-cv-11399-RK-RLS**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT

II.  FACTUAL BACKGROUND

III. LEGAL STANDARD

IV. ARGUMENT

  A. This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims (Rule 12(b)(1))

   1. Federal Question Jurisdiction Is Properly Established

   2. Diversity Jurisdiction Is Properly Established

   3. Supplemental Jurisdiction Over State Law Claims Is Appropriate

  B. Service of Process Was Proper and Sufficient (Rule 12(b)(5))

   1. Plaintiff Made Good Faith Efforts to Serve All Defendants

   2. Any Technical Deficiencies in Service Should Be Excused

   3. Defendants Had Actual Notice of the Lawsuit

  C. Plaintiff's Complaint States Valid Claims Upon Which Relief Can Be Granted (Rule 12(b)(6))

   1. Plaintiff Has Adequately Pled Constitutional Violations Under 42 U.S.C. § 1983

   2. Plaintiff Has Adequately Pled Claims Under the Americans with Disabilities Act

   3. Plaintiff Has Adequately Pled Claims Under the Patient Self-Determination Act

   4. Plaintiff Has Adequately Pled State Law Claims

D. In the Alternative, Plaintiff Should Be Granted Leave to Amend

V. CONCLUSION

## TABLE OF AUTHORITIES

### Cases

*Monroe v. Pape*, 365 U.S. 167 (1961)

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)

### Statutes

28 U.S.C. § 1331

28 U.S.C. § 1332

28 U.S.C. § 1343

28 U.S.C. § 1367

28 U.S.C. § 1391

42 U.S.C. § 1983

### Rules

Fed. R. Civ. P. 4

Fed. R. Civ. P. 12(b)(1)

Fed. R. Civ. P. 12(b)(5)

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(g)

Fed. R. Civ. P. 12(h)

Fed. R. Civ. P. 15

Local Rules of the U.S. District Court for the District of New Jersey

---

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff respectfully submits this consolidated opposition to the Motions to Dismiss filed by Defendants Dr. Michael Houdart, Dr. Atta-Ur Rehman, Anita Giunta, Jodi Sgouros, Hampton Behavioral Health Center, CentraState Healthcare System/Atlantic Health System, Marie Levasseur, Tracey Deaner, Marie Carmel Carree-Lee, Cheryl Craig, Robert Orro, Lauren Richard, Lynda McDonald, Jordan White, and Lori Conrad (collectively, "Defendants") on May 27, 2025.

This case arises from the unlawful detention, involuntary commitment, and mistreatment of Plaintiff at multiple healthcare facilities, in violation of Plaintiff's constitutional rights, federal statutes, and state law. Defendants' motions to dismiss should be denied in their entirety because: (1) this Court has proper subject matter jurisdiction over all claims; (2) Plaintiff properly served all Defendants in accordance with the Federal Rules of Civil Procedure; and (3) Plaintiff's First Amended Complaint ("FAC") contains well-pleaded factual allegations that, when accepted as true, state plausible claims for relief against all Defendants.

As detailed below, Plaintiff has adequately alleged that Defendants violated Plaintiff's constitutional and statutory rights when they involuntarily detained Plaintiff despite medical clearance for discharge, subjected Plaintiff to improper screening procedures based solely on hearsay without clinical evidence, committed Plaintiff without proper examination, maintained grossly inconsistent medical records, failed to provide required patient rights information, obstructed grievances, and engaged in retaliatory conduct. These allegations, supported by specific factual assertions in the FAC, are more than sufficient to withstand dismissal at this preliminary stage of the proceedings.

## II. FACTUAL BACKGROUND

Plaintiff's First Amended Complaint sets forth detailed factual allegations that, when accepted as true for purposes of these motions, establish the following narrative:

Plaintiff voluntarily sought care at CentraState Healthcare System and was medically cleared for discharge. (FAC ¶¶ 43, 45, 47). Despite this medical clearance, Plaintiff was involuntarily detained, placed in isolation, and denied communication with the outside world. (FAC ¶¶ 47-52). Plaintiff was then subjected to a flawed screening process conducted by Monmouth/PESS, which was based solely on hearsay information provided by an individual named Demarco, without any clinical evidence indicating that Plaintiff posed a danger to self or others. (FAC ¶¶ 56, 60).

Subsequently, Dr. Fabian committed Plaintiff without conducting a proper examination. (FAC ¶ 63). Plaintiff was then transferred to Hampton Behavioral Health Center, where medical records from all facilities were found to be grossly inconsistent with reality—for example, listing Plaintiff's weight as 374 pounds and noting the presence of dentures, both of which contradicted actual facts. (FAC ¶ 61; Supp. p. 14).

