# Unpublished Opinions

Babalola v. Donegal Mut. Ins. Co., Not Reported in F.Supp.2d (2008)

2008 WL 5278393
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
M.D. Pennsylvania.

Gbolagade BABALOLA, Plaintiff

v.

DONEGAL MUTUAL INSURANCE
COMPANY, Defendant.

Civil Action No. 1:08-CV-621.
|
Dec. 18, 2008.

**Attorneys and Law Firms**

Olugbenga O. Abiona, Philadelphia, PA, for Plaintiff.

Cory A. Iannacone, Thomas A. French, Rhoads & Sinon, LLP, Harrisburg, PA, for Defendant.

**ORDER**

YVETTE KANE, Chief Judge.

**\*1 THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Plaintiff Gbolagade Babalola filed the instant action on April 7, 2008, alleging that Defendant Donegal Mutual Insurance Company breached the terms of a homeowners insurance policy (the "policy") that the Plaintiff had purchased from them. (Doc. No. 1.) Specifically, the Plaintiff claims that the Defendant improperly and in bad faith refused to defend him in a separate lawsuit pending before this Court. (*Id.*) The underlying action for which Plaintiff sought coverage is *Bickford v. Babalola,* No. 1:07-CV-2169 (hereinafter Bickford or the "underlying action"), brought against him by his former co-worker Kelly Bickford and her husband Warren Bickford.

The Defendant initially moved to dismiss the Plaintiff's complaint, claiming that there was no coverage for the claims asserted against Plaintiff in the underlying action. (Doc. No. 4 ¶ 2.) The Court agreed with this contention and granted the Defendant's motion in a memorandum and order issued

on August 26, 2008, holding: "claims of negligence and negligent infliction of emotional distress in the underlying action were not brought against Plaintiff 'for damages because of bodily injury,' as defined by the policy." (Doc. No. 20 at 9.) Despite this, the Court granted the Plaintiff an opportunity to amend the complaint to include claims for coverage on other claims that he believed may fall under the insurance policy. (*Id.* at 9-10.) The Plaintiff filed his amended complaint on August 28, 2008 (Doc. No. 21), which the Defendant has also moved to dismiss (Doc. No. 22.) The Defendant has separately moved to stay discovery pending resolution of the second motion to dismiss. (Doc. No. 24.)

The decision to stay discovery pending resolution of a potentially dispositive motion is within the discretion of the district court. *See, e.g., Coastal States Gas Corp. v. Department of Energy,* 84 F.R.D. 278, 282 (D.Del.1979); *In re Orthopedic Bone Screw Product Liability Lit.,* 264 F.3d 344, 365 (3d Cir.2001).* A stay of discovery is not appropriate solely because a motion to dismiss is pending. *19th Street Baptist Church v. St. Peters Episcopal Church,* 190 F.R.D. 345, 349 (E.D.Pa.2000). But, a stay can be proper "where the likelihood that such motion may result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay." *Id.* (quoting *Weisman v. Mediq, Inc.,* No. 95-1831 1995 WL 2736678 at *2 (E.D.Pa.1995)). The balance favors granting the stay where the pending motion to dismiss disposes of the entire case and where no discovery is needed to rule on such a motion. *Weisman,* 1995 WL 2736678 at *2 (citing *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984)). As such, the Court will undertake to balance the competing interests of each party to determine whether the benefits of such a stay outweigh the likely harm to the Plaintiff.

After preliminary review of the pending motion to dismiss and consideration of the parties' competing interests, the Court finds that the balance favors granting a stay of discovery pending resolution of the motion to dismiss. If granted, the pending motion to dismiss would dispose of the entire case against the Defendant, thereby eliminating the need to engage in the costly discovery that would likely be required to proceed with this action. Additionally, no further discovery is needed to resolve the contract interpretation issues raised in the motion to dismiss.

**\*2** The Plaintiff cites no authority in support of his opposition to this motion, and does not sufficiently explain any harm or prejudice that would result from staying

discovery. The Plaintiff only touches on the subject of potential harm or prejudice in one sentence, stating that "in light of the fact that this matter is related to the Underlying Action, Defendant is simply trying to delay this litigation ...." (Doc. No. 33 at 2.) The Court acknowledges the importance of this case with regard to resolution of the underlying action, but the potential delay will do little to prejudice Plaintiff at this point in the proceedings. Further, delaying discovery now may help streamline the process after the motion, ultimately resulting in less delay until final resolution of the case. As such, delay alone will not harm the Plaintiff such that it outweighs the benefits of staying the discovery deadlines at this time.

Rather than focus on potential harm, the Plaintiff mainly argues that the Defendant's request should be denied because the Court verbally denied a similar request at the case management conference prior to resolution of the first motion to dismiss. (*Id.* at 1.) Despite this, the Court's prior determination does not control resolution of the issue at this juncture. Based on the current circumstances of the case and preliminary review of the pending motion to dismiss, the balance weighs in favor of a stay of discovery at this time.

**ACCORDINGLY,** this 18th of December 2008, having considered the Defendant's motion for a stay of discovery (Doc. No. 24), **IT IS HEREBY ORDERED THAT** the Defendant's motion is **GRANTED.** Discovery is stayed pending resolution of the Defendant's motion to dismiss Plaintiff's amended complaint. (Doc. No. 22.)

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 5278393

---

**End of Document**                                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 3728069
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

KHAL ANSHEI TALLYMAWR INC., Plaintiff,

v.

TOWNSHIP OF TOMS RIVER, et al., Defendants.

Bais Brucha Inc., et al., Plaintiffs,

v.

Township of Toms River, et al., Defendants.

Civil Action No. 21-2716 (RK) (JTQ),
Civil Action No. 21-3239 (ZNQ) (JTQ)
|
Filed August 8, 2024

**Attorneys and Law Firms**

Christopher K. Costa, Hartsough Kenny Chase & Sullivan, Hamilton, NJ, Sieglinde K. Rath, Storzer & Associates PC, Owings Mills, MD, for Plaintiffs.

Anthony Merlino, Township of Toms River, Law Department, Toms River, NJ, Eric L. Harrison, Kajal Patel, Scott Ketterer, Methfessel & Werbel, Esqs., Edison, NJ, for Defendant Township of Toms River, New Jersey.

Eric L. Harrison, Kajal Patel, Scott Ketterer, Methfessel & Werbel, Esqs., Edison, NJ, for Defendant Township of Toms River Zoning Board of Adjustment.

**MEMORANDUM OPINION AND ORDER**

JUSTIN T. QUINN, United States Magistrate Judge

**\*1** Magistrate Judges in this District serve many functions. One such function is a discovery gatekeeper, allowing the discovery of relevant, proportional material and walling off that which is not. The instant application requires the Court to determine which bucket the objected to material falls into. Here, the Court finds that the information Defendants seek to prohibit is irrelevant and unduly burdensome. And while the Court declines to quash the subpoenas, it will, in its discretion, enter a protective Order prohibiting Plaintiffs from enforcing their 19 subpoenas.

**I. BACKGROUND** [1]

The Courts writes solely for the benefit of the Parties and, therefore, limits its discussion to the salient facts.

**A. Overview of Plaintiffs' Complaints**

These matters arise out of disputes over Defendants'— the Township of Toms River, New Jersey, and Township of Toms River Zoning Board of Adjustment (collectively, "Defendants")—denial of Plaintiffs' applications for zoning permits to construct *shuls*, small synagogues, in the Township of Toms River (the "Township"). Plaintiff Khal Anshei Tallymawr Inc. ("Tallymawr") seeks to demolish a single-family house located at 2527 Whitesville Road, Block 13.02, Lot 37 (the "Tallymawr Property") to build a 4,500-square foot *shul*. ECF No. 72 ¶52 in 21-2716. Plaintiffs Bais Brucha Inc. and Rabbi Mordechai Sekula (collectively, Brucha, and together with Tallymawr, "Plaintiffs") purchased 1191 and 1181 Hickory Street in Toms River, New Jersey, Block 191, Lots 1.01 and 1.02 (the "Brucha Property") (together, the "Properties") and seek to construct a *shul* with a building footprint of 4,680 square feet. ECF No. 61 in 21-3239.

On August 26, 2020, Plaintiffs filed their applications with the Township, seeking to have their *shuls* deemed a permitted conditional use in the Rural Residential Zone ("RR Zone"). ECF No. 72 ¶¶ 77, 80 in 21-2716; ECF No. 61 ¶ 80. On September 24, 2020, the Township's zoning officer denied Tallymawr's application, and the denial was upheld by the Zoning Board of Appeals following a meeting on January 14, 2021. *Id.* ¶¶ 84-86. On September 24, 2020, Brucha's application was denied, and the denial stated, "Use not permitted in [Rural Residential Zone]." ECF No. 61 ¶ 88 in 21-3239. Brucha appealed the denial to the Zoning Board of Appeals and the decision was similarly upheld, because houses of worship were not considered a permitted use in the RR Zones. *Id.* ¶¶ 89-90.

