# Unpublished Opinions

2025 WL 1085695
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Patricia BEVINS, Plaintiff,
v.
COLGATE-PALMOLIVE CO. and
BJ's Wholesale Club, Inc., Defendants.

CIVIL ACTION NO. 25-576
|
Filed April 10, 2025

**Attorneys and Law Firms**

Nicholas L. Palazzo, DeFino Law Associates PC, Philadelphia, PA, for Plaintiff.

Regina M. Nelson, Megan Kathleen Bailey, Gordon Rees Scully Mansukhani, LLP, Philadelphia, PA, for Defendant Colgate-Palmolive Company.

Regina M. Nelson, Gordon Rees Scully Mansukhani, Philadelphia, PA, Carrie J. McConnell, Summers, McDonnell, Hudock, Guthrie and Rauch, Harrisburg, PA, Erik K. Swanholt, Foley & Lardner LLP, Los Angeles, CA, Sabrina M. Bryan, Sam M. Koch, Foley & Lardner LLP, New York, NY, for Defendant BJ's Wholesale Club, Inc.

## MEMORANDUM RE: MOTION TO DISMISS AND SANCTIONS

Baylson, District Judge

***1** Plaintiff Patricia Bevins ("Bevins") alleges she used Fabuloso cleaning products containing undisclosed *Pseudomonas aeruginosa* bacteria, which caused injuries to her nervous system, immune system, and skin. She asserts claims for violation of the Pennsylvania Unfair Trade Practices, negligence, breach of warranty, and products liability. Compl. ¶¶ 60–115, ECF 1-3. Defendant Colgate-Palmolive Co. ("Colgate-Palmolive"), the alleged manufacturer of the Fabuloso products, and Defendant BJ's Wholesale Club, Inc. ("BJ's"), the alleged seller of the Fabuloso products, moved to dismiss. For the reasons below, Defendants' Motions to Dismiss are **GRANTED** and Bevin's counsel is **SANCTIONED**.

### I. FACTUAL ALLEGATIONS [1]

Colgate-Palmolive manufactures cleaning products, including Fabuloso, and sells them to stores, which then sell them to consumers. Compl. ¶ 25, ECF 1-3. On February 8, 2023, Colgate-Palmolive recalled certain Fabuloso products manufactured between December 14, 2022, and January 23, 2023, which may have contained *Pseudomonas aeruginosa.* Id. ¶¶ 8, 12. [2]

In January 2023, before the recall, Bevins allegedly used Fabuloso products purchased by her employer from BJ's. [3] Id. ¶ 6. These Fabuloso products allegedly contained *Pseudomonas aeruginosa* bacteria. Id. ¶ 15. Bevins alleges that she subsequently suffered serious injuries to her nervous system, immune system, skin, and hands and fingers, resulting in disfigurement, humiliation, pain, distress, and medical expenses. Id. ¶¶ 43, 55–56.

### II. PROCEDURAL HISTORY

On December 31, 2024, Bevins filed a Complaint in the Philadelphia County Court of Common Pleas for violation of the Pennsylvania Unfair Trade Practices Act (Count I), negligence (Count II), breach of contract and warranties (Count III), and products liability (Count IV). Id. ¶¶ 60–115. On February 3, 2025, Colgate-Palmolive removed the case to this Court based on diversity jurisdiction. ECF 1. On March 3, 2025, BJ's and Colgate-Palmolive moved to dismiss the Complaint. BJ's Mot., ECF 9-1; Colgate-Palmolive Mot., ECF 11. On March 17, 2025, Bevins opposed dismissal. ECF 20, 21. On March 24, 2025, BJ's and Colgate-Palmolive filed reply briefs. ECF 24, 25.

### III. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," id. at 678 (citation omitted). Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ.

of Scis., 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that it has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (quoting Associated Gen. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

## IV. DISCUSSION

### A. Bevins Has No Private Right of Action Under The UTPCPL

***2** Count I alleges violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Defendants argue Count I fails because Bevins did not purchase the Fabuloso products herself, and in any case, the products were purchased for commercial use. Colgate-Palmolive Mot. at 9, ECF 11; BJ's Mot. at 5–6, ECF 9-1. The Court agrees.

The UTPCPL limits private causes of action to purchasers or lessees of goods or services. Commonw. by Creamer v. Monumental Props., Inc., 329 A.2d 812, 816 (Pa. 1974); Balderston v. Medtronic Sofamor Danek, Inc., 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001) (Surrick, J.), aff'd, 285 F.3d 238 (3d Cir. 2002). Bevins alleges she did not purchase the Fabuloso products. Compl., ¶ 71, ECF 1-3. This defeats Count I. See, e.g., Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (noting that the UTPCPL "unambiguously permits only persons who have purchased or leased goods or services to sue").

Nor does Bevins plausibly plead that she is in privity with the purchaser such that she has a UTPCPL cause of action. See Opp. to BJ's Mot. at 4, ECF 21. While strict privity is not always necessary, Valley Forge Towers S. Condo. v. Ron–Ike Foam Insulators, Inc., 574 A.2d 641 (Pa. Super. Ct. 1990), aff'd without opinion, 605 A.2d 798 (Pa. 1992) (per curiam), "a plaintiff lacking any commercial dealings with the defendant" lacks a private cause of action under the UTPCPL, Katz, 972 F.2d at 57. Bevins had no commercial dealings with Defendants and thus has no cause of action through privity. Id.

Further, a purchase is actionable under the UTPCPL only if it was primarily for personal, family, or household purposes. See Balderston, 152 F. Supp. 2d at 779; 73 Pa. Stat. Ann. § 201-9.2(a). The Fabuloso products were purchased for a commercial use, not personal, family, or household use. Compl. ¶ 55, ECF 1-3 (pleading that the products were used in connection with a job); see Balderston, 152 F. Supp. 2d at 779. That Fabuloso is a household cleaning product does not negate the purchase's commercial purpose; what matters is "the *purpose* of the purchase, not the *type* of product purchased." My Space Preschool & Nursery, Inc. v. Capitol Indem. Corp., 2015 WL 1185959, at *5 (E.D. Pa. Mar. 13, 2015) (Surrick, J.) (emphasis added). This too forecloses Bevins' UTPCPL cause of action. Balderston, 152 F. Supp. 2d at 779.

