UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRADLEY CLONAN, ET AL., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CENTRASTATE HEALTHCARE )<br>SYSTEM/ATLANTIC HEALTHCARE )<br>SYSTEM, ET AL., )<br>)<br>Defendants. )<br>_____ ) | Civil Case No. 3:24-CV-11399-RK-RLS<br><br><br>PLAINTIFF'S REPLY OPPOSING<br>DEFENDANTS' RESPONSE(S) AND OTHER<br>REPLIES re [47] MOTION to Dismiss Plaintiff's<br>Amended Complaint |

**TABLE OF CONTENTS**

1. Plaintiff's Legal Statement and Declaration ..................................................... 2

2. Exhibit A – Photographs Disproving "Dentures" Notation ............................. 4

3. Exhibit B – Transfer Paperwork Listing "Dentures" ....................................... 5

4. Exhibit C – Hampton Behavioral Medical Record "Treatment Plan" ............. 6

5. Statement -  Argument Regarding AI "Hallucinations" and Counsel Conduct ... 7

6. Certificate of Service ................................................................................... 8

**PLAINTIFF'S EXHIBIT STATEMENT IN SUPPORT OF OPPOSITION**

I, Bradley Clonan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746:

I am the Plaintiff in the above-captioned matter. I submit this declaration in support of the attached exhibit, and have personal knowledge of the facts set forth herein and am competent to testify to them if called as a witness.

The attached exhibit consists of photographs clearly showing my teeth and mouth, offered to directly refute the erroneous notation in my medical records that I have dentures—when in fact I

do not. This error is so clear and basic that any layperson can see it is false, without need for expert testimony.

I submit this not only for the sake of my own case, but on behalf of my wife ,daughters and son on the way, who have witnessed the impact that such errors and misrepresentations have had on our family. I respectfully urge the Court that, even if my individual claims are dismissed, it should not allow such obvious mistakes and disregard for patient accuracy to persist within our healthcare system—lest other families be similarly harmed.

### EXHIBIT A: Plaintiff – Teeth and Mouth 7/14/2025

Consists of photographs clearly showing my teeth and mouth, offered to directly refute the erroneous notation in my medical records that I have dentures—when in fact I do not. This is a fundamental and obvious error, apparent to any layperson, without need for expert testimony.



### EXHIBIT B: Transfer Paperwork

Attached is a true and correct copy of the transfer paperwork from my medical records, in which "dentures" are listed among my personal belongings at the time of transfer between facilities. This document demonstrates the perpetuation of this clear and unfounded inaccuracy.



Despite repeated requests, I have not received any legal or medical justification for these actions, nor have I been granted meaningful access to the treating physicians to discuss or clarify these and other critical matters—including the administration of serious medications such as Haldol 5, oxygen therapy, and other forced interventions that carry the risk of significant and potentially long-term side effects.

**Legal Standard for Layperson/Egregious Errors**

Under New Jersey law, the "common knowledge" exception permits medical malpractice claims to proceed without an expert affidavit where the error is so obvious that a layperson can recognize it as malpractice (see **N.J.S.A. 2A:53A-27**; see also *Hubbard v. Reed*, 168 N.J. 387 (2001)). Errors such as listing dentures for a patient who clearly does not have them meet this standard, as they are "plainly within the comprehension of non-professional jurors" (*Rosenberg v. Cahill*, 99 N.J. 318, 325 (1985)). Federal courts have similarly recognized that willful neglect and obvious documentation errors can support a claim for deliberate indifference and malpractice under 42 U.S.C. § 1983 when connected to deprivation of civil rights.

# Exhibit C : Hampton Paperwork

is a true and correct copy of a portion of my medical records from Hampton Behavioral Institute, specifically the "Initial Nursing Treatment Plan" prepared by Suzanne Sprouse, RN. This document, dated and printed on June 14, 2024, identifies "unspecified psychosis not due to a substance or known physiological condition" and sets forth both short-term and long-term goals

referencing "delusions/hallucinations." Despite transferring hospitals stating patient had hallucinations.

