Gmail

Brad Clonan <clonanxyz@gmail.com>

# Request for Clarification Regarding Records and Procedures – Bradley Clonan if more appropriate to your client please inform.

3 messages

**Brad Clonan** <clonanxyz@gmail.com>
To: joshua.calo@bipc.com, "Michael W. Bootier" <michael.bootier@bipc.com>

Sat, Aug 30, 2025 at 4:03 AM

Dear Hampton Behavioral Health Center Legal Counsel,

I am writing to seek clarification regarding several factual and procedural issues related to my involuntary commitment and treatment at Hampton Behavioral Health Center between **March 25–27, 2023**. These clarifications are important to ensure the accuracy of my records and compliance with statutory requirements.

### 1. Timeliness of Court Order

- The screening certificate in my case was executed at approximately **2:00 AM on March 25, 2023**.
- The temporary court order authorizing involuntary commitment was not issued until **March 27, 2023**.
- This indicates I was confined for nearly 48 hours without judicial authorization. Please clarify how the 72-hour calculation was applied and provide the exact time of the judicial order's entry.

### 2. EMTALA Transfer Compliance

- The **CentraState EMTALA Transfer Checklist** completed on **March 25, 2023 (11:43–11:52 AM)** explicitly states:
  - "EMTALA Transfer Form Signed by Patient/Representative: No (involuntary)."
  - "Risks/Benefits/Alternatives to Transport Explained: No."
- Although PA Tabasko signed a Physician Certification at **11:51:47 AM** listing risks and benefits, those risks and benefits were not explained to me.
- Please clarify how Hampton reviewed or ensured EMTALA compliance when accepting my transfer.

### 3. Contradictions in Clinical Findings and Dangerousness

- CentraState ED notes describe hallucinations and manic behavior with a provisional diagnosis of **Paranoid Psychotic Disorder (ICD-10 F60.0)**.
- Hampton's Clinical/Screening Certificate, however, recorded under "Perception": **"no hallucinations."**
- Hampton's certificate further concluded I was "dangerous to self" and "dangerous to others," despite my consistent denials of suicidal or homicidal ideation and a **C-SSRS finding of "Low risk."**
- Please clarify what specific facts were relied upon to support dangerousness findings, as New Jersey law requires commitment certificates to state facts with particularity.

### 4. Telepsychiatry and Consent

- Hampton's certificate notes that my evaluation was conducted by **telepsychiatry**.
- New Jersey regulations require facilities using telepsychiatry to (a) hold a waiver from the Division of Mental Health and Addiction Services, and (b) offer the patient an in-person evaluation, with documented consent if telepsychiatry is used.
- The form's box for "offered the opportunity for in-person interview" was **not checked**.

- Please provide documentation showing Hampton's waiver status and whether I was offered, and consented to, a telepsychiatry evaluation.

### 5. Screening Bill of Rights

- CentraState's records indicate "**Screening Bill of Rights Reviewed with Patient? No.**"
- As Hampton accepted my transfer and continued my confinement, please clarify whether Hampton provided me with the required written notice of rights upon admission.

### 6. Refusal of Voluntary Treatment

- CentraState's records state I requested discharge and did not feel hospitalization was necessary.
- Hampton's **BH Treatment Plan** (March 25, 2023) also indicates "DECLINED" where my signature was requested.
- Please clarify how this documented refusal of voluntary treatment factored into Hampton's determination to proceed involuntarily.

### 7. Commitment Hearing and Counsel

- I remained confined until **March 27, 2023**, when a judicial order was entered.
- During that period, I did not receive notice of or participate in a hearing, nor was I represented by counsel. **NJ Court Rule 4:74-7** requires that patients receive timely notice of hearings and be represented by counsel.
- Please clarify whether any hearing was scheduled during my confinement, whether notice was served, and whether counsel was appointed.

I appreciate your attention to these matters and respectfully request a written response., along with any supporting documentation Hampton Behavioral can provide.if these matters or medical questions are not proper to send to you and would be more appropriate to contact your clients record department at this junction, in good faith please advise

Sincerely,
**Bradley Clonan**

---

**Brad Clonan** <clonanxyz@gmail.com> Sat, Aug 30, 2025 at 11:25 AM
To: joshua.calo@bipc.com, "Michael W. Bootier" <michael.bootier@bipc.com>

I apologize it appears screening began on March 24th for context.
[Quoted text hidden]

---

**Brad Clonan** <clonanxyz@gmail.com> Fri, Sep 12, 2025 at 3:12 PM
To: joshua.calo@bipc.com, "Michael W. Bootier" <michael.bootier@bipc.com>

Subject: Follow-Up on EMTALA Concerns and Potential Discussion

Mr Bootier,

I hope this message finds you well. I wanted to follow up regarding my concerns about EMTALA violations and the transfer paperwork related to Hampton Behavioral. From my discussions with DOH/HHS and my own research, it is my understanding that a PA-C alone cannot sign the transfer certificate.

I also have concerns specific to Hampton Behavioral, including:

- The admission and detention process beginning March 25, 2023, which occurred prior to a court order being signed on March 27. As well as mistakes and missing information.
- Questions about whether Hampton verified the validity of the transfer documents before accepting me. It appears charts were not faxed over before Dr houdart "accepted me"
- Whether EMTALA's acceptance and stabilization requirements were fully observed in this instance.

Case 3:24-cv-11399-RK-RLS Document 80-3 Filed 11/01/25 Page 3 of 3 PageID: 2632

I wanted to check in to see if you or your client have had the chance to review these issues and whether you would be open to scheduling a discussion. As you may be aware, I've requested an extension to file my Second Amended Complaint, and I was hoping we could use this time to have a constructive conversation. Ideally, we could work toward resolving matters efficiently and potentially avoid unnecessary court time, consistent with the Third District's meet-and-confer guidelines.

Please let me know a convenient time for you or your client to connect.

Best regards,

Bradley Clonan

📞 732-476-9555

🏠 2604 W Rhododendron Drive

Abingdon, MD 21009

On Sat, Aug 30, 2025 at 4:03 AM Brad Clonan <clonanxyz@gmail.com> wrote:
[Quoted text hidden]