Gmail **Brad Clonan <clonanxyz@gmail.com>**

---

# EMTALA Compliance and Preservation Notice — Monmouth Medical Center/PESS

6 messages

---

**Brad Clonan** <clonanxyz@gmail.com> Sun, Aug 31, 2025 at 3:15 PM
To: "John Hockin, Jr." <jhockin@ronanlaw.com>

## Dear Counsel,

This correspondence is provided in good faith to notify Monmouth Medical Center/Psychiatric Emergency Screening Services (PESS) of potential violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, as well as related state obligations, arising from my involuntary detention and transfer beginning on March 24–25, 2023.

---

### EMTALA Failures Attributed to Monmouth Medical/PESS

1. Inconsistent and Defective Screening Certificates.

   Records show that Monmouth PESS issued conflicting clinical certificates: one checked “dangerous to self,” another omitted this finding. EMTALA requires a uniform, appropriate medical screening examination (MSE). Such discrepancies suggest the screening was not performed consistently or appropriately.

2. Telepsychiatry Without Consent.

   The March 24–25 screening was performed remotely by telepsychiatry, without my informed consent. EMTALA requires an appropriate MSE — yet no effort was made to confirm that such a remote evaluation complied with federal standards.

3. Failure to Review History or Clinical Records.

   The screening omitted a review of my medical history and clinical records. I was already prescribed psychiatric medication and was compliant at the time, yet this fact was disregarded. An appropriate EMTALA MSE must consider clinical history, prescription compliance, and lab data before concluding dangerousness.

4. Baseless or Unsupported Allegations.

   The certificate alleged symptoms (including hallucinations) that are contradicted by contemporaneous records and forensic evidence (blood and urine toxicology reports from CentraState showed no misuse or overuse of medication). This reliance on baseless claims rather than medical fact violates EMTALA’s requirement for an accurate, objective screening.

5. False and Misleading Documentation.

   The transfer paperwork contained false entries — dentures noted where none existed, inaccurate weight, and age misstated (35 instead of 37). EMTALA requires accurate and contemporaneous physician certification, not fabricated or inconsistent records.

6. Failure to Enforce EMTALA Compliance.

   By transmitting defective and inaccurate certificates, PESS facilitated an improper transfer in violation of EMTALA stabilization and transfer provisions (42 U.S.C. § 1395dd(c)).

---

### Evidence Preservation Demand

Please ensure preservation of all documents and data relating to:

- The March 24–25, 2023 PESS screening (telepsychiatry notes, call records, metadata);
- All clinical certificates (including conflicting versions with "dangerous to self" checked vs. unchecked);
- Internal policies regarding EMTALA screenings, telepsychiatry use, and transfer;
- Drafts, revisions, or metadata tied to inaccurate entries (dentures, age, weight);
- Any lab reports, prescription logs, or history review (or the lack thereof) considered during the screening.

---

### Good Faith Request for Clarification

Within 14 days, please confirm in writing:

1. The identity of the psychiatrist or physician who authored and signed the March 24–25, 2023 certificate(s);
2. Whether multiple versions exist and why "dangerous to self" appears inconsistently;
3. Whether any review of my medical history, prescriptions, or toxicology reports occurred prior to certification;
4. The policies governing EMTALA-compliant screenings by PESS in March 2023;
5. An explanation for false entries (dentures, age, weight) in the transfer paperwork.

---

### Reservation of Rights

This notice is provided in good faith to resolve factual disputes without immediate court intervention. If these issues remain unaddressed, I will amend my pleadings to include explicit EMTALA claims and notify CMS and HHS-OIG for enforcement review when and if applicable .

All rights and remedies are expressly reserved.

Respectfully,

Bradley Clonan

Plaintiff, Pro Se

2604 W. Rhododendron Dr.

Abingdon, MD 21009

Tel: (732)-476-9555

Email: clonanxyz@gmail.com

---

**Brad Clonan** <clonanxyz@gmail.com> Fri, Sep 12, 2025 at 3:09 PM
To: "John Hockin, Jr." <jhockin@ronanlaw.com>

Subject: Follow-Up on EMTALA Concerns and Potential Discussion

Mr Hockin,

I hope this message finds you well. I wanted to follow up regarding my concerns about EMTALA violations and the transfer paperwork related to Monmouth Medical Center and its Psychiatric Emergency Screening Service (PESS). From

my discussions with DOH/HHS and my own research, it is my understanding that a PA-C alone cannot sign the transfer certificate.

