# EXHIBIT A

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

________Civil__ Division

Bradley Clonan
Gabriela Clonan

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-v-**

see attached

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

Case No. ____________________
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑ Yes ☐ No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Bradley Clonan |
| Address | 2604 W Rhododendron Dr |
| *City* / *State* / *Zip Code* | Abingdon / MD / 21009 |
| County | Harford |
| Telephone Number | 732-476-9555 |
| E-Mail Address | clonanxyz@gmail.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | CentraState Healthcare System/Atlantic Health System |
| Job or Title *(if known)* | Healthcare Institution |
| Address | 901 West Main Street |
| *City* / *State* / *Zip Code* | Freehold / NJ / 07728 |
| County | Monmouth |
| Telephone Number | (732) 431-2000 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | RWJBarnabas Health - Monmouth Medical Center |
| Job or Title *(if known)* | Healthcare Institution |
| Address | 300 Second Avenue |
| *City* / *State* / *Zip Code* | Long Branch / NJ / 07740 |
| County | Monmouth |
| Telephone Number | (732) 222-5200 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☑ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Hampton Behavioral Health Center |
| Job or Title *(if known)* | Mental health clinic |
| Address | 650 Rancocas Rd |
| | Westampton Township (City) NJ (State) 08060 (Zip Code) |
| County | Burlington |
| Telephone Number | 1-800-603-6767 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☒ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Dr. Steven Guillen, MD |
| Job or Title *(if known)* | Attending Provider |
| Address | 901 West Main Street |
| | Freehold (City) NJ (State) 07728 (Zip Code) |
| County | Monmouth |
| Telephone Number | (732) 431-2000 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☒ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

See attachment : 12-20-24-complaint-attachments

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

See attachment : 12-20-24-complaint-attachments

## III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

- Kelley Clonan(sisters home) initial call to police officers : 17 Olde Noah Hunt Rd, Millstone Township, NJ 08510
- CentraState Healthcare System, 901 West Main Street, Freehold, NJ 07728- RWJBarnabas Health
- Monmouth Medical Center, 300 Second Avenue, Long Branch, NJ 07740
- Hampton Behavioral Health Center 650 Rancocas Rd, Westampton, NJ 08060
- Ongoing 2604 w rhododendron drive, abingdon md, 21009

B. What date and approximate time did the events giving rise to your claim(s) occur?

Initial Event : March 24, 2023, beginning at approximately 1600 hours through March 30, 2023
Ongoing Violations : March 24, 2023 to 11/30/2024

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See attachment : 12-20-24-complaint-attachments

## IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See attachment : 12-20-24-complaint-attachments

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

See attachment : 12-20-24-complaint-attachments

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/20/2024

Signature of Plaintiff 

Printed Name of Plaintiff Bradley Clonan

### B. For Attorneys

Date of signing: ____________

Signature of Attorney ____________

Printed Name of Attorney ____________

Bar Number ____________

Name of Law Firm ____________

Address ____________

*City* ____________ *State* ____________ *Zip Code* ____________

Telephone Number ____________

E-mail Address ____________

RONAN, TUZZIO & GIANNONE, P.C.
Attorneys at Law

James M. Ronan, Jr.
Robert A. Giannone ^
Michael K. Tuzzio
MaryAnn Nobile Wilderotter ^
Linda A. Olsen
Gregory W. Boyle
Lauren H. Zalepka*
John M. Hockin, Jr.
Daniel T. DiCicco
Robert G. Maglio ^

One Hovchild Plaza
4000 Route 66, Suite 231
Tinton Falls, New Jersey 07753-7308
(732) 922-3300
FAX (732) 918-8505

*North Jersey Office*
788 Morris Turnpike
Short Hills, New Jersey

Jack E. Potash
Michael J. Kafton
Samantha L. Graff
Robert M. Pacholski
Glenn A. Beveridge

^ NJ & NY Bars
*NJ & PA Bars

ALL REPLIES TO TINTON FALLS

September 9, 2024

Bradley Clonan
2604 Rhodoendron Drive
Abingdon, MD

Re: ***Cease and Desist Contact***
2023 Civil Commitment

Dear Mr. Clonan:

As you are aware, I represent Monmouth Medical Center (MMC) as well as their Psychiatric Emergency Screening Service (PESS). As a follow up to my previous letter, I want to reiterate that you must ***immediately cease and desist*** contact with anyone at MMC or PESS and all communication must be directed to my law firm.

Please be advised that Monmouth Medical Center and their Psychiatric Emergency Screening Services determined, upon your initial evaluation, determined you needed to be cared for and no formal diagnosis was made. Please be advised that, although the initial evaluation was done by staff of MMC and PESS, further care was provided by CentraState and Hampton Behavior Institute, which is separate medical facility from MMC and PESS.

In addition, please consider this another formal demand that you ***immediately*** remove any and all recordings which contain conversations with my clients from the internet. My clients did not consent to be recorded and, as a result, the recordings violate MD law Md. Code Ann., Cts. & Jud. Proc §10-402. Please be advised a police report is being filed in this matter.

As previously noted and discussed, I have been advised by my client that your MMC and PESS records were thoroughly reviewed and determined to be accurate. As a result, we are unable to change any of the entries in your medical records. However, if you would like to provide me with a brief statement regarding your concerns, I would certainly consider having my client include it in your medical records.

I understand that you take issue with your civil commitment from 2023. However, your commitment was approved by a Judge and cannot now be changed by my client. Should you wish to expunge this commitment you should follow the appropriate procedures pursuant to N.J.S.A. 30:4-80.8.

Please comply with the within demands to avoid any future criminal or civil action.

Very truly yours,

*Lauren H. Zalepka/s/*

Lauren H. Zalepka

LHZ/gab

**II. Basis for Jurisdiction**

# I. JURISDICTION AND VENUE

1. **Jurisdiction:**
   **This Court has jurisdiction over this action pursuant to:**
   - 28 U.S.C. § 1331: Federal question jurisdiction, as this action arises under the Constitution and laws of the United States;
   - 28 U.S.C. § 1332: Diversity jurisdiction, as Plaintiff is a resident of Maryland, Defendants are residents of New Jersey, and the amount in controversy exceeds $75,000;
   - 42 U.S.C. § 1983: Civil rights violations under color of state law;
   - 28 U.S.C. § 1367: Supplemental jurisdiction over related state law claims.
2. **Venue:**
   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this district, and all Defendants are located in this district.


# I. JURISDICTION AND VENUE

1. **Jurisdiction:**
   **This Court has jurisdiction over this action pursuant to:**
   - 28 U.S.C. § 1331: Federal question jurisdiction, as this action arises under the Constitution and laws of the United States;
   - 28 U.S.C. § 1332: Diversity jurisdiction, as Plaintiff is a resident of Maryland, Defendants are residents of New Jersey, and the amount in controversy exceeds $75,000;
   - 42 U.S.C. § 1983: Civil rights violations under color of state law;
   - 28 U.S.C. § 1367: Supplemental jurisdiction over related state law claims.
2. **Venue:**
   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this district, and all Defendants are located in this district.


**B Continued. Plaintiff alleges violations of federal constitutional and statutory rights as follows:**

1. **Fourth Amendment (U.S. Constitution):**
   - Plaintiff's right to be free from unreasonable seizures was violated by:
     a) Unlawful detention without proper evaluation;
     b) Forced confinement without probable cause;
     c) Physical restraint without adequate medical or legal justification.

Case 3:24-cv-11399-RK-RLS Document 52 Filed 02/24/26 Page 11 of 74 PageID

  - d) Forced medication; without consent. Cause or justification

2. **Fourteenth Amendment (U.S. Constitution):**
   - Defendants deprived Plaintiff of procedural due process by depriving liberty without adequate notice or hearing.
   - Defendants violated Plaintiff's substantive due process rights through:
     a) Arbitrary and unjustified involuntary commitment;
     b) Falsification of medical records to justify detention;
     c) Denial of equal protection by engaging in discriminatory practices based on disability.
3. **First Amendment (U.S. Constitution):**
   - Retaliation against Plaintiff for exercising free speech rights, including attempts to assert legal and medical rights.
   - Restriction of Plaintiff's communication with family, legal counsel, and other support systems.
4. **Americans with Disabilities Act (ADA) - 42 U.S.C. § 12132:**
   - Disability discrimination by state actors through:
     a) Denial of reasonable accommodations;
     b) Discriminatory treatment based on actual or perceived disability;
     c) Failure to provide equal access to healthcare and other services as required by the ADA.
5. **Rehabilitation Act of 1973 - Section 504:**
   - Discrimination in a federally funded program or activity, specifically within a healthcare facility, by failing to provide equal access and reasonable accommodations.
6. **Health Insurance Portability and Accountability Act (HIPAA) - 45 C.F.R. § 164:**
   - Violations stemming from the falsification and mishandling of medical records to justify improper actions, constituting a breach of privacy rights.

**D Continued.**

## 1. Institutional Defendants Acted Under Color of State Law

**a) CentraState Healthcare System/Atlantic Health System, Hampton Behavioral Health Center, and RWJBarnabas Health:**

- Operating as state-licensed healthcare facilities.
- Exercising state-delegated authority for involuntary evaluations.
- Implementing state mental health procedures.
- Utilizing state authority for detention decisions.
- Violating mandatory state grievance procedures by:
  - Failing to respond to formal grievances within the required 7-day timeline (Monmouth Medical Center).

Case 3:24-cv-11399-RK-RLS Document 32-5 Filed 02/25/26 Page 8 of 24 PageID 1

- ○ Misreporting responses and compliance to NAVEX, the national third-party investigator (Monmouth Medical Center).
- ○ Ignoring mandatory patient advocate notification requirements.
- ○ Bypassing required ethics committee review procedures.
- ○ Monmouth medical center's formal grievance response letter listed the wrong transfer date. Stating the patient they performed their formal grievance investigation on was transferred on date 8/26/2023 , when in fact Bradley's transfer to Hampton was on 3/25/2023.

## 2. Individual Medical Staff Defendants Acted Under Color of State Law

**a) Dr. Steven Guillen, MD, Dr. Stephen Van Pelt, MD (Attending Providers), and Dr. Hodart (Hampton Behavioral):**

- Exercising state-delegated authority for medical detention.
- Violating state-mandated evaluation procedures.
- Failing to follow required documentation protocols.
- Breaking mandatory patient rights procedures.
- Making detention decisions without proper evaluation, based on erroneous clinical evidence and charts.
- Ignoring mandatory transfer protocols, including:
  - ○ Failing to inform Bradley, or his wife Gabriela.Medical treatment plans, accurately reflected statements of bradleys condition and care plan.
  - ○ On 03/25/23, an information breach occurred involving Bradley's protected health information (PHI) and personally identifiable information (PII). The incident happened when intern Ashley attempted to notify Bradley's wife Gabriela about his transfer by leaving a voicemail. Ashley mistakenly called 732-762-9602 instead of Gabriela's correct phone number (732-672-9602). As a result, Bradley's confidential information was disclosed to an unauthorized party.
  - ○ Continued negligence in repeated reuse of false charts, through automated systems.
  - ○ The discharge documentation contained several significant inaccuracies regarding Bradley Clonan's medical condition. The paperwork incorrectly stated that Bradley had dentures, listed his weight as 170kg, and misrepresented his mental status. Furthermore, while Monmouth Medical Center screeners and attending physicians documented concerns about prescription medication overuse, these claims were not supported by the clinical urinalysis and blood test results. Despite these charting errors Centra state medical center and hampton behavioral signed off stating the transfer paperwork and medical paperwork was accurate.
- Violating interfacility communication requirements by failing to:
  - ○ Transfer or communicate treatment plans or care plans.
  - ○ Fax paperwork for admission.
- Breaking required medication documentation procedures.
- Failing to follow state-mandated assessment guidelines, such as:

- Not exploring alternative treatments.
- Failing to verify that Bradley was a danger to himself or others.

