# EXHIBIT E

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRADLEY CLONAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRASTATE HEALTHCARE SYSTEM/ATLANTIC HEALTHCARE SYSTEM, *et al.*,<br><br>Defendants. | Civil Action No. 24-11399 (RK) (RLS)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon four Motions to Dismiss filed by the majority of Defendants[1] in this action involving *pro se* Plaintiff Bradley Clonan's ("Plaintiff") involuntary medical commitment. (ECF Nos. 33, 35, 47, 50.) The Moving Defendants seek to dismiss Plaintiff's First Amended Complaint.[2] ("FAC," ECF No. 29.) Plaintiff filed consolidated opposition briefs to the Motions, (ECF Nos. 46, 56, 57), and the Moving Defendants replied, (ECF

[1] The "Moving Defendants" are CentraState Healthcare System/Atlantic Health System ("CentraState"); "RWJBarnabas Health – Monmouth Medical Center" ("MMC"); Hampton Behavioral Health Center ("Hampton Behavioral"); CentraState employees Marie Levasseur, Tracey Deaner, Marie Carmel Carree-Lee, Cheryl Craig, Robert Orro, Lauren Richard, Lynda McDonald, Jordan White and Lori Conrad; MMC employees Christopher Fabian, M.D., Estate of Mohsen Rehim, M.D., Eric Carney, Margaret Nielsen, Johanna Rosario, Virginia Heggen, and Theo Kalogridis a.k.a. "Theo" and "John Doe 1"; MMC's attorney, Lauren Zalepka; and Hampton Behavioral employees Dr. Michael Houdart, Dr. Atta-Ur Rehman, Anita Giunta, and Jodi Sgouros. The remaining Defendants, who have never appeared in this action, are Dr. Steven Guillen, Dr. Stephen Van Pelt, Larissa Spishock, Heather Guzy, Aradla Tabasko, Antonella Salony, Nichole Perez, and David Clark a.k.a. David A. De Simone (the "Non-Appearing Defendants"), all individuals who purportedly work at CentraState.

[2] The case caption in *pro se* Plaintiff's initial Complaint suggested he was improperly bringing this action on behalf of both himself and his wife, Gabriela Clonan. (ECF No. 1 at 1.) However, Gabriela Clonan was not a signee to the initial Complaint, (*see id.* at 6), and has never appeared in this matter. Because the First Amended Complaint lists only Bradley Clonan as a plaintiff (*see* FAC ¶ 1), the Court will presume Gabriela Clonan is no longer attempting to appear as a plaintiff in this case.

Case 3:24-cv-11399-RK-RLS Document 72 Filed 06/26/25 Page 2 of 30 PageID: 2539

Nos. 48, 53, 64, 65). The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Moving Defendants' Motions to Dismiss (ECF Nos. 33, 35, 47, 50) are **GRANTED** in part and **DENIED** in part, and the FAC is **DISMISSED**.

## I. BACKGROUND

Plaintiff has brought this action to contest his six-day involuntary medical commitment in March 2023. The Court first details this action's factual and procedural backgrounds. It then summarizes the statutory background critical to deciding the Moving Defendants' Motions.

### 1. *Factual Background*

While the allegations in the FAC are at times difficult to follow, Plaintiff appears to allege that on March 22, 2023, he "observed a suspicious individual dressed in all black recording" near Plaintiff's residence in Maryland. (FAC ¶ 40.) On March 23, 2023, because he was concerned "about data security issues" following his recent employment termination, Plaintiff traveled with his family from Maryland to Pennsylvania "to attempt to return company computer equipment." (*Id.* ¶ 41. ) He and his family then traveled to New Jersey to stay with relatives. (*Id.* ¶ 42.)

On March 24, 2023, while still in New Jersey, Plaintiff "voluntarily agreed to ambulance transport" to CentraState for a stress-related medical assessment. (*Id.* ¶ 43.) After a slew of medical tests and clinical observations at CentraState, Plaintiff sought to be discharged that same day. (*Id.* ¶¶ 44–48.) CentraState did not permit Plaintiff to leave and instead initiated a "state-regulated commitment process." (*Id.* ¶ 49.) Plaintiff was moved to a "secured isolation room" and was not permitted to make phone calls. (*Id.* ¶¶ 50–52.)

The next day, MMC employee Defendant Theo Kalogridis[3] conducted a screening assessment of Plaintiff "under state-mandated protocols." (*Id.* ¶ 55.) Plaintiff alleges that Mr. Kalogridis and Defendant Dr. Christopher Fabian (who performed a "a telehealth psychiatric evaluation for commitment screening purposes") incorrectly documented and misconstrued Plaintiff's reported symptoms. (*Id.* ¶¶ 56–59.) For example, Plaintiff alleges Mr. Kalogridis inaccurately reported that Plaintiff was "overtaking prescribed medications" and that Dr. Fabian miscategorized Plaintiff's fears that his "previous employe[r] was go[ing] to harm his family," as "paranoid," "delusional," and "hallucinations." (*Id.* ¶¶ 56–58.) On March 25, 2023, after CentraState and MMC allegedly inputted "significant errors and apparent falsifications" into Plaintiff's medical record, Plaintiff was transferred to Hampton Behavioral. (*Id.* ¶ 60–63.)

On March 27, 2023, Burlington County Superior Court issued a Temporary Order for Involuntary Commitment for Plaintiff. (ECF No. 40 at 2–3.[4]) At Hampton Behavioral, Plaintiff was diagnosed with paranoid schizophrenia. (*Id.* ¶ 66.) Plaintiff alleges his commitment "lacked documented justification" and that his care plan and interventions were "inactivated" after being added by mistake. (*Id.* ¶¶ 65, 67.) To that end, he alleges that Hampton Behavioral employee Defendant Dr. Michael Houdart "acknowledged there was no basis for Plaintiff's continued detention" and "discontinued all psychotropic medications." (*Id.* ¶ 68.) On March 30, 2023, Plaintiff was released from Hampton Behavioral. (*Id.* ¶ 69.)

---

[3] Mr. Kalogridis is only referred to as "Theo" or "John Doe 1" in the FAC. (*See, e.g.*, FAC ¶ 34.) Counsel for MMC identified "Theo" as Mr. Kalogridis in their Motion to Dismiss. (ECF No. 35 at 1.) Similarly, Defendant Jodi Sgouros is only referred to as Jodi "Doe" in the FAC. (*See, e.g.*, FAC ¶ 33.) Counsel for Hampton Behavioral identified Jodi "Doe" as Ms. Sgouros in their Motion to Dismiss. (ECF No. 47 at 1.)

[4] While Plaintiff only references a "judicial order" without additional context in the FAC (*see* FAC ¶ 5, 65, 86), he later provided this judicial order to the Court via letter. (ECF No. 40.) The Court is permitted to consider documents "explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Since his release, Plaintiff has been seeking answers from CentraState, MMC, and Hampton Behavioral for what he deems to have been "alleged rights violations, falsified records, and improper detention." (*Id.* ¶ 71.) He has filed formal grievances with CentraState and MMC and has persistently requested that both entities "correct the demonstrably false information contained within his medical records." (*Id.* ¶¶ 71–73.) This appears to have led MMC (through their attorney, Defendant Lauren Zalepka) to send Plaintiff a cease-and-desist letter; separately, MMC employee Defendant Margaret Nielsen also filed a police report against Plaintiff "regarding alleged recordings" made by him. (*Id.* ¶¶ 74–75.)

