Bradley Clonan
2604 W Rhododendron Drive
Abingdon, Maryland 21009
(732) 476-9555
clonanxyz@gmail.com
Plaintiff Pro Se

| | |
|---|---|
| BRADLEY CLONAN, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| Plaintiff, | Civil Action No. 3:24-cv-11399-RK-RLS |
| v. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE HAMPTON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF NO. 85) AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR AN EXTENSION OF TIME TO COMPLETE SERVICE UNDER FED. R. CIV. P. 4(m)** |
| CENTRASTATE HEALTHCARE SYSTEM; HAMPTON BEHAVIORAL HEALTH CENTER; MONMOUTH MEDICAL CENTER; DR. CHRIS FABIAN, M.D.; THEO F. KALOGRIDIS, R.N.; DR. STEVEN GUILLEN, M.D.; DR. STEPHEN VAN PELT, M.D.; A. TABASKO, PA-C; ANTONELLA SALONY, R.N.; JORDAN WHITE, R.N.; DR. MICHAEL HOUDART, D.O.; DR. ATTA-UR REHMAN, M.D.; ANITA GIUNTA, L.S.W.; and "INTERN ASHLEY" (John/Jane Doe), | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................__

STATEMENT OF FACTS AND PROCEDURAL HISTORY....................................................__

LEGAL ARGUMENT...........................................................................................__

    POINT I — THE RULE 12(b)(5) MOTION SHOULD BE DENIED AND PLAINTIFF'S CROSS-MOTION FOR AN EXTENSION OF TIME TO COMPLETE SERVICE SHOULD BE GRANTED ..................................................................__

        A. The Rule 4(m) Legal Standard.................................................................__

        B. Good Cause Exists for the Delay in Service ................................................__

        C. Even Absent Good Cause, the Court Should Exercise Its Discretion to Extend the Time for Service ..............................................................................__

        D. In No Event May Dismissal Be With Prejudice, and the Motion Is Moot as to Jodi Sgouros ....................................................................................__

    POINT II — COUNTS 11, 15, AND 17 STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.........................................................................................__

        A. Standard of Review...............................................................................__

        B. N.J.S.A. 30:4-27.7 Provides Only Conditional Immunity That Cannot Be Resolved on the Pleadings ......................................................................__

        C. Count 11 Adequately Pleads Battery Against Hampton ................................__

        D. Count 15 Adequately Pleads Institutional and Professional Negligence.....................__

        E. Count 17 Adequately Pleads False Imprisonment..........................................__

    POINT III — ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE..........................__

CONCLUSION.................................................................................................__

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... __

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... __

*Boley v. Kaymark*, 123 F.3d 756 (3d Cir. 1997) ........................................................................ __

*Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113 (3d Cir. 2009) ......................................... __

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................................................... __

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...................................................................................... __

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ......................................................... __

*Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002) ................................................. __

*Haines v. Kerner*, 404 U.S. 519 (1972) ..................................................................................... __

*Kelly v. County of Monmouth*, 380 N.J. Super. 552 (App. Div. 2005) ....................................... __

*Mesgleski v. Oraboni*, 330 N.J. Super. 10 (App. Div. 2000) ..................................................... __

*Perna v. Pirozzi*, 92 N.J. 446 (1983) ........................................................................................ __

*Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298 (3d Cir. 1995) ........................................... __

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ................................................... __

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ........................ __

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) ........................................... __

*Rennie v. Klein*, 720 F.2d 266 (3d Cir. 1983) (en banc) ............................................................ __

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ....................................................................... __

*Ziemba v. Riverview Med. Ctr.*, 275 N.J. Super. 293 (App. Div. 1994) ..................................... __

**Statutes and Rules**

N.J.S.A. 2A:14-2 ....................................................................................................................... __

N.J.S.A. 30:4-24.2(d) ................................................................................................................ __

N.J.S.A. 30:4-27.7 ..................................................................................................................... __

N.J.S.A. 30:4-27.9(a) ................................................................................................................ __

N.J.S.A. 30:4-27.17(a) ............................................................................................................... __

28 U.S.C. § 1915(d) ................................................................................................................... __

Fed. R. Civ. P. 4(c)(3), 4(d), 4(e), 4(m) .................................................................................... __

Fed. R. Civ. P. 6(b)(1)(B) .......................................................................................................... __

Fed. R. Civ. P. 8(d)(2)–(3) ........................................................................................................ __

Fed. R. Civ. P. 12(b)(5), 12(b)(6) .............................................................................................. __

L. Civ. R. 7.1(h) ......................................................................................................................__

## PRELIMINARY STATEMENT

Plaintiff Bradley Clonan, appearing pro se, respectfully submits this memorandum of law in opposition to the motion of Defendants Hampton Behavioral Health Center ("Hampton"), Dr. Michael Houdart, D.O., Dr. Atta-Ur Rehman, M.D., Anita Giunta, L.S.W., and Jodi Sgouros (collectively, the "Moving Defendants") to dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) (ECF No. 85), and in support of Plaintiff's cross-motion, pursuant to Rules 4(m) and 6(b)(1)(B), for an extension of time, nunc pro tunc, to complete service of process on the individual Defendants.

