**Our File No. 34.15683 JMH**

| | |
|---|---|
| **BRADLEY CLONAN,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**CENTRASTATE HEALTHCARE SYSTEM; HAMPTON BEHAVIORAL HEALTH CENTER; MONMOUTH MEDICAL CENTER; DR. CHRIS FABIAN, M.D.; THEO F. KALOGRIDIS, R.N.; DR. STEVEN GUILLEN, M.D.; DR. STEPHEN VAN PELT, M.D.; A. TABSKO, PA-C; ANTONELLA SALONY, R.N.; JORDAN WHITE, R.N.; DR. MICHAEL HOUDART, D.O.; DR. ATTA-UR REHMAN, M.D.; ANITA GIUNTA, L.S.W.; and "INTERN ASHLEY" (John/Jane Doe),**<br><br>**Defendants.** | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>**Civil Case No. 3:24-CV-11399-RK-RLS** |

# BRIEF IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

**Of Counsel and on the Brief:**
John M. Hockin, Jr. (ID # 029882007)

**RONAN, TUZZIO & GIANNONE, P.C.**
**4000 Route 66**
**One Hovchild Plaza, Suite 231**
**Tinton Falls, New Jersey 07753**
**(732) 922-3300**

**Attorneys for Defendants, Monmouth Medical Center, Christopher Fabian, M.D., and Theo F. Kalogridis, R.N.**

**TABLE OF CONTENTS**

1. Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

2.Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3. Legal Argument

POINT I: THE SECOND AMENDED COMPLAINT MUST BE DISMISSED, WITH PREJUDICE, AS TO THE MMC DEFENDANTS, BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THEM UPON WHICH RELIEF CAN BE GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

A. Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

B. Plaintiff Has Alleged Insufficient Facts to Defeat Statutory Immunity. . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . 5

4.Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

## TABLE OF AUTHORITIES

**Cases:**

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). . . . . . . . . . . . . . . . . . . . . . .2, 3

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008). . . . . . . . . . . . . . . . . . . . . 2

Ashcroft v. Iqbal, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ziemba v. Riverview Med. Ctr., 275 N.J. Super. 293, 295, 645 A.2d 1276, 1277 (App. Div. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hottenstein v. City of Sea Isle City, 977 F.Supp.2d 353, 366 (D.N.J. 2013) . . . . . . . . . . 5

**Statutes & Regulations:**

N.J.S.A. 30:4-27.7(a). . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . 2, 3, 4, 5, 8, 10, 11

N.J.S.A. 59:3-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Rules:**

Fed. R. Civ. P. 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 10, 11, 12

**STATEMENT OF FACTS**

On or about December 20, 2024, plaintiff *pro se*, Bradley Clonan (hereinafter "plaintiff"), filed a complaint in the United States District Court for the District of New Jersey against numerous defendants, alleging numerous issues and damages stemming from an involuntary mental health commitment that took place in 2023. Multiple motions to dismiss that initial complaint were filed by various defendants. On March 25, 2025, this Court entered an order *sua sponte* dismissing the initial complaint, without prejudice, pursuant to Fed. R. Civ. P. 8.

Plaintiff subsequently filed a first amended complaint (the "FAC") on or about April 7, 2025. The FAC contained numerous claims based on alleged violations of the United States Constitution and federal statutes. Following the filing of multiple motions to dismiss the FAC by various defendants, this Court entered an order on August 15, 2025 dismissing the FAC.

Plaintiff filed a Second Amended Complaint (the "SAC"), which is the subject of the present motion, on June 11, 2026. Unlike the prior complaints, the SAC only contains state law claims and is premised upon diversity jurisdiction. Additionally, the SAC contains significantly-fewer named defendants as compared to the previous two complaints. The present motion is being filed on behalf of defendants, Monmouth Medical Center, Christopher Fabian, M.D. (hereinafter "Dr. Fabian" when referred to individually), and Theo F. Kalogridis, R.N. (hereinafter "Nurse Kalogridis" when referred to individually). Collectively, these defendants shall be referred to as the "MMC defendants" for purposes of the present motion.