While at Hampton, Dr. Houdart acknowledged that Plaintiff's commitment was a "mistake," yet Plaintiff's detention continued. (FAC ¶¶ 68-69). Throughout this ordeal, Plaintiff was never provided with the New Jersey Patients' Bill of Rights or given an opportunity to file grievances. (FAC ¶ 61). Additionally, Plaintiff's medication was lost, a fact that was covered up by Defendants Jodi Doe and Margaret Nelson. Plaintiff's attempts to file grievances were obstructed, records were withheld, and Plaintiff received threats of prosecution from Defendant Zalepka and was subjected to a retaliatory ban by Defendant Orro. (FAC ¶¶ 74; ECF 42, Ex. B). These actions resulted in ongoing harm and denial of Plaintiff's rights. (FAC ¶¶ 70-74).

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. When evaluating a motion to dismiss, the Court must accept all well-pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.

For a Rule 12(b)(1) motion challenging subject matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. However, the standard is similar to that of Rule 12(b)(6) in that the Court must accept all material allegations in the complaint as true and construe them in the light most favorable to the plaintiff.

For a Rule 12(b)(5) motion challenging the sufficiency of service of process, the plaintiff bears the burden of establishing that service was proper. However, technical defects in service do not justify dismissal where the defendant received actual notice, the defendant was not prejudiced by the technical defect, and there is a justifiable excuse for the failure to serve properly.

## IV. ARGUMENT

### A. This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims (Rule 12(b)(1))

*1. Federal Question Jurisdiction Is Properly Established*

This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff's claims arise under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Patient Self-Determination Act—all federal laws that provide this Court with federal question jurisdiction.

Specifically, Plaintiff has alleged violations of constitutional rights protected by the Fourth, Fifth, and Fourteenth Amendments, including the right to be free from unreasonable seizure, the right to due process, and the right to equal protection under the law. These claims are properly brought under 42 U.S.C. § 1983, which provides a cause of action against persons who, acting under color of state law, deprive individuals of rights secured by the Constitution or federal laws.

As the Supreme Court established in *Monroe v. Pape*, 365 U.S. 167 (1961), Section 1983 provides a federal remedy for constitutional violations that is independent of any state-level protections, even when state remedies are available. The Court held that the federal remedy "is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Id. at 183. This principle applies directly to Plaintiff's claims, which allege constitutional violations by Defendants acting under color of state law.

Furthermore, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipal entities can be held liable under Section 1983 when an official policy or widespread custom causes a constitutional violation. Plaintiff has adequately alleged that the institutional Defendants maintained policies or customs that led to the violations of Plaintiff's constitutional rights, thereby establishing a proper basis for federal question jurisdiction over these claims.

*2. Diversity Jurisdiction Is Properly Established*

In addition to federal question jurisdiction, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where the amount in controversy

exceeds $75,000 and the action is between citizens of different states. Both requirements are satisfied here.

First, Plaintiff has alleged damages in excess of $18,000,000, which clearly exceeds the $75,000 threshold required for diversity jurisdiction. These damages include compensation for loss of liberty, emotional distress, psychological harm, damage to reputation, professional and career damages, loss of income, and loss of enjoyment of life.

Second, complete diversity exists between Plaintiff and all Defendants. Plaintiff is a citizen of a different state than each of the Defendants, satisfying the diversity requirement of 28 U.S.C. § 1332.

*3. Supplemental Jurisdiction Over State Law Claims Is Appropriate*

To the extent that any of Plaintiff's claims arise under state law, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367. Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Here, Plaintiff's state law claims arise from the same common nucleus of operative facts as the federal claims—namely, Plaintiff's involuntary detention, commitment, and treatment at the Defendant facilities. These state law claims are so intertwined with the federal claims that they form part of the same case or controversy, making supplemental jurisdiction appropriate.

**B. Service of Process Was Proper and Sufficient (Rule 12(b)(5))**

*1. Plaintiff Made Good Faith Efforts to Serve All Defendants*

Plaintiff has made good faith, diligent efforts to serve all Defendants as required by Federal Rule of Civil Procedure 4. Between April and May 2024, Plaintiff promptly attempted to serve each Defendant at the official addresses provided on the summonses and followed instructions given by Defendants and their general counsel.

For the institutional Defendants—CentraState, Monmouth Medical Center/PESS, and Hampton Behavioral Health Center—Plaintiff mailed process to hospital administrative and legal offices as instructed. This is evidenced by emails dated April 5, 2024, April 7, 2024, and April 11, 2024, which are part of the record at ECF 30-2.