Plaintiffs contend the denials were motivated by discrimination. Defendants have a different view. They argue that the denials had nothing to do with discrimination; instead, the denials were based on and consistent with the Township's 2009 ordinance (Ordinance Number 4181-09), which unambiguously stated that (the "2009 Ordinance") *all* "houses of worship were outright forbidden in the RR zone[.]" ECF No. 111 at 2 in 21-2716; ECF No. 122 at 2 in 21-3239.

**\*2** But the 2009 Ordinance is not the only example of religious animus, according to Plaintiffs. In October 2017,

the Township passed Ordinance 4558-17, which imposed a 10-acre requirement on houses of worship to be constructed across the Township. Plaintiffs contend that such a significant lot area requirement was not imposed for nonreligious assembly and institutional uses. ECF No. 111 at 10-11 in 21-2716; ECF No. 122 at 10-11 in 21-3239.

### B. Plaintiffs' Subpoenas &
### Defendants' Motions to Quash

The Motions to Quash presently before the Court were filed by Defendants. Defendants object to the 19 subpoenas Plaintiffs issued on November 15, 2023 (and served between November 15, 2023 and November 30, 2023), which seemingly are directed to current and former officials of Defendants (the "Subpoenas"), though it is completely

unclear from the Parties' briefing. Indeed, the briefs fail to explain who these individuals are, what role they served for the Township and/or the respective Board(s), and critically when each served the Township—a shortcoming the Court addresses below. ECF No. 111 at 4-5 in 21-2716; ECF No. 122 at 4-5 in 21-3239.

The 19 individual subpoenas contain 21 document requests for various time periods, some spanning decades. The 19 individuals, along with the requested time periods, are set forth in the below table, which is followed by the 21 document requests that appear in each Subpoena.

### The 19 subpoenaed individuals
### with time periods requested:

| Individual | Time Period |
|---|---|
| Robert Alston | January 1, 2016 to October 1, 2023 |
| Art Blank | January 1, 2016 to October 1, 2023 |
| David Ciccozzi | January 1, 2022-present |
| Jason Crispin | January 1, 2016 to October 1, 2023 |
| Anthony Fontana | January 1, 2017 to October 1, 2023 |
| Kevin Geoghegan | January 1, 2017 to present |
| Maurice Hill | January 1, 2003 to present |
| Laurie Huryk | January 1, 2017 to October 1, 2023 |
| Brian Kubiel | January 1, 2003 to October 1, 2023 |
| Justin D. Lamb | January 1, 2022 to present |
| Matthew Lotano | January 1, 2020 to present |
| Nels Luthman | January 1, 2015 to October 1, 2023 |
| Maria Maruca | January 1, 2004 to present |
| Lynn R. O'Toole | January 1, 2016 to October 1, 2023 |
| Daniel Rodrick | January 1, 2018 to present |
| Terrance Turnbach | January 1, 2018 to October 1, 2023 |
| Richard Tutela | January 1, 2018 to October 1, 2023 |

| George Wittmann | January 1, 2009 to October 1, 2023 |
| Matthew Yezzi | January 1, 2017 to present |

### The 21 Requests

1. All Documents, including emails, related to Rabbi Mordechai Sekula.

2. All Documents including emails, related to Bais Brucha, Inc.

3. All Documents, including emails, related to the Subject Property, including but not limited to Plaintiffs proposed development on the Subject Property.

4. All Documents, including emails, related to the Jewish community, Jewish people and/or the Jewish religion, including the Orthodox Jewish community, persons, practices and/or religion.

5. All Documents, including emails, which include the terms "hasidic," "hassidic," "hasids," "haredi," "Sukkah," "ten-acre," "DOJ," "10 acre," "black hats," "Orthodox," "Jew," "Jews," "Jewish," "the community," "Lakewood," "Chabad," "yeshiva," "worship" "shul," "Rabbi," "Mikveh," "Mikvah," or "synagogue."

6. All Documents, including emails, related to real estate solicitation or canvassing in North Dover, including but not limited to "No Knock" stickers and efforts by the Township to ban real estate solicitation or canvassing in areas of North Dover.

7. All Documents, including emails, containing the phrase "Toms River Strong" or "Rise Up Ocean County."

8. All Documents, including emails, relating to the Toms River Quality of Life Task Force.

9. All Documents, including emails, related to any anti-Semitic incidents in Toms River, including but not limited to anti-Semitic graffiti in parks and playgrounds.

10. All Documents, including emails, related to the Religious Land Use and Institutional Persons Act (RLUIPA).

11. All Documents, including emails, related to development or "overdevelopment" in North Dover.

12. All postings or messages authored by you on social media related to the Jewish community, Jewish people and/or the Jewish religion, including the Orthodox Jewish community, persons, practices and/or religion, including but not limited to Orthodox Jews moving to Toms River, Jews from Lakewood, real estate canvassing and solicitation in North Dover and "Toms River Strong."

**\*3** 13. A complete download of your Facebook account in native format. For instructions on how to download, please refer to https://www.facebook.com/help/212802592074644?helpref=faq content. Select every category of information for download, including "Messages", before you create the file.

14. A complete download of your Twitter/X history in native format. For instructions on how to download, please refer to https://help.twitter.com/en/managing-your-account/accessing-your-twitter-data. The instructions begin in the middle of the page under "Where can I find my Twitter data?"

15. A complete download of your Snapchat history in native format. For instructions on how to download, please refer to https://help.snapchat.com/hc/en-us/articles/7012305371156-How-do-I-download-my-data-from-Snapchat-

16. A complete download of your Instagram history in native format. For instructions on how to download, please refer to https://help.instagram.com/181231772500920. The instructions begin in the middle of the page under "[d]ownloading a copy of your data on Instagram."

17. A complete download of your LinkedIn history in native format. For instructions on how to download, please refer to https://www.linkedin.com/help/linkedin/answer/50191/accessing-your-account-data?Jang=en.

18. A complete download of your WhatsApp history in native format. For instructions on how to download, please refer to https://faq.whatsapp.com/1180414079177245/?helpref=search&cms_platform=android&locale=en_US

19. A complete download of your Skype history, including conversations and files, in native format. For instructions on how to download, please refer to https://support.skype.com/en/faq/FA34894/how-do-i-export-my-skype-fi!es-and-chat-history.

20. A complete download of your GroupMe history in native format. For instructions on how to download, please refer to https://support.microsoft.com/en-us/office/how-do-i-export-my-groupme-data-1f6875bf-7871-4ade-8608-4c606cd5f518

21. A complete download of your Google Hangouts history or other Google-related chat history. For instructions on how to download, please refer to https://www.lifewire.com/how-to-download-gmail-chat-logs-via-imap-1171928

## II. LEGAL STANDARD

When a party serves a subpoena under Federal Rule of Civil Procedure 45, the information and documents sought must fall within the scope of proper discovery under Rule 26(b)(1). *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021). Pursuant to Rule 26,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Rule 26 [clearly] establishes a liberal discovery policy," *S.M. v. Tamaqua Area Sch. Dist.*, 2023 WL 3689607, at *1 (M.D. Pa. May 26, 2023), and "[t]he federal courts have ... long permitted broad and liberal discovery." *Resser v. J.B. Hunt Transp., Inc.*, 2022 WL 1240859, at *1 (M.D. Pa. Apr. 27, 2022) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995); *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir.

1999)). However, the scope of discovery "is not unlimited ... and should not serve as a fishing expedition." *Saller v. QVC, Inc.*, 2016 2016 WL 87162870, at *5 (E.D. Pa. June 24, 2016).

**\*4** To that end, if a subpoena requests information that does not fall within the permissible scope of discovery under Rule 26, the subpoena may be quashed or modified. *Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). Alternatively, the Court may "consider the motion [to quash] as one for a protective order pursuant to Rule 26," *Staff4Jobs, LLC v. List Logistics, LLC*, 2020 WL 13580942, at *3 (D.N.J. Oct. 19, 2020), since "a protective order serves as another mechanism to challenge a subpoena that seeks irrelevant information." *Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. 13-1140, 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014).

## III. ANALYSIS

### A. Procedural Issues

Before the Court provides its substantive decision, it takes a moment to address certain procedural and preliminary issues raised by the briefing. The Court first addresses the Local Civil Rule violation that is obvious from the Parties' filings. The Court then addresses certain threshold issues raised in Plaintiffs' submissions that warrant little comment.

### i. Violation of the Court's Meet & Confer Requirement

The District of New Jersey has long had a meet-and-confer requirement as part of its Local Civil Rules. And this rule was not written on a blank slate. To the contrary, it was created based on this District's wisdom following years-worth of case management and discovery oversight. It thus was the "experience of the Court ... [that] show[ed] ... the vast majority of discovery disputes may be settled if the[ ] [parties] confer and [attempt to] negotiate a resolution in good faith." LITE, N.J. FEDERAL PRACTICE RULES, *Comment 2 to L. Civ. R. 37.1* at 251 (GANN 2024). The Parties did not faithfully follow this mandate.