Accordingly, Count I is **DISMISSED without prejudice.**

### B. Bevins' Breach of Contract [4] and Warranty Claims Fail

Count III alleges that Colgate-Palmolive provided Bevins with an express warranty through written affirmations that the Fabuloso products were safe for use and a failure to disclose the presence of *Pseudomonas aeruginosa.* Compl. ¶¶ 93, 94, 98, 101, ECF 1-3 (referring to express warranty). [5] Count III fails because Bevins (1) did not purchase the Fabuloso products and (2) does not identify an affirmative statement constituting an express warranty.

***3** To create an express warranty, "the seller must expressly communicate the terms of the warranty to the buyer in such a manner that the buyer understands those terms and accepts them." McGrain v. C.R. Bard, Inc., 551 F. Supp. 3d 529, 543 (E.D. Pa. 2021) (Alejandro, J.) (citing Eiser v. Brown & Williamson Tobacco Corp., 2006 WL 933394, at *5 (Pa. Super. Ct. Jan. 19, 2006)). Because Bevins was not a buyer, Compl., ¶ 71, ECF 1-3, she cannot claim breach of an express warranty, McDonnell v. Flowonix Med. Inc., 2022 WL 221612, at *6 (E.D. Pa. Jan. 25, 2022) (Tucker, J.) (dismissing express warranty claim where plaintiff did not allege he was purchaser).

Nor can Bevins bring an express warranty claim as a third-party beneficiary based on the facts alleged. See Opp. to Colgate-Palmolive Mot. at 10, ECF 20. While third parties may bring express warranty claims in limited circumstances, no such circumstances are present here. See Goodman v. PPG Indus., Inc., 849 A.2d 1239, 1246 (Pa. Super. Ct. 2004), aff'd, 885 A.2d 982 (Pa. 2005) (noting that third parties may enforce express warranties if (1) issuing party intended to extend warranty to third party and (2) third party is aware of the warranty terms and identity of issuing party). Bevins pleads no facts which plausibly establish that either

Defendant intended to extend a warranty to her or that she was aware of the warranty and Defendants' identities.

Bevins further fails to identify a specific affirmative statement which constitutes a warranty. Bevins merely alleges a generic promise of safety, Compl. ¶ 93, ECF 1-3, without specifying the source, content, or recipient of the purported warranty, see Drumheller v. Johnson & Johnson, 2021 WL 1853407, at *15 (E.D. Pa. May 10, 2021) (Kearney, J.) (dismissing warranty claim where plaintiff claimed advertisements included language about being "safe and effective" but did not plead specific warranties and materials containing them); ke v. Am. Home Prods. Corp., 1998 WL 1781624, at *6 (Pa. Ct. Com. Pl. Nov. 18, 1998) (dismissing warranty claim where plaintiff failed to allege "what the warranty allegedly covered, when it was made[,] and to whom it was directed"). Bevins' allegations lack the meaningful detail required to plausibly plead an express warranty claim. See McDonnell, 2022 WL 221612, at *6 (citing Luke, 1998 WL 1781624, at *6). Further, that the packaging omitted *Pseudomonas aeruginosa* from the ingredients list, Opp. to Colgate-Palmolive Mot. at 12, ECF 20, is insufficient to establish an express warranty claim. [6] In sum, Bevins' express warranty claim fails because pleading such a claim requires more than a broad assurance of safety. See Fike v. Glob. Pharma. Healthcare Priv., Ltd., 741 F. Supp. 3d 265, 277 (E.D. Pa. 2024) (Leeson, J.).

Accordingly, Count III is **DISMISSED without prejudice**.

### C. Bevins' Negligence Claim Fails

Count II alleges negligence, asserting that Colgate-Palmolive was negligent in the design and manufacturing of the Fabuloso products and that BJ's knew or should have known that the Fabuloso products would likely contain *Pseudomonas aeruginosa.* Compl. ¶¶ 67, 69, 71, ECF 1-3. Count II also alleges that Defendants failed to use reasonable care prior to placing the Fabuloso products into the stream of commerce. Id. ¶ 72.

***4** Under Pennsylvania law, a plaintiff must prove four elements to establish negligence: (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant breached that duty; (3) that the breach resulted in injury to the plaintiff; and (4) that the plaintiff suffered an actual loss or damage. Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998). Bevins fails to state a claim for negligence against each Defendant at the first step: she does not plausibly plead that BJ's and Colgate-Palmolive owed her a duty of care.

Bevins does not plausibly plead that BJ's owed her a duty of care—nor could BJ's owe such a duty in this context. Pennsylvania law imposes no duty on distributors to inspect for latent or hidden defects. See, e.g., Kratz v. Am. Stores Co., 59 A.3d 138, 140 (Pa. 1948) (noting no duty on distributors "to test the contents of each" product and that any other rule would "be wholly impractical"). BJ's is merely the distributor of the Fabuloso products, and Bevins does not plausibly plead otherwise. [7] BJ's Mot. at 6–7, ECF 9-1; BJ's Reply at 6–7, ECF 25. BJ's owed no duty of care to Bevins, and thus cannot be liable under a theory of negligence.

Bevins also fails to plead that Colgate-Palmolive owed her a duty. Bevins alleges that Colgate-Palmolive had a duty to provide consumers and other foreseeable users of Fabuloso products with accurate information about the products. Compl. ¶ 41, ECF 1-3. However, this conclusory statement—the only mention of a duty in the entire Complaint —is simply a recital of an element of negligence and does satisfy the Twombly and Iqbal pleading requirements. See Neurosurgical Care, LLC v. Doc Sols. LLC, 2022 WL 2974716, at *8 (E.D. Pa. July 26, 2022) (Younge, J.) (noting, where plaintiff alleged general duty to provide accurate information, that pleadings did "not provide even a cursory explanation regarding [d]efendants' duty ... [but] simply states as much in a conclusory fashion"). Bevins does not plausibly plead that Colgate-Palmolive owed a duty of care or even substantively attempt to make this argument in her Opposition. Opp. to Colgate-Palmolive Mot. at 6, ECF 20. [8]

Accordingly, Count II is **DISMISSED without prejudice.**

### D. Bevins' Strict Products Liability Claim Fails

Count IV asserts claims for defective design, defective manufacturing, and failure to warn based on a theory of strict liability. Compl. ¶¶ 102–16, ECF 1-3. To succeed under a strict product liability theory under Pennsylvania law, a plaintiff must show that "(1) the product was defective; (2) the defect proximately caused the plaintiff's injury; and (3) the defect existed at the time the product left the defendant's control." Pavlik v. Lane Ltd./Tobacco Exporters, Int'l, 135 F.3d 876, 881 (3d Cir. 1998).