This record illustrates that the "care plan" imposed on me was predicated on the unsupported and inaccurate presumption that my factual statements were "delusions" or "hallucinations." In practice, I was denied discharge and effective participation in my care unless and until I agreed to recant my true statements and endorse a version of events that never occurred. This approach is not only medically and ethically indefensible, but also deeply traumatizing and coercive. It underscores the larger pattern in this case: my rights, dignity, and autonomy as a patient were systematically disregarded by clinical staff who insisted that only agreement with their false narrative would allow for any progress or release. Such practices cannot be tolerated in any reputable healthcare institution and highlight the urgent need for oversight and judicial scrutiny.

```
Treatment Plans
Initial Nursing Treatment Plan
Related Diagnoses: Unspecified psychosis not due to a substance or known physiological condition
As Evidenced By: Suzanne Sprouse, RN

                                                          Status           Target Date
Long Term Goals:
    CLONAN, BRADLEY will have no episodes of delusions/hallucinations    Initiated    04/04/23

        Short Term Goals:
    CLONAN, BRADLEY will be able to complete ADLs without interference from    Initiated    03/28/23
    delusions/hallucinations


Print Date/Time 6/14/2024 12:52 EDT    Medical Record                         Page 84 of 361
```

I submit these exhibits not only for the sake of my own case, but on behalf of my wife and daughters, who have witnessed the confusion, distress, and harm these obvious errors and lack of transparency have caused to our family. I respectfully urge the Court that, even if my individual claims are dismissed, such practices must not be permitted to persist, as they pose a serious threat to the rights and well-being of countless other families.

## Statement - Argument Regarding AI "Hallucinations" and Counsel Conduct

Additionally, I am compelled to state for the record that I find it deeply offensive and inappropriate that opposing counsel would raise the issue of "hallucinations" in their filings. The suggestion that I experienced hallucinations is not only factually inaccurate but is among the

most egregious and traumatizing errors in my medical record, resulting in the imposition of harmful and unwarranted care plans—most notably, the mistaken diagnosis of schizophrenia at Hampton Behavioral Health Center. This diagnosis appears to have resulted, at least in part, from reliance on automated or generative documentation tools.

It is particularly troubling that the same opposing counsel has themselves made several technical errors in the course of their filings, including but not limited to the improper use of generative AI tools and the misdirection of confidential materials to alleged plaintiff's counsel in their initial motion to dismiss—rendering that filing both procedurally and substantively defective, and arguably untimely.

It cannot be overstated that such conduct—whether by human or automated means—has no place in the American justice system, where every party is entitled to accuracy and due process.

As a software architect with over a decade of professional experience in advanced automation, AI, and information security, I am acutely aware of the limitations and risks of large language models (LLMs) and generative AI. While such technologies—including retrieval augmented generation (RAG) and agentic LLM flows—can be valuable as research tools or enhanced "spell checkers," they do not constitute artificial general intelligence (AGI), and should not be relied upon for the creation or validation of factual records in legal or medical matters. As a general rule, I would never advocate for the use of AI for purposes beyond basic drafting assistance and research support—certainly never for the diagnosis, treatment, or adjudication of life-altering issues such as mental health or civil rights.

The repeated invocation of "hallucinations"—either by error, assumption, or automated tool—is not only inaccurate and traumatizing, but also an affront to my dignity as a patient and as a litigant. It is especially insulting to imply that I would rely on such technologies for my own filings, when their improper use by the defense has already caused demonstrable harm.

For the sake of clarity and candor, I acknowledge that both I and, upon information and belief, opposing counsel have utilized modern legal research and drafting tools in preparing filings for this matter—including, at times, platforms that may incorporate AI-assisted features, such as Westlaw or similar services. Such usage is a standard part of contemporary legal practice and in no way distinguishes one party from another in these proceedings. Accordingly, I respectfully submit that any argument by Defendants seeking to impugn the integrity of my filings on the basis of alleged "AI hallucinations" is unsupported, irrelevant, and should be disregarded as moot for all the reasons detailed above.

## CERTIFICATE OF SERVICE

I, Bradley Clonan, hereby certify that on July 14, 2025, I filed the foregoing document and all attached exhibits with the Clerk of the Court using the Court's ADS (Automated Document Submission) electronic filing system. Notice of this filing will be provided by operation of the Court's ADS system to all counsel of record.

Executed on July 14, 2025

Respectfully,
Bradley Clonan
/s/ Bradley Clonan
2604 W Rhododendron Drive
Abingdon, Maryland 21009
732-476-9555