In addition, I have specific concerns about Monmouth Medical/PESS, including:

- The remote screening performed on March 24, 2023, while I was at CentraState, which appears inconsistent with the governing statutory requirements.
- Questions about whether PESS, as a state-designated actor, followed proper EMTALA protocols in authorizing my detention and transfer.
- Discrepancies between the PESS screening records and hospital documentation.

I wanted to check in to see if you or your client have had the chance to review these issues and whether you would be open to scheduling a discussion. As you may be aware, I've requested an extension to file my Second Amended Complaint, and I was hoping we could use this time to have a constructive conversation. Ideally, we could work toward resolving matters efficiently and potentially avoid unnecessary court time, consistent with the Third District's meet-and-confer guidelines.

Please let me know a convenient time for you or your client to connect.

Best regards,

Bradley Clonan

📞 732-476-9555

🏠 2604 W Rhododendron Drive

Abingdon, MD 21009

[Quoted text hidden]

---

**John Hockin, Jr.** <jhockin@ronanlaw.com> Fri, Sep 12, 2025 at 5:24 PM
To: Brad Clonan <clonanxyz@gmail.com>

Mr. Clonan:

I am not authorized at this time to respond to any discovery requests or allegations. Much of the information that you are requesting regarding the role of Monmouth Medical Center would be explained in discovery. At this time, given the dismissals, Monmouth Medical Center has not authorized me to engage in any discovery.

As far as resolving the case, I have no authority to resolve the case at this time.

Thank you.

John M. Hockin, Jr., Esq.
Ronan, Tuzzio, & Giannone

4000 Route 66, Suite 231
One Hovchild Plaza
Tinton Falls, NJ 07753
(732) 922-3300
Fax: 732-918-8505

***Confidentiality Note****

This transmission is intended only for the addressee, and may contain privileged and/or confidential information from the law firm of Ronan, Tuzzio & Giannone, P.A. If you are not the intended recipient, please do not use, disseminate, or copy this material. If you have received this transmission in error, please notify us immediately by telephone, return this transmission, and delete or destroy any copies.

Thank you.

---

**From:** Brad Clonan [mailto:clonanxyz@gmail.com]
**Sent:** Friday, September 12, 2025 3:10 PM
**To:** John Hockin, Jr. <jhockin@ronanlaw.com>
**Subject:** Re: EMTALA Compliance and Preservation Notice — Monmouth Medical Center/PESS

Subject: Follow-Up on EMTALA Concerns and Potential Discussion

Mr Hockin,

I hope this message finds you well. I wanted to follow up regarding my concerns about EMTALA violations and the transfer paperwork related to Monmouth Medical Center and its Psychiatric Emergency Screening Service (PESS). From my discussions with DOH/HHS and my own research, it is my understanding that a PA-C alone cannot sign the transfer certificate.

In addition, I have specific concerns about Monmouth Medical/PESS, including:

- The remote screening performed on March 24, 2023, while I was at CentraState, which appears inconsistent with the governing statutory requirements.
- Questions about whether PESS, as a state-designated actor, followed proper EMTALA protocols in authorizing my detention and transfer.
- Discrepancies between the PESS screening records and hospital documentation.

I wanted to check in to see if you or your client have had the chance to review these issues and whether you would be open to scheduling a discussion. As you may be aware, I've requested an extension to file my Second Amended Complaint, and I was hoping we could use this time to have a constructive conversation. Ideally, we could work toward resolving matters efficiently and potentially avoid unnecessary court time, consistent with the Third District's meet-and-confer guidelines.

Please let me know a convenient time for you or your client to connect.

Best regards,

Bradley Clonan

732-476-9555

2604 W Rhododendron Drive

Abingdon, MD 21009

On Sun, Aug 31, 2025 at 3:15 PM Brad Clonan <clonanxyz@gmail.com> wrote:

## Dear Counsel,

This correspondence is provided in good faith to notify Monmouth Medical Center/Psychiatric Emergency Screening Services (PESS) of potential violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, as well as related state obligations, arising from my involuntary detention and transfer beginning on March 24–25, 2023.

---

### EMTALA Failures Attributed to Monmouth Medical/PESS

1. Inconsistent and Defective Screening Certificates.

   Records show that Monmouth PESS issued conflicting clinical certificates: one checked "dangerous to self," another omitted this finding. EMTALA requires a uniform, appropriate medical screening examination (MSE). Such discrepancies suggest the screening was not performed consistently or appropriately.