- Violating required physician certification procedures due to substantial charting errors leading to unjust involuntary commitment.
- Creating official medical records.
- Making detention decisions without proper evaluation or clinical evidence.
- Deeming Bradley's statements as hallucinations and delusions due to mental bias and stigma.
- Failing to examine any previous medical or mental history.
- Administering treatment without consent.
- A medication and personal property discrepancy was reported to Jodi, the patient advocate at Hampton. According to CentraState's records, no medications were transferred with Bradley's belongings. However, Hampton's documentation indicated that Bradley was received with both medications and other personal items, creating a significant inconsistency in the transfer records between the two facilities.
- Back and forth issue incident over medications missing with Hampton upon discharge
  - At first the medication was reported as sent home with me on discharge
  - Bradley called and stated it was not sent home with him
  - Next they stated it was dropped off by Bradleys sister Chelsey Nieves, and administered during his stay.
  - Bradley called and reported that as untrue, Jodi stated that Bradley must have been "confused"
  - Bradley then confirmed with Chelsey, then returned a phone call to Hampton.
  - At this point the statement was "They were looking at the wrong patient" over the medication disputes, and there is nothing more to look at.
- Medications are still missing, and the issue is still unresolved

## 3. Administrative Defendants Acted Under Color of State Law

**a) Eric Carney (CEO) and Department Directors:**

- Enforcing state-licensed facility policies.
- Maintaining state-required records.
- Managing official records.
- Coordinating with state agencies.
- Implementing facility policies.
- Violating mandatory grievance procedures by:
  - Exceeding maximum response timeframes.
  - Failing to implement required review procedures.
  - Ignoring mandatory escalatio**n protocols, such as the right to appeal.**

## 4. State Law Enforcement

**a) Officer DeMarco #8578:**

- Acting as a state police officer.
- Executing state authority.
- Failing to follow required documentation protocols.
- Coordinating with facility staff under color of law.
- Acting as a collateral witness with no context or insight, immediately representing to the hospital that Bradley Clonan could not "distinguish fact from fiction."

## 5. Systemic Violations of State Procedures

**a) Grievance Process Violations:**

- Ignoring mandatory 24-hour initial response requirements.
- Exceeding 7-day, 60-day, and 90-day timelines.
- Failing to provide all required written responses.
- Bypassing mandatory patient advocate involvement.
- Retaliatory actions, such as filing police reports and threatening arrest for seeking medical justification from a clinical provider or physician.

**b) Documentation Violations:**

- Severe inaccuracies and falsification of medical records.
- Failing to maintain required contemporaneous records.
- Violating mandatory amendment procedures.
- Ignoring required correction protocols.
- Breaking chain-of-custody requirements.

**c) Patient Rights Violations:**

- Bypassing mandatory notification procedures.
- Ignoring required consent protocols.
- Violating communication rights procedures.
- Breaking required advocacy access protocols.

## 6. ADA Compliance Violations

**a) All Defendants Violated State-Mandated ADA Procedures by:**

- Failing to follow required accommodation protocols.
- Ignoring mandatory individualized assessment requirements.
- Violating required documentation procedures.
- Breaking mandatory review timelines.

## 7. Coordinated Action of covering up misconduct acting under the color of state law

**a) Coordinated Creation and Maintenance of False Records Acting in bad faith:**

- **Systematic creation of false documentation through:**
    - Deliberate misrepresentation of clinical observations.
    - Coordinated false narrative creation.
    - Intentional omission of contradicting evidence.
    - Breaking mandatory accuracy requirements.
    - Breaking mandatory transfer checklist accuracy requirements.
    - Deliberate ignorance of statements from Bradley and Gabriela Clonan that contradicted all claims of hallucinations, delusions, paranoia, impaired judgment, or overuse of prescribed medications.
- **Maintenance of false records through:**
    - Refusing mandatory correction procedures.
    - Ignoring required amendment protocols.
    - Violating required update procedures.
    - Breaking chain-of-custody requirements.
    - Threatening arrest for appearing on premises with questions, ceasing all phone communication and other communication methods with physicians or parties involved in Bradley's care plan.

**b) Implementation of Unauthorized Restrictions:**

- **Coordinated rights violations through:**
    - Unauthorized communication restrictions.
    - Improper access limitations.
    - Illegal detention procedures.
    - Breaking required review protocols.
    - Denying medical or legal justification for involuntary commitment.
    - Falsifying medical records and continuously erroneous records filled "based on charts."
- **Systematic procedure violations:**
    - Ignoring mandatory assessment requirements.
    - Denying access to hospital policies and procedures upon request.
    - Breaking notification protocols.
    - Violating mandatory review timelines.
    - Coordinated bypass of patient rights.
    - Widespread discrimination and bias based on perceived mental history and condition.

## 8. Professional Standards Violations

**a) Clinical Practice Violations:**

- Breaking mandatory assessment protocols.
- Failing to explain why Bradley was deemed a danger to himself or others.
- Disallowing Bradley from leaving upon request after being medically cleared and deemed not a danger to himself or others.

Case 3:24-cv-11399-RK-RLS Document 32-5 Filed 10/02/24 Page 7 of 21 PageID: 5

  - Bradley's one to one assessment stated resting calmly/laying/ during his entire stay at Centra State Hospital
- Violating required documentation standards.
- Ignoring professional ethics requirements.
- Failing to follow evidence-based practices.

**b) Administrative Procedure Violations:**

- Breaking mandatory reporting timelines.
- Ignoring required review procedures.
- Violating communication protocols.
- Failing to maintain accurate records.

## 9. Regulatory Compliance Violations

**a) State Healthcare Facility Requirements:**

- Breaking mandatory patient rights protocols.
- Violating required assessment procedures.
- Ignoring mandatory documentation requirements.
- Failing to follow required review timelines.

**b) Professional Licensing Requirements:**

- Violating scope-of-practice guidelines.
- Breaking mandatory supervision requirements.
- Ignoring required consultation protocols.
- Failing to maintain proper credentials.

## 10. Inter-Facility Protocol Violations

**a) Transfer and Communication Violations:**

- Calling the wrong phone number to inform about Bradley's transfer to Hampton, exposing Bradley's HIPAA-protected information on a voicemail to the unintended recipient.
- Breaking required transfer protocols.
- Violating mandatory communication procedures.
- Ignoring required documentation standards.
- Failing to follow continuity-of-care requirements.

**b) Coordination Failures:**

- Violating required handoff procedures.
- Breaking mandatory information-sharing protocols.
- Ignoring required follow-up procedures.

- Failing to maintain proper records.
- Coordinated bad faith through covering up misconduct

—-

## Statement of Claim

### 1. Initial Presentation and Unjust Detention at CentraState Medical Center (March 24, 2023)

On March 24, 2023, at approximately 6:37 PM, I, Bradley Clonan (hereinafter referred to as "I," "patient," or "myself"), arrived at the Emergency Department (ED) of CentraState Medical Center via ambulance transport, which I had voluntarily accepted, for the purpose of seeking a medical assessment. This decision to accept ambulance transportation and subsequent presentation at the ED was made of my own volition, without any external compulsion or legal requirement.

- I underwent comprehensive blood and urine tests, which showed no abnormalities or concerns.
- I was documented as resting calmly and was coherent in my communications.
- Medical staff noted that I was not a danger to myself or others.
- I was medically cleared based on the evaluations conducted.
- To this date 12/20/2024, Neither myself or a designated caregiver have received any medical or legal justification for my treatment or detainment. From any medical, state, federal or governing bodies.
- I have reported this to the NJ DOH, the Board of medical examiners, the Joint commission, and other governing bodies through the proper protocol. Currently at this point in time, 12/20/2024 the NJ DOH has not completed their supervisory review which has been ongoing.

Despite the medical clearance and being marked as alert/oriented and not a harm to self:

- When I requested to leave the facility after being medically cleared, my request was denied without any explanation.
- Upon admission to Centrastate and subsequently Hampton, I was immediately placed in a secured isolation room in a secured isolation environment with the following characteristics: continuous camera surveillance, restricted access through a locked door, and reinforced glass barriers separating the nursing staff from patients. The room's temperature was notably cold, creating an uncomfortable environment.

- I was prevented from making any phone calls, including contacting my wife, who had followed the ambulance to the hospital.
- I was not provided with any council or access to my physicians
- I was not provided with a patient bill of rights, nor was any care plan or alternative options explained to me.
- My repeated inquiries about the reasons for my detention were ignored.
- I made multiple requests for information about hospital policies, procedures, and the commitment process, but staff denied my inquiries and provided no explanations.
- When I asked permission to exit the secured isolation environment to go outside, this was also denied. I was confined to the restricted area without the ability to leave, effectively being held in a secured detention setting.

SECURED CONFINEMENT CONDITIONS

A secured isolation environment characterized by:

- Continuous video surveillance
- Restricted access via locked entrances
- Reinforced glass barriers between nursing staff and patients

## 2. False Information Leading to Continued Detention

A screener named Theo from Monmouth Medical Center provided false information that was used to justify my continued detention:

- Theo falsely reported that I had overused prescribed medications, a claim directly contradicted by my blood and urine test results.
- He made incorrect statements about my travel itinerary, falsely asserting that I drove directly from Maryland to New Jersey.

All statements I made during my assessment, which were labeled as "paranoid" or "hallucinations," were factual and verifiable:

- **Data Breach Incident:** I reported a data breach related to my workplace and Valvoline cybersecurity.
- **Attempted Return of Company Property:** On March 23, 2023, I attempted to return company property to the 160over90 office in Philadelphia, PA. My former colleague, Freddy Hernandez, can corroborate this event, as he was present and opened the door for me.
- **Suspicious Person Incident:** A suspicious individual dressed in all black was observed recording a conversation late at night in our residential development. This incident was witnessed by my neighbor, Ryan W., a DC police officer, and was reported to the Bel Air Police Department.

There was no documentation or clinical evidence supporting any claims of paranoia or hallucinations on my part.

## 3. Documentation Errors and Falsification of Medical Records

Multiple errors and inaccuracies were recorded in my medical records, affecting my diagnosis and treatment:

**Atlantic Medical Imaging Records:**

- My weight was falsely recorded as 300 pounds (approximately 170 kg), whereas my actual weight is around 150 pounds.
- A false notation indicated that I had dentures, which I do not possess.
- Incorrectly documented that I was overusing prescribed medications without any clinical evidence.
- Misreported that the ambulance was the first on the scene, which was inaccurate.
- Misrepresented facts provided by collateral witnesses.
- Contained an incorrect medication history.

The initial intervention was later marked as a "mistake" on March 28, 2023.

- These documentation errors led to incorrect interventions and diagnoses based on erroneous charts, statements, and a lack of proper record transfer and clinical evidence.

The following medical professionals and facilities were involved in creating or maintaining these false records:

- Dr. Steven Guillen
- Dr. Stephen Van Pelt
- Dr. Mohsen Rehim
- Dr. Hodart
- Dr. Fabian
- Head of Security Robert Orro
- Patient Advocacy Representatives
- All clinal and representative offices listed in this complaint.

## 4. Medical Staff Timeline and Actions

**March 24, 2023:**

- PA Larissa Spishock (6:37 PM – 10:42 PM)
- PA Heather Guzy (10:20 PM – March 25, 11:11 AM)
- RN Antonella Salony (7:14 PM – March 25, 7:49 AM)

**March 25, 2023:**

- RN Nichole Perez (7:18 AM – 11:02 AM)
- PA Aradla Tabasko (11:11 AM)
- LPN Lori Conrad (11:02 AM)

During this period and to the present:

- There was a deviation from standard medical practices and protocols.
- Formal grievance responses contained incorrect dates, indicating a lack of attention to detail or deliberate obfuscation.
- There was a deliberate attempt to conceal misconduct.

## 5. Continuation of Rights Violations and Denial of Due Process

- At Hampton Behavioral Health Center, Dr. Hodart acknowledged that there was no basis for my continued detention.
- During a phone call involving myself, my wife, and social worker Anita, my wife recounted the events that had been previously labeled as hallucinations. Upon hearing this, Dr. Hodart discontinued all medications and marked the initial intervention as a mistake after 72 hours.
- Despite this, multiple formal grievances I filed were ignored.
  - Requests to correct my medical records were denied.

**My patient rights were repeatedly violated, including:**

- Denial of access to medical records.
- Unwarranted communication restrictions.
- Withholding of critical information necessary for my care.

Attempts to resolve these issues were met with:

- Non-answers.
- Threats of legal action.
- Retaliation, including false police reports.
- Communication blocks.
- Access restrictions.
- Threats of arrest.

## 6. Relevant Regulations and Statutes Violated

**State Law:**

- **N.J.A.C. 8:43G-4.1(a)(14):** Denial of medical communication, unjustified access restrictions, and interference with my right to medical care.
- **N.J.S.A. 26:2H-12.8(d):** Denial of my right to medical information, explanations from physicians, and participation in treatment decisions.

**HIPAA Regulations:**

- **45 CFR § 164.524:** Denial of access to my medical records.
- **45 CFR § 164.506:** Unauthorized disclosure of protected information and improper use of my medical data.

**Federal Law:**

- **42 U.S.C. § 1983:** Violations of my civil rights, denial of due process, and constitutional infringements due to the imposed restrictions.

**Other Violations:**

- A phone call meant for my wife to inform her of my transfer was placed to the wrong person, and a voicemail was left by CentraState Hospital.
- **N.J.S.A. 10:5-12:** Discrimination within a public accommodation, professional interference, and unjust access restrictions based on my case.