2. *Procedural Background*

Seemingly getting nowhere with his grievances, Plaintiff filed his initial Complaint in this Court on December 20, 2024. (ECF No. 1.) Suing thirty-four named Defendants, including CentraState, MMC, Hampton Behavioral, and employees of each, Plaintiff brought a whole host of claims, including federal claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), and the Health Insurance Portability and Accountability Act ("HIPAA"). (ECF No. 1-2 at 1–2, 21–23.) Following motions to dismiss filed by some Defendants (ECF Nos. 9, 15, 20), the Court *sua sponte* dismissed the initial Complaint for failure to comply with Federal Rule of Civil Procedure ("Rule") 8. (ECF No. 25.) More specifically, the Court found that Plaintiff's initial Complaint drew "no connections between his causes of action, specific facts, or specific defendants." (*Id.* at 5.)

Case 3:24-cv-11399-RK-RLS Document 72 Filed 06/25/25 Page 5 of 30 PageID: 2542

On April 8, 2025, Plaintiff filed his First Amended Complaint.[5] (FAC.) The FAC brought claims against thirty-three Defendants[6] in separately-numbered counts and clarified some of Plaintiff's initial allegations. (*Id.*) The FAC—which is the operative pleading in this action—contains eleven counts against Defendants, including four Section 1983 claims, an ADA claim, a Rehabilitation Act claim, a federal claim for "violation of grievance procedures" pursuant to 42 C.F.R. § 482.13, and state law claims for violation of patient rights, medical malpractice, false imprisonment, and breach of confidentiality. (*Id.* ¶¶ 78–133.) Plaintiff seeks, among other things, (i) eighteen million dollars in compensatory damages, (ii) a retraction of the MMC cease-and-desist order, (iii) "complete and unrestricted access to his full medical records," (iv) an order mandating that CentraState, MMC, and Hampton Behavioral "correct all false, inaccurate, and misleading information" contained in Plaintiff's medical and psychiatric records, and (v) a "formal written public apology outlining what went so wrong." (*Id.* at 21–22.)

After the filing of the FAC, a deluge of other filings followed. Both Plaintiff and his wife—who is not a proper party to this action—have filed numerous letters with the Court alleging continuing harm by Defendants. (ECF Nos. 30, 34, 36, 37, 38, 40, 42.) The Court offered Plaintiff the opportunity to file a motion for leave to incorporate these new allegations of harm into an amended pleading (ECF No. 41), but Plaintiff failed to do so.

On April 21, 2025, the first of four Motions to Dismiss the FAC was filed. (ECF No. 33.) Three additional Motions to Dismiss followed. (ECF Nos. 35, 47, 50.) Plaintiff filed three separate opposition briefs, (ECF Nos. 46, 56, 57), and the Moving Defendants replied. (ECF Nos. 48, 53,

---

[5] On April 7, 2025, Plaintiff filed an amended pleading that was superseded by the filing of the First Amended Complaint the next day. (*See* ECF Nos. 28, 29.)

[6] The FAC explicitly removes Officer Demarco as a "named defendant" because Plaintiff was unable to serve him "within the period prescribed by the original complaint deadline." (FAC at 2.)

64, 65.) Plaintiff also filed a sur-reply without permission of the Court.[7] (ECF No. 70); *see* Local Civ. R. 7.1(d)(6) ("No sur-replies are permitted without permission of the Judge to whom the case is assigned.").

3. *Statutory Background*

N.J. Stat. Ann. 30:4-27.1 *et seq.* (the "Act") "provide[s] a mechanism for the short-term civil commitment of individuals deemed to be harmful to themselves, others or property." *Ianni v. Bergen Reg'l Med. Ctr.*, No. A-5911-09T3, 2011 WL 2410120, at *2 (N.J. Super. Ct. App. Div. May 11, 2011). The purpose of the Act is "to encourage each county or designated mental health service area to develop a screening service, outpatient treatment provider and short-term care facility which will meet the needs for evaluation and treatment of mentally ill persons in the county or service area." N.J. Stat. Ann. § 30:4-27.1. To those ends, the Act sets forth the following statutory requirements for involuntary commitment:

The Act requires that each county "designate one or more mental health agencies or facilities . . . as a screening service." *Id.* § 30:4-27.4(a). The "screening service" serves as the emergent treatment center for any individual undergoing a mental health assessment, where medical professionals assess said individual to determine the appropriate care. *Id.* § 30:4-27.5(a). A mental health screener "shall determine, in consultation with the psychiatrist or another physician, as appropriate, the least restrictive environment for the appropriate treatment to which

---

[7] Notably, in response to assertions that Plaintiff's opposition briefs contained fake case citations (*see* ECF No. 65 at 6–8), Plaintiff acknowledged in his unauthorized sur-reply that he has "utilized modern legal research and drafting tools in preparing filings for this matter—including, at times, platforms that may incorporate AI-assisted features . . ." (ECF No. 70 at 5.) Indeed, there are numerous examples in Plaintiff's opposition briefing where he relies on seemingly made-up quotations. (*See, e.g.,* ECF No. 57 at 19 (including quotations from *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165 (3d Cir. 2004) and *Doby v. DeCrescenzo*, 171 F.3d 858 (3d Cir. 1999) that do not appear in those cases), *id.* at 22 (including quotation from *West v. Atkins*, 487 U.S. 42 (1988) that does not appear in that case).) Moving forward, Plaintiff is "admonished to use caution while citing cases . . . ensuring the validity of case law." *Bratek v. TD Bank, N.A.*, No. 11-3049, 2012 WL 603299, at *1 n.1 (D.N.J. Feb. 22, 2012).

the person shall be assigned or admitted, taking into account the person's prior history of hospitalization and treatment and the person's current mental health condition." *Id.* § 30:4-27.5(b). The mental health screener need only determine whether "there is reasonable cause to believe that a person is in need of involuntary commitment[.]" *Id.* § 30:4-27.5(e). The screener may detain an individual for up to 24 hours for purposes of conducting an assessment. *Id.* § 30:4-27.5(a).

An individual may be "admitted involuntarily to a facility only by referral from a screening service or temporary court order." *Id.* § 30:4-27.9(b). Within 72 hours, the mental health agency or facility must obtain a temporary court order to keep an individual involuntarily committed. *Id.* §§ 30:4-27.9a(a), 10(a)–(c). If a court orders a temporary commitment, the individual must receive a subsequent hearing within 20 days. *Id.* § 30:4-27.12(a). The decision to involuntarily commit an individual under the Act is discretionary. *See Ziemba v. Riverview Med. Ctr.*, 645 A.2d 1276, 1280 (N.J. Super. Ct. App. Div. 1994).