The motion rests on two grounds. Neither supports the extraordinary relief the Moving Defendants request: dismissal of every claim against them, with prejudice.

First, as to service of process on Dr. Houdart, Dr. Rehman, and Ms. Giunta: Plaintiff does not minimize his failure to complete service within the time the Court allowed, and he addresses the reasons for that failure candidly in the accompanying Certification. But the individual Defendants have had actual notice of this action and of the claims against them since early 2025; they have been represented by two successive law firms who have appeared and litigated on their behalf; they identify no prejudice whatsoever from the timing of formal service; and Plaintiff has now completed every step of formal service within his control — obtaining summonses issued by the Clerk (ECF No. 92), providing courtesy copies of the summonses and operative complaint to their counsel of record, and placing personal service, with fees paid, in the hands of the Burlington and Monmouth County Sheriffs via United states postal service — as detailed in the accompanying Certification and its exhibits. Critically, because the underlying events occurred in March 2023, New Jersey's two-year limitations period, N.J.S.A. 2A:14-2, has expired — so a

dismissal that is nominally "without prejudice" would extinguish Plaintiff's claims forever. The Third Circuit has instructed that district courts must consider this precise circumstance in deciding whether to grant a discretionary extension of the service period rather than dismiss. *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305–06 (3d Cir. 1995). Separately, the motion is moot as to Jodi Sgouros, who is not named in the Second Amended Complaint at all.

Second, as to Rule 12(b)(6): the Moving Defendants ask this Court to resolve, on the pleadings and in their favor, the very fact questions the Second Amended Complaint places in dispute. The immunity conferred by N.J.S.A. 30:4-27.7 is conditional, not absolute: it protects only a facility or staff member "acting in good faith" who "takes reasonable steps" in the commitment process. The SAC pleads — with specific, document-based allegations that must be accepted as true at this stage — that Hampton's conduct was neither in good faith nor objectively reasonable: Hampton's own physician recorded "No Justification for Hospitalization documented" on March 26, 2023 (SAC ¶ 52); Hampton's care plan was inactivated as "added by mistake" on March 27, 2023 (SAC ¶ 55); Plaintiff's attending physician allegedly admitted the commitment was a "mistake" on March 28, 2023 (SAC ¶ 57); and Hampton nonetheless continued Plaintiff's confinement and nonconsensual medication with psychotropic drugs until March 30, 2023 (SAC ¶¶ 58–59). Whether that conduct was in "good faith" and constituted "reasonable steps" is a question of fact that cannot be resolved against the pleader on a motion to dismiss. And by its plain text, the statute does not immunize the forcible administration of psychotropic medication or the refusal to perform the administrative discharge that N.J.S.A. 30:4-27.17(a) makes mandatory.

The motion should be denied, and Plaintiff's cross-motion for an extension of time to complete service should be granted.

5

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.  The Underlying Events

The facts are set out in detail in the Second Amended Complaint and are summarized here only as relevant to this motion. On March 24, 2023, Plaintiff was voluntarily transported by ambulance to the CentraState Medical Center emergency department. (SAC ¶ 25.) Toxicology testing that evening was negative for alcohol, benzodiazepines, and illicit drugs, and positive only for prescribed and authorized substances. (SAC ¶ 31.) After Plaintiff was held for involuntary psychiatric screening; the screening psychiatrist's own certificate recorded "Perception: no hallucinations" even as it certified psychosis and dangerousness based in part on "medication overuse" that the toxicology results contradicted. (SAC ¶¶ 33–42.)

On March 25, 2023, Plaintiff was involuntarily transported to Hampton and admitted under Dr. Houdart. (SAC ¶¶ 49–50.) Between March 25 and March 28, 2023, Hampton staff administered Haldol, Risperdal, and Cogentin to Plaintiff against his will, without consent and without any documented emergency. (SAC ¶ 51.) On March 26, 2023, Dr. Rehman, in completing the "Justification for Hospitalization" section of Hampton's own evaluation records for Plaintiff, wrote: "No Justification for Hospitalization documented." (SAC ¶¶ 16, 52.) On March 27, 2023, Ms. Giunta and Dr. Houdart inactivated Plaintiff's care plan with the notation "added by mistake." (SAC ¶ 55.) On or about March 28, 2023, Dr. Houdart allegedly admitted to Plaintiff that the commitment intervention was a "mistake" and that he "could not tell him why he was there." (SAC ¶ 57.) Hampton nevertheless continued Plaintiff's confinement until March 30, 2023. (SAC ¶¶ 58–59.)