## LEGAL ARGUMENT

## POINT I

## THE SECOND AMENDED COMPLAINT MUST BE DISMISSED, WITH PREJUDICE, AS TO THE MMC DEFENDANTS, BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST THEM UPON WHICH RELIEF CAN BE GRANTED

The SAC represents a significant departure from the prior two complaints filed in this matter. Unlike the first two complaints, it does not contain any claims founded under federal law or the United States Constitution. Instead, it asserts only state law claims pursuant to alleged diversity jurisdiction.

As a result, the deficiencies of the SAC are different from those of the original two complaints. Nevertheless, the SAC still must be dismissed, with prejudice, as to the MMC defendants because plaintiff has again failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Specifically, dismissal is required because the facts alleged by plaintiff cannot defeat the immunity provision of N.J.S.A. 30:4-27.7(a), which applies to the MMC defendants.

### A. Legal Standard

Fed. R. Civ. P. 12(b)(6) provides that a party may assert a defense for "failure to state a claim upon which relief can be granted" by way of motion in lieu of filing a responsive pleading. The present motion is based on this provision.

To survive a motion filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough factual matter (taken as true) to suggest" an element required to support its claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). There must be "plausible grounds" to support a claim. *Twombly*, 550 U.S. at 556.

Certainly, “labels and conclusions” do not suffice, nor do “formulaic recitation[s] of the elements of a cause of action.” *Id.* at 555. “Factual allegations must be enough to raise a right to relief above the speculative level.” *Ibid.* Further, the factual allegations supporting the complaint’s claims cannot simply consist of “an unadorned, the-defendant-unlawfully-harmed-me accusation.” *Twombly*, 550 U.S. at 555.

Put simply, then, a complaint must contain “enough facts to state a claim to relief that is plausible on its face.” *Id.* at 570. A complaint that is not plausible on its face—i.e., restricting analysis to the complaint itself, not considering any other documents—cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a claim to have facial plausibility, the plaintiff must plead, in the complaint itself, “factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Ibid.*

The present motion to dismiss for failure to state a claim is based upon plaintiff’s failure to plead facts sufficient to overcome N.J.S.A. 30:4-27.7(a). That provision confers immunity upon a number of classes of individuals and entities, including a “screening service,” who is “acting in good faith . . . [and] takes reasonable steps to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment.” N.J.S.A. 30:4-27.7(a). Any such person or entity covered by the statute “is immune from civil or criminal liability.” *Ibid.*

“Good faith” and “reasonable steps” are not defined terms. Limited case law has helped to establish what these terms mean in practice in the specific context of N.J.S.A. 30:4-27.7(a).

In *Ziemba v. Riverview Med. Ctr.*, 275 N.J. Super. 293, 295, 645 A.2d 1276, 1277 (App. Div. 1994), a New Jersey appellate court considered, in reviewing a trial court's decision on a motion for summary judgment, whether there was a genuine issue of material fact regarding whether the defendants therein acted in good faith and took reasonable steps pursuant to N.J.S.A. 30:4-27.7(a). The *Ziemba* plaintiff was screened and evaluated by the Monmouth County Screening Center, which ultimately led to his involuntary commitment. *Id.* at 275 N.J. Super. 297, 645 A.2d 1278. He alleged that the defendants "did not take reasonable steps" in the commitment process. *Id.* at 275 N.J. Super. 297, 645 A.2d 1279. For instance, the plaintiff claimed that the on-call screener who interviewed him at the hospital did not attempt to verify any of the information he had been given. *Id.* at 275 N.J. Super. 297, 645 A.2d 1278. Further, the psychiatrist who evaluated the plaintiff did not independently verify the information he received from the screener. *Ibid.*

The Court held that the defendants were entitled to immunity pursuant to N.J.S.A. 30:4-27.7(a). *Id*. at 275 N.J. Super. 300, 645 A.2d 1280. It explained that "those involved in the involuntary commitment process enjoy an absolute immunity from civil or criminal liability if they acted in good faith and took reasonable steps towards effectuating the commitment." *Ibid.* It further noted that the process utilized by the defendants, including the screener and the psychiatrist, in committing the plaintiff was "systemic, orderly and thorough." *Ibid.*