For the individual Defendants, Plaintiff attempted hand delivery as directed by hospital counsel or as specified in the institutional Defendants' responses. These attempts occurred between April 7, 2024, and May 3, 2024, as documented in ECF 30-2.

*2. Any Technical Deficiencies in Service Should Be Excused*

To the extent that there may have been any technical deficiencies in service, they should be excused because: (1) Defendants had actual notice of the lawsuit; (2) Defendants have not been prejudiced by any technical defect in service; and (3) there is a justifiable excuse for any failure to serve properly.

The record shows that several Defendants switched attorneys without notice, causing confusion over the proper addresses for service. Defense counsel often failed to confirm whom they represented despite repeated emails from Plaintiff seeking clarification. Any delay in service was due to Defendants' shifting instructions—not Plaintiff's lack of diligence.

Under these circumstances, it would be unjust to dismiss the case based on technical deficiencies in service that were caused, at least in part, by Defendants' own conduct. Courts have consistently held that the rules governing service of process should be construed liberally to effectuate service where actual notice has been received by the defendant. The purpose of service is to give notice to the defendant of the pendency of the action, and that purpose has been fulfilled here.

*3. Defendants Had Actual Notice of the Lawsuit*

It is undisputed that all Defendants had actual notice of this lawsuit. They have appeared through counsel and filed motions to dismiss, demonstrating their awareness of the proceedings. The Supreme Court has recognized that the rules regarding service of process should not be applied in a manner that would elevate form over substance when the defendant has actual notice of the lawsuit.

Given that all Defendants had actual notice of the lawsuit and have not been prejudiced in their ability to defend themselves, any technical deficiencies in service should be excused, and Defendants' motions to dismiss under Rule 12(b)(5) should be denied.

**C. Plaintiff's Complaint States Valid Claims Upon Which Relief Can Be Granted (Rule 12(b)(6))**

*1. Plaintiff Has Adequately Pled Constitutional Violations Under 42 U.S.C. § 1983*

Plaintiff has adequately alleged violations of constitutional rights under 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must allege: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law.

Plaintiff has alleged violations of the Fourth Amendment right to be free from unreasonable seizure. Specifically, Plaintiff alleges being involuntarily detained despite being medically cleared for discharge (FAC ¶¶ 43, 45, 47), placed in isolation, and denied communication with the outside world (FAC ¶¶ 47-52). These allegations, if proven, would establish a violation of Plaintiff's Fourth Amendment rights.

Plaintiff has also alleged violations of the Fourteenth Amendment right to due process. Plaintiff alleges being subjected to a flawed screening process based solely on hearsay without clinical evidence (FAC ¶¶ 56, 60), being committed without a proper examination (FAC ¶ 63), and being detained even after Dr. Houdart acknowledged that the commitment was a "mistake" (FAC ¶¶ 68-69). These allegations, if proven, would establish a violation of Plaintiff's due process rights.

Furthermore, Plaintiff has adequately alleged that Defendants acted under color of state law. The institutional Defendants are healthcare facilities that perform functions traditionally within the exclusive prerogative of the state, particularly with respect to involuntary commitment procedures. The individual Defendants, as employees or agents of these institutions, were acting

under color of state law when they participated in the involuntary detention and commitment of Plaintiff.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipal entities can be held liable under Section 1983 when an official policy or widespread custom causes a constitutional violation. Plaintiff has adequately alleged that the institutional Defendants maintained policies or customs that led to the violations of Plaintiff's constitutional rights, including policies related to involuntary commitment, patient rights, and grievance procedures.

*2. Plaintiff Has Adequately Pled Claims Under the Americans with Disabilities Act*

Plaintiff has adequately alleged violations of the Americans with Disabilities Act (ADA). To state a claim under the ADA, a plaintiff must allege: (1) that they are a qualified individual with a disability; (2) that they were excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or were otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of their disability.

Plaintiff has alleged being treated differently and subjected to involuntary commitment based on perceived mental health conditions, which constitute disabilities under the ADA. Plaintiff alleges being denied proper medical care, being subjected to improper screening and commitment procedures, and being denied the opportunity to file grievances or access patient rights information. These allegations, if proven, would establish violations of the ADA.

*3. Plaintiff Has Adequately Pled Claims Under the Patient Self-Determination Act*

Plaintiff has adequately alleged violations of the Patient Self-Determination Act (PSDA). The PSDA requires healthcare providers to inform patients of their rights under state law to make decisions concerning their medical care, including the right to accept or refuse treatment and the right to formulate advance directives.