Local Civil Rule 37.1 is explicit: "Discovery motions must be accompanied by an affidavit or other document ... certifying that the moving party has conferred with the opposing party in a good faith effort to resolve ... the issues raised by the motion." This is not simply a box-checking exercise;

the Parties are required to engage in robust, meaningful discussions with the intention of resolving the disputed issues "without the intervention of the Court." *Id.* Put differently, it is insufficient for a party to just send an email, make a telephone call, or send a letter to an adversary. *See* LITE, N.J. FEDERAL PRACTICE RULES, *Comment 2 to L. Civ. R. 37.1* at 252 (GANN 2024) (citing cases).

And yet, that is precisely what occurred before the instant motions were filed. On October 13, 2023, Plaintiffs' counsel emailed Defendants' counsel asking if "your clients [are] open to searching/producing [private] emails." ECF No. 111-21 in 21-2716; ECF No. 122-21 in 21-3239. Defense counsel responded later that day, stating that he would ask his client but also needed clarification regarding "who" Plaintiffs were referring to. Plaintiffs' reply made explicit that the subpoenas would be far-reaching: "It's hard to say exactly who ... but we are looking at the Board members, the individuals on the Quality of Life Taskforce, Township employees, etc." *Id.* Defendants' second request for "some indication of who you need to see emails from" went unanswered; instead, Plaintiffs sent a follow-up email on October 18, asking if Defendants "were open to this." When Defendants said no, Plaintiffs served the Subpoenas, and the instant motions were filed.

The Court concludes that this minimal and superficial exchange of short emails is not enough to meet the Court's meet-and-confer requirements. There appears to be no discussion (let alone one the Court would characterize as substantive) of how the information sought would be relevant and why it was needed. There likewise is no effort to either address the time periods in the subpoenas or winnow down the total number of subpoenas. Nor is there any discussion about the Parties' willingness to try and understand the basis for each of the 21 document requests and whether each truly was necessary. For example, it is completely unclear to the undersigned why information concerning a mikvah (a religious bath) is being sought in a case dealing with the construction of a *shul*. In short, the Parties' *de minimis* exchange fails to meet what this Court's Local Civil Rules require.

**\*5** While the Court could decline to resolve the instant disputes on this basis, it will not do so. But the Parties are now on notice of what this Court expects going forward should there be future disputes: Measured and meaningful discussions demonstrating the Parties' sincere intent to work through and resolve disputes without judicial intervention.

### B. Plaintiffs' Preliminary Challenges to Defendants' Motions to Quash

Plaintiffs raise two threshold challenges to Defendants' motions. Neither argument is persuasive. [2]

#### i. Plaintiffs' Argument That The Motions Are Untimely

Plaintiffs contend Defendants' motions should be denied because they are untimely. ECF No. 111 at 4-5 in 21-2716; ECF No. 122 at 4-5 in 21-3239. Plaintiffs' argument, which relies on *inter alia* Fed. R. Civ. P. 45(d)(2)(B), is misplaced.

First, Rule 45(d)(2)(B) is titled "Objections" and specifically addresses the time period in which a "person commanded to produce documents" must object to a subpoena. Plaintiffs' citation is thus inapplicable. The specific portion of Rule 45 addressing motions to quash is Rule 45(d)(3). And that Rule makes clear that a motion to quash be made "timely." *Value Drug Co. v. Takeda Pharms. U.S.A., Inc.*, 2022 WL 17656343, at \*2 (E.D. Pa. Dec. 8, 2022). While Rule 45 does not define what "timely" means, *id.*, courts "generally ... have interpreted [it] to mean within the time set in the subpoena for compliance." *Clendinen-Phipps v. Caribbean Leasing & Eco Transportation, Inc.*, 71 V.I. 369, 373 (V.I. Super. 2019); *West Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, 2010 WL 181088, at \*2 (D. Del. Jan. 19, 2010) (citing *Ace Hardware Corp. v. Celebrations Ace Hardware, LLC*, 2009 WL 3242561, at \*2 (D. Del. Oct. 9, 2009) (same)).

Defendants' motions easily satisfy the timeliness requirement. The compliance date in the Subpoenas was December 18, 2023. ECF No. 111-2 through - 20 in 21-2716; ECF No. 122-2 through -20 in 21-3239. Defendants first sought leave to file the motions to quash on December 5, 2023. ECF No. 107 in 21-2716; ECF No. 119 in 21-3239. After obtaining permission, Defendants filed the pending Motions to Quash three days later, on December 8, 2023. ECF No. 109 in 21-2716; ECF No. 121 in 21-3239. Therefore, the Court concludes that Defendants' motions were timely. [3]

#### ii. Plaintiffs' Argument That Defendants Lack Standing To Quash

Plaintiffs' other threshold argument—that Defendants lack standing to challenge the subpoenas—fares no better.

A party moving to quash a subpoena must have standing to bring such a challenge. *See Price v. Cnty. of Salem*, 2024 WL 1006263, at \*\*7-8 (D.N.J. Mar. 8, 2024). "Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed." *Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. 13-1140, 2014 WL 7073466, at \*4 (D.N.J. Dec. 15, 2014). "However, 'a party has standing to bring a Motion to Quash or modify a subpoena upon a nonparty when the party claims a personal privilege in the production sought.' " *Id.* (quoting *Schmulovich*, 2007 WL 2362598, at \*2).

**\*6** That the Defendants lack a personal connection to the subpoenas is the crux of Plaintiffs' standing argument. But even if Plaintiffs were correct (and they very well may be), the analysis does not end there—a point Plaintiffs' (and Defendants') briefing completely glosses over. In other words, assuming *arguendo* Defendants lack any personal privilege or interest in the subpoenaed information and thus lack standing to quash the subpoenas, the Court could *still* provide relief through a protective order under Rule 26(c), thus limiting or disallowing the third-party discovery that is beyond the permissible scope of Rule 26(b)(1). This is an approach courts in this District often take, *see, e.g.*, *Ramos v. Walmart, Inc.*, 2023 WL 2327208, at \*3 n.3 (D.N.J. Mar. 2, 2023); *Aetrex Worldwide, Inc.*, 2014 WL 7073466, at \*\*4-5; *EEOC v. United Galaxy*, 2011 WL 4072039, at \*2 (D.N.J. Sept. 13, 2011); *Staff4Jobs, LLC v. List Logistics, LLC*, 2020 WL 13580942, at \*3 (D.N.J. Oct. 19, 2020) (finding it "appropriate to consider the motion [to quash] as one for a protective order pursuant to Rule 26, given the relevance concerns it raise[d]"), and it is the path this Court elects to chart here, particularly given Defendants' argument that the information sought "falls outside the scope of permissible discovery." ECF No. 109-2 at 3 in 21-2716; ECF No. 121-1 at 3 in 21-3239.

## C. The Entry of a Protective Order is Appropriate

The Court now addresses whether the entry of a protective order under Rule 26 is warranted. The Court has little trouble concluding that one is. Specifically, the Court finds that the requested information is not relevant to Plaintiffs' claims, and, even if it were, it is obvious from the face of the Subpoenas that culling, reviewing, and producing the non-party material requested would present a burden that could only be described as undue.

### i. The Information Plaintiffs Subpoenaed Is Not Relevant

A protective order is necessary to shield the Subpoena recipients from Plaintiffs' requests because the information sought is wholly irrelevant.

"In applying Rules 26 and 45, the Court must balance several competing factors in assessing the reasonableness of a subpoena:"

> (1) relevance, (2) the party's need for the documents, (3) the breadth of the document request, (4) the time period covered by it, (5) the particularity with which the documents are described, (6) the burden imposed, and (7) the subpoena recipient's status as a nonparty to the litigation.

*Gould v. O'Neal*, 2019 WL 4686991, at \*3 (D.N.J. Sept. 26, 2019). "Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances." *Id.* (quoting *Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010)). And it is axiomatic that "courts afford greater protection to non-parties in discovery, and [consequently] nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties." *Conforti v. St. Joseph's Healthcare Sys., Inc.*, 2019 WL 3847994, at \*2 (D.N.J. Aug. 15, 2019).

Plaintiffs' non-party subpoenas do not meet this standard. The over 400 pages of emails Plaintiffs filed with the Court—271 of which were filed *just days* before the oral argument previously scheduled for this Motion [4]—do nothing to further Plaintiffs' pleadings and the theories advanced therein. Specifically, the emails detail communications from Township residents raising what appear to be legitimate concerns about potential code violations and bridging "closer community" relationships. The emails also address affordable housing issues, contain information about training, provide notices of hearings (and the agendas for those

hearings), attach professional reports, and contain exchanges of campaign strategy. These documents, in this Court's view, are not probative of Plaintiffs' claims; nor do they provide any suggestion of either animus or anti-Semitism from the subpoena recipients that would warrant compelling the production of the requested information. *See* ECF No. 111-21 to -35 and ECF Nos. 151 and 152 in 21-2716; ECF No. 122-19 to -35; ECF No. 161 in 21-3239. This is but one of the glaring deficiencies in the submissions. [5]

**\*7** Indeed, further fatal to Plaintiffs' argument is their failure to even identify who the individuals subpoenaed are, what their roles were with the Township and/or its Zoning Board, when they served the Township, how they might have any connection to these litigations, and how, specifically, each of the categories of documents sought by Plaintiffs from these particular non-parties would further support their claims. To be sure, the briefing is completely silent on this score, as Plaintiffs offer no explanation, in their Complaints or in their briefing, of why these individuals are being subpoenaed and what (if anything) the documents requested will show. That the Court has not been provided this basic information weighs further in favor of a protective Order, since it appears that the reasons for the Subpoenas are at best attenuated. *See, e.g.,* *Sang Geoul Lee v. Won Il Park,* 720 F. App'x 663, 666 (3d Cir. 2017) ("First, it is the responsibility of neither the District Court nor this Court to make the parties' arguments for them ...."); *United States v. Lavanture,* 74 F. App'x 221, 225 (3d Cir. 2003) (observing that the court "must not 'abandon [its] proper role and assume that of an advocate' ") (quoting *United States v. Wilensky,* 757 F.2d 594, 597 (3d Cir. 1985)).