***5** Bevins alleges that "the cleaning products she used did contain *Pseudomonas aeruginosa*" and that "she suffered [ ] injuries after the use of a Fabuloso product in January of 2023."[1] Compl. ¶¶ 5, 15, ECF 1-3. Bevins does not allege how soon after the use she began experiencing symptoms or—perhaps most notably—when her employer purchased the Fabuloso products.[9] These issues are vital to the causation element of Bevins' products liability claim. The "touchstone for pleading sufficiency" is plausibility, not possibility. Santiago v. Warminster Twp., 629 F.3d 121, 133 (3d Cir. 2010). Allegations that are "merely consistent with a defendant's liability"—such as Bevins' barebones allegations that the products she used contained *Pseudomonas aeruginosa* and that she experienced injuries in weeks after using the products—are not enough to state a claim for products liability. Iqbal, 556 U.S. at 679. While Bevins' allegations must be accepted as true and viewed in a light most favorable to her, Doe, 961 F.3d at 208, her sparse allegations do not plead "a right to relief above the speculative level," Twombly, 550 U.S. at 555.

As discussed further below, Count IV is **DISMISSED without prejudice**.

#### i. Bevins Fails To State A Claim For Defective Design Or Manufacturing

To establish strict liability for defective design, a plaintiff must plead the elements of strict liability and can prove a defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer or (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions. Tincher v. Omega Flex, Inc., 104 A.3d 328, 401 (Pa. 2014). To establish defective manufacturing, a plaintiff must plead the elements of strict liability stated above. See Pavlik, 135 F.3d at 881. This can be established by evidence of "a breakdown in the machine or a component thereof," Riley v. Warren Mfg., Inc., 688 A.2d 221, 224 (Pa. Super. Ct. 1997), or circumstantial evidence through which a plaintiff can rule out abnormal use or secondary causes, Rogers v. Johnson & Johnson Prods., Inc., 565 A.2d 751, 754 (Pa. 1989).

Bevins' conclusory allegations that the Fabuloso products were defectively designed and manufactured and that Colgate-Palmolive "had access to [economically feasible] alternative ingredients," methods for minimizing the risk of contamination, and methods for performing quality assurance measures, but "chose purposely not to do so," fails to state a claim for defective design or manufacturing. Compl. ¶¶ 106–07, ECF 1-3; see Iqbal, 556 U.S. at 678. Bevins does not make any non-conclusory allegations about the manufacturing process for or design of the Fabuloso products. Accordingly, these claims are dismissed. See Zuzel v. SEPTA, 2019 WL 1584598, at *5 (E.D. Pa. Apr. 11, 2019) (Schiller, J.) (dismissing plaintiff's complaint for defective design because plaintiff's allegation that her rollator broke due to an "insufficient design" was insufficient to state a claim); Zuzel v. SEPTA, 2019 WL 3252936, at *4 (E.D. Pa. July 18, 2019) (Schiller, J.) (dismissing manufacturing defect claim where allegations were conclusory).

#### ii. Bevins Fails To State A Claim For Failure To Warn

A product is defective under a failure-to-warn theory when the product was "distributed without sufficient warnings to notify the ultimate user of the dangers inherent in the product." Mackowick v. Westinghouse Elec. Corp., 575 A.2d 100, 102 (Pa. 1990). To establish a claim for failure to warn, a plaintiff must prove that: (1) a warning was either lacking or inadequate, and (2) the user would have avoided the risk had he been advised of it by the seller. Jeter v. Brown & Williamson Tobacco Corp., 113 F. App'x 465, 467–68 (3d Cir. 2004) (non-precedential) (citing Phillips v. A-Best Prods. Co., 665 A.2d 1167, 1171 (Pa. 1995)).

***6** Bevins' Complaint lacks factual specificity regarding allegations that Colgate-Palmolive failed to warn users of a danger inherent in the product. Bevins alleges that the Fabuloso products are defective because the product "fails to contain adequate warnings," and lists details that she believes should have been included as warnings. Compl. ¶ 111, ECF 1-3. However, "without any actual allegations regarding the warnings, labels, and instructions" on the Fabuloso products beyond including a picture of the back of a bottle in her Complaint, Bevins does not state a claim for relief. See Zuzel, 2019 WL 1584598, at *4.

### V. SANCTIONS

#### a. Bevins' Opposition Briefs Filed by Attorney Nicholas L. Palazzo

Bevins is represented by Nicholas L. Palazzo, Esq. of DeFino Law Associates PC. When Attorney Palazzo filed briefs opposing dismissal on behalf of his client, Opp. to Colgate-Palmolive Mot. at 6, ECF 20 & Opp. to BJ's Mot. at 12, ECF 21, the briefs included citations to two purported cases which presented concerns to the Court.

Attorney Palazzo cited "Tinch v. Video Indus. Servs., Inc., No. 1712 EDA 2018, 2019 WL 1396975, at *3 (Pa. Super. Ct. Mar. 27, 2019)." Opp. to Colgate-Palmolive Mot. at 6, ECF 20 & Opp. to BJ's Mot. at 12, ECF 21. The Court's search did not locate this case or identify a plausible typographical error in the citation. The case bearing this caption, Tinch v. Video Indus. Servs., Inc., is a 1997 opinion by the Supreme Court of North Carolina and is irrelevant to this case. The Westlaw citation provided by Attorney Palazzo, "2019 WL 1396975," corresponds to Dolberry v. Jakob, 2019 WL 1396975, at *1 (N.D.N.Y. Mar. 28, 2019). The case number provided by Attorney Palazzo, "1712 EDA 2018," corresponds to an irrelevant criminal appeal.

Attorney Palazzo cited "Burton v. Danek, No. 95-5560, 1997 WL 436713, at *8 (E.D. Pa. July 31, 1997)." Opp. to Colgate-Palmolive Mot. at 12, ECF 20. Again, the Court's search did not locate this case or detect a possible typographical error in the citation. The Westlaw citation provided by Attorney Palazzo, "1997 WL 436713," corresponds to Top Choice Distributors, Inc. v. U.S. Postal Serv., 1997 WL 436713, at *1 (W.D.N.Y. July 22, 1997), aff'd, 138 F.3d 463 (2d Cir. 1998). The case number provided by Attorney Palazzo, "Case No. 95-5560," corresponds to a case entitled Daniels v. Copley Pharma., et al. which was terminated before the date included in Attorney Palazzo's citation.