2. Telepsychiatry Without Consent.

   The March 24–25 screening was performed remotely by telepsychiatry, without my informed consent. EMTALA requires an appropriate MSE — yet no effort was made to confirm that such a remote evaluation complied with federal standards.

3. Failure to Review History or Clinical Records.

   The screening omitted a review of my medical history and clinical records. I was already prescribed psychiatric medication and was compliant at the time, yet this fact was disregarded. An appropriate EMTALA MSE must consider clinical history, prescription compliance, and lab data before concluding dangerousness.

4. Baseless or Unsupported Allegations.

   The certificate alleged symptoms (including hallucinations) that are contradicted by contemporaneous records and forensic evidence (blood and urine toxicology reports from CentraState showed no misuse or overuse of medication). This reliance on baseless claims rather than medical fact violates EMTALA's requirement for an accurate, objective screening.

5. False and Misleading Documentation.

   The transfer paperwork contained false entries — dentures noted where none existed, inaccurate weight, and age misstated (35 instead of 37). EMTALA requires accurate and contemporaneous physician certification, not fabricated or inconsistent records.

6. Failure to Enforce EMTALA Compliance.

   By transmitting defective and inaccurate certificates, PESS facilitated an improper transfer in violation of EMTALA stabilization and transfer provisions (42 U.S.C. § 1395dd(c)).

---

### Evidence Preservation Demand

Please ensure preservation of all documents and data relating to:

- The March 24–25, 2023 PESS screening (telepsychiatry notes, call records, metadata);
- All clinical certificates (including conflicting versions with "dangerous to self" checked vs. unchecked);
- Internal policies regarding EMTALA screenings, telepsychiatry use, and transfer;
- Drafts, revisions, or metadata tied to inaccurate entries (dentures, age, weight);
- Any lab reports, prescription logs, or history review (or the lack thereof) considered during the screening.

---

### Good Faith Request for Clarification

Within 14 days, please confirm in writing:

1. The identity of the psychiatrist or physician who authored and signed the March 24–25, 2023 certificate(s);
2. Whether multiple versions exist and why "dangerous to self" appears inconsistently;
3. Whether any review of my medical history, prescriptions, or toxicology reports occurred prior to certification;
4. The policies governing EMTALA-compliant screenings by PESS in March 2023;
5. An explanation for false entries (dentures, age, weight) in the transfer paperwork.

---

### Reservation of Rights

This notice is provided in good faith to resolve factual disputes without immediate court intervention. If these issues remain unaddressed, I will amend my pleadings to include explicit EMTALA claims and notify CMS and HHS-OIG for enforcement review when and if applicable .

All rights and remedies are expressly reserved.

Respectfully,

Bradley Clonan

Plaintiff, Pro Se

2604 W. Rhododendron Dr.

Abingdon, MD 21009

Tel: (732)-476-9555

Email: clonanxyz@gmail.com

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

---

**Brad Clonan** <clonanxyz@gmail.com> Fri, Sep 12, 2025 at 5:56 PM
To: "John Hockin, Jr." <jhockin@ronanlaw.com>

Mr. Hockin,
I completely understand and thank you for responding in a timely manor.

I understand you are not authorized to respond to “discovery or settlement” at this time. However, I still need clarification on the EMTALA concerns I raised according to the hospitals written policies, and my treatment diagnosis and discrepancies/vastly incomplete and blank medical records supplied to me. (Consider this a request I writing again)

Could you please confirm if there's anyone at Monmouth Medical Center who *can* address these specific points? Given federal rules and procedures as well as the cease of contact . I apologize if this is something I should at this point be directing towards your client since it concerns my medical records and policy questions but was not sure.

Thank you,
Bradley Clonan
[Quoted text hidden]

---

**John Hockin, Jr.** <jhockin@ronanlaw.com> Sun, Oct 12, 2025 at 9:13 PM
To: Brad Clonan <clonanxyz@gmail.com>

Mr. Clonan:

Given that you were not a patient at Monmouth Medical Center, I do not believe that EMTALA would apply. I also do not think that EMTALA applies to these claims.

I apologize for the delay in a response. September is always a chaotic month.

[Quoted text hidden]

---

**Brad Clonan** <clonanxyz@gmail.com> Sun, Oct 12, 2025 at 9:22 PM
To: "John Hockin, Jr." <jhockin@ronanlaw.com>

Mr Hockin:

Thank you for the response. Enjoy the rest of your evening.

Thank you,
Bradley Clonan
732-476-9555
Clonanxyz@gmail.com
[Quoted text hidden]