## 7. Impact on My Health and Well-being

- I was subjected to forced administration of unnecessary medications, which required a weaning process.
- I developed anxiety, emotional distress, and sleep disturbances as a result of the wrongful detention and treatment.
- These events have led to ongoing medical anxiety and have impacted my ability to perform my daily activities.
- Loss of enjoyment of life
- Future potential for complicating custody situations in the event of an unforeseen horrible eventPotential custody complications in unforeseen tragic circumstances

# Injuries

**IV. Injuries**

## 1. Medical Injuries

A. Forced Administration of Unnecessary Medications

- I was forcibly administered medications that were unnecessary and not warranted by my actual medical condition, based on incorrect diagnoses stemming from falsified medical records.
- This led to adverse side effects and required a medically supervised weaning process to safely discontinue these medications.
- The forced medication caused physical discomfort and potential long-term health implications.

B. Required Weaning from Wrongly Prescribed Medications

- The abrupt cessation of these medications without proper medical oversight could have posed serious health risks.
- The weaning process was challenging and required ongoing medical monitoring.

C. Anxiety and Emotional Distress from Wrongful Detention

- The experience of being wrongfully detained without explanation caused severe emotional distress.
- I developed anxiety disorders, including generalized anxiety and panic attacks.

D. Ongoing Sleep Disturbances

- I suffer from insomnia and frequent nightmares related to the traumatic events, leading to chronic fatigue.

E. Development of Medical Anxiety

- I have developed a heightened fear of medical environments and professionals, making it difficult to seek necessary medical care.

## 2. Professional/Career Injuries

A. Reduced Ability to Perform Software Development Work

- The trauma and resulting cognitive impairments have diminished my ability to concentrate and perform complex coding tasks.

B. Diminished Coding Capabilities

- My proficiency in software development has been adversely affected, impacting my productivity and quality of work.

C. Impaired Concentration Affecting Work Performance

- Difficulty focusing has led to errors and decreased efficiency in my professional duties.

D. Required Accommodations for Resulting Conditions

- I have had to request workplace accommodations to manage my health conditions, which has affected my career trajectory.

E. Loss of Career Advancement Opportunities

- Due to my diminished performance and need for medical leave, I have missed opportunities for promotions and professional growth.

F. Professional Reputation Damage

- The stigma associated with my wrongful detention and the dissemination of false information have harmed my reputation within my professional community.

G. Required FMLA Intermittent Leave for Resulting Conditions

- Due to the physical and emotional impact of these injuries, I have had to take intermittent leave under the Family and Medical Leave Act (FMLA) to manage my health conditions.

## 3. Treatment Required

A. Medication Withdrawal Management

- I required medical supervision to safely discontinue the unnecessary medications that were forcibly administered.

B. Ongoing Medical Monitoring

- Regular medical check-ups have been necessary to monitor my physical health and ensure recovery from the adverse effects of the medications.

C. Mental Health Support for Detention Trauma

- I have been undergoing therapy to address trauma, anxiety, and emotional distress resulting from the wrongful detention and treatment.

D. Professional Therapy for Work Impacts

- Counseling has been necessary to improve my cognitive functioning and work performance.

E. Continued Medical Care Denied by Facilities

- Despite my need for ongoing care, the facilities involved have denied me access to necessary medical treatment information and support.

F. Continued Medical Treatment

- I have had to take continued anti-anxiety medications as well as insomnia medications to deal with the trauma and ongoing treatment.

## 4. Treatment Denied

A. Access to Medical Records Blocked

- I have been denied access to my complete medical records, which is essential for informing my ongoing treatment and for correcting inaccuracies.

B. Physician Consultations Prevented

- Attempts to consult with the physicians responsible for my initial treatment have been blocked, hindering my ability to understand and address the interventions performed.

C. Follow-up Care Restricted

- Restrictions imposed by the facilities have prevented me from receiving appropriate follow-up care, prolonging my recovery.

D. Correction of Medical Records Refused

- Efforts to correct the falsified information in my medical records have been denied, which continues to negatively impact my healthcare.

E. Access to Treating Physicians Denied

- I have been unable to consult with treating physicians for explanations and guidance regarding my health conditions and treatment needs.

F. Loss of Enjoyment of Life The injuries and circumstances described have profoundly diminished my quality of life. Activities that once brought me joy, fulfillment, and a sense of normalcy are now either severely restricted or entirely inaccessible due to my health conditions. This loss extends to physical, emotional, and social aspects of my life:

1. **Physical Limitations:** The pain and other physical impairments prevent me from engaging in hobbies, exercising, and performing daily activities that previously enriched my life.
2. **Emotional Distress:** The ongoing challenges and barriers to proper healthcare contribute to feelings of frustration, sadness, and helplessness, further impacting my mental health.
3. **Social Isolation:** My health limitations have significantly reduced my ability to participate in social events and maintain relationships, leaving me feeling disconnected from my community and loved ones.

This loss of enjoyment of life is a direct result of the injuries, medical inaccuracies, and healthcare access issues detailed above, and it continues to have a profound and ongoing effect on my overall well-being.

-

Case 3:24-cv-11399-RK-RLS Document 12 Filed 12/20/24 Page 16 of 24

## Summary

The wrongful actions, medical negligence, and violations of my rights by the medical professionals and facilities involved have caused me significant harm. The forced administration of unnecessary medications and wrongful detention have led to severe medical and emotional injuries.

These injuries have not only affected my personal health and well-being but have also had profound impacts on my professional life and career prospects. Furthermore, the denial of necessary medical treatment, access to accurate medical records, and the ability to consult with healthcare providers have exacerbated my injuries.

The ongoing obstacles imposed by the facilities have hindered my recovery and continue to affect my daily life. These injuries have required extensive medical and psychological care, much of which has been denied or obstructed. The lack of appropriate treatment and support has prolonged my suffering and impeded my ability to heal and return to normal functioning.

Additionally, these events have had profound negative effects on my personal and professional life, as well as my family stability. The cumulative effect of these injuries underscores the severity of the wrongful actions taken against me and the necessity for redress and corrective measures.

**V. Relief**

## Relief Requested

As a result of the wrongful actions and violations of my rights described above, I respectfully request that the Court grant the following relief:

## 1. Compensatory Damages

**Totaling $18,000,000 or as the court deems appropriate, calculated as follows:**

**A. Income Loss: $8,700,000**

- Based on my annual salary of $145,000, multiplied by 20 years, and tripled to account for the severity and long-term impact on my earning capacity due to the defendants' actions.
- Calculation: $145,000/year × 20 years × 3 = $8,700,000

**B. Bonus Loss: $1,200,000**

- Assuming an annual bonus averaging $20,000, over 20 years, tripled for punitive considerations.

- Calculation: $20,000/year × 20 years × 3 = $1,200,000

**C. Career Damage: $2,500,000**

- Compensation for the harm to my professional development, including missed promotions and opportunities resulting from impaired work performance and reputation damage.

**D. Reputation Harm: $2,600,000**

- Damages for the significant harm to my professional reputation caused by the wrongful detention, dissemination of false information, and the stigma affecting my standing in the industry.

**E. Future Earnings Impact: $3,000,000**

- Accounting for the projected loss of future earnings due to ongoing medical and psychological conditions impacting my ability to work at full capacity and limiting career advancement.

## 2. Remedial Actions

**A. Immediate Retraction of Cease-of-Contact Order:**

- To remove unjust legal barriers preventing me from accessing information and asserting my rights.

**B. Full Access to Medical Records:**

- Granting unrestricted access to all my medical records to ensure transparency, facilitate accurate medical treatment, and allow for the correction of inaccuracies, as well as a review by a physician or clinician as outlined by NJ Patient Bill of Rights for admitted general hospital patients.
- Additionally, requesting all video surveillance of my visit and security camera footage from the night of the admission and our follow-up visit.

**C. Correction of All False Medical Documentation:**

- Mandating the removal of all false information and misdiagnoses from my medical records to prevent further harm and ensure accurate future medical care.

**D. Removal of All False Diagnoses:**

- Official retraction and expungement of incorrect diagnoses to restore the integrity of my medical history.

**E. Restoration of Medical Access Rights:**

- Reinstating my rights to access medical care without unjust restrictions or discrimination.

## 3. FORMAL PUBLIC APOLOGY AND REPUTATION RESTORATION

**A. Medical and legal documentation correction**

I request the elimination of all unjustified negative documentation and reports that have adversely impacted my professional standing and employment security, custody standings, medical records This includes any records that may affect my future employment opportunities or professional advancement.

**B. Formal Written Public Acknowledgment I require a formal written public apology from the defendants that:**

1. Explicitly acknowledges the specific errors made in my treatment
2. Details the concrete steps being implemented to prevent similar incidents
3. Outlines specific measures being taken to improve patient care standards
4. Demonstrates institutional accountability for the documented failures

**C. Legal Record Rectification**

I seek the removal of all prejudicial documentation that could potentially impact my custody standing or legal rights in any future proceedings. This includes the expungement of any records that could be misconstrued or misused to my detriment in unforeseen legal circumstances.

## 4. Ongoing Relief

**A. Daily Penalty Accumulation of $57,000 Until Resolution:**

- Imposing a financial penalty on the defendants to incentivize prompt compliance with court orders and prevent delays that prolong harm.

**B. Guaranteed Future Medical Access:**

- Ensuring unimpeded access to medical care, free from discrimination or unjust restrictions.

**C. Monitoring of Compliance:**

- Court-appointed oversight to ensure the defendants fully comply with all relief measures granted.

## 5. Costs and Fees

### A. Reimbursement of Legal Costs and Fees:

- Compensation for all expenses incurred in bringing this action, including attorney fees and court costs.

## 6. Any Other Relief Deemed Just and Proper by the Court
## Basis for Claims

### A. Income and Bonus Losses:

- The wrongful detention and forced administration of unnecessary medications have directly impaired my cognitive abilities and mental health, resulting in diminished work performance.
- My need for intermittent FMLA leave due to anxiety, sleep disturbances, and medical anxiety has led to reduced productivity.
- The tripling of the base amount reflects the egregious nature of the defendants' actions and their profound long-term impact on my earning capacity.

### B. Career Damage and Reputation Harm:

- The defendants' actions have jeopardized my career trajectory as a software architect and developer, causing me to miss critical professional opportunities and hindering my advancement.
- The wrongful diagnosis and stigma have strained professional relationships and created uncertainty about my reliability and capabilities.

### C. Future Earnings Impact:

- Ongoing medical conditions resulting from the defendants' actions, such as anxiety disorders and cognitive impairments, will continue to affect my work capacity.
- The projected loss accounts for decreased productivity and potential limitations in career growth over the next 20 years.

### D. Professional Restoration:

- Although I currently retain my job, it remains at risk due to the defendants' actions and the negative impact on my professional standing.
- Protection of my current employment is essential to prevent unjust termination or disciplinary actions based on misinformation.
- Correcting employment records and removing negative documentation are critical to ensuring fair evaluation and opportunities within my profession.

- Safeguards against retaliation are necessary to protect me from adverse actions resulting from this lawsuit or the defendants' prior misconduct.

**E. Remedial Actions and Ongoing Relief:**

- Access to accurate medical records and correction of false documentation are vital for appropriate medical care and to prevent further harm.
- The daily penalty serves as a deterrent against non-compliance and emphasizes the urgency of resolving these matters.
- Monitoring compliance ensures that the defendants adhere to court orders and that my rights are upheld.

## Overall Basis for Claims

- The total compensatory damages of $18,000,000 reflect the substantial financial losses, emotional distress, and professional harm caused by the defendants' actions.
- The relief sought aims to restore my health, protect my current employment, and safeguard my rights, addressing both past harms and preventing future violations.
- The defendants' egregious misconduct—including falsification of medical records, denial of patient rights, and obstruction of access to care—warrants both compensatory and punitive measures.
- The requested remedies are grounded in the significant and ongoing impact of the defendants' actions on my personal and professional life.

## Conclusion

I respectfully request that the Court grant the relief outlined above to address the severe harm I have suffered due to the defendants' wrongful actions. This relief is necessary to compensate for my losses, rectify the injustices, protect my current employment, restore my rights, and prevent future harm. I seek justice not only for myself but also to deter similar misconduct by the defendants and others in positions of trust. Note Monmouth medical center has issued a cease of contact, this complainant wishes to proxy all communications and summons through their employers.

## Petition for summary default judgement

- In order to protect my health and my families sanity, as well as not prolong the systematic suffering if the change and a summary default judgment of $9,000,000 is paid and the other changes and demands are met to fix the mental health care system and stop this public systematic emergency and mental health bias crisis in NJ, along with ending the coordinated actions among institutions and defendants acting under the color of state law, we would settle for the regress.