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 12, the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under this Rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). However, the Court "need not credit bald assertions or legal conclusions" or allegations "involv[ing] fantastic factual scenarios lack[ing] any arguable factual or legal basis" or that "surpass all credulity." *Degrazia v. F.B.I.*, No.

08-1009, 2008 WL 2456489, at *3 (D.N.J. June 13, 2008), *aff'd*, 316 F. App'x 172 (3d Cir. 2009) (citations and quotation marks omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth." *Valentine v. Unifund CCR, Inc.*, No. 20-5024, 2021 WL 912854, at *1 (D.N.J. Mar. 10, 2021) (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)).

A *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Cason v. Middlesex Cnty. Prosecutors' Off.*, No. 18-2101, 2022 WL 2871195, at *3 (D.N.J. July 21, 2022) (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002)). Notwithstanding the liberal interpretation, the complaint "may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013).

## III. <u>DISCUSSION</u>

The Court will first address Plaintiff's failure to serve with process a number of Defendants in this action. Then, the Court will turn to analyzing Plaintiff's federal claims against the Moving

Defendants. Finally, the Court will analyze its jurisdiction over Plaintiff's remaining state law claims.

### A. FAILURE TO SERVE

Under Rule 4(m),

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). In its decision dismissing Plaintiff's initial Complaint, the Court put Plaintiff on notice that the majority of Defendants had neither appeared nor been served with process in this matter. (ECF No. 25 at 7–8.) The Court indicated that "[u]nless Plaintiff can establish that these Defendants were properly served within 90 days of the filing of the initial Compliant, by filing proof of service with the Clerk of the Court or showing good cause for the failure of service, *see* Fed. R. Civ. P. 4(m), any Amended Complaint will be dismissed as to the above Defendants for failure to effect service of the Summons and Complaint." (*Id.* at 8.)

Since then, the following Defendants (all of whom purportedly work at CentraState) have still not appeared, nor has Plaintiff provided adequate proof of their service: Dr. Steven Guillen, Dr. Stephen Van Pelt, Larissa Spishock, Heather Guzy, Aradla Tabasko, Antonella Salony, Nichole Perez, and David Clark.[8] (*See* FAC.) Four additional Defendants, Dr. Michael Houdart, Dr. Atta-Ur Rehman, Anita Giunta, and Jodi Sgouros (all of whom purportedly work at Hampton

---

[8] Plaintiff wrote a letter to the Court indicating that he learned the proper name of Defendant "David De Simone" is actually "David Clark." (ECF No. 43 at 1.)

Behavioral), have appeared but argue that they were not served within the requisite 90 days and also, pursuant to Rule 12(b)(5)[9], were improperly served. (ECF No. 47-1 at 10–11.)

In determining whether to grant an extension of time for service pursuant to Rule 4(m), the Court must first "determine[] whether good cause exists for a plaintiff's failure to effect timely service. If good cause exists, the extension must be granted." *Davis v. Samuels*, 962 F.3d 105, 116 (3d Cir. 2020). "To demonstrate good cause, a plaintiff must demonstrate 'good faith' and 'some reasonable basis for noncompliance within the time specified in the rules.'" *Moore v. Walton*, 96 F.4th 616, 627 (3d Cir. 2024) (quoting *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)). Even if the Court does not find good cause, it "still may grant the extension in the sound exercise of its discretion." *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998).

In the FAC, Plaintiff alleges that "[a]ll defendants have been served to the best of our ability . . . " (FAC at 1 ¶ 2.) He attached to his opposition briefing a series of e-mails with counsel for the three Defendant medical entities (CentraState, MMC, and Hampton Behavioral) illustrating his attempts to determine how to properly serve Defendants in this action. (*See* ECF No. 42-1.) Separately, Plaintiff filed a letter indicating he "served the amended complaint and court summons to each defendant as directed by their attorney's [*sic*] or employers" and attached three "Return of Service" slips indicating Plaintiff himself left copies of the Summons and FAC with (i) Donna Rusinko, the Director of Hampton Behavioral Health; (ii) "Kim P.," a receptionist for MMC's attorney, John M. Hockin, Jr.; and (iii) Defendant David Clark, a Risk Management employee at CentraState. (ECF No. 43.) Plaintiff then filed four Affidavits of Service executed by process

---

[9] Rule 12(b)(5) permits a defendant to bring a motion to dismiss for "insufficient service of process." Fed. R. Civ. P. 12(b)(5).

servers who delivered the FAC and Summons to CentraState's security officer, Hampton Behavioral's receptionist, MMC's secretary, and a person who appears to work for MMC's attorney. (ECF Nos. 66–69.)

There are obvious issues with Plaintiff's attempts at serving the Non-Appearing Defendants, as well as Dr. Houdart, Dr. Rehman, Ms. Giunta, and Ms. Sgouros. *First*, Plaintiff's recent efforts to serve the FAC do not explain why Plaintiff did not serve the initial Complaint within the 90 days required under Rule 4(m). *Coulter v. U.S. Dep't of Homeland Sec.*, No. 07-4894, 2008 WL 4416454, at *6 (D.N.J. Sept. 24, 2008) ("[I]t is important to note that '[t]he filing of an amended complaint does not restart the service period as to defendants named in the original complaint.'") (quoting *Zhang v. Haven–Scott Assoc., Inc.*, No. 95–2126, 1996 WL 355344, at *5 (E.D. Pa. June 21, 1996)). *Second*, Rule 4 does not permit Plaintiff to serve process himself, because he is a party to the case. Fed. R. Civ. P. 4(c)(2) ("Any person who is at least 18 years old and *not a party* may serve a summons and complaint." (emphasis added)). Plaintiff appears to at least be somewhat aware of this requirement, as the docket also includes Affidavits of Service signed by process servers. (*See, e.g.*, ECF Nos. 66–69.) *Finally*, Plaintiff's attempts to serve the individual Defendants by simply leaving copies of the Summons and FAC with receptionists at their places of employment are in contravention of Rule 4. *Soni v. Holtzer*, No. 06-3894, 2007 WL 1521486, at *3 (D.N.J. May 23, 2007) ("Rule 4(e)(2) does not authorize service by leaving copies of the summons and complaint with a person at the defendant's place of business."), *aff'd*, 255 F. App'x 614 (3d Cir. 2007). Even though Plaintiff is proceeding *pro se*, "[a]t the end of the day, [he] cannot flout procedural rules—[he] must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

Regardless of whether Plaintiff's confusion as to how to properly serve the individual Defendants constitutes good cause, the Court finds that "a discretionary extension of time is appropriate" because Plaintiff has now shown that he has at least been *attempting* proper service. *Perez v. Napolitano*, No. 10–348, 2011 WL 149889, at *3 (D.N.J. Jan. 18, 2011). In determining whether a discretionary extension is warranted, the Court may consider:

> actual notice of the legal action; prejudice to the defendant; the statute of limitations on the underlying causes of action; the conduct of the defendant; and whether the plaintiff is represented by counsel, in addition to any other factor that may be relevant when deciding whether to grant an extension or dismiss the complaint.

*Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009).

Here, although he does not appear to have ever asked for an extension for time to serve Defendants, Plaintiff is proceeding *pro se* and is clearly attempting, though presently failing, to comport with Rule 4. Further, Defendants Dr. Houdart, Dr. Rehman, Ms. Giunta, and Ms. Sgouros clearly have notice of this action as demonstrated by their appearance herein. What's more, there is no prejudice to these Defendants and the Non-Appearing Defendants in permitting Plaintiff a discrete extension to effectuate proper service. *Perez*, 2011 WL 149889, at *3 (granting discretionary extension of time for service where "[t]he record does not suggest that [d]efendants will suffer any prejudice regarding their ability to defend [p]laintiff's claims on the merits because of Plaintiff's delay.") Dismissing the Non-Appearing Defendants and Dr. Houdart, Dr. Rehman, Ms. Giunta, and Ms. Sgouros from this action at this time would likely just result in Plaintiff simply re-filing against them in a separate action. This would "only add unnecessary steps to the litigation," particularly when the Court's analysis of the merits of Plaintiff's claims herein applies equally to the Non-Appearing Defendants as it does to the Moving Defendants. *Id.*

Thus, cognizant of the Third Circuit's "preference that cases be disposed of on the merits whenever practicable," *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984), and despite the

merit to Dr. Houdart, Dr. Rehman, Ms. Giunta, and Ms. Sgouros's Rule 12(b)(5) contentions, the Court will **DENY** their Motion to Dismiss (ECF No. 47) without prejudice insofar as it is brought under Rule 12(b)(5).[10] Mindful of Plaintiff's *pro se* status, and having now clarified the impropriety of Plaintiff's attempts at service to date, Plaintiff is afforded one final opportunity to properly serve both these Defendants (Dr. Houdart, Dr. Rehman, Ms. Giunta, and Ms. Sgouros) and the Non-Appearing Defendants (Dr. Guillen, Dr. Van Pelt, Ms. Spishock, Ms. Guzy, Ms. Tabasko, Ms. Salony, Ms. Perez, and Mr. Clark) within forty-five days of this Opinion being issued.

### B. Review of the FAC[11]

To start with a clarification, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Yet, Plaintiff repeatedly attempts to amend the FAC's allegations through his opposition briefing. (*See, e.g.*, ECF No. 57-2.) In considering the sufficiency of the allegations, the Court will review the allegations in the FAC alone, as it must.

The Court now addresses Plaintiff's Section 1983 claims before turning to Plaintiff's other federal claims. Dismissing those claims for the reasons stated herein, the Court then addresses its jurisdiction over Plaintiff's remaining state law claims.

---

[10] For reasons explained herein, these Defendants' Rule 12(b)(6) Motion to Dismiss is granted in part and denied in part as moot. Dr. Houdart, Dr. Rehman, Ms. Giunta, and Ms. Sgouros are welcome to renew the Rule 12(b)(5) aspects of their Motion should Plaintiff choose to file a Second Amended Complaint and fail to properly serve them within the time prescribed in this Opinion.

[11] The Court notes that all Moving Defendants argue that the FAC fails to comport with Rule 8. (ECF No. 33-1 at 9–13; ECF No. 35-2 at 4–6; ECF No. 47-1 at 11–15; ECF No. 50-1 at 7–8.) While there are portions of the FAC that skirt dangerously close to warranting dismissal solely on Rule 8 grounds (*see, e.g.*, FAC ¶ 84–88), the Court notes that the FAC's allegations are improved upon from those within the initial Complaint. Thus, in construing *pro se* Plaintiff's FAC liberally, the Court declines to dismiss the FAC on Rule 8 grounds.

1. *Section 1983 Claims (Counts I, II, III, and VIII)*

Plaintiff asserts Section 1983 claims under the First Amendment, Fourth Amendment, and Fourteenth Amendment to the United States Constitution.[12] Each of these claims is asserted against some combination of CentraState, MMC, Hampton Behavioral, and their various employees.[13] (FAC ¶¶ 78–93, 114–119.) To make out a Section 1983 claim, a plaintiff must "prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). "The 'color of state law element is a threshold issue' and thus there is no liability under [Section] 1983 if the defendant is not acting under color of state law." *Vaughn v. Markey*, 813 F. App'x 832, 833 (3d Cir. 2020) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995)).

Here, the parties dispute whether the allegations in the FAC suggest that any of the Moving Defendants acted "under color of state law." (*See, e.g.*, ECF No. 33-1 at 14–18; ECF No. 35-2 at 6–9; ECF No. 47-1 at 15–21; ECF No. 50-1 at 8–10; ECF No. 46 at 21–24.) Plaintiff appears to accept that the Moving Defendants themselves are private actors. (*See* ECF No. 57 at 7 ("This case arises from the coordinated actions of private healthcare facilities . . .").) However, this does not necessarily bar Plaintiff from Section 1983 relief. The United States Supreme Court has explained

---

[12] Count VIII also includes a claim for violation of the First Amendment under "state law." (FAC at 18.) It's unclear what Plaintiff means by this, but regardless, Plaintiff's state law claims are addressed herein.

[13] More specifically, Plaintiff's Fourth Amendment claim is alleged against CentraState, MMC, Dr. Guillen, Dr. Van Pelt, Dr. Fabian, Mr. Kalogridis, and the now-dismissed Officer Demarco. His Fourteenth Amendment procedural due process claim is alleged against CentraState, MMC, Hampton Behavioral, Dr. Guillen, Dr. Van Pelt, Dr. Fabian, Dr. Houdart, Mr. Carney, Ms. Levasseur, Ms. Craig, Ms. McDonald, Ms. Deaner, Ms. Heggen, Ms. Nielsen, Ms. Rosario, Ms. Guinta, Dr. Rehman, Ms. Sgouros, and Mr. Kalogridis. His Fourteenth Amendment substantive due process claim is alleged against CentraState, MMC, Hampton Behavioral, Dr. Guillen, Dr. Van Pelt, Dr. Fabian, Dr. Houdart, Dr. Rehman, and Mr. Kalogridis. His First Amendment claim is alleged against MMC, Ms. Nielsen, and Ms. Zalepka. (FAC ¶¶ 78–93, 114–119.)

that whether a private party has acted under color of state law "is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). In *Brentwood*, the Supreme Court "identified a host of facts" that could bear on this determination:

> We have, for example, held that a challenged activity may be state action when it results from the State's exercise of coercive power, when the State provides significant encouragement, either overt or covert, or when a private actor operates as a willful participant in joint activity with the State or its agents . . . . We have treated a nominally private entity as a state actor when it is controlled by an agency of the State, when it has been delegated a public function by the State . . . when it is entwined with governmental policies, or when government is entwined in [its] management or control . . . .

*Id.* at 296 (internal quotation marks and citations omitted).