**B.  Procedural History**

Plaintiff filed his original Complaint on December 20, 2024. By Memorandum Order dated March 25, 2025, the Court dismissed the Complaint without prejudice under Rule 8 and directed the filing of an amended complaint, noting that certain individual Defendants had not been served and that proof of service or good cause would be required. (ECF No. 25.) Plaintiff filed his First Amended Complaint on April 8, 2025. By Opinion and Order dated August 15, 2025, the Court dismissed the First Amended Complaint, granted Plaintiff leave to file a Second Amended Complaint adequately alleging the Court's diversity jurisdiction over his state-law claims, and afforded Plaintiff "one final opportunity" to properly serve Dr. Houdart, Dr. Rehman, Ms. Giunta, and "Jodi Sgouros" within forty-five days. (ECF Nos. 72, 73.) From August 15, 2025 forward, the action stood dismissed and closed.

The Court initially allowed thirty days to file the Second Amended Complaint and thereafter provided an additional sixty days. (See ECF No. 76.) During the months that followed, Plaintiff's son was born on November 11, 2025, and Plaintiff's time and attention were necessarily devoted to his wife, newborn child and three additional daughters. While dealing with sever anxiety related attacks due to these events Plaintiff lost his job as a Software architect at Mariner Finance in August 2025. Plaintiff did not abandon the case during that period: he moved for leave to proceed in forma pauperis and for the appointment of pro bono counsel (ECF No. 79) and corresponded with the Court (ECF No. 80). On June 10, 2026, Magistrate Judge Singh issued a Letter Order granting Plaintiff an additional thirty days — through July 10, 2026 — to file the Second Amended Complaint, and denying the IFP and pro bono application as premature, with express leave to renew those requests upon the filing of the Second Amended Complaint. (ECF No. 82.) Plaintiff filed the Second Amended Complaint the very next day, June

11, 2026. (ECF No. 83.) The Second Amended Complaint is therefore timely and properly before the Court pursuant to the June 10, 2026 Letter Order. On June 30, 2026 and July 1, 2026, Plaintiff renewed his applications for in forma pauperis status and for the appointment of pro bono counsel, respectively. (ECF Nos. 86, 87.)

The Second Amended Complaint asserts twenty state-law counts under diversity jurisdiction, and — unlike the prior pleadings — asserts each count only against the specific Defendant or Defendants named in that count, incorporating only specifically identified paragraphs. (SAC ¶ 3.) Only three counts are asserted against Hampton: Count 11 (battery/vicarious liability for nonconsensual medication), Count 15 (institutional/professional negligence), and Count 17 (false imprisonment based on continued confinement). Jodi Sgouros is not named as a Defendant in the SAC, in its caption or in any count.

## C.  Plaintiff's Service Efforts

Hampton itself and Moving Defendants were served on January 3, 2025, and have appeared and litigated throughout. (ECF No. 8) By the Moving Defendants' own account.

Upon receipt of the instant motion, Plaintiff acted immediately: on July 2, 2026, Plaintiff requested issuance of summonses for Dr. Houdart, Dr. Rehman, and Ms. Giunta, and for the other Defendants named in the Second Amended Complaint, and the Clerk issued the summons on July 6, 2026 (ECF No. 92; Clonan Cert. ¶ 10). On July 7, 2026, Plaintiff emailed courtesy copies of the issued summonses and the Second Amended Complaint to counsel of record for the Hampton defendants (Clonan Cert. ¶ 11). Also on July 7, 2026, Plaintiff mailed service packets — the issued summonses and copies of the Second Amended Complaint, with money orders for the statutory fees — to the Sheriff of Burlington County, for personal service upon the Hampton Defendants at their place of employment, and to the Sheriff of Monmouth County, for personal

service upon the CentraState and Monmouth Medical Center defendants (Clonan Cert. ¶ 12).

Each affidavit of service will be filed on the docket immediately upon receipt from the respective

Sheriff's office.

## LEGAL ARGUMENT

## POINT I

## THE RULE 12(b)(5) MOTION SHOULD BE DENIED AND PLAINTIFF'S CROSS-MOTION FOR AN EXTENSION OF TIME TO COMPLETE SERVICE SHOULD BE GRANTED

### A.  The Rule 4(m) Legal Standard

Rule 4(m) provides that if a defendant is not served within 90 days after the complaint is

filed, the court "must dismiss the action without prejudice against that defendant or order that

service be made within a specified time," but that "if the plaintiff shows good cause for the

failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P.

4(m) (emphasis added). The Third Circuit prescribes a two-step inquiry: first, the district court

determines whether good cause exists, in which case an extension is mandatory; second, even

absent good cause, "the court may in its discretion decide whether to dismiss the case without

prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305

(3d Cir. 1995); see also *Boley v. Kaymark*, 123 F.3d 756, 758–59 (3d Cir. 1997).