In a separate, though highly-analogous, context from N.J.S.A. 30:4-27.7(a) specifically, courts have explored the meaning of "good faith" more thoroughly with respect to the immunity provision of New Jersey's Tort Claims Act, which provides, in

relevant part, that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. This Court has held that the "good faith" requirement of N.J.S.A. 59:3-3 can be satisfied by a showing of either "objective reasonableness" or "subjective good faith." *Hottenstein v. City of Sea Isle City*, 977 F.Supp.2d 353, 366 (D.N.J. 2013).

**B. Plaintiff Has Alleged Insufficient Facts to Defeat Statutory Immunity**

Plaintiff's claims against the MMC defendants are contained in the first three counts of the SAC. These claims are specifically for negligent psychiatric screening under state law. The defense appreciates that plaintiff identified, within each of these counts, the specific paragraphs of the SAC upon which he is relying in terms of factual allegations. Further, plaintiff specifically outlined the facts upon which he is alleging lack of good faith and a failure to take reasonable steps pursuant to N.J.S.A. 30:4-27.7(a) in paragraph 66 of the SAC. Plaintiff has cured the structural deficiencies that existed in his first two complaints, with the result that the SAC is straightforward and clear regarding the nature of its claims and the facts upon which each claim relies.

The key issue that remains, however, is that the facts alleged by plaintiff do not support a conclusion that the MMC defendants did *not* act in good faith or take reasonable steps to assess his condition. The alleged facts, as set forth in paragraphs 22-24, 31-42, 62-63, and 66-69 of the SAC, would not—even if all taken to be true—defeat MMC's entitlement to immunity because they would not establish a lack of good faith or a failure to take reasonable steps.

Each of these sets of pleaded facts is discussed specifically below.

**i. Plaintiff's Travel Itinerary**

First, in paragraphs 22-24, plaintiff alleges that 1) he reported a suspicious person to the police on March 22, 2023; 2) he drove from Maryland to Philadelphia, then from Philadelphia to New Jersey, on March 23, 2022; and 3) that records "falsely or misleadingly characterized his travel as a direct drive from Maryland to New Jersey caused by delusional thinking or paranoia regarding his employer," even though records "supported factual events that Plaintiff had reported."

Plaintiff does not explain, however, how an alleged mistake in the records describing his travel as direct from Maryland to New Jersey—as opposed to from Maryland to Philadelphia to New Jersey—had any substantive impact on his screening by Nurse Kalogridis or his evaluation by Dr. Fabian. Indeed, the significance of this alleged mistake is entirely unclear. Plaintiff does not dispute that he did travel to New Jersey, regardless of whether he traveled to Philadelphia before he arrived in New Jersey. Plaintiff alleges no facts as to why or how Nurse Kalogridis and/or Dr. Fabian might have felt he was engaging in delusional thinking or paranoia only if he traveled directly from Maryland to New Jersey, rather than stopping in Philadelphia in between. As such, these alleged facts do not seem to have any bearing on whether the MMC defendants acted in good faith or took reasonable steps to assess plaintiff.

**ii. Substance Overuse and Toxicology Results**

Second, in paragraphs 31-42, plaintiff alleges that 1) his blood and urine toxicology testing was positive only for his prescribed medications, not for any illicit or other drugs, 2) the records state that plaintiff was "overtaking" his prescribed medications, 3) Nurse Kalogridis relied upon the notion that plaintiff was overusing his medication and that he had traveled directly from Maryland to New Jersey during his screening, and 3) Dr. Fabian

conducted a telepsychiatry evaluation of plaintiff without his consent, following which Dr. Fabian contradicted earlier notations to the effect that plaintiff was having hallucinations.