Plaintiff alleges never being given the New Jersey Patients' Bill of Rights or an opportunity to file grievances (FAC ¶ 61). Plaintiff also alleges being subjected to treatment without proper consent and being denied the opportunity to refuse treatment. These allegations, if proven, would establish violations of the PSDA.

*4. Plaintiff Has Adequately Pled State Law Claims*

Plaintiff has also adequately alleged various state law claims, including false imprisonment, medical malpractice, negligence, and intentional infliction of emotional distress. These claims are supported by the same factual allegations that support the federal claims, including the involuntary detention despite medical clearance for discharge, the flawed screening and commitment procedures, the grossly inconsistent medical records, and the ongoing mistreatment.

For each of these state law claims, Plaintiff has alleged the essential elements required under New Jersey law. For example, for false imprisonment, Plaintiff has alleged an unlawful detention against Plaintiff's will, which is supported by the allegations of involuntary detention despite medical clearance for discharge. For medical malpractice, Plaintiff has alleged a breach of the standard of care by the healthcare provider Defendants, which is supported by the allegations of

improper screening, commitment without proper examination, and grossly inconsistent medical records.

### D. In the Alternative, Plaintiff Should Be Granted Leave to Amend

If the Court determines that any aspect of Plaintiff's complaint is deficient, Plaintiff respectfully requests leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), which provides that "the court should freely give leave when justice so requires."

The Supreme Court has held that this rule should be interpreted liberally, and leave to amend should be granted in the absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of amendment.

Here, there is no evidence of undue delay, bad faith, or dilatory motive on Plaintiff's part. This would be Plaintiff's first opportunity to amend the complaint in response to Defendants' motions to dismiss, and Plaintiff would use this opportunity to provide additional clarifications, improved details, and a more structured presentation of the claims using the IRAC (Issue, Rule, Application, Conclusion) format. These amendments would not be futile, as they would address any deficiencies identified by the Court and strengthen the legal and factual bases for Plaintiff's claims.

Furthermore, granting leave to amend would not cause undue prejudice to Defendants, as this case is still in its early stages, and Defendants would have a full opportunity to respond to the amended complaint.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' motions to dismiss in their entirety. Plaintiff has established that this Court has subject matter jurisdiction over all claims, that service of process was proper and sufficient, and that the complaint states valid claims upon which relief can be granted. In the alternative, if the Court identifies any deficiencies in the complaint, Plaintiff requests leave to amend to address those deficiencies.

Plaintiff also requests oral argument on these motions, as oral argument would assist the Court in understanding the complex factual and legal issues presented in this case.

Respectfully submitted,

Dated: June 30, 2025

---

### SUPPLEMENTARY MEMORANDUM OF CLAIMS (APPENDIX)

This supplementary memorandum provides additional context and support for the claims asserted in Plaintiff's First Amended Complaint and opposition to Defendants' motions to dismiss.

Plaintiff's claims arise from a series of interconnected events involving multiple healthcare facilities and individual healthcare providers. The core of Plaintiff's allegations is that Defendants violated Plaintiff's constitutional and statutory rights by:

1. Involuntarily detaining Plaintiff despite medical clearance for discharge;

2. Subjecting Plaintiff to improper screening procedures based solely on hearsay without clinical evidence;

3. Committing Plaintiff without proper examination;

4. Maintaining grossly inconsistent medical records;

5. Failing to provide required patient rights information;

6. Obstructing grievances and withholding records; and

7. Engaging in retaliatory conduct.

These allegations, supported by specific factual assertions in the FAC, establish plausible claims for relief under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Patient Self-Determination Act, and various state laws.

The relief sought by Plaintiff includes:

1. Compensatory damages in an amount to be determined at trial, but believed to be no less than $18,000,000, for injuries including loss of liberty, emotional distress, psychological harm, damage to reputation, professional and career damages, loss of income, loss of enjoyment of life, and other related harms;

2. Punitive damages against the individual Defendants sued in their individual capacities (excluding the Estate of Dr. Rehim), in an amount sufficient to punish their wrongful conduct and deter future similar misconduct;

3. Reimbursement for the costs of this action; and

4. A formal written public apology outlining what went wrong and the steps Defendants will be taking to ensure this does not happen again.

This relief is appropriate given the serious nature of the alleged violations and the significant harm suffered by Plaintiff as a result of Defendants' actions.

Respectfully submitted,

Dated: June 23, 2025

Bradley Clonan

/S/ Bradley Clonan

Plaintiff, Pro Se