Finally, the Court has serious concerns about Plaintiffs' wholesale requests for complete downloads of social media accounts. This is particularly true since Plaintiffs do not set forth a single argument supporting the relevance of the information to be gleaned from these platforms. And Plaintiffs' statement that they were "left with no choice but to subpoena" this information is not enough, ECF No. 111 at 7 in 21-2716; ECF No. 122 at 7 in 21-3239, especially where, as here, there is no evidence that requests for access to social media accounts are likely to lead to discoverable information.

In sum, the Plaintiffs' arguments here are thin. Under the circumstances, the Court is loath to open a Pandora's box that would provide Plaintiffs with access to decades worth of personal emails from non-parties, where there simply is no indication that information in the emails would further Plaintiffs' cause. This is the exact type of fishing expedition that the Federal Rules not only caution against but in fact prohibit.

### ii. Even if the Information Requested were Relevant, Plaintiffs' Requests are Unduly Burdensome

Even if the documents requested in the Subpoenas were relevant to Plaintiffs' claims (they are not), the Court would nonetheless find the Subpoenas unduly burdensome, given: (a) the number of Subpoenas; (b) the breadth of the Subpoenas' requests; (c) the time periods to be searched; and (d) the sheer volume of information that seemingly would need to be searched for and reviewed. And all of this is to say nothing of the significant time, effort, and costs each of these non-parties might be forced to incur if the Court were to allow the Subpoenas. This is not a result the Court is willing to conclude is warranted.

### IV. CONCLUSION

It is the Court's duty to prevent efforts to obtain irrelevant and unduly burdensome discovery, which is exactly what is at issue in the instant motions. For that reason and those set forth above, the Court will enter a protective Order, preventing Plaintiffs from obtaining the information sought in the 19 Subpoenas.

The Court trusts that this decision will provide the necessary framework for future discussions should the Parties reach an impasse on a discovery dispute. The Clerk is to terminate ECF No. 109 in 21-2716 and ECF No. 121 in 21-3239.

**All Citations**

Slip Copy, 2024 WL 3728069

---

**Footnotes**

1    The following facts are taken from Plaintiffs' Amended Complaints, ECF Nos. 72 in 21-2716 and ECF No. 61 in 21-3239, and are assumed true for purposes of this Opinion.

2    The other, similarly flawed and unsupported, reasons that Plaintiffs claim the Subpoenas are proper are: Defendants previously refused to produce the documents requested in the Subpoenas; the Subpoenas are narrowly tailored and seek discoverable information; Defendants suffer no undue burden; and Plaintiff is under no obligation to exhaust administrative remedies in advance of serving subpoenas. ECF No. 111 in 21-2716; ECF No. 122 in 21-3239.

3    And, even if this were not the case, the Court would exercise its discretion to review the motions. *See Value Drug Co.,* 2022 WL 17656343, at *2.

4    On July 11, 2024, with oral argument on the Motions to Quash scheduled for July 16, 2024, Plaintiffs filed a Notice of Supplemental Authority, totaling 271 pages, where they claimed that as they reviewed the discovery produced, they became aware of new personal email addresses used by the third parties Plaintiffs are seeking to subpoena. ECF No. 151-1 in 21-2716; ECF No. 161-1 in 21-3239. In response, Defendants explained the undue burden the Township would face in having to gather and review 20 years' worth of personal emails if this were a discovery request. ECF No. 155 at 5 in 21-2716; ECF No. 165 at 5 in 21-3239.

5    Though the Court does not find relevant the slew of emails that Plaintiffs rely upon, the Court does not endorse the commingling of personal and public email accounts.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

---

2011 WL 3330376
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Jeffrey E. PERELMAN

v.

Raymond G. PERELMAN, et al.

Civil Action No. 10–5622.
|
Aug. 3, 2011.

**Attorneys and Law Firms**

James T. Smith, Rebecca D. Ward, Blank Rome LLP, Philadelphia, PA, Paul A. Friedman, Blank Rome LLP, New York, NY, for Jeffrey E. Perelman.

Marjorie M. Obod, Dilworth Paxson LLP, Michael S. Doluisio, Dechert, Price & Rhoads, Philadelphia, PA, Andrew J. Levander, Dechert LLP, New York, NY, Jamie P. Yadgaroff, Law Offices of Jamie P. Yadgaroff, Barry L. Katz, Bala Cynwyd, PA, for Raymond G. Perelman, et al.

***MEMORANDUM***

PADOVA, District Judge.

**\*1** In this ERISA action, Plaintiff Jeffrey Perelman alleges that Defendants, the trustees and administrators of the General Refractories Company Plan for Salaried Employees (the "Plan"), invested Plan assets in Revlon corporate bonds for improper purposes and failed to make complete and accurate disclosures to Plan participants, in breach of their fiduciary and statutory duties. [1] Plaintiff seeks an order directing Defendants to restore to the Plan any losses suffered by the Plan and any profits realized by Defendants, as well as various forms of injunctive relief. Before the Court is Defendants' Motion to Stay Discovery pending a decision on Defendants' Motion for Summary Judgment, which asserts that Plaintiff lacks standing to bring this suit. For the reasons that follow, we grant Defendants' Motion to Stay insofar as it seeks to limit discovery to the issue of standing until we have decided Defendants' Motion for Summary Judgment.

"The decision to stay discovery pending resolution of a potentially dispositive motion is within the discretion of the

district court." *Babalola v. Donegal Mut. Ins. Co.,* Civ. A. No. 08–612, 2008 WL 5278393, at \*1 (M.D.Pa. Dec.18, 2008) (citing *Coastal States Gas Corp. v. Dep't of Energy,* 84 F.R.D. 278, 282 (D.Del.1979), and *In re Orthopedic Bone Screw Prod. Liab. Litig.,* 264 F.3d 344, 365 (3d Cir.2001)). The burden is on the party seeking the stay to show "good cause." *19th Street Baptist Church v. St. Peters Episcopal Church,* 190 F.R.D. 345, 348 (E.D.Pa.2000) (citation omitted); *see also* Fed.R.Civ.P. 26(c). In the end, "a stay is proper where the likelihood that [the pending] motion may result in a narrowing or outright elimination of discovery outweighs the likely harm to be produced by the delay." *Weisman v. Mediq, Inc.,* Civ. A. No. 95–1831, 1995 WL 273678, at \*2 (E.D.Pa.1995) (citation omitted). In order to measure the likelihood that a pending motion may result in a narrowing or outright elimination of discovery, we need not "form[ ] an opinion as to the merits" of the motion. *Id.* Rather, we consider the scope of the motion and ask whether it "may potentially lead to" the end of the case, and whether it will provide the parties with "full knowledge as to which claims are viable and, correspondingly, as to what discovery need occur." *Id.* We "balance the competing interests of each party to determine whether the benefits of [the] stay outweigh the likely harm to the plaintiff." *Babalola,* 2008 WL 5278393, at \* 1. In deciding whether the balance of factors favors a stay, we consider (1) the scope of the pending motion; (2) the breadth of the non-party discovery underway; (3) the harm and expense to which continued discovery would subject the movant or third parties; and (4) the harm that a delay in discovery would cause for the non-movant. *See Weisman,* 1995 WL 273678, at \*2.

Defendants argue that a stay is warranted because Plaintiff has been mounting "a wide-ranging and abusive discovery campaign" against not only Defendants but also "any entity even remotely associated with the Plan," including Defendants' various "businesses and charitable foundations." (Defs.' Mem. in Support of Mot. to Stay at 2.) Defendants state that Plaintiff has served 120 document requests on Defendants and has served 18 third-party subpoenas. (*Id.* at 4.) Defendants argue that "the substance of [Plaintiff's] third-party subpoenas demonstrates that he is using this case—and the broad subpoena powers enjoyed by a litigant in a federal lawsuit—as a means to burden anyone associated with the Plan," as part of a larger effort to "pressure his father and brother into resolving other legal actions pending between the parties." (*Id.* at 5.) For example, Defendants state that Plaintiff has served "[a] subpoena to New York Life, which administers an annuity contract purchased by the Plan in the mid–1980s

and as to which there is no allegation of wrongdoing," as well as "[s]ubpoenas nominally directed to two charitable foundations that, in substance, request every communication between those foundations and various entities with which [Defendant] Ronald Perelman is associated, without any limit as to subject matter." (*Id.* at 5.) Defendants argue that "[s]taying discovery would prevent [Plaintiff] from abusing the discovery process and avoid the significant expenses —and discovery disputes—that [Plaintiff's] scorched earth discovery campaign no doubt will engender." (*Id.* at 2.) Defendants principally seek an order staying all discovery but argue, in the alternative, that discovery should be limited to the issue of standing until the Motion for Summary Judgment is decided.