On March 18, 2025, this Court ordered Attorney Palazzo to show cause as to why he should not be sanctioned based on the inclusion of these cases in his briefs. ECF 22. Attorney Palazzo was ordered to submit an affidavit and annex copies of the judicial opinions cited. Id. On March 21, 2025, Attorney Palazzo filed a memorandum in support of cause but did not submit an affidavit or copies of judicial opinions as ordered. ECF 23.

In his memorandum, Attorney Palazzo asserts that the citation to "Tinch v. Video Indus. Servs., Inc., No. 1712 EDA 2018, 2019 WL 1396975, at *3 (Pa. Super. Ct. Mar. 27, 2019)," Opp. to Colgate-Palmolive Mot. at 6, ECF 20 & Opp. to BJ's Mot. at 12, ECF 21, was unintentional, ECF 23 at 2. Attorney Palazzo states that he intended to cite Ford v. Jeffries, 379 A.2d 111, 114–15 (Pa. 1997) and that he "cannot specify exactly why the final draft did not replace the wrong cite with the proper one," noting only that the issue was the "result and consequence of a tired, rather than fresh eyed, last proof reading of the filing ...." ECF 23 at 2–3. Concerningly, Attorney Palazzo is silent as to why the case name, case number, and Westlaw citation in the purported Tinch cite each referred to a different case and together constituted a citation that does not exist. See ECF 22 n.1. Similarly, Attorney Palazzo asserts that the citation to "Burton v. Danek, No. 95-5560, 1997 WL 436713, at *8 (E.D. Pa. July 31, 1997)," Opp. to Colgate-Palmolive Mot. at 12, ECF 20, mistakenly included the wrong Westlaw citation because members of his law firm used different search engines, ECF 23. However, Attorney Palazzo is again silent as to why the case number he cited leads to a case captioned Daniels v. Copley Pharma., et al. and why the date in the purported Burton citation does not match. The Court remains concerned about the questionable case and is unconvinced by counsel's explanations.

### b. Legal Standard

***7** Under Fed. R. Civ. P. Rule 11(b)(2), an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions [in a written motion] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." The Third Circuit has acknowledged that, "[t]o satisfy the affirmative duty imposed by Fed. R. Civ. P. 11, an attorney must inquire into both the facts and the law before filing papers with the court." Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers, 855 F.2d 1080, 1091 (3d Cir. 1988). Finding cause for Fed. R. Civ. P. 11 sanctions "requires only negligence," Wharton v. Superintendent Graterford SCI, 95 F.4th 140, 147 (3d Cir. 2024), and involves an evaluation of reasonableness under the circumstances. A court may, sua sponte, order an attorney to "show cause why conduct specifically described in the order has not violated Fed. R. Civ. P. 11(b)." Fed. R. Civ. P. 11(c)(3). Sanctions may include, among other things, "nonmonetary directives." Fed. R. Civ. P. 11(c)(4).

### c. Analysis

Attorney Palazzo violated Fed. R. Civ. P. 11(b)(2) by submitting briefs to the Court that cited case law that did not support his stated propositions and which, on their face, do not exist. [10] Attorney Palazzo self-admittedly failed to “inquire into both the facts and the law before filing papers with the court.” Napier v, 855 F.2d at 1091, and thus failed in his role as the “final auditor for all legal and factual claims contained in [his] motions.” Bunce v. Visual Tech. Innovations, Inc., 2025 WL 662398, at *4 (E.D. Pa. Feb. 27, 2025) (Scott, J.).

The Court has carefully considered sanctions against Attorney Palazzo, including researching how other courts have addressed similar misconduct, and orders the following:

(1) First, the Clerk of Court shall serve a copy of this memorandum and its accompanying order on the State Bar of Pennsylvania and the Eastern District of Pennsylvania Bar, both of which Attorney Palazzo is a member. See United States v. Hayes, 2025 WL 235531, at *15 (E.D. Cal. Jan. 17, 2025) (ordering service of sanctions order on state bar).

(2) Second, Attorney Palazzo's appearance in this case is hereby **STRICKEN with prejudice** due to his violation of Fed. R. Civ. P. 11(b)(2) and failure to submit an affidavit in accordance with this Court's standing order.

(3) Third, Attorney Palazzo shall inform his client of the sanctions imposed on him and that fact that, should Bevins choose to refile her case, she must find new counsel. See Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 466 (S.D.N.Y. 2023) (requiring sanctioned attorneys to notify their client of the conduct and sanctions).

## VI. CONCLUSION

***8** For the reasons stated above, Defendants’ Motions to Dismiss are **GRANTED** and Bevins’ Counsel is **SANCTIONED**. Bevins’ Complaint is **DISMISSED with leave to amend within thirty (30) days.** An appropriate order follows.

### All Citations

Slip Copy, 2025 WL 1085695

## Footnotes

1 For purposes of this Motion, the Court accepts as true all factual allegations in the Complaint. Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020).

2 See February 8, 2023 Voluntary Recall of Select Fabuloso Products Made in the United States, https://www.fabuloso.com/recall/ (last accessed March 18, 2025). The Court properly considers the recall website because Bevins relies on it in the Complaint. Mueller v. Sunbeam Prods., Inc., 535 F. Supp. 3d 351, 354 (E.D. Pa. 2021) (Brody, J.).

3 Bevins does not plead *when* her employer purchased the Fabuloso products. This issue is discussed further below.

4 Because Bevins does not allege the existence of a contract, the Court's analysis of Count III focuses only on warranties. Further, because Bevins alleged no facts which state a claim for breach of implied warranty and only uses the term “express warranty,” the Court's analysis of Count III focuses specifically on express warranties.

5 The Complaint includes one reference to “Class Members.” Compl. ¶ 101, ECF 1-3. To the Court's knowledge, this Complaint is brought by Bevins only as an individual and does not plead a putative class.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

6 Bevins supports this assertion by citing to "Burton v. Danek, No. 95-5560, 1997 WL 436713, at *8 (E.D. Pa. July 31, 1997)." This citation, which is discredited, is discussed further below.

7 Further, while Bevins argues BJ's knew the Fabuloso products were contaminated and knew about the recall, but continued to sell defective Fabuloso products, id. at 7, this argument is illogical given Bevin's stance that she the Fabuloso products in January 2023—before the recall took place.