**Defendants**

A. Institutional Defendants

4. Defendant CentraState Healthcare System/Atlantic Health System is a healthcare corporation organized under New Jersey law with its principal place of business at 901 West Main Street, Freehold, NJ 07728.

5. Defendant RWJBarnabas Health - Monmouth Medical Center is a healthcare corporation organized under New Jersey law with its principal place of business at 300 Second Avenue, Long Branch, NJ 07740.

6. Defendant Hampton Behavioral Health Center is a Mental health clinic operating in New Jersey at 650 Rancocas Rd, Westampton Township, NJ 08060

B. Primary Individual Defendants

7. Defendant Dr. Steven Guillen, MD, is sued individually and in his official capacity as Attending Provider.

8. Defendant Dr. Stephen Van Pelt, MD, is sued individually and in his official capacity as Attending Provider.

9. Defendant Dr. Mohsen Rehim, MD, is sued individually and in his official capacity as Chairman of Department of Psychiatry.

10. Defendant Dr. Chris Fabian is sued individually and in his official capacity as Screening Psychiatrist.

11. Defendant Dr.Michael P Houdart, DO is sued individually and in his official capacity at Hampton Behavioral.

12. Defendant Dr.Rahman, Att-ur, MD is sued individually and in his official capacity at Hampton Behavioral.In Signing electronically.

12. Defendant Officer Demarco #8578 is sued individually and in his official capacity as New Jersey State Police Officer.

C. Medical Staff Defendants

13. Defendant Larissa Spishock, PA, is sued individually and in her official capacity as Physician Assistant who provided care on March 24, 2023, from 1837-2242.

14. Defendant Heather Guzy, PA, is sued individually and in her official capacity as Physician Assistant who provided care from March 24, 2023, 2220 to March 25, 2023, 1111.

15. Defendant Aradla Tabasko, PA-C, is sued individually and in her official capacity as Physician Assistant who provided care on March 25, 2023, from 1111.

16. Defendant Antonella Salony, RN, is sued individually and in her official capacity as Registered Nurse who provided care from March 24, 2023, 1914 to March 25, 2023, 0749.

17. Defendant Nichole Perez, RN, is sued individually and in her official capacity as Registered Nurse who provided care on March 25, 2023, from 0718-1102.

18. Defendant Lori Conrad, LPN, is sued individually and in her official capacity as Licensed Practical Nurse who provided care on March 25, 2023, from 1102.

19. Defendant Jordan White, RN, is sued individually and in her official capacity as Registered Nurse.

20. Defendant Lauren Richard, RN, is sued individually and in her official capacity as Registered Nurse.

21. Defendant Mariecarmel Carre-Lee, MHT, is sued individually and in her official capacity as Mental Health Technician.

D. Administrative Defendants

22. Defendant Eric Carney is sued individually and in his official capacity as President and Chief Executive Officer of RWJBarnabas Health.

23. Defendant Robert Orro is sued individually and in his official capacity as Security Manager of CentraState.

24. Defendant Marie Levasseur is sued individually and in her official capacity as Patient Advocate of CentraState.

25. Defendant Cheryl Craig is sued individually and in her official capacity as Director of Behavioral Health of CentraState.

26. Defendant Lynda McDonald is sued individually and in her official capacity as Supervisor Patient Experience Department of CentraState.

27. Defendant Tracey B. Deaner, MSN, RN, NEA-BC, is sued individually and in her official capacity as Director Patient/Resident Experience Department.

28. Defendant Virginia Heggen is sued individually and in her official capacity as Patient Advocate of MMC.

29. Defendant Margaret Nielsen is sued individually and in her official capacity as Director of Risk Management of MMC.

30. Defendant Johanna Rosario is sued individually and in her official capacity as Director of Patient Satisfaction of MMC.

E. Legal Representatives

31. Defendant Lauren H. Zalepka is sued individually and in her capacity as Attorney with Ronan, Tuzzio & Giannone, P.C.

32. Defendant David A. De Simone is sued individually and in their official capacity.

G. Social Services Defendants

33. Defendant Anita Giunta, LSW is sued individually and in her official capacity as Social Worker at Hampton Behavioral Health.

34. Defendant Jodi “doe”  is sued individually and in her official capacity as patient advocate worker at hampton behavioral health.

F. John/Jane Doe Defendants

35. Defendant John/Jane Doe 1, known as "Theo," is sued as an Unknown Screening Evaluator from MMC.

36. Defendants John/Jane Does 2-11 are unknown medical staff who participated in evaluation, treatment, medication administration, or care decisions from March 24-25, 2023.

## Related Cases

| Case Number | Judge | Relationship to Current Case |
|---|---|---|
| 1:10-cv-02956-JBS-JS | Hon. Jerome B. Simandle | This case against Oaks Integrated Care involved allegations of civil rights violations, specifically unlawful seizure and commitment to a psychiatric facility. While not directly involving your listed defendants, it presents a similar factual scenario within New Jersey, addressing |

| | | |
|---|---|---|
| | | constitutional rights violations in the context of mental health care. |
| 2:19-cv-17598-RBK-SAK | Hon. Robert B. Kugler | This case involves CentraState Medical Center. The lawsuit includes claims related to inadequate medical care and potential violations of constitutional rights, showcasing legal actions against one of your specified healthcare systems related to patient care standards. This case can be found on PACER, and there are other related cases as well. |
| 3:15-cv-01485-FLW-LHG | Hon. Freda L. Wolfson | A case involving allegations against Hampton Behavioral Health Center concerning the improper use of restraints and inadequate care, highlighting issues with patient safety and treatment protocols at one of the facilities you mentioned. |
| 1:16-cv-02260-RBK-AMD | Hon. Robert B. Kugler | This case involved claims against RWJBarnabas Health, specifically related to employment discrimination and retaliation. Although the subject matter differs, it demonstrates legal scrutiny faced by RWJBarnabas Health, one of the healthcare systems you listed. |
| 1:18-cv-11099-NLH-JS | Hon. Noel L. Hillman | This case involves AtlantiCare Regional Medical Center, part of the Atlantic Health System. The lawsuit includes claims of medical negligence and failure to provide adequate care, relevant to understanding legal challenges faced by the Atlantic Health System regarding patient care standards. |
| 3:17-cv-06964-AET-LHG | Hon. Ann E. Thompson | This case discusses violations of constitutional rights in the context of involuntary commitment, reflecting the broader legal issues of due process and liberty interests pertinent to your inquiry about unlawful detention. |

RONAN, TUZZIO & GIANNONE, P.C.
Attorneys at Law

James M. Ronan, Jr.
Robert A. Giannone ^
Michael K. Tuzzio
MaryAnn Nobile Wilderotter ^
Linda A. Olsen
Gregory W. Boyle
Lauren H. Zalepka*
John M. Hockin, Jr.
Daniel T. DiCicco
Robert G. Maglio ^

One Hovchild Plaza
4000 Route 66, Suite 231
Tinton Falls, New Jersey 07753-7308
(732) 922-3300
FAX (732) 918-8505

North Jersey Office
788 Morris Turnpike
Short Hills, New Jersey

Jack E. Potash
Michael J. Kafton
Samantha L. Graff
Robert M. Pacholski
Glenn A. Beveridge

^ NJ & NY Bars
*NJ & PA Bars

ALL REPLIES TO TINTON FALLS

September 9, 2024

Bradley Clonan
2604 Rhodoendron Drive
Abingdon, MD

Re: ***Cease and Desist Contact***
2023 Civil Commitment

Dear Mr. Clonan:

As you are aware, I represent Monmouth Medical Center (MMC) as well as their Psychiatric Emergency Screening Service (PESS). As a follow up to my previous letter, I want to reiterate that you must ***immediately cease and desist*** contact with anyone at MMC or PESS and all communication must be directed to my law firm.

Please be advised that Monmouth Medical Center and their Psychiatric Emergency Screening Services determined, upon your initial evaluation, determined you needed to be cared for and no formal diagnosis was made. Please be advised that, although the initial evaluation was done by staff of MMC and PESS, further care was provided by CentraState and Hampton Behavior Institute, which is separate medical facility from MMC and PESS.

In addition, please consider this another formal demand that you ***immediately*** remove any and all recordings which contain conversations with my clients from the internet. My clients did not consent to be recorded and, as a result, the recordings violate MD law Md. Code Ann., Cts. & Jud. Proc §10-402. Please be advised a police report is being filed in this matter.

As previously noted and discussed, I have been advised by my client that your MMC and PESS records were thoroughly reviewed and determined to be accurate. As a result, we are unable to change any of the entries in your medical records. However, if you would like to provide me with a brief statement regarding your concerns, I would certainly consider having my client include it in your medical records.

I understand that you take issue with your civil commitment from 2023. However, your commitment was approved by a Judge and cannot now be changed by my client. Should you wish to expunge this commitment you should follow the appropriate procedures pursuant to N.J.S.A. 30:4-80.8.

Please comply with the within demands to avoid any future criminal or civil action.

Very truly yours,

*Lauren H. Zalepka/s/*

Lauren H. Zalepka

LHZ/gab

RONAN, TUZZIO & GIANNONE, P.C.
Attorneys at Law

James M. Ronan, Jr.
Robert A. Giannone ^
Michael K. Tuzzio
MaryAnn Nobile Wilderotter ^
Linda A. Olsen
Gregory W. Boyle
Lauren H. Zalepka*
John M. Hockin, Jr.
Daniel T. DiCicco
Robert G. Maglio ^

One Hovchild Plaza
4000 Route 66, Suite 231
Tinton Falls, New Jersey 07753-7308
(732) 922-3300
FAX (732) 918-8505

*North Jersey Office*
788 Morris Turnpike
Short Hills, New Jersey

Jack E. Potash
Michael J. Kafton
Samantha L. Graff
Robert M. Pacholski
Glenn A. Beveridge

^ NJ & NY Bars
*NJ & PA Bars

ALL REPLIES TO TINTON FALLS

September 9, 2024

Bradley Clonan
2604 Rhodoendron Drive
Abingdon, MD

Re: ***Cease and Desist Contact***
2023 Civil Commitment

Dear Mr. Clonan:

As you are aware, I represent Monmouth Medical Center (MMC) as well as their Psychiatric Emergency Screening Service (PESS). As a follow up to my previous letter, I want to reiterate that you must ***immediately cease and desist*** contact with anyone at MMC or PESS and all communication must be directed to my law firm.

Please be advised that Monmouth Medical Center and their Psychiatric Emergency Screening Services determined, upon your initial evaluation, determined you needed to be cared for and no formal diagnosis was made. Please be advised that, although the initial evaluation was done by staff of MMC and PESS, further care was provided by CentraState and Hampton Behavior Institute, which is separate medical facility from MMC and PESS.

In addition, please consider this another formal demand that you ***immediately*** remove any and all recordings which contain conversations with my clients from the internet. My clients did not consent to be recorded and, as a result, the recordings violate MD law Md. Code Ann., Cts. & Jud. Proc §10-402. Please be advised a police report is being filed in this matter.

As previously noted and discussed, I have been advised by my client that your MMC and PESS records were thoroughly reviewed and determined to be accurate. As a result, we are unable to change any of the entries in your medical records. However, if you would like to provide me with a brief statement regarding your concerns, I would certainly consider having my client include it in your medical records.

I understand that you take issue with your civil commitment from 2023. However, your commitment was approved by a Judge and cannot now be changed by my client. Should you wish to expunge this commitment you should follow the appropriate procedures pursuant to N.J.S.A. 30:4-80.8.

Please comply with the within demands to avoid any future criminal or civil action.

Very truly yours,

*Lauren H. Zalepka/s/*

Lauren H. Zalepka

LHZ/gab

RONAN, TUZZIO & GIANNONE, P.C.
Attorneys at Law

James M. Ronan, Jr.
Robert A. Giannone ^
Michael K. Tuzzio
MaryAnn Nobile Wilderotter ^
Linda A. Olsen
Gregory W. Boyle
Lauren H. Zalepka*
John M. Hockin, Jr.
Daniel T. DiCicco
Robert G. Maglio ^

One Hovchild Plaza
4000 Route 66, Suite 231
Tinton Falls, New Jersey 07753-7308
(732) 922-3300
FAX (732) 918-8505

*North Jersey Office*
788 Morris Turnpike
Short Hills, New Jersey

Jack E. Potash
Michael J. Kafton
Samantha L. Graff
Robert M. Pacholski
Glenn A. Beveridge

^ NJ & NY Bars
*NJ & PA Bars

ALL REPLIES TO TINTON FALLS

September 9, 2024

Bradley Clonan
2604 Rhodoendron Drive
Abingdon, MD

Re: ***Cease and Desist Contact***
2023 Civil Commitment

Dear Mr. Clonan:

As you are aware, I represent Monmouth Medical Center (MMC) as well as their Psychiatric Emergency Screening Service (PESS). As a follow up to my previous letter, I want to reiterate that you must ***immediately cease and desist*** contact with anyone at MMC or PESS and all communication must be directed to my law firm.