Here, Plaintiff alleges that Defendants acted under color of state law by participating in a "state-regulated commitment process," performing "state-mandated screening functions," and "detaining Plaintiff pursuant to a judicial order." (FAC ¶¶ 3–5, *see id.* ¶¶ 6–34, 80, 86.) Further, in sending Plaintiff a cease-and-desist letter and filing a police report against Plaintiff, the FAC alleges that Defendants Ms. Zalepka and Ms. Nielsen acted "potentially under color of state law by involving law enforcement/threatening criminal process." (*Id.* ¶ 116.) As discussed hereinbelow, none of these allegations detail actions fairly attributable to the State.

In considering the factors put forth by the Supreme Court in *Brentwood*, the Third Circuit's decision in *Benn v. Universal Health System, Inc.* is both binding and instructive. 371 F.3d 165 (3d Cir. 2004). There, a plaintiff-appellant brought Section 1983 claims against a private mental healthcare facility, its parent company, and two of its staff members following the plaintiff's short-term involuntary commitment pursuant to Pennsylvania's Mental Health Procedures Act ("MHPA"). *Id.* at 169. After analyzing the factors under *Brentwood*, the Third Circuit concluded that there was no state action by the defendant-appellees. *Id.* at 173. In reviewing the *Benn* court's

analysis of each factor in *Brentwood*, it is clear that Plaintiff's Section 1983 claims here suffer from the same defects as those in *Benn*:

i. Coerciveness of State Law Governing Involuntary Commitment

*First*, the *Benn* court reviewed the MHPA and determined that it "did not coerce [the defendant-appellees] to file the application that led to [the plaintiff-appellant's] commitment," nor did it "provide significant encouragement, either overt or covert." *Id.* at 171 (internal citations and quotation marks omitted).

As in *Benn*, the Act here merely outlines a procedure to follow and authorizes *discretion* in deciding whether to commit an individual. *See Ziemba*, 645 A.2d at 1280. The Act does not "compel[] or even significantly encourage[]" private actors to submit applications for involuntary commitment. *Benn*, 371 F.3d at 171.

ii. Joint Activity with the State

*Second*, the *Benn* court considered whether defendant-appellees were "willful participant[s] in joint activity with the State or its agents." *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)). Because "the crux of [plaintiff-appellant's] complaint about the conduct of the [defendant-appellees] appear[ed] to be that they conducted a seriously defective evaluative process, and that he did not meet the standard for emergency commitment under the MHPA," the Third Circuit found his claims were inadequate to establish state action. *Id.* at 172 (internal citations and quotation marks omitted); *see Lugar*, 457 U.S. at 941 ("[P]rivate misuse of a state statute does not describe conduct that can be attributed to the State . . .").

Similar to *Benn*, Plaintiff here alleges that his commitment was "improper" and based upon "falsified records." (FAC ¶ 70.) His opposition briefing is full of references to Defendants failing to abide by the Act. (ECF No. 46 at 11, 35; ECF No. 57 at 31–32, 38 ("Defendants—acting jointly under color of state law—improperly detained Plaintiff, manipulated the statutory commitment

process . . . and held Plaintiff for days without a valid court order in violation of N.J.S.A. 30:4-27.10[.]").) Allegations of violating the Act do not bring Defendants' actions within the purview of the State.

What's more, Plaintiff claims Defendants acted under color of state law by virtue of their state licensing and their "inclusion in state audit schedules." (ECF No. 57 at 26.) However, if Defendants' actions in accordance with state law were sufficient to qualify Defendants as "state" actors, "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Lugar*, 457 U.S. at 937. Following state laws and regulations, including licensing requirements, does not automatically transform private actors into state actors. Plaintiff's allegations here are thus "inadequate to establish state action." *Benn*, 371 F.3d at 172.

iii. Control by a State Agency

*Third*, the Third Circuit in *Benn* found no evidence that defendant-appellees "were controlled by an agency of the [State]." *Id.* Such is the case here.[14]

iv. Involuntary Commitment as an Exclusive Prerogative of the State

*Fourth*, the *Benn* court determined that there was "no basis for concluding that petitioning for involuntary confinement is or ever was the exclusive prerogative of the state, either in Pennsylvania or in the country in general." *Benn*, 371 F.3d at 172 (collecting cases).

---

[14] At most, Plaintiff alleges that New Jersey State Police Officer Demarco—who is no longer a party to this litigation but presumably was involved with Plaintiff's ambulance trip to CentraState—provided information which "influenc[ed] the commitment decision." (FAC at 2; *id.* ¶ 60 (alleging Officer Demarco reported to a CentraState employee that Plaintiff was "unable to distinguish fact from fiction" which was "incorporated into [Plaintiff's] assessment").) Beyond that, there are no allegations that Officer Demarco ordered Plaintiff to be committed or that he was in any way involved with Plaintiff's commitment process. Thus, the FAC contains no allegations to suggest that any Defendant was controlled by a state agency.

While Plaintiff here claims that CentraState, MMC, and Hampton Behavioral are "healthcare facilities that perform functions traditionally within the exclusive prerogative of the state, particularly with respect to involuntary commitment procedures" (ECF No. 56 at 6; ECF No. 57 at 20), the Third Circuit has made clear that this argument is without merit. *Benn*, 371 F.3d at 172.

v. Pervasive Entwinement between Private and State Actors

*Fifth*, the *Benn* court considered whether the facts before it demonstrated the same level of pervasive "entwinement" between private and state actors as that in *Brentwood*. *Id.* at 172–173. In *Brentwood*, the Supreme Court determined that a non-profit interscholastic athletic association of public and private secondary schools was a state actor. *Brentwood*, 531 U.S. at 291 ("The nominally private character of the [a]ssociation is overborne by the pervasive entwinement of public institutions and public officials in its compositions and workings . . . ."). The Supreme Court held that "the [a]ssociation is an organization of public schools represented by their officials acting in their official capacity to provide an integral element of secondary public schooling," and this "[e]ntwinement" substantiated a finding of state action. *Id.* at 299–300. There were no similar facts before the Third Circuit in *Benn*. *Benn*, 371 F.3d at 173.