In exercising that discretion, a court may consider "actual notice of the legal action;

prejudice to the defendant; the statute of limitations on the underlying causes of action; the

conduct of the defendant; and whether the plaintiff is represented by counsel," as well as any

other relevant factor. *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 115–16 (3d Cir. 2009); see also *Boley*, 123 F.3d at 758–59. *Petrucelli* specifically instructs that, after determining whether good cause exists, a district court should consider whether the applicable statute of limitations would bar a refiled action — a circumstance in which a dismissal, though nominally without prejudice, is preclusive in its practical effect — while recognizing that the running of the limitations period does not, by itself, require an extension. See 46 F.3d at 1305–06. And in *Boley*, the Third Circuit held that the running of the statute of limitations supports a discretionary extension and that a defendant's loss of the benefit of a limitations defense, standing alone, is not prejudice weighing against such an extension. 123 F.3d at 758–59.

**B.  Good Cause Exists for the Delay in Service**

Plaintiff respectfully submits that good cause exists for the failure to complete service within the 45-day period set by the Court's August 15, 2025 Opinion, for the reasons detailed in the accompanying Certification. (Clonan Cert. ¶¶ 2–12.)

First, for nearly the entire period between August 15, 2025 and June 11, 2026, this action stood dismissed and closed. The Court's June 10, 2026 Letter Order itself describes the consequence of any further failure to amend as "this action remaining closed and dismissed." (ECF No. 82 at 2.) The August 15, 2025 Opinion dismissed the First Amended Complaint at the same time that it directed service of that pleading within forty-five days. Plaintiff, proceeding pro se, understood in good faith that there was no operative complaint capable of service during that period: the First Amended Complaint had been dismissed, and the Second Amended Complaint did not yet exist. Whatever a trained lawyer might have made of the interplay between the service directive and the simultaneous dismissal of the pleading to be served, a layperson cannot

fairly be faulted for concluding that his service obligations would attach to the forthcoming amended pleading.

Second, during that same period Plaintiff diligently sought the tools to litigate properly: he applied for leave to proceed in forma pauperis and for the appointment of pro bono counsel (ECF No. 79) — relief that, if granted, would entitle him to service of process by a United States marshal. See Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d). The Court denied that application without prejudice as premature on June 10, 2026, with express leave to renew once the Second Amended Complaint was filed (ECF No. 82), and Plaintiff has renewed both requests: the renewed in forma pauperis application was filed on June 30, 2026 (ECF No. 86), and the renewed application for the appointment of pro bono counsel was filed on July 1, 2026 (ECF No. 87). Both remain pending. A pro se litigant who is actively seeking counsel and pauper status — in part because he needs help with precisely these procedural mechanics — is not a litigant who has ignored his obligations.

Third, Plaintiff's personal circumstances during the period at issue were extraordinary. In August 2025, Plaintiff lost his employment at Mariner Finance. During the forty-five-day period set by the August 15, 2025 Opinion, Plaintiff's wife was in the final months of a pregnancy that culminated in the cesarean delivery of the couple's son on November 11, 2025, shortly after that period expired, requiring Plaintiff to care for both his recovering wife, their newborn and three additional daughters. And Plaintiff was himself experiencing severe anxiety and post-traumatic distress arising from the very events at issue in this action, which has impaired his ability to function at his prior professional level. The combined weight of those months substantially occupied Plaintiff from that period forward. (Clonan Cert. ¶ 6.)

Fourth, Plaintiff's conduct before and after that period reflects diligence, not neglect: he retained a professional process server at the outset of the case and served Hampton in January 2025; by the Moving Defendants' own account, he sought waiver of service through their prior counsel in May 2025 and was refused (Defs.' Br. at 10–11 & n.3); he filed the Second Amended Complaint one day after the Court authorized it; and he acted immediately upon receipt of the instant motion. (Clonan Cert. ¶¶ 2, 4, 7, 9–12.)

Independently of Rule 4(m), Rule 6(b)(1)(B) authorizes the Court to extend a deadline that has already expired where the failure to act resulted from "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect is an equitable determination that weighs the danger of prejudice to the opposing party, the length of the delay and its potential impact on the proceedings, the reason for the delay — including whether it was within the movant's reasonable control — and whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Every factor favors Plaintiff here: the individual Defendants face no cognizable prejudice (see Point I.C, infra); the delay coincided almost entirely with the period during which this action stood dismissed and closed; the reasons for the delay — a genuinely confusing procedural posture, the birth of Plaintiff's child, and the pendency of his applications for pauper status and appointed counsel — were substantially outside a pro se layperson's reasonable control; and Plaintiff has acted in good faith throughout, as his conduct before and after that period demonstrates.