With respect to plaintiff's claim that the blood and urine toxicology testing invalidated the notion that he was overusing prescribed medications, that testing—as plaintiff acknowledges—simply 1) confirmed the presence of prescribed and authorized substances and 2) denied the presence of illicit or other substances. Such results are not at all inconsistent with the notion that plaintiff was overusing his prescribed medications. Overuse, as set forth in the SAC, means using too much of something that is authorized; it does not mean using something that is unauthorized. Indeed, the fact that his prescribed and authorized substances showed up in the testing would certainly not invalidate the possibility that he was overusing these substances. Thus, contrary to plaintiff's claim, the test results do not contradict the possibility that he overused these items.

As such, plaintiff's allegations regarding the blood and urine toxicology testing do not support any claim regarding lack of good faith or failure to take reasonable steps. To the contrary, obtaining blood and urine toxicology testing was arguably a very reasonable step to take before plaintiff was committed. The results of that testing were not inconsistent with the possibility of overuse of prescribed substances.

To that end, even if Nurse Kalogridis, in his screening assessment of plaintiff, did believe both that plaintiff was overusing prescribed substances and traveled directly from Maryland to New Jersey, neither of these beliefs—whether true or false—constitute evidence that Nurse Kalogridis did not operate in good faith or take reasonable steps to evaluate plaintiff. As discussed above, the significance of plaintiff's travel itinerary is not

clear. The toxicology results are not inconsistent with the notion of overuse of prescribed substances.

With respect to Dr. Fabian, plaintiff's allegations regarding lack of consent for a telepsychiatry evaluation are not relevant to the issue of good faith and reasonable steps. He does not claim that it was unreasonable for Dr. Fabian to conduct a telepsychiatry evaluation and does not claim that he was committed because the evaluation was conducted via telepsychiatry, as opposed to an in-person evaluation. Given the nature of screenings for involuntary commitments, it is to be expected that patients will often not consent to evaluations. Regarding Dr. Fabian's screening documentation indicating that plaintiff had no hallucinations—which plaintiff states contradicted triage documentation—this would only tend to prove that Dr. Fabian did not believe plaintiff was hallucinating but still believed he needed to be committed. It certainly would not suggest or prove that Dr. Fabian was not acting in good faith or taking reasonable steps to evaluate plaintiff.

**iii. Post-Commitment Grievance Procedures**

Third, paragraphs 62 and 63 deal with plaintiff's grievance filed after the treatment in question and how that grievance was handled. Though plaintiff references it in Count Three with respect to MMC, it is not relevant to plaintiff's claims against the MMC defendants, which, as noted above, are for negligent psychiatric screening.

**iv. Paragraph 66 and Express Allegations of Lack of Good Faith**

Fourth, plaintiff sets forth and reiterates in paragraphs 66 through 69 the facts upon which he is relying to defeat N.J.S.A. 30:4-27.7(a), which are specifically set forth in paragraph 66. Plaintiff specifically delineates this section of the SAC as setting forth the

facts relevant to his claim that the various defendants, including the MMC defendants, did not act in good faith or take objectively reasonable steps.

In sum, the facts relevant to the MMC defendants contained in this section are 1) that plaintiff was deemed to be suffering from psychosis and a danger to either himself or others, despite being simultaneously documented as having no hallucinations; 2) indications from the records that plaintiff overused his prescribed medications, with toxicology results showing that he did not use other substances; and 3) fields left blank or incomplete in PESS forms. Plaintiff does not correspondingly claim, with respect to #1, that a person who is not hallucinating automatically is not suffering from psychosis and does not pose a danger to himself or others. Even if plaintiff did so claim, these factual allegations would not support a notion that the MMC defendants did not act in good faith or take reasonable steps, as evaluating plaintiff for hallucinations would only represent a small part of a comprehensive PESS screening. #2 is addressed above. Plaintiff fails to allege how #3 would constitute evidence of lack of good faith or failure to take reasonable steps, as it only supports plaintiff's claim that the MMC defendants were negligent, not that they acted in bad faith or chose not to take reasonable steps to assess him.