**\*2** Plaintiff opposes Defendants' Motion to Stay Discovery on several grounds. Plaintiff argues that he has directed his discovery toward information that is relevant either to the Plan's assets and liabilities or to the theories of recovery set forth in Plaintiff's Second Amended Complaint, which is now the operative Complaint. Plaintiff further argues that discovery has not been unduly burdensome to third parties. Plaintiff states that, of the eighteen third parties served with subpoenas, only six have asserted blanket objections, and all six are represented by the attorneys who represent Defendants in this matter. Plaintiff also states that he has worked amicably to resolve objections raised in connection with other third party subpoenas. Plaintiff also argues that a temporary stay would only delay but could not eliminate the costs and expenses of discovery, because at least some of his claims are likely to survive summary judgment.

As we discussed above, we need not determine, at this juncture, whether any of Plaintiff's claims are likely to survive summary judgment. *See Weisman,* 1995 WL 273678, at *2. We ask merely whether Defendants' Motion for Summary Judgment could narrow the issues in this case and correspondingly narrow discovery. *Id.* Accordingly, we consider the scope of the Motion, without forming an opinion as to its merits. *Id.* In the Motion for Summary Judgment, Defendants argue that Plaintiff only has standing if there is some risk that he will not be paid his monthly pension benefit as it comes due, that record evidence conclusively establishes that the Plan is fully funded, and that consequently Plaintiff lacks standing to proceed. In opposition to Defendants' Motion for Summary Judgment, Plaintiff argues that he is entitled to discovery with respect to the funding status of the Plan, that the documents already turned over demonstrate that there is a genuine issue of material fact with respect to the

funding status of the Plan, and that he can proceed on his requests for injunctive relief even if record evidence does establish that the Plan is fully funded.

Having reviewed the Motion for Summary Judgment, we conclude that, even if the Motion is not granted in its entirety, a partial grant of summary judgment may potentially narrow the issues in this case and correspondingly narrow discovery. While we express no opinion on the merits of the Motion at this time, if we were to conclude that Plaintiff is required to make a showing of individual harm in order to seek restitution and disgorgement to the Plan, and if we were further to conclude that Plaintiff cannot make such a showing, the resulting partial grant of summary judgment could eliminate the need for discovery on losses suffered by the Plan and profits made by the fiduciaries. Accordingly, we conclude that the scope of Defendants' Motion for Summary Judgment weighs in favor of the conclusion that a stay is warranted. *See Weisman,* 1995 WL 273678, at *2 (concluding that a stay was warranted where resolution of dispositive motion could "potentially lead to" the end of the case and would certainly provide the parties with "full knowledge as to which claims are viable and, correspondingly, as to what discovery need occur").

**\*3** With respect to the breadth of non-party discovery underway, Defendants argue that Plaintiff's non-party discovery has been not only broad but "abusive." (Defs.' Mem. in Support of Mot. to Stay at 2.) A motion to stay discovery is not the proper vehicle in which to challenge the appropriateness of Plaintiff's discovery requests to third parties. We do note, however, that Plaintiff has engaged in broad non-party discovery, that six of eighteen third parties served with subpoenas have asserted blanket objections, and that, accordingly, a stay "will potentially save time and money for all concerned." *Id.* Accordingly, we conclude that both the breadth of non-party discovery underway and the expense of continued discovery weigh in favor of the conclusion that a stay is warranted.

Finally, we consider the harm or prejudice that a stay would create for Plaintiff. Plaintiff emphasizes, both in his response to Defendants' Motion to Stay Discovery and in his response to Defendants' Motion for Summary Judgment, that he has not yet received sufficient discovery to demonstrate his standing. [2] Because Defendants have chosen to challenge Plaintiff's standing by means of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, Plaintiff is entitled to discovery that is "essential to justify

Case 3:24-cv-11399-RK-RLS    Document 61-3    Filed 06/23/25    Page 14 of 24 PageID:
2439
Perelman v. Perelman, Not Reported in F.Supp.2d (2011)

[his] opposition." *See* Fed.R.Civ.P. 56(d). As we discussed above, Defendants' Motion for Summary Judgment may require us to determine whether there is a genuine issue of material fact with respect to the Plan's ability to pay Plaintiff's monthly pension benefit as it comes due. Plaintiff is entitled to discovery on that factual issue. *See* Fed.R.Civ.P. 56(d). Accordingly, we conclude that a general stay of all discovery is not appropriate. *C.f.* Weisman, 1995 WL 273678, at *2 (concluding that a stay should "not allow defendants to avoid their responsibility to produce their self-executing discovery" because the plaintiff was "entitled" to such discovery). However, Plaintiff has not made any argument that he would be prejudiced by a stay of all discovery not pertaining to the funding status of the Plan until the standing issue is resolved, and we can perceive no basis for such an argument. Accordingly, we conclude that the final factor—the likely harm or prejudice to Plaintiff—weighs in favor of the conclusion that a limited stay is warranted. *C.f. id.* (concluding that a stay of all discovery other than the defendants' self-executing disclosures was appropriate where

the Court "d[id] not find that plaintiff will be prejudiced ... in any significant way" by such a stay).

For the foregoing reasons, we conclude that a temporary, limited stay of discovery is appropriate in these circumstances. "Indeed, such a procedure is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Coastal States Gas Corp. v. Dep't of Energy,* 84 F.R.D. 278, 282 (D.Del.1979) (citations omitted). Discovery may continue only as it pertains to the factual issue of whether there is a genuine issue of material fact with respect to the Plan's ability to pay Plaintiff's monthly pension benefit as it comes due. [3] All other discovery shall halt until further Order of this Court.

**\*4** An appropriate Order follows.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 3330376

---

## Footnotes

1    In the interest of precision, we note that Plaintiff also complains of a February 1, 2008 investment of $2.7 million in Revlon corporate debt.

2    Plaintiff states that he has not yet had an opportunity to depose the purported experts whose affidavits Defendants attached to their Motion for Summary Judgment, and that he also has not yet received a number of documents from third parties.

3    Although summary judgment will also involve the legal issue of whether Plaintiff is required to show that there is some risk he will not be paid his pension benefit as it comes due—that is, whether Plaintiff is required to show individual harm—in order to seek restitution and disgorgement to the Plan and in order to seek injunctive relief, we see no need for discovery on that issue.

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3386487
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Richard THOMPSON, Plaintiff,
v.
Charles WARREN, et al., Defendants.

Civil Action No. 13–4334 (PGS)(DEA).
|
Signed May 26, 2015.

**Attorneys and Law Firms**

Richard Thompson, Trenton, NJ, pro se.

Gregory R. Bueno, Office of the Attorney General, Trenton, NJ, for Defendants.

**MEMORANDUM OPINION AND ORDER**

ARPERT, United States Magistrate Judge.

**\*1** This matter comes before the Court on three Motions: (1) a Motion by Plaintiff for an Order compelling Defendants to respond to Plaintiff's Interrogatories [Dkt. No. 59]; (2) a Cross–Motion by Defendants requesting a stay of discovery pending the resolution of Defendants' Motion for Judgment on the Pleadings and Summary Judgment (the "Dispositive Motion")[1] [Dkt. No. 62]; and (3) a Motion by Plaintiff to modify the Scheduling Order entered by the Court on August 11, 2014 [Dkt. No. 68]. For the reasons set forth below, Plaintiff's Motion to compel [Dkt. No. 59] is GRANTED, Defendants' Motion to stay discovery [Dkt. No. 62] is DENIED and Plaintiff's Motion to modify the Scheduling Order [Dkt. No. 68] is GRANTED.

**I. BACKGROUND AND PROCEDURAL HISTORY**

*Pro se* Plaintiff Richard Thompson filed his Complaint on April 30, 2014 asserting six causes of action against employees and officials of the New Jersey Department of Corrections ("DOC") [Dkt. No. 1]. Plaintiff claims several violations of his federal constitutional rights during his time in the custody of the DOC. Specifically, Plaintiff alleges that in retaliation for assisting a fellow prisoner in the preparation of a lawsuit against DOC employees, he was deprived of his job assignment and placed in administrative detention in

violation of New Jersey law and his First, Fourteenth and Eighth Amendment rights.

As relevant to the present Motions, Plaintiff claims that on August 9, 2014, he served interrogatories on Defendants Nelson, D'Amico, Mendez, Dutch, Packard and Jimenez through their counsel. Dkt. No. 59 at ¶ 1–2. On October 3, 2014, Plaintiff received a letter from Defendants' counsel requesting Plaintiff's consent to an extension of time for Defendants to respond to Plaintiff's interrogatories to October 22, 2014, to which Plaintiff agreed. *Id.* at ¶ 5. On October 8, 2015, Plaintiff served interrogatories on Defendant Barnes through his counsel. *Id.* at ¶ 8. Plaintiff claims he has not received responses to any of the interrogatories served on Defendants. Accordingly, Plaintiff seeks an Order compelling Defendants Nelson, D'Amico, Mendez, Dutch, Packard, Jimenez and Barnes to respond to the interrogatories. *See* Dkt. No. 59. In response to Plaintiff's Motion to compel, Defendants filed a Cross–Motion requesting a stay of discovery pending disposition of Defendants' Dispositive Motion. *See* Dkt. No. 62. In addition, Plaintiff requests the entry of an Amended Scheduling Order extending the deadline for discovery, which pursuant to the Court's Scheduling Order entered on August 11, 2014, was to be concluded by February 11, 2015. *See* Dkt. No. 68.