8 Even assuming, *argeuendo*, that Bevins adequately pled the existence of a duty, her negligence claim would fail because she does not plausibly plead causation. Colgate-Palmolive Reply at 7, ECF 24. Causation requires both cause-in-fact and proximate cause. Heeter v. Honeywell Int'l, Inc., 195 F. Supp. 3d 753, 757 (E.D. Pa. 2016) (Robreno, J.), aff'd, 706 F. App'x 63 (3d Cir. 2017) (non-precedential) (citing Reott v. Asia Trend, Inc., 55 A.3d 1088, 1103 (Pa. 2012)). Pennsylvania courts use the "substantial factor" test to ascertain proximate cause. Id. (citing Whitner v. Von Hintz, 263 A.2d 889, 893–94 (Pa. 1970)). This memorandum discusses the issues of causation further below. See Whyte v. Stanley Black & Decker, Inc., 514 F. Supp. 3d 684, 703 (W.D. Pa. 2021) (noting that "the issue of causation is common to both a strict-liability claim and a negligence claim").

9 Bevins, in her opposition briefing, attaches Ex. A, referred to in the Complaint but erroneously not attached to it. Ex. A, ECF 21-2. The pictures in Ex. A show two receipts—one dated December 19, 2022, and another dated January 27, 2023.[9] Id. However, Bevins does not plead when the bottles of Fabuloso she used were purchased based on these receipts. While both dates are within the recall period, Bevins does not plead with specificity when the Fabuloso products were purchased, particularly since one cannot tell from Ex. A which receipt contains the purchases of these products. Id.

10 Both citations appear to be artificial intelligence ("AI") "hallucinations" made up of parts of actual cases. However, Attorney Palazzo has not made a statement about any use of AI, even considering this Court's Standing Order on Artificial Intelligence. See Standing Order Re: Artificial Intelligence ("AI") In Cases Assigned to Judge Baylson, https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/Standing% 20Order% 20Re% 20Artificial% 20Intelligence% 206.6.pdf. The Court is not opposed to the use of AI and recognizes that "[w]hen done right, AI can be incredibly beneficial for attorneys and the public." Wadsworth v. Walmart Inc., 2025 WL 608073, at *1 (D. Wyo. Feb. 24, 2025). However, considering the onset of "hallucinations," in which AI "generates fake sources of information," this Court issued the standing order linked in this footnote asking attorneys to certify that any research done with the assistance of AI is verified. The sanctions issued against Attorney Palazzo are further motivated by his failure to comply with this Court's standing order.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 988009
Only the Westlaw citation is currently available.
United States District Court, D. New Mexico.

Azadeh DEHGHANI, Petitioner,
v.
Dora CASTRO, Otero Processing Center Warden, Respondent.

No. 2:25-cv-0052 MIS-DLM
|
Filed April 2, 2025

**Attorneys and Law Firms**

Felipe D.J. Millan, Felipe D.J. Millan, P.C., El Paso, TX, for Petitioner.

**MEMORANDUM OPINION AND ORDER ON SANCTIONS AND OTHER DISCIPLINARY ACTION**

DAMIAN L. MARTINEZ, UNITED STATES MAGISTRATE JUDGE

***1** THIS MATTER is before the Court following a March 26, 2025 Order to Show Cause Hearing ("Hr'g"). [1]

On March 11, 2025, the Court issued a third Order to Show Cause in this matter, ordering Petitioner's counsel, Felipe D.J. Millan (hereinafter "Mr. Millan"), to appear in person for a show cause hearing to discuss (i) why Petitioner's writ of habeas corpus, brought pursuant to 28 U.S.C. § 2241, should not be dismissed, and (ii) why sanctions should not be imposed on her counsel for his filing of a brief that cited non-existent cases. (Doc. 22.) On March 14, 2025, Mr. Millan timely filed a memorandum in response to the third Order to Show Cause. (Doc. 23.) On the same day, the Court issued a fourth Order to Show Cause setting an in-person hearing. (Doc. 25.) After careful consideration of the memorandum in response to the third Order to Show Cause (Doc. 23) and hearing arguments on March 26, 2025 from Mr. Millan and Counsel for Respondent, the Court issues the following order sanctioning Mr. Millan.

**I. Background**

On January 16, 2025, Petitioner Dehghani filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1.) Petitioner was detained at the Otero Processing Center, located at 26 McGregor Range Road, Chaparral, New Mexico 88081, as an individual subject to removal from the United States under 8 U.S.C. § 1225(b)(1)(A)(i). [2] (*See* Doc. 19 at 1.) Fourteen days later, on January 30, 2025, Petitioner filed a motion seeking a hearing. (Doc. 5.) The Court held a status conference on February 6, 2025, to discuss the parties' readiness for an evidentiary hearing. (Doc. 6.) Following that conference, the Court ordered an expedited briefing schedule. (Doc. 9.) Petitioner filed a brief in support of writ of habeas corpus and Respondent filed a memorandum in opposition. (Docs. 10–11.)

On February 24, 2025, the Court issued an Order to Show Cause and directed Petitioner to file a written response, no later than February 26, 2025, as to whether the Court has jurisdiction under 27 U.S.C. § 2241 to review orders of removal under 8 U.S.C. § 1225(b)(1). (Doc. 12.) On February 25, 2025, Petitioner filed a Motion for Writ of Habeas Corpus Ad Testificandum, asking the Court to order her production "at the scheduled hearing" on the Order to Show Cause. (*See* Doc. 13 at 3.) The Court denied the motion, noting that "[c]ounsel for Petitioner ha[d] misinterpreted the Court's directive, as the Court did not set a show cause hearing but rather ordered Petitioner to submit a written response. (Doc. 14 at 1 (citing Doc. 12).) Petitioner shortly re-filed an Amended Motion for Ad Testificandum, seeking the same relief. (*See* Doc. 15.) Again, the Court denied the motion, reiterating that it had not set a hearing, and Petitioner was to respond in writing. (*See* Doc. 16.) Petitioner, on February 26, 2025, filed her written response to the February 24, 2025 Order to Show Cause and gave notice that she may have been removed from the United States. (Doc. 17.)