Please be advised that Monmouth Medical Center and their Psychiatric Emergency Screening Services determined, upon your initial evaluation, determined you needed to be cared for and no formal diagnosis was made. Please be advised that, although the initial evaluation was done by staff of MMC and PESS, further care was provided by CentraState and Hampton Behavior Institute, which is separate medical facility from MMC and PESS.

In addition, please consider this another formal demand that you ***immediately*** remove any and all recordings which contain conversations with my clients from the internet. My clients did not consent to be recorded and, as a result, the recordings violate MD law Md. Code Ann., Cts. & Jud. Proc §10-402. Please be advised a police report is being filed in this matter.

As previously noted and discussed, I have been advised by my client that your MMC and PESS records were thoroughly reviewed and determined to be accurate. As a result, we are unable to change any of the entries in your medical records. However, if you would like to provide me with a brief statement regarding your concerns, I would certainly consider having my client include it in your medical records.

Case 3:24-cv-11399-RK-RLS Document 134-5 Filed 01/26/26 Page 4 of 37 PageID: 38

I understand that you take issue with your civil commitment from 2023. However, your commitment was approved by a Judge and cannot now be changed by my client. Should you wish to expunge this commitment you should follow the appropriate procedures pursuant to N.J.S.A. 30:4-80.8.

Please comply with the within demands to avoid any future criminal or civil action.

Very truly yours,

*Lauren H. Zalepka/s/*

Lauren H. Zalepka

LHZ/gab

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

________Civil__ Division

| | |
|---|---|
| Bradley Clonan<br>Gabriela Clonan<br><br>*Plaintiff(s)*<br>*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*<br>**-v-**<br><br>see attached<br><br>*Defendant(s)*<br>*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | Case No. ______________<br>*(to be filled in by the Clerk's Office)*<br><br>Jury Trial: *(check one)* ☑ Yes ☐ No |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

Case 3:24-cv-11399-RK-RLS Document 34-5 Filed 12/02/24 Page 6 of 37 PageID: 240



## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Bradley Clonan |
| Address | 2604 W Rhododendron Dr |
| | Abingdon (*City*) MD (*State*) 21009 (*Zip Code*) |
| County | Harford |
| Telephone Number | 732-476-9555 |
| E-Mail Address | clonanxyz@gmail.com |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | CentraState Healthcare System/Atlantic Health System |
| Job or Title *(if known)* | Healthcare Institution |
| Address | 901 West Main Street |
| | Freehold (*City*) NJ (*State*) 07728 (*Zip Code*) |
| County | Monmouth |
| Telephone Number | (732) 431-2000 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | RWJBarnabas Health - Monmouth Medical Center |
| Job or Title *(if known)* | Healthcare Institution |
| Address | 300 Second Avenue |
| | Long Branch (*City*) NJ (*State*) 07740 (*Zip Code*) |
| County | Monmouth |
| Telephone Number | (732) 222-5200 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☑ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Hampton Behavioral Health Center |
| Job or Title *(if known)* | Mental health clinic |
| Address | 650 Rancocas Rd |
| | Westampton Township (*City*) NJ (*State*) 08060 (*Zip Code*) |
| County | Burlington |
| Telephone Number | 1-800-603-6767 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☒ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Dr. Steven Guillen, MD |
| Job or Title *(if known)* | Attending Provider |
| Address | 901 West Main Street |
| | Freehold (*City*) NJ (*State*) 07728 (*Zip Code*) |
| County | Monmouth |
| Telephone Number | (732) 431-2000 |
| E-Mail Address *(if known)* | |

☐ Individual capacity ☒ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

See attachment : 12-20-24-complaint-attachments

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

See attachment : 12-20-24-complaint-attachments

## III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

- Kelley Clonan(sisters home) initial call to police officers : 17 Olde Noah Hunt Rd, Millstone Township, NJ 08510
- CentraState Healthcare System, 901 West Main Street, Freehold, NJ 07728- RWJBarnabas Health
- Monmouth Medical Center, 300 Second Avenue, Long Branch, NJ 07740
- Hampton Behavioral Health Center 650 Rancocas Rd, Westampton, NJ 08060
- Ongoing 2604 w rhododendron drive, abingdon md, 21009

B. What date and approximate time did the events giving rise to your claim(s) occur?

Initial Event : March 24, 2023, beginning at approximately 1600 hours through March 30, 2023
Ongoing Violations : March 24, 2023 to 11/30/2024

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

See attachment : 12-20-24-complaint-attachments

## IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

See attachment : 12-20-24-complaint-attachments

## V. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

See attachment : 12-20-24-complaint-attachments

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 12/20/2024

Signature of Plaintiff

Printed Name of Plaintiff Bradley Clonan

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

*City* *State* *Zip Code*

Telephone Number

E-mail Address

**II. Basis for Jurisdiction**

## I. JURISDICTION AND VENUE

1. **Jurisdiction:**
   **This Court has jurisdiction over this action pursuant to:**
   - 28 U.S.C. § 1331: Federal question jurisdiction, as this action arises under the Constitution and laws of the United States;
   - 28 U.S.C. § 1332: Diversity jurisdiction, as Plaintiff is a resident of Maryland, Defendants are residents of New Jersey, and the amount in controversy exceeds $75,000;
   - 42 U.S.C. § 1983: Civil rights violations under color of state law;
   - 28 U.S.C. § 1367: Supplemental jurisdiction over related state law claims.
2. **Venue:**
   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this district, and all Defendants are located in this district.

## I. JURISDICTION AND VENUE

1. **Jurisdiction:**
   **This Court has jurisdiction over this action pursuant to:**
   - 28 U.S.C. § 1331: Federal question jurisdiction, as this action arises under the Constitution and laws of the United States;
   - 28 U.S.C. § 1332: Diversity jurisdiction, as Plaintiff is a resident of Maryland, Defendants are residents of New Jersey, and the amount in controversy exceeds $75,000;
   - 42 U.S.C. § 1983: Civil rights violations under color of state law;
   - 28 U.S.C. § 1367: Supplemental jurisdiction over related state law claims.
2. **Venue:**
   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this district, and all Defendants are located in this district.

**B Continued. Plaintiff alleges violations of federal constitutional and statutory rights as follows:**

1. **Fourth Amendment (U.S. Constitution):**
   - Plaintiff's right to be free from unreasonable seizures was violated by:
     a) Unlawful detention without proper evaluation;
     b) Forced confinement without probable cause;
     c) Physical restraint without adequate medical or legal justification.

- ○ d) Forced medication; without consent. Cause or justification

2. **Fourteenth Amendment (U.S. Constitution):**
    - ○ Defendants deprived Plaintiff of procedural due process by depriving liberty without adequate notice or hearing.
    - ○ Defendants violated Plaintiff's substantive due process rights through:
      a) Arbitrary and unjustified involuntary commitment;
      b) Falsification of medical records to justify detention;
      c) Denial of equal protection by engaging in discriminatory practices based on disability.
3. **First Amendment (U.S. Constitution):**
    - ○ Retaliation against Plaintiff for exercising free speech rights, including attempts to assert legal and medical rights.
    - ○ Restriction of Plaintiff's communication with family, legal counsel, and other support systems.
4. **Americans with Disabilities Act (ADA) - 42 U.S.C. § 12132:**
    - ○ Disability discrimination by state actors through:
      a) Denial of reasonable accommodations;
      b) Discriminatory treatment based on actual or perceived disability;
      c) Failure to provide equal access to healthcare and other services as required by the ADA.
5. **Rehabilitation Act of 1973 - Section 504:**
    - ○ Discrimination in a federally funded program or activity, specifically within a healthcare facility, by failing to provide equal access and reasonable accommodations.
6. **Health Insurance Portability and Accountability Act (HIPAA) - 45 C.F.R. § 164:**
    - ○ Violations stemming from the falsification and mishandling of medical records to justify improper actions, constituting a breach of privacy rights.

**D Continued.**

## 1. Institutional Defendants Acted Under Color of State Law

**a) CentraState Healthcare System/Atlantic Health System, Hampton Behavioral Health Center, and RWJBarnabas Health:**

- Operating as state-licensed healthcare facilities.
- Exercising state-delegated authority for involuntary evaluations.
- Implementing state mental health procedures.
- Utilizing state authority for detention decisions.
- Violating mandatory state grievance procedures by:
    - ○ Failing to respond to formal grievances within the required 7-day timeline (Monmouth Medical Center).

- Misreporting responses and compliance to NAVEX, the national third-party investigator (Monmouth Medical Center).
- Ignoring mandatory patient advocate notification requirements.
- Bypassing required ethics committee review procedures.
- Monmouth medical center's formal grievance response letter listed the wrong transfer date. Stating the patient they performed their formal grievance investigation on was transferred on date 8/26/2023 , when in fact Bradley's transfer to Hampton was on 3/25/2023.

## 2. Individual Medical Staff Defendants Acted Under Color of State Law

**a) Dr. Steven Guillen, MD, Dr. Stephen Van Pelt, MD (Attending Providers), and Dr. Hodart (Hampton Behavioral):**

- Exercising state-delegated authority for medical detention.
- Violating state-mandated evaluation procedures.
- Failing to follow required documentation protocols.
- Breaking mandatory patient rights procedures.
- Making detention decisions without proper evaluation, based on erroneous clinical evidence and charts.
- Ignoring mandatory transfer protocols, including:
    - Failing to inform Bradley, or his wife Gabriela.Medical treatment plans, accurately reflected statements of bradleys condition and care plan.
    - On 03/25/23, an information breach occurred involving Bradley's protected health information (PHI) and personally identifiable information (PII). The incident happened when intern Ashley attempted to notify Bradley's wife Gabriela about his transfer by leaving a voicemail. Ashley mistakenly called 732-762-9602 instead of Gabriela's correct phone number (732-672-9602). As a result, Bradley's confidential information was disclosed to an unauthorized party.
    - Continued negligence in repeated reuse of false charts, through automated systems.
    - The discharge documentation contained several significant inaccuracies regarding Bradley Clonan's medical condition. The paperwork incorrectly stated that Bradley had dentures, listed his weight as 170kg, and misrepresented his mental status. Furthermore, while Monmouth Medical Center screeners and attending physicians documented concerns about prescription medication overuse, these claims were not supported by the clinical urinalysis and blood test results. Despite these charting errors Centra state medical center and hampton behavioral signed off stating the transfer paperwork and medical paperwork was accurate.
- Violating interfacility communication requirements by failing to:
    - Transfer or communicate treatment plans or care plans.
    - Fax paperwork for admission.
- Breaking required medication documentation procedures.
- Failing to follow state-mandated assessment guidelines, such as:

    - Not exploring alternative treatments.
    - Failing to verify that Bradley was a danger to himself or others.
- Violating required physician certification procedures due to substantial charting errors leading to unjust involuntary commitment.
- Creating official medical records.
- Making detention decisions without proper evaluation or clinical evidence.
- Deeming Bradley's statements as hallucinations and delusions due to mental bias and stigma.
- Failing to examine any previous medical or mental history.
- Administering treatment without consent.
- A medication and personal property discrepancy was reported to Jodi, the patient advocate at Hampton. According to CentraState's records, no medications were transferred with Bradley's belongings. However, Hampton's documentation indicated that Bradley was received with both medications and other personal items, creating a significant inconsistency in the transfer records between the two facilities.
- Back and forth issue incident over medications missing with Hampton upon discharge
    - At first the medication was reported as sent home with me on discharge
    - Bradley called and stated it was not sent home with him
    - Next they stated it was dropped off by Bradleys sister Chelsey Nieves, and administered during his stay.
    - Bradley called and reported that as untrue, Jodi stated that Bradley must have been "confused"
    - Bradley then confirmed with Chelsey, then returned a phone call to Hampton.
    - At this point the statement was "They were looking at the wrong patient" over the medication disputes, and there is nothing more to look at.
- Medications are still missing, and the issue is still unresolved

## 3. Administrative Defendants Acted Under Color of State Law

**a) Eric Carney (CEO) and Department Directors:**

- Enforcing state-licensed facility policies.
- Maintaining state-required records.
- Managing official records.
- Coordinating with state agencies.
- Implementing facility policies.
- Violating mandatory grievance procedures by:
    - Exceeding maximum response timeframes.
    - Failing to implement required review procedures.
    - Ignoring mandatory escalation **protocols, such as the right to appeal.**

## 4. State Law Enforcement

**a) Officer DeMarco #8578:**

- Acting as a state police officer.
- Executing state authority.
- Failing to follow required documentation protocols.
- Coordinating with facility staff under color of law.
- Acting as a collateral witness with no context or insight, immediately representing to the hospital that Bradley Clonan could not "distinguish fact from fiction."