There are also no comparable facts here. While Plaintiff repeatedly references Defendants working "in concert with state officials" (ECF No. 46 at 23), the only arguably "state" actor involved in Plaintiff's involuntary commitment was Officer Demarco. As discussed previously, this involvement amounted to a single observation by Officer Demarco that was documented in Plaintiff's medical assessment. (FAC ¶ 60.) To the extent Plaintiff argues that both MMC's role as a state-designated screener and the Act's overall regulatory scheme with respect to involuntary commitments create an entwinement between Defendants and the State (*see* ECF No. 46 at 22, 24; ECF No. 57 at 25), "[t]he mere fact that a business is subject to state regulation does not by itself

convert its action into that of the State . . ." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)).

vi. Symbiotic Relationship Test

*Sixth*, the *Benn* court analyzed the "symbiotic relationship" test set out in *Burton v. Wilmington Parking Authority,* 365 U.S. 715 (1961). *Benn*, 371 F.3d at 173. This "narrow" theory of state action by private entities requires a "'close association of mutual benefit' between the state and the private entity or person." *Id.* (quoting *Crissman v. Dover Downs Ent., Inc.*, 289 F.3d 231, 240–41 (3d Cir. 2002)). The *Benn* court determined that there was "no indication that the [defendant-appellees] made any profit from the petition to commit [plaintiff-appellant], and there certainly [wa]s no evidence that the government received any tangible benefit from [defendant-appellees], save a possible increase in the general welfare." *Id.*

The "symbiotic relationship" test also fails in the action at bar. Plaintiff does not allege that Defendants made any profit from his commitment or that New Jersey received a tangible benefit from the commitment. Even if the Defendant medical entities received some State funding for their participation in the programs created by the Act, this does not transform private entities into state actors. *See Leshko v. Servis*, 423 F.3d 337, 341 (3d Cir. 2005) ("[D]etailed regulation and receipt of state funds, without more, do not create state action" (citing *Crissman*, 289 F.3d at 244)).

vii. Decisions of Other Circuit and District Courts

Finally, the Third Circuit noted in *Benn* that "decisions of other courts of appeals and those of district courts in this circuit also support the conclusion that persons who petition for the involuntary commitment of others are not state actors." *Benn*, 371 F.3d at 173 (collecting cases). Indeed, this Court just last year "declined to find state action on the part of private hospitals deciding to involuntarily commit an individual under New Jersey law" in a case involving an involuntary commitment at Raritan Bay Medical Center. *Miretskaya v. Rutgers, State Univ. of New*

*Jersey*, No. 20-14856, 2024 WL 3896627, at *10 (D.N.J. Aug. 21, 2024). There, the Court identified an array of decisions supporting the proposition that involuntary commitments in private hospitals are not attributable to the state. *See Bates v. Paul Kimball Hosp.*, 346 F. App'x 883, 887 (3d Cir. 2009) (holding that complaint failed to allege private medical facilities were acting under color of state law with respect to plaintiff's involuntary commitment); *Hahn v. New Jersey*, No. 11-1874, 2012 WL 870335, at *7 (D.N.J. Mar. 12, 2012); *D.V. v. Miller*, No. 08-552, 2008 WL 4816484, at *4 (W.D. Pa. Nov. 4, 2008); *Layser v. Morrison*, 935 F. Supp. 562, 566 (E.D. Pa. 1995) ("Private physicians unaffiliated with a state institution are not state actors.").

Undoubtedly, Defendants here acted pursuant to state-regulated and state-mandated procedures in order to secure a judicial order to involuntarily commit Plaintiff. However, Third Circuit law is clear that Defendants' actions are not attributable *to* the State.[15] Thus, because Plaintiff fails to meet his threshold burden to show that the Moving Defendants acted under color of state law, the Moving Defendants' Motions to Dismiss Plaintiff's Section 1983 claims are **GRANTED**, and Counts I, II, III, and VIII of the FAC are **DISMISSED**.

2. *Other Federal Law Claims*

i. Violation of the ADA (Count IV) and Violation of the Rehabilitation Act (Count V)

Plaintiff alleges violations of the ADA and Rehabilitation Act against CentraState, MMC, and Hampton Behavioral for failing to provide him with "proper footwear" due to a "club foot" while he was committed "within Defendant [Hampton Behavioral]." (FAC ¶ 95; *see id.* at ¶ 103.)

[15] For the avoidance of doubt, it is also the case that Ms. Zalepka did not act under color of state law by sending a cease-and-desist letter on behalf of her client, MMC, nor did Ms. Nielsen act under color of state law by filing a police report involving Plaintiff. *See Brown v. Joseph*, 463 F.2d 1046, 1048 (3d Cir. 1972) ("It is settled in this circuit that a private attorney is not a state officer so as to bring his actions within the purview of § 1983."); *Brandt v. Thuring*, No. 16-8792, 2019 WL 1418125, at *6 (D.N.J. Mar. 29, 2019) ("[M]erely calling the police or reporting criminal activity is not sufficient to allege a private actor acted under the color of state law.").

With "limited" exceptions, to prove a claim under either the ADA or Rehabilitation Act, a plaintiff must show that "(1) they are handicapped or disabled as defined under the statutes; (2) they are otherwise qualified to participate in the program at issue; and (3) they were precluded from participating in a program or receiving a service or benefit because of their disability." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013)). At the outset, these claims clearly must be dismissed against CentraState and MCC, as the FAC only references the failure to provide Plaintiff "proper footwear" at Hampton Behavioral—not CentraState or MMC.

Further, these claims should be dismissed against Hampton Behavioral because, among other issues, Plaintiff's allegations seemingly amount to claims of inadequate medical care. However, "[a]s the Third Circuit has already held, failure to provide treatment for a medical condition is not a violation of the ADA." *Kadonsky v. Ahsan*, No. 14-7248, 2018 WL 1542152, at *3 n.2 (D.N.J. Mar. 28, 2018) (citing *Iseley v. Beard*, 200 F. App'x. 137, 142 (3d Cir. 2006)); *see also Brown v. Ancora Psychiatric Hosp.*, No. 11-7159, 2013 WL 4033712, at *6 (D.N.J. Aug. 7, 2013) (dismissing Rehabilitation Act claim where plaintiff's pleading concerned "allegations that [plaintiff] did not receive adequate medical treatment. . . . But, [the Rehabilitation Act] is not designed as a vehicle for asserting medical malpractice actions."). Plaintiff's allegations regarding being deprived proper footwear for his medical ailment amount to an improperly-packaged medical malpractice claim. *Rosario v. Washington Mem'l Hosp.*, No. 12-1799, 2013 WL 2158584, at *12 (W.D. Pa. May 17, 2013) ("[S]uch claims as failure to treat or failure to adequately treat and allegations of medical malpractice[] all fail to state a claim under either the ADA or the Rehabilitation Act.").

Additionally, even if Plaintiff's claims could be construed as alleging more than just inadequate medical care, the FAC's meager allegations clearly fail to satisfy the required elements.

(FAC ¶ 95); *Iqbal*, 556 U.S. at 678. Although Plaintiff alleges in a conclusory fashion that he has an "actual disability" (FAC ¶ 95), he does not describe this disability or explain what it is beyond referencing a "club foot." (*Id.*) He also does not allege that he was precluded from receiving proper footwear *because* of a purported disability. *See Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 291 n.25 (3d Cir. 2019) (noting the ADA requires "but-for causation" and the Rehabilitation Act requires that "the disability . . . be the sole cause of the discriminatory action").