Fifth, the Court itself has already evaluated Plaintiff's conduct during this same period — and responded with lenity rather than forfeiture. Confronted with Plaintiff's missed amendment deadlines over the identical stretch of months, Magistrate Judge Singh's June 10, 2026 Letter Order acknowledged Plaintiff's pro se filings and correspondence (ECF Nos. 79, 80) and granted

an additional thirty days to amend rather than leaving the action closed. (ECF No. 82.) Plaintiff honored that indulgence with immediate compliance, filing the Second Amended Complaint the next day. The same conduct, over the same period, for the same reasons, should be treated the same way with respect to service: relief conditioned on prompt compliance — which Plaintiff has already undertaken — rather than forfeiture of his claims. Pro se status does not excuse compliance with the rules, but the Supreme Court requires that pro se litigants' filings and circumstances be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Construed that way, this record shows obligations interrupted by genuine confusion and hardship — not obligations ignored.

## C.  Even Absent Good Cause, the Court Should Exercise Its Discretion to Extend the Time for Service

Even if the Court concludes that good cause is lacking, every discretionary factor identified in *Petrucelli* favors an extension here rather than dismissal. As a threshold matter, the Moving Defendants' rhetorical refrain that "[a]lmost a year has passed" since the August 15, 2025 Opinion (Defs.' Br. at 9) omits that the action stood dismissed and closed for nearly all of that period, and that the Second Amended Complaint was filed within the time expressly authorized by Magistrate Judge Singh's June 10, 2026 Letter Order. (ECF No. 82.) The Moving Defendants' brief does not mention that Letter Order at all.

First, and most significantly, the statute of limitations has run. The events giving rise to Plaintiff's claims occurred in March 2023; New Jersey's two-year limitations period for personal-injury actions, N.J.S.A. 2A:14-2, expired in March 2025. A dismissal "without prejudice" under Rule 4(m) would therefore be a dismissal with prejudice in everything but name — it would forever extinguish claims that this Court has never evaluated on their merits. That is

precisely the circumstance in which *Petrucelli* directs district courts to consider a discretionary extension. 46 F.3d at 1305–06.

Second, the individual Defendants have had actual notice of this action, and of the precise claims against them, since early 2025. They were named in the original Complaint in December 2024 and in every pleading since. They have been represented by two successive law firms — Buchanan Ingersoll & Rooney PC, as the Moving Defendants' own brief recounts (Defs.' Br. at 11 n.3), and now Lewis Brisbois Bisgaard & Smith LLP — acting on their behalf in connection with this action. The instant 30-page merits brief, filed on their behalf, is itself proof that they have full knowledge of the claims and every opportunity to defend.

Third, the Moving Defendants identify no prejudice — none — from the timing of formal service. The evidence in this case is overwhelmingly documentary: Hampton's own medical records, screening certificates, transfer paperwork, and care-plan entries, all of which have been preserved and many of which are already exhibits in this litigation. No witness has been lost and no evidence has gone stale by reason of the service delay, as distinct from the ordinary passage of litigation time attributable to motion practice by all parties.

Fourth, Plaintiff has now completed every step of service within his control: summonses issued by the Clerk on July 6, 2026 (ECF No. 92); courtesy copies of the summonses and operative complaint provided to defense counsel of record; and service packets, with certified fees paid, delivered to the Burlington and Monmouth County Sheriffs for personal service. (Clonan Cert. ¶¶ 9–12 & Exs.A–D.)

Fifth, Plaintiff's renewed applications to proceed in forma pauperis and for the appointment of pro bono counsel — which the June 10, 2026 Letter Order expressly invited Plaintiff to file upon the filing of the Second Amended Complaint — are now pending before the

Court. (ECF Nos. 86, 87.) Should the Court grant the in forma pauperis application, Rule 4(c)(3) provides that the Court "must" order that service be made by a United States marshal or deputy marshal. Plaintiff respectfully submits that the pending applications should be resolved before or together with the Rule 12(b)(5) motion, because their disposition bears directly on the appropriate mechanism for completing service. An extension of the service period, coupled if appropriate with marshal service, would conclusively resolve any remaining concern about service on the individual Defendants.

The Court should accordingly deny the Rule 12(b)(5) motion and grant Plaintiff's cross-motion, extending the time for service nunc pro tunc and deeming timely the service that has been completed.

## D.  In No Event May Dismissal Be With Prejudice, and the Motion Is Moot as to Jodi Sgouros

The Moving Defendants' proposed order asks the Court to dismiss the claims against the individual Defendants "with prejudice" for failure of service. That relief is unavailable as a matter of law: Rule 4(m) commands that a dismissal for untimely service be "without prejudice." Fed. R. Civ. P. 4(m). A service dismissal is not an adjudication on the merits and cannot be converted into one.

The motion is also moot as to Jodi Sgouros. The Second Amended Complaint does not name Ms. Sgouros in its caption, its parties section, or any count. There is no claim against her to dismiss. The Moving Defendants' proposed order is likewise overbroad in a second respect: it would dismiss "all direct and cross-claims" against Hampton even though the motion challenges only three of the SAC's twenty counts and Hampton is named in only those three.