**v. Counts One, Two, and Three**

As noted above, plaintiff's claims against the MMC defendants are contained in Counts One (professional negligence and negligent psychiatric screening against Dr. Fabian), Two (professional negligence and negligent PESS screening narrative and documentation against Nurse Kalogridis), and Three (vicarious liability and institutional negligence against MMC). The pleaded facts discussed above are expressly

incorporated by reference into each of these three Counts. These Counts further clarify plaintiff's specific claims against each of the three MMC defendants.

In Count One, plaintiff alleges that Dr. Fabian did not act in good faith or take reasonable steps pursuant to N.J.S.A. 30:4-27.7(a) because he conducted his psychiatric evaluation of plaintiff remotely without plaintiff's consent, determined that plaintiff needed to be committed despite documenting that plaintiff had no hallucinations, relied upon an allegation of medication overuse despite the toxicology results, and failed to reconcile contradictions.

For the reasons expressed above, none of these pleaded facts would support a finding that Dr. Fabian did not act in good faith or take reasonable steps. These pleaded facts are sufficient for a claim of *negligence* to survive a Fed. R. Civ. P. 12(b)(6) motion against Dr. Fabian, but are not sufficient for the survival of a claim of bad faith or failure to take reasonable steps to avoid the immunity provision of N.J.S.A. 30:4-27.7(a). To plead facts sufficient to challenge N.J.S.A. 30:4-27.7(a) immunity, plaintiff would need to allege, i.e., that Dr. Fabian was intentionally dishonest or otherwise did not act with subjective good faith. He has not done so.

In Count Two, plaintiff alleges that Nurse Kalogridis did not act in good faith or take reasonable steps pursuant to N.J.S.A. 30:4-27.7(a) due to claimed inaccuracies regarding plaintiff's travel itinerary and possible prescribed medication overuse. He also claims lack of good faith in leaving certain screening and history fields on PESS forms blank. Like plaintiff's allegations against Dr. Fabian, these pleaded facts only support a claim of negligence against Nurse Kalogridis, not a claim that Nurse Kalogridis actually failed to act with subjective good faith or take reasonable steps to screen plaintiff.

Lastly, in Count Three, plaintiff alleges a lack of good faith and a failure to take reasonable steps by MMC, both 1) vicariously through the conduct of Dr. Fabian and Nurse Kalogridis and 2) by failing to ensure that its PESS forms were complete and accurate. These are essentially the same factual bases cited by plaintiff with respect to Dr. Fabian and Nurse Kalogridis individually, with the addition of an institutional claim against MMC. These pleaded facts, like those as to Dr. Fabian and Nurse Kalogridis, support only negligence claims against MMC, not a claim for lack of good faith or failure to take reasonable steps with respect to N.J.S.A. 30:4-27.7(a).

Ultimately, therefore, while plaintiff has concisely asserted facts and claims in the SAC, the facts he has pleaded are insufficient to overcome the immunity provision of N.J.S.A. 30:4-27.7(a) with respect to the MMC defendants. The pleaded facts are sufficient to support negligence claims against the MMC defendants but fail to support plaintiff's claims that the MMC defendants did not operate in good faith or fail to take reasonable steps. Because the pleaded facts are insufficient to overcome the immunity provided by N.J.S.A. 30:4-27.7(a), plaintiff has failed to plead any claims against the MMC defendants that would not be subject to immunity. Therefore, plaintiff has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), as the MMC defendants are immunized against his negligence claims. The SAC as against the MMC defendants must be dismissed, with prejudice.

**CONCLUSION**

For the reasons set forth above, defendants, Monmouth Medical Center, Christopher Fabian, M.D. i/p/a "Dr. Chris Fabian, M.D.," and Theo F. Kalogridis, R.N., respectfully request that the Second Amended Complaint be dismissed, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), for plaintiff's failure to state a claim upon which relief can be granted against them.

**RONAN, TUZZIO & GIANNONE, P.C.**
Attorneys for Defendants,
Monmouth Medical Center, Christopher Fabian, M.D., and Theo F. Kalogridis, R.N.

BY: /s/ John M. Hockin, Jr.
JOHN M. HOCKIN, JR.

Dated: July 10, 2026