**II. DISCUSSION**

It is well established that the scope of discovery in federal litigation is broad. *See* Fed.R.Civ.P. 26(b)(1). Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. *Id.; see also* Pearson v. Miller, 211 F.3d 57, 65 (3d Cir.2000). Moreover, information sought by the parties need not be admissible at trial if it is "reasonably calculated" to lead to discovery of admissible evidence. Fed.R.Civ.P. 26.

**\*2** While the scope of discovery is undoubtedly broad, the Federal Rules also provide that a Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26. Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible ... while

**Thompson v. Warren, Not Reported in F.Supp.3d (2015)**

preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." *Schmulovich v. 1161 Rt. 9 LLC,* 2007 U.S. Dist. LEXIS 59705, at *3–4, 2007 WL 2362598 (D.N.J.2007); *see also Pearson,* 211 F.3d at 65; Fed.R.Civ.P. 26(c).

Rule 37(a) allows a party to file a motion to compel discovery where the opposing party fails to respond adequately to a document request propounded pursuant to Rule 34. Fed.R.Civ.P. 37(a)(3) (B)(iv). Ultimately, it is within the discretion of the Court to grant a motion to compel disclosure for good cause shown. *In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 661 (3d Cir.2003).

In response to Plaintiff's Motion to compel, Defendants filed a Cross–Motion requesting a stay of discovery pending disposition of Defendants' Dispositive Motion. Defendants do not argue that they have provided responses to Plaintiff's interrogatories or object to Plaintiff's interrogatories. Instead, Defendants assert that the Court's decision on their pending Dispositive Motion may obviate the need for discovery.

Pursuant to Federal Rule of Civil Procedure 26(c), the Court may stay discovery pending determination of a dispositive motion only on a showing of "good cause" by the party requesting the stay. *Gerald Chamales Corp. v. Oki Data Americas, Inc., et al.,* 247 F.R.D. 453, 454 (D.N.J.Dec.11, 2007) ("A protective order pursuant to Fed.R.Civ.P. 26(c) may only be issued if 'good cause' is shown."); Fed.R.Civ.P. 26(c)(1) (establishing that the court may issue a protective order with respect to discovery only for "good cause"); *see Perelman v. Perelman,* 2011 U.S. Dist. LEXIS 85470, at *2–3, 2011 WL 3330376 (E.D.Pa. Aug.3, 2011) ("The burden is on the party seeking the stay [of discovery] to show 'good cause.' ") (citations omitted). It is well settled that "the mere filing of a dispositive motion does not constitute 'good cause' for the issuance of a discovery stay." *Chamales,* 247 F.R.D. at 454.

Courts generally do not favor granting motions to stay discovery "because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Coyle v. Hornell Brewing Co.,* 2009 WL 1652399, at *3 (D.N.J. June 9, 2009) (internal citations and quotation marks omitted). Nonetheless, this Court maintains wide discretion to manage discovery issues and enter stays where good cause has been shown. *See Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57

S.Ct. 163, 81 L.Ed. 153 (1936); *Coyle,* 2009 WL 1652399, at *3 ("In discovery disputes, the Magistrate Judge exercises broad discretion and is entitled to great deference.") (citations omitted); *Chamales,* 247 F.R.D. at 454 ("Magistrate Judges have broad discretion to manage their docket and to decide discovery issues, including whether to stay discovery pending a decision on a dispositive motion.") (citations omitted).

**\*3** In the present case, Defendants argue that their Dispositive Motion "has a substantial basis in law and would lead to dismissal of the [C]omplaint in its entirety, which in turn would render unnecessary any and all responses to [Plaintiff's] interrogatories." Dkt. No. 62 at p. 2. Defendants contend that Plaintiff will not be "unduly prejudiced by a stay of discovery" and that the resolution of Defendants' pending Dispositive Motion "will serve to narrow or outright eliminate the need for further discovery." *Id.* at p. 4–6. Although Defendants submit that if the Court grants their Dispositive Motion, "the time and expense spend in providing responses from seven parties to Plaintiff's broadly-worded interrogatories would be in vain", Defendants "stop short of asserting that answering Plaintiff's interrogatories will constitute a 'clear hardship or inequity....' " *Id.* at p. 5.

The Court finds that Defendants have failed to satisfy their burden of demonstrating good cause sufficient to justify staying discovery pending the disposition of Defendants' Dispositive Motion. While Defendants' Dispositive Motion does not appear to be without foundation in law, the Court "does not believe the issuance of a protective order should depend upon its prediction of how the District Judge will decide defendants' dispositive motion." *Chamales,* 247 F.R.D. at 454. Furthermore, although Defendants claim that the expense of [answering Plaintiff's interrogatories] would be burdensome in light of the arguments made in the [pending] [D]ispositive [M]otion", Defendants have failed to state with any specificity why this matter differs from any other case in which discovery may be rendered unnecessary by a subsequent ruling on a pending dispositive motion. Dkt. No. 62 at p. 5. Accordingly, Defendants' Motion to stay discovery pending the outcome of their Dispositive Motion is DENIED.

Beyond their argument that a decision on the pending Dispositive Motion may render discovery in this matter unnecessary, Defendants do not state any specific objections to Plaintiff's interrogatories. Although Defendants wish to avoid the time and expense associated with responding to Plaintiff's interrogatories, they have failed to demonstrate

any meaningful objection to Plaintiff's discovery requests. Accordingly, Plaintiff's Motion to compel is GRANTED. Additionally, in light of the expiration of the discovery deadlines set forth in the present Scheduling Order, Plaintiff's Motion to modify the Scheduling Order is GRANTED and an Amended Scheduling Order will be entered by the Court.

### III. CONCLUSION AND ORDER
The Court having considered the papers submitted pursuant to Fed.R.Civ.P. 78, and for the reasons set forth above;

**IT IS** on this 26th day of May, 2015,

**ORDERED** that Plaintiff's Motion to compel responses to the interrogatories served on Defendants Nelson, D'Amico,

Mendez, Dutch, Packard, Jimenez and Barnes [Dkt. No. 59] is **GRANTED** and Defendants are to provide Plaintiff with answers to the interrogatories within fourteen (14) days of the entry of this Order; and it is further

**\*4 ORDERED** that Defendants' Cross–Motion to stay discovery in this matter [Dkt. No. 62] is **DENIED;** and it is further

**ORDERED** that Plaintiff's Motion to modify the Scheduling Order [Dkt. No. 68] is **GRANTED** and an Amended Scheduling Order will be entered by the Court.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 3386487

---

### Footnotes

1    On December 1, 2014, Defendants filed a Motion for Judgment on the Pleadings and Summary Judgment, which is currently pending before the Court. *See* Dkt. No. 61.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 9777793
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Jody TOTH, Plaintiff,

v.

CSX TRANSPORTATION, INC., Defendant.

06-CV-0244(M)
|
Signed 10/30/2007

**Attorneys and Law Firms**

Kevin T. Stocker, Felle, Stocker & Margulis, Williamsville, NY, for Plaintiff.

J. Christine Chiriboga, Anspach, Meeks, Ellenberger, LLP, Buffalo, NY, for Defendant.

**DECISION AND ORDER**

JEREMIAH J. MCCARTHY, United States Magistrate Judge

**\*1** The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Dkt. #26). Before me is plaintiff's motion to compel discovery (Dkt. #30). For the following reasons, plaintiff's motion is DENIED.

**BACKGROUND**

This is a personal injury action in which plaintiff, a General Mills employee, seeks to recover damages from defendant CSX Transportation, Inc. ("CSXT") for injuries allegedly arising from a collision between plaintiff's vehicle and a CSXT train at a railroad crossing across from the General Mills plant in the City of Buffalo on November 18, 2003 (Dkt. #1, Complaint). Plaintiff seeks to recover for spinal injuries, migraine headaches, depression, and post-traumatic stress disorder (Id. at ¶13).

Plaintiff moves to "compel [CSXT] to provide all discovery disclosures subject to this motion" and the "discovery documents subpoenaed from General Mills" (Dkt. #30, Notice of Motion, p. 1).

**DISCUSSION AND ANALYSIS**

**I. Discovery sought from CSXT**

**A. Document Production**

Plaintiff argues that CSXT's May 29, 2007 responses to her initial undated "Request for Discovery" are deficient (Dkt. #30, Affidavit of Kevin T. Stocker, Esq., Exs. C and D), and that CSXT has failed to respond to her "additional demands" set forth in a letter dated February 13, 2007 (Id. at Ex. F). She contends that "to date, [CSXT] ... has not produced any documents requested other than a map of the area in question and a deed, none of which was requested" (Id. at ¶5).