***2** The Court issued a second Order to Show Cause on February 27, 2025, giving the Respondent until March 5, 2025, to confirm whether Petitioner had been removed from the United States, and giving Petitioner until March 7, 2025, to show cause whether the removal changes the posture of this case and/or moots her habeas petition. (Doc. 18.) On March 5, 2025, Respondent filed a notice confirming Petitioner's removal from the United States on February 25, 2025, under 8 U.S.C. § 1225(b)(1)(A)(i). (*See* Doc. 19.) On March 7, 2025, Petitioner filed her Response to the second Order to Show Cause and argued that the court retains jurisdiction over her habeas petition despite her removal and that her removal does not moot her habeas petition. (Doc. 20.) On March 10, 2025, Respondents filed a brief in response, arguing that Petitioner failed to demonstrate that the court has jurisdiction to review

Dehghani v. Castro, Slip Copy (2025)

her expedited removal order, that any alleged prolonged detention was resolved by Petitioner's removal, and that the Petitioner cited to numerous cases that Respondents were unable to locate. (Doc. 21.)

The Court, which had reviewed Petitioner's brief and was also unable to find several of the cited cases, issued a third Order to Show Cause on March 11, 2025. (Doc. 22.) The Court ordered Mr. Millan to either provide PDF copies of the cases he cited in the response or appear in-person for a show cause hearing. (Doc. 22.) Mr. Millan timely filed a memorandum in response and asserted that he had hired a freelance attorney, Janelle M. Lewis, through a company called LAWCLERK, [3] to write the response to the Court's second Order to Show Cause. (Doc. 23 at 1–2.) Mr. Millan stated that his "revisions to [Lewis's draft] were minimal[,]" and he admitted that he "did not read the caselaw or verify the cases used in support of the propositions" before he signed and filed the response brief. (*Id.* at 3.) Finally, Mr. Millan confirmed that the cases listed by the Court in its third Order to Show Cause do not exist. (*Id.* at 4.) Specifically, Mr. Millan stated that when his staff asked Ms. Lewis for PDF copies of the cases she used in the purchased response, she provided seven cases. (*Id.* at 4.) A review of the cases provided revealed that the case names and citations did not match those listed in Petitioner's Response to the second Order to Show Cause. (*See id.* at 4; *see also* Doc. 20.) [4] Although Petitioner's response states that the case citations are corrected, (Doc. 23 at 4), in the March 26, 2025 hearing, Mr. Millan stated the cases he listed as corrected citations were cases that he believed most closely reflected the non-existent cases cited in the Petitioner's March 7, 2025 Response (Doc. 20). (*See* Hr'g at 19:28–22:10.)

***3** Mr. Millan's response further explains that the remaining thirteen cases cited in his purchased response to the second Order to Show Cause "do not support the propositions stated in the quoted language and are not from the cited cases." (Doc. 23 at 5.) Mr. Millan asserts that his staff contacted Ms. Lewis via email regarding the purchased response and were informed that ultimately Mr. Millan should have reviewed the work prior to submitting the Response and that per LAWCLERK policy, all the documents and work product Ms. Lewis used for the Response had been destroyed. (Doc. 23-2 [5] at 49.) On March 14, 2025, Petitioner filed an Amended Response to the second Order to Show Cause. (Doc. 24.) This response removes the fictitious cases and again argues that the Court retains jurisdiction to review live legal issues and provide meaningful relief despite Petitioner's physical removal from the United States. (*See id.*)

The Court issued a fourth Order to Show cause on March 14, 2025, setting an in-person hearing to discuss why Petitioner's habeas petition should not be dismissed and why sanctions should not be imposed against Mr. Millan. (Doc. 25.) At the hearing, Mr. Millan stated that he has used LAWCLERK for five to seven years and that he purchased the response brief for $750. [6] (*See* Doc. 27 at 1-2.) Mr. Millan "further state[d] that he elected to use LAWCLERK for this brief due to [a] lack of sufficient time to address the Court's order due to having to attend other hearings." (*Id.* at 1.) The question was posed whether it was his practice to *not* check if the cases cited in the briefs from LAWCLERK existed, Mr. Millan stated, "No ... especially on something that was ... a Fifth Circuit of Appeals brief or a Tenth Circuit ... we would go through it." (*See* Hr'g at 15:17–15:30.) When asked about his failure to review the cases contained in *this* case's brief prior to filing, Mr. Millan stated "he concentrated on the 'gist' of the argument, and he could not imagine a licensed lawyer[, Ms. Lewis,] would make up cases." (Doc. 27 at 1.) Additionally, he stated that changes to the purchased brief were minimal and related to formatting. (*See* Hr'g at 23:16–23:50.) Upon being questioned about the nature of communications between Mr. Millan and Ms. Lewis, Mr. Millan stated that the communications were via email and were between his paralegal and Ms. Lewis. (*See id.* at 17:48–17:59.) Simply, he did not personally contact Ms. Lewis to inform her of the parameters of the project or the Court's request for copies of the cited cases. (*See id.* at 17:59–18:17.)

**II. Legal Standard**

Rule 11 of the Federal Rules of Civil Procedure establishes the standard that attorneys and parties must meet when filing documents in federal court. Specifically, Rule 11(b)(2) states that an attorney presenting "a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it"—to a court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law ...." Fed. R. Civ. P. 11(b)(2).

A failure to comply with such obligations may result in a sanction. *See* Fed. R. Civ. P. 11(c). In determining whether sanctions are warranted, the trial court conducts a two-step analysis. *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir.


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

1988). First, the court must find a filing violates Rule 11. *Id.* To find a Rule 11 violation, an attorney's conduct is evaluated based on "objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document" *Id.* at 673. "If after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law, then such conduct is sanctionable under Rule 11." *Id.* (internal quotation marks and citations omitted). Second, if the conduct violates Rule 11, a court may then impose an appropriate sanction. *Id.* at 672.

**III. Rule 11(b) Violation**

***4** Although Mr. Millan has claimed to review works previously purchased from LAWCLERK, he neglected to do so for the brief in question. Petitioner's counsel violated Rule 11(b)(2) by (i) improperly delegating his duties to another attorney by submitting that attorney's work without adequately reviewing it and verifying its accuracy, (ii) submitting a response to the second Order to Show Cause that cited non-existent cases, and (iii) cited case law that does not support Petitioner's stated proposition. (*See* Doc. 20.) By filing his response to the Order to Show Cause, Mr. Millan certified, to the "best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" that the cases cited within his submissions are "warranted by existing law or by a nonfrivolous argument ...." *See* Fed. R. Civ. P. 11(b)(2).