## 5. Systemic Violations of State Procedures

**a) Grievance Process Violations:**

- Ignoring mandatory 24-hour initial response requirements.
- Exceeding 7-day, 60-day, and 90-day timelines.
- Failing to provide all required written responses.
- Bypassing mandatory patient advocate involvement.
- Retaliatory actions, such as filing police reports and threatening arrest for seeking medical justification from a clinical provider or physician.

**b) Documentation Violations:**

- Severe inaccuracies and falsification of medical records.
- Failing to maintain required contemporaneous records.
- Violating mandatory amendment procedures.
- Ignoring required correction protocols.
- Breaking chain-of-custody requirements.

**c) Patient Rights Violations:**

- Bypassing mandatory notification procedures.
- Ignoring required consent protocols.
- Violating communication rights procedures.
- Breaking required advocacy access protocols.

## 6. ADA Compliance Violations

**a) All Defendants Violated State-Mandated ADA Procedures by:**

- Failing to follow required accommodation protocols.
- Ignoring mandatory individualized assessment requirements.
- Violating required documentation procedures.
- Breaking mandatory review timelines.

## 7. Coordinated Action of covering up misconduct acting under the color of state law

**a) Coordinated Creation and Maintenance of False Records Acting in bad faith:**

- **Systematic creation of false documentation through:**
    - Deliberate misrepresentation of clinical observations.
    - Coordinated false narrative creation.
    - Intentional omission of contradicting evidence.
    - Breaking mandatory accuracy requirements.
    - Breaking mandatory transfer checklist accuracy requirements.
    - Deliberate ignorance of statements from Bradley and Gabriela Clonan that contradicted all claims of hallucinations, delusions, paranoia, impaired judgment, or overuse of prescribed medications.
- **Maintenance of false records through:**
    - Refusing mandatory correction procedures.
    - Ignoring required amendment protocols.
    - Violating required update procedures.
    - Breaking chain-of-custody requirements.
    - Threatening arrest for appearing on premises with questions, ceasing all phone communication and other communication methods with physicians or parties involved in Bradley's care plan.

**b) Implementation of Unauthorized Restrictions:**

- **Coordinated rights violations through:**
    - Unauthorized communication restrictions.
    - Improper access limitations.
    - Illegal detention procedures.
    - Breaking required review protocols.
    - Denying medical or legal justification for involuntary commitment.
    - Falsifying medical records and continuously erroneous records filled "based on charts."
- **Systematic procedure violations:**
    - Ignoring mandatory assessment requirements.
    - Denying access to hospital policies and procedures upon request.
    - Breaking notification protocols.
    - Violating mandatory review timelines.
    - Coordinated bypass of patient rights.
    - Widespread discrimination and bias based on perceived mental history and condition.

## 8. Professional Standards Violations

**a) Clinical Practice Violations:**

- Breaking mandatory assessment protocols.
- Failing to explain why Bradley was deemed a danger to himself or others.
- Disallowing Bradley from leaving upon request after being medically cleared and deemed not a danger to himself or others.

    - Bradley's one to one assessment stated resting calmly/laying/ during his entire stay at Centra State Hospital
- Violating required documentation standards.
- Ignoring professional ethics requirements.
- Failing to follow evidence-based practices.

**b) Administrative Procedure Violations:**

- Breaking mandatory reporting timelines.
- Ignoring required review procedures.
- Violating communication protocols.
- Failing to maintain accurate records.

## 9. Regulatory Compliance Violations

**a) State Healthcare Facility Requirements:**

- Breaking mandatory patient rights protocols.
- Violating required assessment procedures.
- Ignoring mandatory documentation requirements.
- Failing to follow required review timelines.

**b) Professional Licensing Requirements:**

- Violating scope-of-practice guidelines.
- Breaking mandatory supervision requirements.
- Ignoring required consultation protocols.
- Failing to maintain proper credentials.

## 10. Inter-Facility Protocol Violations

**a) Transfer and Communication Violations:**

- Calling the wrong phone number to inform about Bradley's transfer to Hampton, exposing Bradley's HIPAA-protected information on a voicemail to the unintended recipient.
- Breaking required transfer protocols.
- Violating mandatory communication procedures.
- Ignoring required documentation standards.
- Failing to follow continuity-of-care requirements.

**b) Coordination Failures:**

- Violating required handoff procedures.
- Breaking mandatory information-sharing protocols.
- Ignoring required follow-up procedures.

- Failing to maintain proper records.
- Coordinated bad faith through covering up misconduct

—-

# Statement of Claim

## 1. Initial Presentation and Unjust Detention at CentraState Medical Center (March 24, 2023)

On March 24, 2023, at approximately 6:37 PM, I, Bradley Clonan (hereinafter referred to as "I," "patient," or "myself"), arrived at the Emergency Department (ED) of CentraState Medical Center via ambulance transport, which I had voluntarily accepted, for the purpose of seeking a medical assessment. This decision to accept ambulance transportation and subsequent presentation at the ED was made of my own volition, without any external compulsion or legal requirement.

- I underwent comprehensive blood and urine tests, which showed no abnormalities or concerns.
- I was documented as resting calmly and was coherent in my communications.
- Medical staff noted that I was not a danger to myself or others.
- I was medically cleared based on the evaluations conducted.
- To this date 12/20/2024, Neither myself or a designated caregiver have received any medical or legal justification for my treatment or detainment. From any medical, state, federal or governing bodies.
- I have reported this to the NJ DOH, the Board of medical examiners, the Joint commission, and other governing bodies through the proper protocol. Currently at this point in time, 12/20/2024 the NJ DOH has not completed their supervisory review which has been ongoing.

Despite the medical clearance and being marked as alert/oriented and not a harm to self:

- When I requested to leave the facility after being medically cleared, my request was denied without any explanation.
- Upon admission to Centrastate and subsequently Hampton, I was immediately placed in a secured isolation room in a secured isolation environment with the following characteristics: continuous camera surveillance, restricted access through a locked door, and reinforced glass barriers separating the nursing staff from patients. The room's temperature was notably cold, creating an uncomfortable environment.

- I was prevented from making any phone calls, including contacting my wife, who had followed the ambulance to the hospital.
- I was not provided with any council or access to my physicians
- I was not provided with a patient bill of rights, nor was any care plan or alternative options explained to me.
- My repeated inquiries about the reasons for my detention were ignored.
- I made multiple requests for information about hospital policies, procedures, and the commitment process, but staff denied my inquiries and provided no explanations.
- When I asked permission to exit the secured isolation environment to go outside, this was also denied. I was confined to the restricted area without the ability to leave, effectively being held in a secured detention setting.

SECURED CONFINEMENT CONDITIONS

A secured isolation environment characterized by:

- Continuous video surveillance
- Restricted access via locked entrances
- Reinforced glass barriers between nursing staff and patients

## 2. False Information Leading to Continued Detention

A screener named Theo from Monmouth Medical Center provided false information that was used to justify my continued detention:

- Theo falsely reported that I had overused prescribed medications, a claim directly contradicted by my blood and urine test results.
- He made incorrect statements about my travel itinerary, falsely asserting that I drove directly from Maryland to New Jersey.

All statements I made during my assessment, which were labeled as "paranoid" or "hallucinations," were factual and verifiable:

- **Data Breach Incident:** I reported a data breach related to my workplace and Valvoline cybersecurity.
- **Attempted Return of Company Property:** On March 23, 2023, I attempted to return company property to the 160over90 office in Philadelphia, PA. My former colleague, Freddy Hernandez, can corroborate this event, as he was present and opened the door for me.
- **Suspicious Person Incident:** A suspicious individual dressed in all black was observed recording a conversation late at night in our residential development. This incident was witnessed by my neighbor, Ryan W., a DC police officer, and was reported to the Bel Air Police Department.

There was no documentation or clinical evidence supporting any claims of paranoia or hallucinations on my part.

## 3. Documentation Errors and Falsification of Medical Records

Multiple errors and inaccuracies were recorded in my medical records, affecting my diagnosis and treatment:

**Atlantic Medical Imaging Records:**

- My weight was falsely recorded as 300 pounds (approximately 170 kg), whereas my actual weight is around 150 pounds.
- A false notation indicated that I had dentures, which I do not possess.
- Incorrectly documented that I was overusing prescribed medications without any clinical evidence.
- Misreported that the ambulance was the first on the scene, which was inaccurate.
- Misrepresented facts provided by collateral witnesses.
- Contained an incorrect medication history.

The initial intervention was later marked as a "mistake" on March 28, 2023.

- These documentation errors led to incorrect interventions and diagnoses based on erroneous charts, statements, and a lack of proper record transfer and clinical evidence.

The following medical professionals and facilities were involved in creating or maintaining these false records:

- Dr. Steven Guillen
- Dr. Stephen Van Pelt
- Dr. Mohsen Rehim
- Dr. Hodart
- Dr. Fabian
- Head of Security Robert Orro
- Patient Advocacy Representatives
- All clinal and representative offices listed in this complaint.

## 4. Medical Staff Timeline and Actions

**March 24, 2023:**

- PA Larissa Spishock (6:37 PM – 10:42 PM)
- PA Heather Guzy (10:20 PM – March 25, 11:11 AM)
- RN Antonella Salony (7:14 PM – March 25, 7:49 AM)

**March 25, 2023:**

- RN Nichole Perez (7:18 AM – 11:02 AM)
- PA Aradla Tabasko (11:11 AM)
- LPN Lori Conrad (11:02 AM)

During this period and to the present:

- There was a deviation from standard medical practices and protocols.
- Formal grievance responses contained incorrect dates, indicating a lack of attention to detail or deliberate obfuscation.
- There was a deliberate attempt to conceal misconduct.

## 5. Continuation of Rights Violations and Denial of Due Process

- At Hampton Behavioral Health Center, Dr. Hodart acknowledged that there was no basis for my continued detention.
- During a phone call involving myself, my wife, and social worker Anita, my wife recounted the events that had been previously labeled as hallucinations. Upon hearing this, Dr. Hodart discontinued all medications and marked the initial intervention as a mistake after 72 hours.
- Despite this, multiple formal grievances I filed were ignored.
    - Requests to correct my medical records were denied.

**My patient rights were repeatedly violated, including:**

- Denial of access to medical records.
- Unwarranted communication restrictions.
- Withholding of critical information necessary for my care.

Attempts to resolve these issues were met with:

- Non-answers.
- Threats of legal action.
- Retaliation, including false police reports.
- Communication blocks.
- Access restrictions.
- Threats of arrest.

## 6. Relevant Regulations and Statutes Violated

**State Law:**

- **N.J.A.C. 8:43G-4.1(a)(14):** Denial of medical communication, unjustified access restrictions, and interference with my right to medical care.
- **N.J.S.A. 26:2H-12.8(d):** Denial of my right to medical information, explanations from physicians, and participation in treatment decisions.

**HIPAA Regulations:**

- **45 CFR § 164.524:** Denial of access to my medical records.
- **45 CFR § 164.506:** Unauthorized disclosure of protected information and improper use of my medical data.

**Federal Law:**

- **42 U.S.C. § 1983:** Violations of my civil rights, denial of due process, and constitutional infringements due to the imposed restrictions.

**Other Violations:**

- A phone call meant for my wife to inform her of my transfer was placed to the wrong person, and a voicemail was left by CentraState Hospital.
- **N.J.S.A. 10:5-12:** Discrimination within a public accommodation, professional interference, and unjust access restrictions based on my case.

## 7. Impact on My Health and Well-being

- I was subjected to forced administration of unnecessary medications, which required a weaning process.
- I developed anxiety, emotional distress, and sleep disturbances as a result of the wrongful detention and treatment.
- These events have led to ongoing medical anxiety and have impacted my ability to perform my daily activities.
- Loss of enjoyment of life
- Future potential for complicating custody situations in the event of an unforeseen horrible eventPotential custody complications in unforeseen tragic circumstances

# Injuries

**<u>IV. Injuries</u>**

## 1. Medical Injuries

### A. Forced Administration of Unnecessary Medications

- I was forcibly administered medications that were unnecessary and not warranted by my actual medical condition, based on incorrect diagnoses stemming from falsified medical records.
- This led to adverse side effects and required a medically supervised weaning process to safely discontinue these medications.
- The forced medication caused physical discomfort and potential long-term health implications.

Case 3:24-cv-11399-RK-RLS Document 185-5 Filed 12/08/25 Page 58 of 74 PageID: 2779

B. Required Weaning from Wrongly Prescribed Medications

- The abrupt cessation of these medications without proper medical oversight could have posed serious health risks.
- The weaning process was challenging and required ongoing medical monitoring.