Thus, the Moving Defendants' Motions to Dismiss Plaintiff's ADA and Rehabilitation Act claims are **GRANTED** (ECF No. 33-1 at 20–21, 24–27; ECF No. 35-2 at 10–11; ECF No. 50-1 at 10–11), and Counts IV and V of the FAC are **DISMISSED**. (FAC ¶¶ 94–104.)

ii. Violation of 42 C.F.R. § 482.13 (Count VII)

Plaintiff's final federal claim alleges a "violation of grievance procedures" under 42 C.F.R. § 482.13 against CentraState, MMC, and some of their employees.[16] (FAC ¶¶ 109–113.) This regulation requires hospitals to "protect and promote each patient's rights." 42 C.F.R. § 482.13. However, there is no private right of action under 42 C.F.R. § 482.13. *Jevnikar v. Slawinski*, No. 25-257, 2025 WL 2049857, at *5 (N.D. Ohio July 22, 2025) (collecting cases); *Crandall v. N. Light E. Maine Med. Ctr.*, No. 24-419, 2025 WL 1233200, at *3 (D. Me. Apr. 29, 2025) ("[42 C.F.R. § 482.13] does not . . . contain an express or implied private right of action."); *Smith v. Univ. of Minn. Med. Ctr.-Fairview Riverside*, No. 09-293, 2010 WL 3893902, at *16 (D. Minn. July 14, 2010) ("Nothing in this regulation provides for a private cause of action. Further nothing in the text of the statute authorizing the regulation, 42 U.S.C. § 1396hh, suggests any right to a private cause of action to enforce the regulations set forth at § 482.13."), *report and recommendation adopted*, 2010 WL 3893849 (D. Minn. Sept. 30, 2010). Thus, because Plaintiff

[16] Count VII is directed at CentraState employees Mr. Orro, Ms. Levasseur, Ms. Craig, Ms. McDonald, and Ms. Deaner, and MMC employees Mr. Carney, Ms. Heggen, Ms. Nielsen, and Ms. Rosario. (FAC at 18.)

may not bring a claim under this provision, the Moving Defendants' Motions to Dismiss Plaintiff's 42 C.F.R. § 482.13 claim are **GRANTED** (ECF No. 35-2 at 13–14; ECF No. 50-1 at 12–13), and Count VII of the FAC is **DISMISSED**.

3. *Futility of Amendment*

Plaintiff has asked for leave to amend the FAC's deficiencies rather than have his claims dismissed with prejudice. (ECF No. 46 at 45; ECF No. 56 at 8; ECF No. 57-2 at 17–18.) However, it is clear that permitting Plaintiff to further amend his federal claims would be futile. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000) ("While [Rule 15(a)] also requires that leave to amend should be 'freely given,' a district court has the discretion to deny this request if it is apparent from the record that . . . the amendment would be futile.") In its decision dismissing Plaintiff's initial Complaint, the Court put Plaintiff on notice that his claims were unlikely to survive under Rule 12(b)(6). (ECF No. 25 at 7 n.11 ("Plaintiff is put on notice that the Complaint could very well be dismissed on other grounds, including but not limited to failure to state a claim under Rule 12(b)(6). For example, it appears Plaintiff is attempting to bring Section 1983 claims against non-state actors.").) Yet, the FAC did not rectify any of the deficiencies contained in the initial Complaint. *See supra* at 14–20 (dismissing Section 1983 claims for failure to allege state action). What's more, Plaintiff's remaining federal claims either do not confer a private right of action, *supra* at 22–23, or are seemingly medical malpractice claims improperly clothed as federal ADA/Rehabilitation Act claims, *supra* at 21–22.

Amendment would also be inequitable to the Moving Defendants who have been forced to expend time and resources defending against Plaintiff's repeat, meritless filings. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112–13 (3d Cir. 2002) ("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend under Rule 15(a)

when amendment is inequitable or futile"); *Houser v. Donahoe*, No. 12-1024, 2013 WL 6838699, at *6 (W.D. Pa. Dec. 27, 2013) (dismissing case with prejudice and without leave to amend where it would be inequitable to require defendant "who already once has exhaustively and successfully defended Plaintiff's grievances" to do so again), *aff'd sub nom. Houser v. Postmaster Gen. of U.S.*, 573 F. App'x 141 (3d Cir. 2014).

"[A]ll that truly remains of Plaintiff's federal case is his seemingly unwavering belief that it should and will proceed, if only he can utter the right combination of words and legal terms." *Id.* To be sure, after Plaintiff inundated the Court with letters and exhibits seemingly disconnected from his opposition briefings, the Court gave Plaintiff the opportunity to request leave to file another amended complaint. (ECF No. 41 ("To the extent Plaintiffs' filings can be construed as seeking to further amend their pleading, they are directed to file a motion for leave to amend pursuant to Federal Rule of Civil Procedure 15.").) Yet, Plaintiff never filed for leave.

Given the futility of amendment and the inequitableness to the Moving Defendants, and consistent with the mandate of Rule 15(a) and the interests of justice, dismissal with prejudice is warranted. Further, because "[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related," these Counts should also be dismissed with prejudice as to the Non-Appearing Defendants named in those Counts. *Eun Ju Song v. Bank of Am., N.A.*, No. 14-3204, 2015 WL 248436, at *3 (D.N.J. Jan. 20, 2015) (quoting *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir.1993)). The federal claims in the FAC treat the Moving Defendants and Non-Appearing Defendants exactly the same, and the Court's analysis of the deficiencies of those claims would have applied equally to the Non-Appearing Defendants had they been properly served.

Thus, Plaintiff's federal claims in the FAC (Counts I, II, III, IV, V, VII, VIII) are **DISMISSED WITH PREJUDICE** as to all Defendants named in each of those Counts.

4. *Jurisdiction Over the Remaining State Law Claims*

Plaintiff clearly asserts that this Court has subject matter jurisdiction under 28 U.S.C. § 1331, namely "federal question" jurisdiction. (FAC ¶ 37.) Plaintiff's briefing in opposition reiterates this point. (ECF No. 46 at 19 ("The FAC alleges federal question jurisdiction . . ."); ECF No. 56 at 4 ("This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 . . .").)

Pursuant to 28 U.S.C. § 1367, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). For a district court to exercise supplemental jurisdiction, the court "requires, at a minimum, a federal claim of sufficient substance to confer subject matter jurisdiction on the court." *City of Pittsburgh Comm'n. on Hum. Rels. v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195 (3d Cir. 1976)); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (emphasis in original) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

The Third Circuit has explained that "if it appears that all federal claims are subject to dismissal, the court should not exercise jurisdiction over remaining claims unless 'extraordinary circumstances' exist." *Key Bank USA*, 163 F. App'x at 166 (quoting *Tully*, 540 F.2d at 195); *see*

*Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019) ("[A] court does not err if it declines to exercise supplemental jurisdiction over state claims after it dismisses a federal claim on which its jurisdiction is based in the absence of extraordinary circumstances."). "[S]ubstantial time devoted to the case" and "expense incurred by the parties" do not qualify as extraordinary circumstances. *See Tully*, 540 F.2d at 196.