15

Finally, the Moving Defendants observe that the certificate of service appended to the Second Amended Complaint contains a garbled cut-and-paste error that ends mid-sentence. (Defs.' Br. at 10 & n.2.) Plaintiff acknowledges and regrets that clerical error. But an ECF certificate of service concerns the service of filed papers on counsel of record under Rule 5; it has no bearing on service of the summons and complaint under Rule 4, which is addressed above. A clerical defect of form in a pro se filing is not a ground for dismissal. Cf. *Erickson*, 551 U.S. at 94.

Nor could a with-prejudice dismissal be justified as a sanction for non-compliance with the Court's orders. The Moving Defendants have not invoked Rule 41(b), and the factors governing that most extreme of sanctions — including willfulness, a history of dilatoriness, the availability of lesser sanctions, and the meritoriousness of the claims — would not support it. See *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Plaintiff's non-compliance was neither willful nor contumacious; a lesser and complete remedy exists in the very extension Plaintiff cross-moves for; and the claims are meritorious for the reasons shown in Point II.

## POINT II

## COUNTS 11, 15, AND 17 STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

### A. Standard of Review

To survive a motion under Rule 12(b)(6), a complaint need only contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the

16

plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Two further principles frame this motion. First, an affirmative defense — including a statutory immunity — may support dismissal under Rule 12(b)(6) only where the defense is "apparent on the face of the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Second, a pleading "may state as many separate claims or defenses as it has, regardless of consistency," and may plead claims and facts in the alternative. Fed. R. Civ. P. 8(d)(2)–(3).

## B.  N.J.S.A. 30:4-27.7 Provides Only Conditional Immunity That Cannot Be Resolved on the Pleadings

The centerpiece of the Moving Defendants' merits argument is N.J.S.A. 30:4-27.7, which they repeatedly describe as an "absolute" immunity. The statute's text says otherwise. It protects a short-term care facility's designated staff or their employers only when they are "acting in good faith" and only when they take "reasonable steps to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment." N.J.S.A. 30:4-27.7. Their own authority confirms that the immunity is conditional: in *Ziemba v. Riverview Medical Center*, 275 N.J. Super. 293 (App. Div. 1994), the court recognized immunity for facility defendants "if they acted in good faith and took reasonable steps" in effectuating a commitment. Good faith and objective reasonableness are the immunity's prerequisites — and they are quintessential questions of fact. Indeed, *Ziemba* itself was decided on summary

17

judgment, upon a full evidentiary record concerning the thoroughness of the defendants' pre-commitment evaluation — not on the pleadings.

The SAC squarely and specifically pleads the absence of both prerequisites. This is not a "threadbare recital" or a "self-serving" legal conclusion, as the Moving Defendants would have it. Paragraph 66 of the SAC identifies ten concrete, document-based facts, including: a screening certificate that recorded "no hallucinations" while certifying psychosis; reliance on "medication overuse" despite toxicology results negative for alcohol, benzodiazepines, and illicit drugs; Hampton's own "No Justification for Hospitalization documented" entry; the care plan inactivated as "added by mistake"; and Dr. Houdart's alleged admission that the commitment was a "mistake" — all followed by days of continued confinement and forced medication. (SAC ¶¶ 52–58, 66.) These are factual allegations, entitled to the presumption of truth, from which a factfinder could readily conclude that Hampton's conduct was neither in good faith nor objectively reasonable. Nothing on the face of the SAC establishes the immunity; the SAC pleads its negation. Under *Schmidt*, that ends the inquiry at this stage. 770 F.3d at 249.

The Moving Defendants' contrary argument is revealing. They ask the Court to presume good faith from two facts: that Hampton relied on the transferring facilities' records, and that a temporary commitment order issued on March 27, 2023. (Defs.' Br. at 14–15, 20.) But the SAC alleges that the transferring records were flagrantly and objectively flawed — contradicted by toxicology and by the screening certificate itself — and that Hampton's conduct after March 26, 2023 continued in the teeth of Hampton's own records disclaiming any justification for hospitalization. Drawing the Moving Defendants' preferred inference would require the Court to resolve disputed facts against the pleader and in favor of the movant — the precise inverse of the Rule 12(b)(6) standard. *Phillips*, 515 F.3d at 231.

18

The same is true count by count: on the pleaded facts — forcible medication without consent or a documented emergency, and continued confinement after Hampton's own records disclaimed any justification — good faith and objective reasonableness are not apparent from the face of the SAC as to Count 11's forced-medication theory or Count 17's continued-confinement theory. (SAC ¶¶ 51–58, 66, 68.) They are disputed questions of fact.