In response, CSXT raises several arguments, including that plaintiff has failed to comply with Local Rule 37 and that CSXT has complied with plaintiff's initial Request for Discovery, the only proper demand served by plaintiff (Dkt. #37, Points II and IV).

**i. Which demands are proper?**

In addition to plaintiff's initial Request for Discovery, plaintiff's counsel made various requests for discovery in letters to CSXT's counsel dated February 13, 2007 (Dkt. #30, Ex. F) and July 9, 2007 (Dkt. #37, Ex. 6). CSXT objected to the later request on various grounds, including that it was an improper letter request (Dkt. #37, Ex. 7).

Plaintiff contends that these letter requests complied with Fed. R. Civ. P. 26 and 34, which only mandate that discovery demands be in written form, signed, and served (Dkt. #39, ¶9), I disagree. Plaintiff's letter requests did not specify the time, place, and manner for disclosing the documents, as required by Fed. R. Civ. P. 34(b). A letter request lacking such procedural requisites is an improper request. See 7 Moore's Federal Practice, 34.11[2] (3d ed. 2007) ("While an informal written request may be found to be sufficient, a court may refuse to compel production if it finds that the formalities of Rule 34 are not satisfied. For example, it has been found that informal requests made in letters between counsel are not a sufficient basis on which to base an order to compel production...."). Consequently, absent compliance with Fed. R. Civ. P. 34(b), I cannot compel responses to plaintiff's letter requests. Nevertheless, plaintiff is free, subject to objection, to file her additional requests in proper form.

#### ii. Has plaintiff complied with Local Rule 37?

**\*2** Local Rule 37 requires that a party moving to compel must notify

> "the Court by written affidavit that sincere attempts to resolve the discovery dispute have been made. Such affidavit shall detail the times and places of the parties' meeting, correspondence or discussions concerning the discovery dispute, and the name of all parties participating therein. See also Fed. R. Civ. P 37(a)(2)(A) (a motion to compel disclosure "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action").

Plaintiff's motion to compel is supported by the affidavit of her counsel, Kevin Stocker, Esq. However, Mr. Stocker's affidavit fails to detail any efforts undertaken by him to resolve the discovery dispute. The only document attached to Mr. Stocker's affidavit suggesting that an attempt was made to resolve this dispute is a letter dated September 20, 2007 to CSXT's counsel entitled "Fourth Oral Request and Third Written Demand", in which he advised that he was filing a motion to compel and itemized the deficiencies in CSXT's production (Dkt. #30, Ex. E). However, this letter, which is dated on the same date as plaintiff's motion to compel, cannot satisfy plaintiff's obligation under Rule 37 to attempt to resolve the dispute prior to seeking judicial intervention. Even considering the documents attached to CSXT's opposition, which provide a more detailed history of the communications between the parties prior to the motion, I am not satisfied that plaintiff has fulfilled her obligations under Local Rule 37.

Following CSXT's May 29, 2007 response to plaintiff's initial Request for Discovery, by letter dated July 9, 2007 plaintiff stated that she was "waiting for [CSXT] to respond to [her] discovery demands" (Dkt. #37. Ex. 6). Plaintiff also noted that she was "making a good faith attempt to request cooperation with the original discovery demands ..." (Id.).

CSXT responded by letter dated July 10, 2007, advising plaintiff to specifically address the items she believed did not receive an adequate response (Dkt. #37, Ex. 7). Despite this invitation, it does not appear that plaintiff undertook to provide CSXT with specifics concerning the responses she believed were deficient. [1] Thereafter, by letter dated July 19, 2007, CSXT's counsel again advised plaintiff:

> "You have accused CSXT of withholding documents. I previously asked, as a courtesy, that you provide me with any evidence you have that supports this contention in this case. The reason I asked was twofold. *First, if you have any knowledge that would assist CSXT in providing supplemental responses to your demands, we would appreciate hearing about it. Second, if there is a misunderstanding as to what was demanded, what exists, and what existed, we can both make clarifications without having to engage in the expense of motion practice*" (Dkt. #37, Ex. 8 (emphasis added)).

However, there is no evidence in the record that plaintiff attempted to specify the perceived deficiencies to CSXT. In fact, following the filing of this motion, CSXT's counsel requested for the third time that plaintiff "*detail the perceived deficiencies, and cite whatever hard evidence or authority you have to support your perception. I have told you before that I would be happy to review such evidence in order to avoid motion practice*" (Dkt. #37, Ex. 5 (emphasis added)).

**\*3** Despite the three previous requests by CSXT, in plaintiff's reply, Mr. Stocker appears to disclose the material supporting his contention that CSXT is withholding discovery, including e-mails between and among CSXT's employees and General Mills' employees concerning plaintiff's accident (Dkt. #39, Ex. 1), portions of CSXT's safety manuals pertaining to train operations (Id. at Ex. 3), and a photograph taken shortly before plaintiff's accident, which appears to have been taken by a surveillance camera (Id. at 5). Additionally, plaintiff has submitted an affidavit stating that she has been informed by several identified General Mills employees "that there are pictures and video tapes of the accident ... in General Mills and CSX's possession.... [and] that there have been numerous meetings between CSX official and General Mills official to discuss the dangerous condition and lack of electric safety warning devices that no one wants to pay for" (Id. at Ex.6). In plaintiff's reply, Mr. Stocker also states that "[p]laintiff has made numerous good faith attempts to obtain these documents through three (3) prior written demands, letters and multiple telephone calls prior to applying for court intervention" (Dkt. #39). However, he fails to identify these communications with any specificity. [2]

Under these circumstances, I find that plaintiff has not complied with Local Rule 37. While it appears from the materials produced by plaintiff in her reply that CSXT may not have disclosed all materials pertinent to plaintiff's accident, plaintiff is not precluded from refiling her motion to

Case 3:24-cv-11399-RK-RLS    Document 61-3    Filed 06/23/25    Page 20 of 24 PageID: 2445

Toth v. CSX Transportation, Inc., Not Reported in Fed. Supp. (2007)

compel after fully complying with the requirements of Local Rule 37.

**B. Deposition Notices**

Plaintiff contends that CSXT has only produced two of the five witnesses contained in her deposition notice dated June 19, 2007 (Dkt. #30, Affidavit of Kevin T. Stocker, Esq., Ex. G). In response, CSXT contends that (1) it will produce Jim Kane for a deposition, (2) Thomas Ferris is no longer CSXT's employee, and (3) it objects to the production of Dan Christopher because "it is anticipated that [his] testimony ... would be wholly covered by work-product and attorney-client privileges or the protections afforded material prepared in anticipation of litigation"(Dkt. #37, Point III). [3]

However, "[a] bald assertion of privilege is insufficient to claim the privilege, as is a blanket refusal to participate in discovery on the basis of a claimed privilege. Rather, a claim of privilege must be directed to specific questions or documents". 6 Moore's Federal Practice (Third Ed. 2007), § 26.47[1][b]. Should CSXT have any objection to the questions asked of Mr. Christopher at a deposition, it may utilize the procedure set forth in Fed. R. Civ. 30(d) to terminate or limit his examination. However, at this time it is speculative to assume what questions will be presented to Mr. Christopher.

Given plaintiff's failure to comply with the requirements of Fed. R. Civ. P. 37, I am not compelling the depositions of any witness at this time. However, I expect that the parties will cooperate in the conduct of the depositions as suggested herein.

**II. Discovery Sought from General Mills**

Plaintiff seeks to compel General Mills to comply with her May 15, 2007 subpoena (Dkt. No. 30, Ex. B). The subpoena requested a variety of information including, videotapes, statements, and investigation reports relating to the accident (Id.). In response, General Mills relies on the Declaration of Hugh M. Russ, III, Esq., detailing the efforts undertaken to date to comply with the subpoena, which have located one investigative report that has been produced to plaintiff (Dkt. #35, ¶¶4-8).

Based on counsel's representations, I find that General Mills has complied with plaintiff's subpoena, and deny this aspect of plaintiff's motion.

**CONCLUSION**

**\*4** Plaintiff's motion to compel (Dkt. #30) is DENIED. The parties are directed to meet with the court on November 7, 2007 at 2:00 p.m. to discuss the revision of the Second Amended Case Management Order.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2007 WL 9777793

---

**Footnotes**

1    Notably, plaintiff also argued that CSXT was withholding documents in her July 17, 2007 opposition to CSXT's motion to compel, and noted that she intended to move to compel (Dkt. #22, ¶28). Nevertheless, plaintiff waited nearly two months to file her motion.

2    Following the filing of the motion, I directed the parties to exchange letters in an attempt to narrow the issues in dispute (Dkt. #32). However, this directive did not replace plaintiff's obligations pursuant to Fed. R. Civ. P. 37.

3    CSXT also contends that plaintiff served a "Subpoena Duces Tecum" for the deposition of Jack Weisenberg and Ed Sheedy on September 20, 2007 (Dkt. #37, Point III). However, as these notices were sent at or about the time of plaintiff's motion to compel, they cannot be the subject of the motion.