As noted by the court in the March 11, 2025 Order to Show Cause and by Mr. Millan in response to said order, there were at least six non-existent cases that Petitioner used in support of her arguments. (*See* Docs. 11; 23 at 4.) The six cases were fake and likely the handiwork of a ChatGPT or similar artificial intelligence (AI) program's hallucinations. [7] Mr. Millan acknowledges that the Court "correctly noted numerous serious errors, both substantive and technical, in the research included in [the] pleading." (Doc. 23 at 1.) Mr. Millan explains that he utilized the LAWCLERK attorney to prepare the response brief and he admits that he "did not read the case law or verify the cases used in support of the proposition, trusting that the licensed lawyer from [LAWCLERK] would perform her work in an ethical and competent manner." (*Id.* at 1, 3 (emphasis omitted).) "[B]lind reliance on another attorney can be an improper delegation of [an attorney's nondelegable] duty and a violation of Rule 11." *See Wadsworth v. Walmart Inc.*, ––– F.R.D. ––––, 2025 WL 608073, at *4 (D. Wyo. Feb. 24, 2025) (citations omitted). Moreover, courts have found that "using a fake opinion to support an argument is [also] a violation of Rule 11(b)(2)." *Id.* (citing *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)). The Court finds that Mr. Millan's conduct, both in submitting Ms. Lewis's work without verifying its accuracy and in submitting a brief that contains fake citations, violates Rule 11.

**IV. Sanctions**

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Courts have consistently held that failing to check the treatment and soundness—let alone the existence—of a case warrants sanctions." *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-0326 JPH/MJD, 2025 WL 574234, at *2 (S.D. Ind., Feb. 21, 2025) (noting that the act of relying on another attorney's memorandum without Shepardizing the cases cited warranted sanctions). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *See* Fed. R. Civ. P. 11(c)(4).

***5** For guidance, the Court looks to other cases that have sanctioned attorneys for similar conduct. In *Wadsworth v. Walmart Inc.*, the drafting attorney filed motions in limine that cited nine cases, eight of which did not exist. 2025 WL 608073, at *2. The court sanctioned the drafting attorney by removing his pro hac vice status and fining him $3,000, and fined the two attorneys who signed the brief without reviewing it $1,000 each. *Id.* at *8. In *Gauthier v. Goodyear Tire & Rubber Co.*, the attorney filed a response that cited two cases that did not exist. No. 1:23-cv-0281, 2024 WL 4882651, at *1 (E.D. Tex. Nov. 25, 2024). That court ordered the attorney to (i) pay $2,000, (ii) attend a generative AI continuing legal education (CLE) course, and (iii) provide a copy of the court's order to his client in the case. *Id.* at *3. In *Bunce v. Visual Technology Innovations, Inc.*, the attorney filed two separate motions that cited two cases that could not be located "on any legal research tool ...." No. 23-cv-1740, 2025 WL 662398, at *1 (E.D. Pa. Feb. 27, 2025). The Court ordered the attorney to pay $2,500 and "complete a one-hour CLE-credited seminar or educational program related to both AI and legal ethics." *Id.* at *4. In *United States v. Hayes*, the attorney, representing a defendant in a criminal matter, filed a motion that cited one case that did not exist. ––– F. Supp. 3d ––––, 2025 WL 235531, at *2 (E.D. Cal. Jan. 17, 2025).

The court ordered the attorney to pay a sanction of $1,500 and ordered the Clerk of Court to serve a copy of the sanctioning order to the two state bars the attorney was licensed in and to all the judges in that district. *Id.* at *15. Finally, in *Mid Central Operating Engineers Health & Welfare Fund v. HoosierVac LLC*, the attorney filed three briefs that cited three cases that did not exist. 2025 WL 574234, at *4–5. The court fined the attorney $15,000—"$5,000 for each of the three briefs filed by [the attorney] where he failed to verify the validity and accuracy of the case law ...." *Id.* at *3. The court noted that the "amount is at the 'higher end' of the sanctions that have been previously imposed for similar conduct," but found that "lesser sanctions have been insufficient to deter [this] conduct." *See id.*

The facts of this case are like those in *Wadsworth*, where the drafting attorney cited AI-generated cases. *See* 2025 WL 608073, at *2. As in *Wadsworth*, where the court acknowledged that two attorneys signed, but were not involved in drafting, the AI-generated content, *see* 2025 WL 608073, at *2, Mr. Millan acknowledges that his revisions to the drafted document were "minimal," mostly consisted of formatting, and he did not "read the case law or verify the cases used ...." (*See* Doc. 23 at 3 (emphasis omitted); *see also* Hr'g at 23:26–23:50.) In deciding on sanctions, the *Wadsworth* court noted the attorneys' "remedial steps, transparency, and apologetic sentiments." 2025 WL 608073, at *3. Mr. Millan has also been forthcoming about his conduct in failing to review the work of another attorney before signing and filing the document. (*See* Doc. 23 at 3.) The *Wadsworth* court also noted that the non-drafting attorneys "took steps to remediate the situation prior to the potential issuance of sanctions." 2025 WL 608073, at *6. Here, Mr. Millan took similar steps by filing an amended response and volunteering additional information on erroneous citations that were not identified by opposing counsel. (*See* Docs. 23 at 5–7; 24.)

While the Court acknowledges that Mr. Millan was sincerely apologetic for his failure to ensure cases cited in his brief existed and for the extra work this has caused the Court, he has nonetheless failed to adhere to his obligations under Rule 11. Accordingly, the Court finds the following sanctions are appropriate to deter future improper submissions: [8]

- Mr. Millan is ordered to pay a fine of $1,500 [9] to the Clerk of Court for the District of New Mexico;
- Mr. Millan is ordered to send a copy of this Order to LAWCLERK, copying Janelle M. Lewis, her supervisor, and LAWCLERK's general Support email address;
- Mr. Millan is ordered to complete a one-hour CLE-credited seminar or educational program related to legal ethics in writing or the use of AI in writing;
- Mr. Millan is ordered to self-report to both New Mexico and Texas state bars disciplinary boards, explaining this incident and attaching a copy of this Order; and
- Mr. Millan is ordered to report Janelle M. Lewis to the New York state bar disciplinary board, explaining this incident and attaching a copy of this Order.