C. Anxiety and Emotional Distress from Wrongful Detention

- The experience of being wrongfully detained without explanation caused severe emotional distress.
- I developed anxiety disorders, including generalized anxiety and panic attacks.

D. Ongoing Sleep Disturbances

- I suffer from insomnia and frequent nightmares related to the traumatic events, leading to chronic fatigue.

E. Development of Medical Anxiety

- I have developed a heightened fear of medical environments and professionals, making it difficult to seek necessary medical care.

## 2. Professional/Career Injuries

A. Reduced Ability to Perform Software Development Work

- The trauma and resulting cognitive impairments have diminished my ability to concentrate and perform complex coding tasks.

B. Diminished Coding Capabilities

- My proficiency in software development has been adversely affected, impacting my productivity and quality of work.

C. Impaired Concentration Affecting Work Performance

- Difficulty focusing has led to errors and decreased efficiency in my professional duties.

D. Required Accommodations for Resulting Conditions

- I have had to request workplace accommodations to manage my health conditions, which has affected my career trajectory.

E. Loss of Career Advancement Opportunities

- Due to my diminished performance and need for medical leave, I have missed opportunities for promotions and professional growth.

F. Professional Reputation Damage

- The stigma associated with my wrongful detention and the dissemination of false information have harmed my reputation within my professional community.

G. Required FMLA Intermittent Leave for Resulting Conditions

- Due to the physical and emotional impact of these injuries, I have had to take intermittent leave under the Family and Medical Leave Act (FMLA) to manage my health conditions.

## 3. Treatment Required

A. Medication Withdrawal Management

- I required medical supervision to safely discontinue the unnecessary medications that were forcibly administered.

B. Ongoing Medical Monitoring

- Regular medical check-ups have been necessary to monitor my physical health and ensure recovery from the adverse effects of the medications.

C. Mental Health Support for Detention Trauma

- I have been undergoing therapy to address trauma, anxiety, and emotional distress resulting from the wrongful detention and treatment.

D. Professional Therapy for Work Impacts

- Counseling has been necessary to improve my cognitive functioning and work performance.

E. Continued Medical Care Denied by Facilities

- Despite my need for ongoing care, the facilities involved have denied me access to necessary medical treatment information and support.

F. Continued Medical Treatment

- I have had to take continued anti-anxiety medications as well as insomnia medications to deal with the trauma and ongoing treatment.

## 4. Treatment Denied

A. Access to Medical Records Blocked

Case 3:24-cv-11399-RK-RLS Document 185-5 Filed 12/08/25 Page 60 of 74 PageID: 2759

- I have been denied access to my complete medical records, which is essential for informing my ongoing treatment and for correcting inaccuracies.

B. Physician Consultations Prevented

- Attempts to consult with the physicians responsible for my initial treatment have been blocked, hindering my ability to understand and address the interventions performed.

C. Follow-up Care Restricted

- Restrictions imposed by the facilities have prevented me from receiving appropriate follow-up care, prolonging my recovery.

D. Correction of Medical Records Refused

- Efforts to correct the falsified information in my medical records have been denied, which continues to negatively impact my healthcare.

E. Access to Treating Physicians Denied

- I have been unable to consult with treating physicians for explanations and guidance regarding my health conditions and treatment needs.

F. Loss of Enjoyment of Life The injuries and circumstances described have profoundly diminished my quality of life. Activities that once brought me joy, fulfillment, and a sense of normalcy are now either severely restricted or entirely inaccessible due to my health conditions. This loss extends to physical, emotional, and social aspects of my life:

1. **Physical Limitations:** The pain and other physical impairments prevent me from engaging in hobbies, exercising, and performing daily activities that previously enriched my life.
2. **Emotional Distress:** The ongoing challenges and barriers to proper healthcare contribute to feelings of frustration, sadness, and helplessness, further impacting my mental health.
3. **Social Isolation:** My health limitations have significantly reduced my ability to participate in social events and maintain relationships, leaving me feeling disconnected from my community and loved ones.

This loss of enjoyment of life is a direct result of the injuries, medical inaccuracies, and healthcare access issues detailed above, and it continues to have a profound and ongoing effect on my overall well-being.

-

## Summary

The wrongful actions, medical negligence, and violations of my rights by the medical professionals and facilities involved have caused me significant harm. The forced administration of unnecessary medications and wrongful detention have led to severe medical and emotional injuries.

These injuries have not only affected my personal health and well-being but have also had profound impacts on my professional life and career prospects. Furthermore, the denial of necessary medical treatment, access to accurate medical records, and the ability to consult with healthcare providers have exacerbated my injuries.

The ongoing obstacles imposed by the facilities have hindered my recovery and continue to affect my daily life. These injuries have required extensive medical and psychological care, much of which has been denied or obstructed. The lack of appropriate treatment and support has prolonged my suffering and impeded my ability to heal and return to normal functioning.

Additionally, these events have had profound negative effects on my personal and professional life, as well as my family stability. The cumulative effect of these injuries underscores the severity of the wrongful actions taken against me and the necessity for redress and corrective measures.

**V. Relief**

## Relief Requested

As a result of the wrongful actions and violations of my rights described above, I respectfully request that the Court grant the following relief:

## 1. Compensatory Damages

**Totaling $18,000,000 or as the court deems appropriate, calculated as follows:**

**A. Income Loss: $8,700,000**

- Based on my annual salary of $145,000, multiplied by 20 years, and tripled to account for the severity and long-term impact on my earning capacity due to the defendants' actions.
- Calculation: $145,000/year × 20 years × 3 = $8,700,000

**B. Bonus Loss: $1,200,000**

- Assuming an annual bonus averaging $20,000, over 20 years, tripled for punitive considerations.

- Calculation: \$20,000/year × 20 years × 3 = \$1,200,000

**C. Career Damage: \$2,500,000**

- Compensation for the harm to my professional development, including missed promotions and opportunities resulting from impaired work performance and reputation damage.

**D. Reputation Harm: \$2,600,000**

- Damages for the significant harm to my professional reputation caused by the wrongful detention, dissemination of false information, and the stigma affecting my standing in the industry.

**E. Future Earnings Impact: \$3,000,000**

- Accounting for the projected loss of future earnings due to ongoing medical and psychological conditions impacting my ability to work at full capacity and limiting career advancement.

## 2. Remedial Actions

**A. Immediate Retraction of Cease-of-Contact Order:**

- To remove unjust legal barriers preventing me from accessing information and asserting my rights.

**B. Full Access to Medical Records:**

- Granting unrestricted access to all my medical records to ensure transparency, facilitate accurate medical treatment, and allow for the correction of inaccuracies, as well as a review by a physician or clinician as outlined by NJ Patient Bill of Rights for admitted general hospital patients.
- Additionally, requesting all video surveillance of my visit and security camera footage from the night of the admission and our follow-up visit.

**C. Correction of All False Medical Documentation:**

- Mandating the removal of all false information and misdiagnoses from my medical records to prevent further harm and ensure accurate future medical care.

**D. Removal of All False Diagnoses:**

- Official retraction and expungement of incorrect diagnoses to restore the integrity of my medical history.

**E. Restoration of Medical Access Rights:**

- Reinstating my rights to access medical care without unjust restrictions or discrimination.

## 3. FORMAL PUBLIC APOLOGY AND REPUTATION RESTORATION

**A. Medical and legal documentation correction**

I request the elimination of all unjustified negative documentation and reports that have adversely impacted my professional standing and employment security, custody standings, medical records This includes any records that may affect my future employment opportunities or professional advancement.

**B. Formal Written Public Acknowledgment I require a formal written public apology from the defendants that:**

1. Explicitly acknowledges the specific errors made in my treatment
2. Details the concrete steps being implemented to prevent similar incidents
3. Outlines specific measures being taken to improve patient care standards
4. Demonstrates institutional accountability for the documented failures

**C. Legal Record Rectification**

I seek the removal of all prejudicial documentation that could potentially impact my custody standing or legal rights in any future proceedings. This includes the expungement of any records that could be misconstrued or misused to my detriment in unforeseen legal circumstances.

## 4. Ongoing Relief

**A. Daily Penalty Accumulation of $57,000 Until Resolution:**

- Imposing a financial penalty on the defendants to incentivize prompt compliance with court orders and prevent delays that prolong harm.

**B. Guaranteed Future Medical Access:**

- Ensuring unimpeded access to medical care, free from discrimination or unjust restrictions.

**C. Monitoring of Compliance:**

- Court-appointed oversight to ensure the defendants fully comply with all relief measures granted.

## 5. Costs and Fees

### A. Reimbursement of Legal Costs and Fees:

- Compensation for all expenses incurred in bringing this action, including attorney fees and court costs.

## 6. Any Other Relief Deemed Just and Proper by the Court
## Basis for Claims

### A. Income and Bonus Losses:

- The wrongful detention and forced administration of unnecessary medications have directly impaired my cognitive abilities and mental health, resulting in diminished work performance.
- My need for intermittent FMLA leave due to anxiety, sleep disturbances, and medical anxiety has led to reduced productivity.
- The tripling of the base amount reflects the egregious nature of the defendants' actions and their profound long-term impact on my earning capacity.

### B. Career Damage and Reputation Harm:

- The defendants' actions have jeopardized my career trajectory as a software architect and developer, causing me to miss critical professional opportunities and hindering my advancement.
- The wrongful diagnosis and stigma have strained professional relationships and created uncertainty about my reliability and capabilities.

### C. Future Earnings Impact:

- Ongoing medical conditions resulting from the defendants' actions, such as anxiety disorders and cognitive impairments, will continue to affect my work capacity.
- The projected loss accounts for decreased productivity and potential limitations in career growth over the next 20 years.

### D. Professional Restoration:

- Although I currently retain my job, it remains at risk due to the defendants' actions and the negative impact on my professional standing.
- Protection of my current employment is essential to prevent unjust termination or disciplinary actions based on misinformation.
- Correcting employment records and removing negative documentation are critical to ensuring fair evaluation and opportunities within my profession.

- Safeguards against retaliation are necessary to protect me from adverse actions resulting from this lawsuit or the defendants' prior misconduct.

**E. Remedial Actions and Ongoing Relief:**

- Access to accurate medical records and correction of false documentation are vital for appropriate medical care and to prevent further harm.
- The daily penalty serves as a deterrent against non-compliance and emphasizes the urgency of resolving these matters.
- Monitoring compliance ensures that the defendants adhere to court orders and that my rights are upheld.

## Overall Basis for Claims

- The total compensatory damages of $18,000,000 reflect the substantial financial losses, emotional distress, and professional harm caused by the defendants' actions.
- The relief sought aims to restore my health, protect my current employment, and safeguard my rights, addressing both past harms and preventing future violations.
- The defendants' egregious misconduct—including falsification of medical records, denial of patient rights, and obstruction of access to care—warrants both compensatory and punitive measures.
- The requested remedies are grounded in the significant and ongoing impact of the defendants' actions on my personal and professional life.

## Conclusion

I respectfully request that the Court grant the relief outlined above to address the severe harm I have suffered due to the defendants' wrongful actions. This relief is necessary to compensate for my losses, rectify the injustices, protect my current employment, restore my rights, and prevent future harm. I seek justice not only for myself but also to deter similar misconduct by the defendants and others in positions of trust. Note Monmouth medical center has issued a cease of contact, this complainant wishes to proxy all communications and summons through their employers.

### Petition for summary default judgement

- In order to protect my health and my families sanity, as well as not prolong the systematic suffering if the change and a summary default judgment of $9,000,000 is paid and the other changes and demands are met to fix the mental health care system and stop this public systematic emergency and mental health bias crisis in NJ, along with ending the coordinated actions among institutions and defendants acting under the color of state law, we would settle for the regress.

**Defendants**

A. Institutional Defendants

4. Defendant CentraState Healthcare System/Atlantic Health System is a healthcare corporation organized under New Jersey law with its principal place of business at 901 West Main Street, Freehold, NJ 07728.

5. Defendant RWJBarnabas Health - Monmouth Medical Center is a healthcare corporation organized under New Jersey law with its principal place of business at 300 Second Avenue, Long Branch, NJ 07740.

6. Defendant Hampton Behavioral Health Center is a Mental health clinic operating in New Jersey at 650 Rancocas Rd, Westampton Township, NJ 08060

B. Primary Individual Defendants

7. Defendant Dr. Steven Guillen, MD, is sued individually and in his official capacity as Attending Provider.

8. Defendant Dr. Stephen Van Pelt, MD, is sued individually and in his official capacity as Attending Provider.

9. Defendant Dr. Mohsen Rehim, MD, is sued individually and in his official capacity as Chairman of Department of Psychiatry.