Here, because the Court has dismissed all of Plaintiff's federal claims, it can no longer exercise federal question jurisdiction. In considering judicial economy, convenience, and fairness, the Court finds that no exceptional circumstances are present such that the Court should retain supplemental jurisdiction over Plaintiff's remaining state law claims. Indeed, this case is still at the motion to dismiss stage, and no discovery has occurred. Thus, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for: (i) violation of patient rights under N.J.A.C. § 8:43G-4.1; (ii) medical malpractice; (iii) false imprisonment; and (iv) breach of confidentiality/invasion of privacy (Counts VI, IX, X, XI). (FAC ¶¶ 105–108; 114–133); *see* 28 U.S.C. § 1367. As such, the Court **DISMISSES** Counts VI, IX, X, and XI without prejudice for lack of subject matter jurisdiction and **DENIES** the Moving Defendants' Motions to Dismiss with respect to Counts VI, IX, X, and XI as moot.

To this point, the Court notes that diversity jurisdiction under 28 U.S.C. § 1332 is not alleged in the FAC. "The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting § 1332(a)(1)). Importantly, in a case with multiple plaintiffs or defendants, it is necessary that "no plaintiff be a citizen of the same state as any defendant." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010).

Case 3:24-cv-11399-RK-RLS Document 75 Filed 06/12/25 Page 27 of 30 PageID: 2866

For the first time in opposition, Plaintiff uses three short paragraphs out of approximately 200 pages of briefing to allege in a conclusory fashion that diversity jurisdiction is established in this action:

> In addition to federal question jurisdiction, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the action is between citizens of different states. Both requirements are satisfied here.
>
> First, Plaintiff has alleged damages in excess of $18,000,000, which clearly exceeds the $75,000 threshold required for diversity jurisdiction. These damages include compensation for loss of liberty, emotional distress, psychological harm, damage to reputation, professional and career damages, loss of income, and loss of enjoyment of life.
>
> Second, complete diversity exists between Plaintiff and all Defendants. Plaintiff is a citizen of a different state than each of the Defendants, satisfying the diversity requirement of 28 U.S.C. § 1332.

(ECF No. 56 at 5.) As an initial matter, "[i]f a plaintiff does not plead the elements of diversity jurisdiction on the face of the complaint . . . it cannot cure the defect by including such elements in its opposition brief." *Matevosian Enters., Inc. v. Islick Trading LLC*, No. 23-23136, 2024 WL 4827440, at *4 (D.N.J. Nov. 19, 2024); *Morse Electro Prods. Corp. v. S.S. Great Peace*, 437 F. Supp. 474, 481 n.9 (D.N.J. 1977) ("Failure to allege diversity in the complaint bars this Court from considering the propriety of exercising diversity jurisdiction.").

Further, the FAC does not allege the citizenship of any of the approximately thirty named individual Defendants. (FAC ¶¶ 6–35); *McCray v. UNITE HERE*, No. 13-6540, 2014 WL 3519098, at *8 (D.N.J. July 16, 2014) ("Although Plaintiff alleges that jurisdiction exists under the diversity jurisdiction statute, he has not alleged the citizenship of any party, and thus his complaint does not support the existence of jurisdiction under diversity of citizenship.").

What's more, it is not clear where Plaintiff himself is domiciled. Importantly, while Plaintiff alleges that he "reside[s]" in Maryland (FAC at 2 ¶ 2), "mere residency in a state is insufficient for purposes of diversity." *Krasnov v. Dinan,* 465 F.2d 1298, 1300 (3d Cir. 1972); *see*

*Frett-Smith v. Vanterpool*, 511 F.3d 396, 400–01 (3d Cir. 2008) ("Domicile is an individual's true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning. Therefore . . . domicile is established by a party's physical presence in a state with an intent to remain there indefinitely." (citations omitted)). In his FAC, Plaintiff alleges that he is a *resident* of Maryland (FAC ¶ 2), but also indicates that his wife (who was initially a named plaintiff in this case) is a registered nurse in New Jersey (*id.* ¶ 107). In his opposition briefs, Plaintiff describes himself as a "law-abiding New Jersey resident," (ECF No. 57 at 7), and mentions his intent to seek future medical care in New Jersey (ECF No. 46 at 33). Plaintiff's contradictory allegations and assertions throughout his filings demonstrate that while he may be currently *residing* in Maryland, Plaintiff has not sufficiently alleged his domicile as is required under 28 U.S.C. § 1332.

Given Plaintiff's *pro se* status, the Court will allow Plaintiff thirty days to file a Second Amended Complaint that adequately alleges the basis of this Court's diversity jurisdiction. As to the federal claims dismissed with prejudice above, Plaintiff is cautioned that he "may not reallege claims in an amended complaint when those claims were previously dismissed with prejudice." *Rogers v. NJDOC*, No. 15-7005, 2021 WL 1050233, at *7 (D.N.J. Mar. 19, 2021) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703–04 (3d Cir. 1996)).[17] As an alternative to filing an SAC in this Court, and without this Court taking a position on the merits, viability, or disposition of Plaintiff's state law claims, Plaintiff also has the separate option to re-file his state law claims in a

[17] To the extent Plaintiff files an SAC, the Court again notes that there are likely grounds under Rule 12(b)(6) to dismiss his state law claims. For example, N.J.A.C. 8:43G-4.1 (Count VI) does not appear to provide a private right of action. *See Greenstein v. Sunitha Moonthungal, P.C.*, No. A-1233-11T1, 2013 WL 149658, at *2 (N.J. Super. Ct. App. Div. Jan. 15, 2013). Additionally, Plaintiff's claim of false imprisonment (Count X) requires detention "without color of legal authority," *Earl v. Winne*, 101 A.2d 535, 540 (N.J. 1953), but at first glance, Plaintiff's commitment appears to have complied with the terms of the Act.

state court of competent jurisdiction. *See, e.g.*, *Santiago v. New Jersey*, No. 17-1715, 2017 WL 3025556, at *3 (D.N.J. July 14, 2017) (noting that in lieu of filing an amended pleading, plaintiff "may elect to file a state court complaint containing only state-law claims"); *Missouri v. Fitzgerald*, No. 19-6153, 2020 WL 610021, at *4 (E.D. Pa. Feb. 6, 2020) ("The dismissal is without prejudice to [plaintiff] filing an amended complaint in this case in the event he can allege a basis for subject matter jurisdiction or, alternatively, filing a complaint in state court so he may proceed there on any state law claims.").

## CONCLUSION

For the foregoing reasons, the Moving Defendants' Motions to Dismiss are **GRANTED** in part and **DENIED** in part. (ECF Nos. 33, 35, 47, 50.) Counts I, II, III, IV, V, VII, and VIII of the FAC are **DISMISSED** with prejudice. Counts VI, IX, X, and XI are **DISMISSED** without prejudice for lack of subject matter jurisdiction. Plaintiff shall be permitted thirty (30) days to file, if he so chooses, a Second Amended Complaint that adequately alleges this Court's diversity jurisdiction over his state law claims. To the extent Plaintiff files a Second Amended Complaint, he must also properly serve the following Defendants within forty-five (45) days: Dr. Houdart, Dr. Rehman, Ms. Giunta, Ms. Sgouros, Dr. Guillen, Dr. Van Pelt, Ms. Spishock, Ms. Guzy, Ms. Tabasko, Ms. Salony, Ms. Perez, and Mr. Clark. An appropriate Order will accompany this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 15, 2025