Independently, the immunity's text does not reach that conduct at all. Section 27.7 protects reasonable, good-faith steps "to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment." Those words address the commitment process — evaluating a person, taking custody of him, and delivering him to a facility. They say nothing about the forcible administration of psychotropic medication to a patient who has refused it, and nothing about a facility's compliance with its mandatory statutory duty to administratively discharge a patient once its own treatment team determines that involuntary commitment is no longer needed. N.J.S.A. 30:4-27.17(a); (see SAC ¶ 68.) Had the Legislature intended to immunize every treatment decision within a facility's walls, it would not have limited the immunity to steps to "assess, take custody of, detain or transport."

Notably, the Moving Defendants' brief twice asserts that Hampton is "entitled to immunity . . . per N.J.S.A. 30:4-27.2" (Defs.' Br. at 15, 20) — but that provision is the definitions section of the statute and confers no immunity at all.

### C. Count 11 Adequately Pleads Battery Against Hampton

Under New Jersey law, a battery is a voluntary, deliberate act resulting in harmful or offensive contact with the person of another, without consent. See *Kelly v. County of Monmouth*, 380 N.J. Super. 552 (App. Div. 2005). Count 11 pleads each element directly: Hampton's staff intentionally administered Haldol, Risperdal, and Cogentin to Plaintiff (voluntary, deliberate acts

of physical contact); Plaintiff "refused, objected, was not asked for meaningful consent, or was not given a meaningful opportunity to consent"; and there was no documented emergency that could justify overriding his refusal. (SAC ¶¶ 118–19, 123–25.) The New Jersey Supreme Court has long recognized that medical treatment administered without the patient's consent is a battery. *Perna v. Pirozzi*, 92 N.J. 446, 460–61 (1983).

The Moving Defendants' pleading-based argument — that Count 11 uses the word "duty," which is not an element of battery — elevates a stray word over the count's substance. The count expressly pleads "intentional, harmful, or offensive physical contact" without consent (SAC ¶ 125), and expressly denominates the claim "an intentional-tort claim distinct from any professional-negligence claim" (SAC ¶ 120). Surplus language does not un-plead well-pleaded elements, particularly in a pro se pleading construed liberally. *Erickson*, 551 U.S. at 94.

Nor does the March 27, 2023 temporary commitment order supply consent or justification for forced medication. An order authorizing involuntary commitment is not an order authorizing involuntary medication: involuntarily committed patients retain a constitutionally protected interest in refusing antipsychotic drugs, which may be overridden only through the exercise of accepted professional judgment — itself a fact-intensive question that cannot be resolved on the pleadings. *Rennie v. Klein*, 720 F.2d 266 (3d Cir. 1983) (en banc); cf. N.J.S.A. 30:4-24.2 (enumerating the rights of patients receiving mental-health services, including protections concerning the administration of medication). And in any event, the SAC alleges the forced medication began on March 25, 2023 — two days before any court order existed. (SAC ¶¶ 51, 54.) Nor can the Moving Defendants recharacterize Count 11 as mislabeled malpractice: battery lies where treatment is administered without any consent, *Perna*, 92 N.J. at 460–61, and the SAC pleads refusal, absence of consent, and the absence of any documented emergency.

Whether some emergency or exercise of professional judgment could have justified overriding Plaintiff's refusal is an affirmative justification that the Moving Defendants would bear the burden of establishing — and it appears nowhere on the face of the SAC, which pleads its absence. *Schmidt*, 770 F.3d at 249. For the reasons in Point II.B, the conditional immunity of Section 27.7 neither reaches this conduct nor can be resolved on the pleadings. Count 11 states a claim.

### D.  Count 15 Adequately Pleads Institutional and Professional Negligence

A medical-negligence claim requires a duty of care, deviation from the applicable standard, proximate causation, and damages. Count 15 pleads each: Hampton's institutional duties to perform an independent intake assessment, verify sending-facility records, ensure medication and confinement were clinically and legally justified, and discharge Plaintiff once confinement lacked justification (SAC ¶ 143); breach of each duty, including continued confinement and medication after Hampton's own records stated "No Justification for Hospitalization documented" and "added by mistake" (SAC ¶ 144); and resulting injury (SAC ¶ 147). The count also pleads gross negligence in the alternative. (SAC ¶¶ 69, 146.)