Toth v. CSX Transportation, Inc., Not Reported in Fed. Supp. (2007)

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Weisman v. Mediq, Inc., Not Reported in F.Supp. (1995)

RICO Bus.Disp.Guide 8802

1995 WL 273678

United States District Court,

E.D. Pennsylvania.

WEISMAN

v.

MEDIQ, INC., et al.

Civ. A. No. 95-1831.

|

May 3, 1995.

**Attorneys and Law Firms**

Brian P. Kenney, Mark J. Schwemler, Elliott, Reihner, Siedzikowski, North & Egan, P.C., Blue Bell, PA, for plaintiff.

David H. Pittinsky, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Defendant Mediq, Inc.

Michael J. Holston, Philadelphia, PA, for defendants Mediq Imaging Services, Inc., American Cardiovascular Imaging Labs, Inc., Mediq Mobile X-Ray and EKG, Inc.

MEMORANDUM

RENDELL, District Judge.

**\*1** Before the Court are (1) plaintiff's Motion for Leave to Take Expedited Discovery; (2) defendants' Motion to Stay Discovery; and (3) plaintiff's Motion to Compel Non-Party Mediq Mobile X-Ray and EKG, Inc. to Comply with Subpoena. For the following reasons, plaintiff's motions will be denied and defendants' motion will be granted.

I. Background

Plaintiff filed the instant action on March 29, 1995, alleging various acts of misconduct relating to fraudulent Medicare overcharges in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.,* the whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h), and various state laws. Defendants filed a motion to dismiss on May 2, 1995.

Prior to the filing of the motion to dismiss, the parties filed the three discovery motions now before the Court. Plaintiff's two motions respectively seek leave to take expedited discovery of both defendants and non-parties, and to compel one

non-party to comply with a subpoena previously issued by plaintiff. Defendants' motion seeks a stay of discovery during the pendency of the motion to dismiss.

II. Discussion

As grounds for its motion to expedite, plaintiff contends that defendants are currently engaged in a whitewashing scheme to disguise their alleged misconduct, which scheme may include destruction of evidence, attempts to mislead potential witnesses, and other like acts. Plaintiff offers no evidence of such a scheme, other than two letters authored by defendant Stephen Doppelt, an executive of Mediq Imaging Services, Inc. ("MIS"), in which Mr. Doppelt, writing to MIS clients, addresses certain of the issues raised in plaintiff's complaint. While plaintiff construes these letters as a deceptive attempt to cover up acts of wrongdoing, defendants characterize the letters as a sincere effort to clarify proper billing procedures in light of the concerns previously raised by plaintiff. [1]

These arguments on the issue of expedited discovery must be considered in conjunction with the arguments presented by the parties in regard to defendants' motion to stay discovery. In fact, the motion to expedite is now technically moot. On March 30, 1995, plaintiff provided defendants with its self-executing disclosures pursuant to the Eastern District's Civil Justice Expense and Delay Reduction Plan ("District Plan") Section 4:01, and at that time made a written demand for early disclosure from defendants pursuant to Section 4:01(a)(1)(D); thirty days having passed since plaintiff's disclosure and demand, plaintiff is now entitled to "seek discovery" from both defendants and non-parties. District Plan, Section 4:01(b). Thus, the relevance of the aforementioned arguments is now directed toward the issue of whether discovery should be stayed rather than whether it should be expedited.

In regard to the motion to stay discovery, courts are empowered under the Federal Rules of Civil Procedure to impose a stay of discovery on a showing of good cause. Fed. R. Civ. P. 26(c); *Howard v. Galesi,* 107 F.R.D. 348 (S.D.N.Y. 1985). In the instant case, defendants argue that their motion to dismiss, now pending, may dispose of the entire action and therefore constitutes good cause for staying the broad discovery sought by plaintiff--as to both defendants and non-parties--until the motion is decided. Plaintiffs respond with three arguments: (1) that defendants cannot ensure that their employees will preserve potentially incriminating evidence (i.e. the arguments raised in support of the motion to

Weisman v. Mediq, Inc., Not Reported in F.Supp. (1995)

RICO Bus.Disp.Guide 8802

expedite); (2) that dismissal of the entire case is unlikely; and (3) that non-party discovery is of no moment to defendants.

**\*2** While a court should not automatically stay discovery when a motion to dismiss is filed, a stay is proper where the likelihood that such motion may result in a narrowing or outright elimination of discovery outweighs the likely harm to be produced by the delay. *See Coca-Cola Bottling Co. v. Grol,* 1993 U.S. Dist. LEXIS 3734, at \*6-7 (E.D.Pa.). Where a pending motion to dismiss may dispose of the entire action and where discovery is not needed to rule on such motion, the balance generally favors granting a motion to stay. *See Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984) (affirming stay where dispositive motion decided strictly on pleadings); *Jackson v. Northern Telecom, Inc.,* 1990 WL 39311, at \*1 (E.D.Pa.) (granting stay under same circumstances); *cf. United Mine Workers of America v. Arch Mineral Corp.,* 145 F.R.D. 3, 7 (D.D.C. 1992) (denying stay where discovery relevant to disposition of motion).

Applying these standards to the case at hand, I conclude that a stay of discovery is appropriate. Having reviewed the motion to dismiss, but without having formed an opinion as to the merits, I find that the comprehensive motion--which challenges both federal claims as well as all state claims--may be decided on the pleadings and may potentially lead to dismissal of the entire action. The motion is now before me and, assuming that both parties submit response and reply briefs in a timely fashion, will be decided in the near future. By imposing a stay while ruling on the motion, when discovery proceeds the parties will have full knowledge as to which claims are viable and, correspondingly, as to what discovery need occur. In short, the stay will potentially save time and money for all concerned.

Conversely, I do not find that plaintiff will be prejudiced by a stay in any significant way. More specifically, I am not persuaded by plaintiff's contention that a delay will result in loss or alteration of potential evidence or witness testimony. Such conduct would constitute a serious breach of ethics and a possible violation of law. [2] This case is no different from the tens of hundreds of cases where a plaintiff accuses a defendant of fraudulent acts; such accusation does not carry with it a presumption that evidence will be destroyed, nor is the argument proffered by plaintiff, without evidentiary support, either direct or by inference, sufficiently compelling to create such a presumption.

In regard to the scope of the stay, I will not allow defendants to avoid their responsibility to produce their self-executing discovery in accordance with the District Plan; plaintiff has fulfilled his duty of disclosure, made his demand, and is entitled to reciprocity. I will extend the stay to all non-self-executing discovery, which includes defendants and non-parties alike. Defendants have argued that allowing non-party discovery to proceed will effectively subject defendants to potentially needless expenses--by way of participation and monitoring of non-party discovery--which the stay is intended to prevent. While I am aware that at least one court has ruled that such burdens do not constitute "good cause" for staying discovery, *see Howard,* 107 F.R.D. at 350, I find that the breadth of non-party discovery sought by plaintiff, combined with the other factors addressed above, warrants granting a stay across the board.

**\*3** Accordingly, the motion to expedite will be denied as moot and the motion for a stay of discovery will be granted. In light of the stay to be imposed, the motion to compel non-party compliance with subpoena will be denied without prejudice to plaintiff's ability to refile the motion if and when the stay is lifted.

*ORDER*

AND NOW, this 3rd day of May, 1995, upon consideration of (1) plaintiff's Motion for Leave to Take Expedited Discovery; (2) defendants' Motion to Stay Discovery; and (3) plaintiff's Motion to Compel Non-Party Mediq Mobile X-Ray and EKG, Inc. to Comply with Subpoena, and all responses and replies thereto, for the reasons addressed in an accompanying Memorandum, it is hereby ORDERED:

1. Plaintiff's Motion for Leave to Take Expedited Discovery is DENIED AS MOOT.

2. Defendants' Motion to Stay Discovery is GRANTED, in that all non-self-executing discovery is hereby STAYED, as to defendants and non-parties alike, until further ordered by this Court.

3. Plaintiff's Motion to Compel Non-Party Mediq Mobile X-Ray and EKG, Inc. to Comply with Subpoena is DENIED WITHOUT PREJUDICE. Should circumstances warrant the refiling of this motion if and when discovery is reopened, plaintiff is granted leave to do so.

RICO Bus.Disp.Guide 8802

**All Citations**

Not Reported in F.Supp., 1995 WL 273678, RICO
Bus.Disp.Guide 8802

---

## Footnotes

1    Plaintiff also argues that expedited discovery is warranted in light of defendants' alleged current attempt to buy out all of its shareholders and take the company "private." I view this argument as a red herring. Plaintiff fails to articulate any valid reason why such a restructuring should be deemed justification for expedited discovery. A corporation's conversion from public to private status certainly does not entitle it to dispose of documents which may prove relevant to a lawsuit.

2    As mentioned in plaintiff's response brief, defendant Mediq, Inc.'s annual report to the Securities and Exchange Commission acknowledges an ongoing criminal investigation of non-party Mediq Mobile X-Ray relating to improper billing practices, noting its cooperation with authorities. In light of such investigation, defendants are clearly aware of the seriousness of such allegations and the importance of preserving documents and other evidence that may pertain to such matters.

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.