**V. Conclusion**

***6** An attorney who presents a document to the court certifies that they have made a reasonable inquiry into the existing law. Fed. R. Civ. P. 11(b). For the reasons set forth above, the Court finds that Petitioner's counsel violated Federal Rule of Civil Procedure 11(b)(2) by submitting a filing to the Court without adequately reviewing it for accuracy, failing to verify its correctness, and citing authorities that either do not exist or do not support the stated proposition. The Court sanctions counsel under Rule 11(c) as outlined herein. The Court finds these sanctions are not more severe than reasonably necessary to deter repetition of this conduct or deter conduct by others who are in similar circumstances.

**IT IS THEREFORE ORDERED** that Mr. Millan is hereby sanctioned a fine of $1,500 and shall pay the amount to the Clerk of Court for the District of New Mexico within 10 days of this Order.

**IT IS FURTHER ORDERED** that within 10 days of this order, Mr. Millan must send a copy of this Order to LAWCLERK, copying Janelle M. Lewis, her supervisor, and LAWCLERK's general Support email address.

**IT IS FURTHER ORDERED** that within 30 days of this order, Mr. Millan must complete a one-hour CLE-credited seminar or educational program related to legal ethics in writing or the use of AI in writing.

**IT IS FURTHER ORDERED** that within 30 days of this order, Mr. Millan must self-report to both New Mexico and

Texas state bars disciplinary boards, explaining this incident and attaching a copy of this Order.

**IT IS FURTHER ORDERED** that within 30 days of this order, Mr. Millan must report Janelle Lewis to the New York state bar disciplinary board, explaining this incident and attaching a copy of this Order.

**IT IS FURTHER ORDERED** that by May 15, 2025, Mr. Millan must submit proof to the Court that he has completed the aforementioned sanctions.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 988009

## Footnotes

1 The Hr'g citation refers to an audio recording of the March 26, 2025 Order to Show Cause hearing (Doc. 27) stored on the Court's Liberty system. Neither the audio recording nor a transcript is currently available on CM/ECF; however, any party may obtain the recording through the Court's records department and have it transcribed.

2 Section 1225(b)(1)(A)(i) provides that an immigration officer may remove an individual who arrives in the United States without proper documentation as described in 8 U.S.C. § 1182(a)(7).

3 According to its website, LAWCLERK is a company that allows attorneys to outsource legal projects to freelance lawyers, which enables attorneys "to bill more hours, reduce overhead and increase profit." *See* LAWCLERK, www.lawclerk.legal (last visited Mar. 28, 2025).

4 Mr. Millan provided the following response to the Court's third Order to Show Cause:

> The following are the original cases with their corrected citations. PDF versions of the caselaw are attached as requested by this Honorable Court:
>
> 1. *Moncada v. Ruiz*, 518 F. Supp 3d 708 (D.N.M. 2021);
>
> **Correct Citation**: Guzman Chavez v. Hott, 940 F.3d 867 (4th Cir. 2019)
>
> (Exhibit 1)
>
> 2. *Vega-Mendoza v. Homeland Security*, 382 F. Supp 3d 1209 (D.N.M. 2019);
>
> **Correct Citation:** United States v. Vega Mendoza, 928 F.3d 1148 (10th Cir. 2019)
>
> (Exhibit 2)
>
> 3. *Morales v. ICE Field Office Director*, 541 F. Supp 3d 1154 (D.N.M. 2021);
>
> **Correct Citation:** *Adrian Mojica-Morales v. Acting Secretary, United States Department of Homeland Security, et al.*, No. 21-10835 (11th Cir. Jan. 7, 2022).
>
> (Exhibit 3)
>
> 4. *Meza v. United States Attorney General*, 130 F. Supp. 3d 1052 (N.D. Tex. 2015);

**Correct Citation:** Meza v. U.S. Attorney General, 761 F. App'x 904 (11th Cir. 2019)

(Exhibit 4)

5. *Hernandez v. Sessions*, 298 F. Supp. 3d 1366 (D.N.M. 2018);

**Correct Citation:** Hernandez-Matute v. Sessions, 871 F.3d 206 (5th Cir. 2017)

(Exhibit 5)

6. *Ramirez v. DHS*, 338 F. Supp. 3d 1 (D.N.M. 2020).

**Correct Citation:** Ramirez v. U.S. Immigration & Customs Enf't, 471 F. Supp. 3d 88 (D.D.C. 2020)

**(**Exhibit 6)

7. Additional: Caselaw used:

In re Jorge Tadeo Carrera Hernandez, 21 I. & N. Dec. 731 (BIA 1997)

**(**Exhibit 7)

(Doc. 23 at 4.)

5 The Court cites to the CM/ECF document number and pagination, rather than to Petitioner's exhibit numbers.

6 At the March 26, 2025 hearing, Mr. Millan further disclosed that the cost for the LAWCLERK brief was not passed on to his client in this case, and he worked at a flat fee rate of $4,000. (*See* Hr'g at 16:35–17:07.)

7 A hallucination occurs when an AI database generates fake sources of information. To explain how this occurs:

> AI models are trained on data, and they learn to make predictions by finding patterns in the data. However, the accuracy of these predictions often depends on the quality and completeness of the training data. If the training data is incomplete, biased, or otherwise flawed, the AI model may learn incorrect patterns, leading to inaccurate predictions or hallucinations.

*Wadsworth v. Walmart Inc.*, ––– F.R.D. ––––, 2025 WL 608073, at *1 (D. Wyo. Feb. 24, 2025) (citing What are AI Hallucinations?, GOOGLE CLOUD, https://cloud.google.com/discover/what-are-ai-hallucinations).

8 The Court provided Mr. Millan an opportunity to be heard regarding his position on the sanctions. (*See* Doc. 27 at 2.) Mr. Millan's only objection was to self-reporting his conduct to the state bars. (*See* id.)

9 Mr. Millan indicated that he was charged $750 for the purchased brief from LAWCLERK. (Doc. 27.) Additionally, at the March 26, 2025 hearing, the Court stated from the bench that it would fine Mr. Millan $2,000. (Hr'g at 26:22–26:42.) After reflection, however, and considering the fee structure Mr. Millan has with Ms. Dehghani, the Court believes a $1,500 fine is warranted. As noted herein, fines and monetary sanctions in other cases range from $1,000 to $15,000. As such, the Court finds it reasonable to issue a fine that is double the fee, $750, Mr. Millan paid for the purchased brief from LAWCLERK.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.