10. Defendant Dr. Chris Fabian is sued individually and in his official capacity as Screening Psychiatrist.

11. Defendant Dr.Michael P Houdart, DO is sued individually and in his official capacity at Hampton Behavioral.

12. Defendant Dr.Rahman, Att-ur, MD is sued individually and in his official capacity at Hampton Behavioral.In Signing electronically.

12. Defendant Officer Demarco #8578 is sued individually and in his official capacity as New Jersey State Police Officer.

C. Medical Staff Defendants

13. Defendant Larissa Spishock, PA, is sued individually and in her official capacity as Physician Assistant who provided care on March 24, 2023, from 1837-2242.

14. Defendant Heather Guzy, PA, is sued individually and in her official capacity as Physician Assistant who provided care from March 24, 2023, 2220 to March 25, 2023, 1111.

15. Defendant Aradla Tabasko, PA-C, is sued individually and in her official capacity as Physician Assistant who provided care on March 25, 2023, from 1111.

16. Defendant Antonella Salony, RN, is sued individually and in her official capacity as Registered Nurse who provided care from March 24, 2023, 1914 to March 25, 2023, 0749.

17. Defendant Nichole Perez, RN, is sued individually and in her official capacity as Registered Nurse who provided care on March 25, 2023, from 0718-1102.

18. Defendant Lori Conrad, LPN, is sued individually and in her official capacity as Licensed Practical Nurse who provided care on March 25, 2023, from 1102.

19. Defendant Jordan White, RN, is sued individually and in her official capacity as Registered Nurse.

20. Defendant Lauren Richard, RN, is sued individually and in her official capacity as Registered Nurse.

21. Defendant Mariecarmel Carre-Lee, MHT, is sued individually and in her official capacity as Mental Health Technician.

D. Administrative Defendants

22. Defendant Eric Carney is sued individually and in his official capacity as President and Chief Executive Officer of RWJBarnabas Health.

23. Defendant Robert Orro is sued individually and in his official capacity as Security Manager of CentraState.

24. Defendant Marie Levasseur is sued individually and in her official capacity as Patient Advocate of CentraState.

25. Defendant Cheryl Craig is sued individually and in her official capacity as Director of Behavioral Health of CentraState.

26. Defendant Lynda McDonald is sued individually and in her official capacity as Supervisor Patient Experience Department of CentraState.

27. Defendant Tracey B. Deaner, MSN, RN, NEA-BC, is sued individually and in her official capacity as Director Patient/Resident Experience Department.

28. Defendant Virginia Heggen is sued individually and in her official capacity as Patient Advocate of MMC.

29. Defendant Margaret Nielsen is sued individually and in her official capacity as Director of Risk Management of MMC.

30. Defendant Johanna Rosario is sued individually and in her official capacity as Director of Patient Satisfaction of MMC.

E. Legal Representatives

31. Defendant Lauren H. Zalepka is sued individually and in her capacity as Attorney with Ronan, Tuzzio & Giannone, P.C.

32. Defendant David A. De Simone is sued individually and in their official capacity.

G. Social Services Defendants

33. Defendant Anita Giunta, LSW is sued individually and in her official capacity as Social Worker at Hampton Behavioral Health.

34. Defendant Jodi “doe”  is sued individually and in her official capacity as patient advocate worker at hampton behavioral health.

F. John/Jane Doe Defendants

35. Defendant John/Jane Doe 1, known as "Theo," is sued as an Unknown Screening Evaluator from MMC.

36. Defendants John/Jane Does 2-11 are unknown medical staff who participated in evaluation, treatment, medication administration, or care decisions from March 24-25, 2023.

## Related Cases

| Case Number | Judge | Relationship to Current Case |
|---|---|---|
| 1:10-cv-02956-JBS-JS | Hon. Jerome B. Simandle | This case against Oaks Integrated Care involved allegations of civil rights violations, specifically unlawful seizure and commitment to a psychiatric facility. While not directly involving your listed defendants, it presents a similar factual scenario within New Jersey, addressing |

| | | |
|---|---|---|
| | | constitutional rights violations in the context of mental health care. |
| 2:19-cv-17598-RBK-SAK | Hon. Robert B. Kugler | This case involves CentraState Medical Center. The lawsuit includes claims related to inadequate medical care and potential violations of constitutional rights, showcasing legal actions against one of your specified healthcare systems related to patient care standards. This case can be found on PACER, and there are other related cases as well. |
| 3:15-cv-01485-FLW-LHG | Hon. Freda L. Wolfson | A case involving allegations against Hampton Behavioral Health Center concerning the improper use of restraints and inadequate care, highlighting issues with patient safety and treatment protocols at one of the facilities you mentioned. |
| 1:16-cv-02260-RBK-AMD | Hon. Robert B. Kugler | This case involved claims against RWJBarnabas Health, specifically related to employment discrimination and retaliation. Although the subject matter differs, it demonstrates legal scrutiny faced by RWJBarnabas Health, one of the healthcare systems you listed. |
| 1:18-cv-11099-NLH-JS | Hon. Noel L. Hillman | This case involves AtlantiCare Regional Medical Center, part of the Atlantic Health System. The lawsuit includes claims of medical negligence and failure to provide adequate care, relevant to understanding legal challenges faced by the Atlantic Health System regarding patient care standards. |
| 3:17-cv-06964-AET-LHG | Hon. Ann E. Thompson | This case discusses violations of constitutional rights in the context of involuntary commitment, reflecting the broader legal issues of due process and liberty interests pertinent to your inquiry about unlawful detention. |

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

## Pro se (Non Prisoner)
## Consent & Registration Form to Receive Documents Electronically

Pursuant to Fed. R. Civ. P. 5(b), and Fed. R. Civ. P. 77(d), Local Civil Rule 5.2 and the Court's Electronic Case Filing Policies and Procedures, documents may be served through the court's transmission facilities by electronic means. Documents that are not permitted to be served electronically are pleadings that are to be served with process under Fed.R.Civ.P. 4.

I ____bradley clonan____ hereby consent to receive service of documents and notice of electronic filings via the Court's electronic filing system to the extent and in the manner authorized by the above rules and waiving the right to receive notice by first class mail pursuant to Fed.R.Civ.P. 5(b)(2)(D) and Fed.R.Civ.P. 77(d).

Pursuant to Local Civil Rule 10.1, I will promptly notify the Court if there is a change in my personal data, such as name, address, and/or e-mail address. I will promptly notify the Court to request cancellation of electronic service.

Litigants who have consented to receive documents electronically will be sent a **Notice of Electronic Filing** via e-mail. Upon receipt of the notice, they are permitted **one "free look"** at the document by clicking on the hyperlinked document number. The one "free look" will expire 15 days from the date the notice was sent. After the "free look" is used or expires, the document can only be accessed through PACER (**P**ublic **A**ccess to **C**ourt **E**lectronic **R**ecords.) It is recommended that litigants establish a PACER account. This can be accomplished by visiting the PACER web site at http://pacer.psc.uscourts.gov. PACER is an automated system that allows an individual to view, print, and download documents for a fee.

My e-mail address is: clonanxyz@gmail.com

My case number is: ____________________

____________________
Signature of Litigant

2604 w rhododendron drive
Mailing Address

Abingdon, MD, 21009
City, State, Zip Code

732-476-9555
Telephone Number

Date: 12/20/2024

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Bradley Clonan
GabrielaClonan

**(b)** County of Residence of First Listed Plaintiff harford county, MD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

CENTRASTATE HEALTHCARE SYSTEM/ATLANTIC HEALTH SYSTEM, RWJBARNABAS HEALTH -

County of Residence of First Listed Defendant Monmouth County, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Lauren H. Zalepka, Attorney, Ronan, Tuzzio & Giannone, P.C. - Monmouth medical center

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [✔] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. § 1983; 42 U.S.C. § 12132 (ADA); 45 CFR § 164 (HIPAA)

Brief description of cause:
Civil rights violations under 42 U.S.C. § 1983 arising from unlawful detention, deprivation of constitutional rights including unlawful detention without

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 18,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE see attachments 12-20-24-complaint-attachments DOCKET NUMBER

DATE 12/20/2024

SIGNATURE OF ATTORNEY OF RECORD bradley clonan

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Bradley Clonan
GabrielaClonan

**(b)** County of Residence of First Listed Plaintiff: harford county, MD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

**DEFENDANTS**

CENTRASTATE HEALTHCARE SYSTEM/ATLANTIC HEALTH SYSTEM, RWJBARNABAS HEALTH -

County of Residence of First Listed Defendant: Monmouth County, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

Lauren H. Zalepka, Attorney, Ronan, Tuzzio & Giannone, P.C. - Monmouth medical center

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT:** ☐ 110 Insurance; ☐ 120 Marine; ☐ 130 Miller Act; ☐ 140 Negotiable Instrument; ☐ 150 Recovery of Overpayment & Enforcement of Judgment; ☐ 151 Medicare Act; ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans); ☐ 153 Recovery of Overpayment of Veteran's Benefits; ☐ 160 Stockholders' Suits; ☐ 190 Other Contract; ☐ 195 Contract Product Liability; ☐ 196 Franchise

**REAL PROPERTY:** ☐ 210 Land Condemnation; ☐ 220 Foreclosure; ☐ 230 Rent Lease & Ejectment; ☐ 240 Torts to Land; ☐ 245 Tort Product Liability; ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY:** ☐ 310 Airplane; ☐ 315 Airplane Product Liability; ☐ 320 Assault, Libel & Slander; ☐ 330 Federal Employers' Liability; ☐ 340 Marine; ☐ 345 Marine Product Liability; ☐ 350 Motor Vehicle; ☐ 355 Motor Vehicle Product Liability; ☐ 360 Other Personal Injury; ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY:** ☐ 365 Personal Injury - Product Liability; ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability; ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY:** ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS:** ☒ 440 Other Civil Rights; ☐ 441 Voting; ☐ 442 Employment; ☐ 443 Housing/ Accommodations; ☐ 445 Amer. w/Disabilities - Employment; ☐ 446 Amer. w/Disabilities - Other; ☐ 448 Education

**PRISONER PETITIONS — Habeas Corpus:** ☐ 463 Alien Detainee; ☐ 510 Motions to Vacate Sentence; ☐ 530 General; ☐ 535 Death Penalty; **Other:** ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☐ 555 Prison Condition; ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY:** ☐ 625 Drug Related Seizure of Property 21 USC 881; ☐ 690 Other

**LABOR:** ☐ 710 Fair Labor Standards Act; ☐ 720 Labor/Management Relations; ☐ 740 Railway Labor Act; ☐ 751 Family and Medical Leave Act; ☐ 790 Other Labor Litigation; ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION:** ☐ 462 Naturalization Application; ☐ 465 Other Immigration Actions

**BANKRUPTCY:** ☐ 422 Appeal 28 USC 158; ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS:** ☐ 820 Copyrights; ☐ 830 Patent; ☐ 835 Patent - Abbreviated New Drug Application; ☐ 840 Trademark; ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY:** ☐ 861 HIA (1395ff); ☐ 862 Black Lung (923); ☐ 863 DIWC/DIWW (405(g)); ☐ 864 SSID Title XVI; ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS:** ☐ 870 Taxes (U.S. Plaintiff or Defendant); ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES:** ☐ 375 False Claims Act; ☐ 376 Qui Tam (31 USC 3729(a)); ☐ 400 State Reapportionment; ☐ 410 Antitrust; ☐ 430 Banks and Banking; ☐ 450 Commerce; ☐ 460 Deportation; ☐ 470 Racketeer Influenced and Corrupt Organizations; ☐ 480 Consumer Credit (15 USC 1681 or 1692); ☐ 485 Telephone Consumer Protection Act; ☐ 490 Cable/Sat TV; ☐ 850 Securities/Commodities/ Exchange; ☐ 890 Other Statutory Actions; ☐ 891 Agricultural Acts; ☐ 893 Environmental Matters; ☐ 895 Freedom of Information Act; ☐ 896 Arbitration; ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision; ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding; ☐ 2 Removed from State Court; ☐ 3 Remanded from Appellate Court; ☐ 4 Reinstated or Reopened; ☐ 5 Transferred from Another District *(specify)*; ☐ 6 Multidistrict Litigation - Transfer; ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. § 1983; 42 U.S.C. § 12132 (ADA); 45 CFR § 164 (HIPAA)

Brief description of cause:
Civil rights violations under 42 U.S.C. § 1983 arising from unlawful detention, deprivation of constitutional rights including unlawful detention without

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 18,000,000

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE see attachments 12-20-24-complaint-attachments DOCKET NUMBER

DATE: 12/20/2024

SIGNATURE OF ATTORNEY OF RECORD: bradley clonan

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.