The Moving Defendants' principal attack is a claimed "contradiction": that Plaintiff alleges Hampton failed to conduct an independent intake evaluation (SAC ¶ 50) while also alleging that Dr. Rehman "evaluated" Plaintiff (SAC ¶ 52). There is no contradiction — and the argument rests on a word the Second Amended Complaint does not contain. The Moving Defendants assert that Plaintiff alleges Dr. Rehman "personally evaluated" him upon admission. (Defs.' Br. at 17; see also id. at 19 n.4.) Paragraph 52 says no such thing. It alleges that on March 26, 2023 — the day after the intake addressed in ¶ 50 — Dr. Rehman, in completing the "Justification for Hospitalization" section of Hampton's evaluation records, wrote "No

Justification for Hospitalization documented." (SAC ¶ 52; see SAC ¶ 16 (identifying Dr. Rehman as the "physician or evaluator" who "documented" that entry).) The SAC nowhere alleges that Dr. Rehman conducted an in-person or independent examination of Plaintiff. And the natural reading of the entry Dr. Rehman made — that no justification for hospitalization was documented — is that his review was of the very transferring-facility records on which ¶ 50 alleges Hampton relied. On a Rule 12(b)(6) motion, that reading, and every other reasonable inference, belongs to Plaintiff, not to the movant. *Phillips*, 515 F.3d at 231. Far from contradicting ¶ 50, ¶ 52 corroborates it: whatever form of review Dr. Rehman performed produced Hampton's own written acknowledgment that there was no documented justification for hospitalizing Plaintiff. A records entry made the day after admission conceding the absence of documented justification does not cure a deficient intake; it evidences the deficiency — and Hampton's notice of it. In any event, Rule 8(d)(2)–(3) expressly permits alternative and even inconsistent pleading, so the asserted tension — if it existed — would be no basis for dismissal.

The Moving Defendants' remaining argument is the same conditional immunity addressed in Point II.B, and it fails for the same reasons: the SAC pleads specific facts negating good faith and objective reasonableness, and the immunity does not reach Hampton's mandatory discharge duty under N.J.S.A. 30:4-27.17(a) — the duty at the very heart of this count. Count 15 states a claim.

### E.  Count 17 Adequately Pleads False Imprisonment

False imprisonment requires (1) detention of the person against his will and (2) lack of proper legal authority or legal justification. *Mesgleski v. Oraboni*, 330 N.J. Super. 10, 24 (App. Div. 2000). The Moving Defendants argue that the screening certificate (with its 72-hour detention window, N.J.S.A. 30:4-27.9(a)) and the March 27, 2023 temporary order supplied

continuous justification through discharge. That argument misreads the count. (It also misdates it: the Moving Defendants' brief repeatedly recites the relevant events as occurring in March 2025 (Defs.' Br. at 21–22); as the SAC alleges, they occurred in March 2023.)

Count 17 alleges that Hampton's justification terminated — as a matter of the commitment statute itself — when Hampton's own treatment team determined, or its own records reflected, that hospitalization was not justified: the "No Justification for Hospitalization documented" entry of March 26; the "added by mistake" inactivation of March 27; the alleged admission of "mistake" on March 28; and corroborating information provided by Plaintiff's wife on March 28. (SAC ¶¶ 52–58, 154.) At that point, N.J.S.A. 30:4-27.17(a) made administrative discharge mandatory. (SAC ¶ 68.) To be clear, Plaintiff does not sue "under" Section 27.17(a) or contend that it creates a private right of action; the statute matters because it defines, as a matter of New Jersey law, the point at which continued detention loses "proper legal authority or legal justification" — the second element of common-law false imprisonment under *Mesgleski*. A facility's statutory authority to detain is not a license to detain in knowing disregard of the statute's own mandatory discharge trigger; detention beyond that point is detention "without proper legal authority or legal justification." Whether and when Hampton's treatment team made or should have made that determination is a fact question that cannot be resolved against Plaintiff on the pleadings.

At a minimum, even if the Court were to conclude that this theory sounds in negligence rather than false imprisonment, the proper disposition would be dismissal of Count 17 alone, without prejudice — not the with-prejudice dismissal of all claims that the Moving Defendants request, and not dismissal of Counts 11 and 15, through which the same facts and damages are independently actionable.

23

## POINT III

## ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE

For the reasons above, no count should be dismissed. If the Court concludes otherwise as to any count, dismissal should be without prejudice and with leave to amend. A dismissal for insufficient service must be without prejudice by the plain text of Rule 4(m). And the Third Circuit has instructed that pro se and in forma pauperis plaintiffs whose complaints are subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This is the first time the sufficiency of these particular counts, as re-pleaded in conformity with the Court's prior guidance, has been tested; the Moving Defendants offer no basis to find that any pleading deficiency — if one exists — could not be cured.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) deny the Moving Defendants' Motion to Dismiss (ECF No. 85) in its entirety; (2) grant Plaintiff's cross-motion and extend, nunc pro tunc, Plaintiff's time to complete service on Dr. Houdart, Dr. Rehman, and Ms. Giunta, deeming timely any service completed before the Court's ruling; (3) deny the motion as moot as to Jodi Sgouros, who is not a party to the Second Amended Complaint; and (4) grant such other relief as the Court deems just.

Dated: July 7th, 2026

Respectfully submitted,

/s/ Bradley Clonan

24

Bradley Clonan, Plaintiff Pro Se
2604 W Rhododendron Drive
Abingdon, Maryland 21009
(732) 476-9555
clonanxyz@gmail.com