BRADLEY CLONAN, Plaintiff Pro Se
2604 W. Rhododendron Drive
Abingdon, Maryland 21009
(732) 476-9555
clonanxyz@gmail.com

| | |
|---|---|
| **BRADLEY CLONAN,**<br>Plaintiff,<br>v.<br>CENTRASTATE HEALTHCARE SYSTEM; HAMPTON BEHAVIORAL HEALTH CENTER; MONMOUTH MEDICAL CENTER; DR. CHRIS FABIAN, M.D.; THEO F. KALOGRIDIS, R.N.; DR. STEVEN GUILLEN, M.D.; DR. STEPHEN VAN PELT, M.D.; A. TABASKO, PA-C; ANTONELLA SALONY, R.N.; JORDAN WHITE, R.N.; DR. MICHAEL HOUDART, D.O.; DR. ATTA-UR REHMAN, M.D.; ANITA GIUNTA, L.S.W.; and “INTERN ASHLEY” (John/Jane Doe),<br>Defendants. | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**<br>**Civil Action No. 3:24-cv-11399-RK-RLS**<br>**PLAINTIFF’S BRIEF IN OPPOSITION TO THE MONMOUTH DEFENDANTS’ MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF NO. 94)**<br>**Motion Day: August 3, 2026** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................1
QUESTION PRESENTED ......................................................................2
FACTUAL AND PROCEDURAL BACKGROUND ..........................................2
LEGAL STANDARD ..............................................................................4
ARGUMENT .......................................................................................5
I. THE SAC DOES NOT ESTABLISH THE STATUTORY CONDITIONS FOR IMMUNITY ON ITS FACE. ..........................................................5
II. THE SPECIFIC ALLEGATIONS PLAUSIBLY SUPPORT A FAILURE TO TAKE REASONABLE STEPS. ..........................................................7
A. Governing screening requirements make the pleaded omissions and lack of telepsychiatry consent relevant. ..........................................................7
B. Defendants' alternative explanations do not defeat the pleaded medication and travel allegations. ..........................................................9
C. The hallucination and remote-screening allegations are cumulative, not categorical medical propositions. ..........................................................11
D. Each challenged count ties the alleged deficiencies to the responsible defendant. ..........................................................12
III. ZIEMBA AND LEANG DO NOT CONVERT DEVELOPED-RECORD IMMUNITY RULINGS INTO A PLEADING PRESUMPTION. ..................12
IV. DISMISSAL WITH PREJUDICE IS NOT WARRANTED. ....................14
CONCLUSION ....................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) ..........14
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........4
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..........4
*Harrington v. Bergen County*, Civil Action No. 14-5764 (SRC) (D.N.J. Feb. 23, 2015) ..........5, 13–14
*Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353 (D.N.J. 2013) ..........6
*Leang v. Jersey City Board of Education*, 198 N.J. 557 (2009) ..........13
*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ..........4, 10, 14
*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ..........4
*Ziemba v. Riverview Medical Center*, 275 N.J. Super. 293, 645 A.2d 1276 (App. Div. 1994) ..........6, 12–13

**Statutes**

N.J.S.A. 30:4-27.2(b) ..........9
N.J.S.A. 30:4-27.2(h)–(i) ..........9
N.J.S.A. 30:4-27.5(b) ..........7
N.J.S.A. 30:4-27.7(a) .......... 1–2, 5–6, 13
N.J.S.A. 59:3-3 ..........6

**Regulations**

N.J.A.C. 10:31-2.3 ..........8, 11

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 1–2, 4, 7, 10–11, 13
Fed. R. Civ. P. 15(a)(2) ..........14

## PRELIMINARY STATEMENT

The Monmouth Defendants seek dismissal with prejudice of Counts One through Three solely on the ground that N.J.S.A. 30:4-27.7(a) immunizes the screening conduct alleged in the Second Amended Complaint ("SAC"). Their motion should be denied because that statute is conditional, not categorical: it applies when a covered actor, acting in good faith under the civil-commitment statutes, takes reasonable steps for the stated assessment, custody, detention, or transportation purposes.

The SAC alleges more than a label of bad faith. It identifies the screeners, the approximate times and roles, the allegedly inaccurate medication-overuse and travel narrative, incomplete dangerousness-history fields, and an unreconciled record on which the screening certificate was based. SAC ¶¶ 22–24, 31–42, 66–67, 70–85. Those allegations must be accepted as true and read together. They do not conclusively establish either statutory condition.

The defense effectively acknowledges that the pleading itself is adequate. It states that the SAC is "straightforward and clear," that Plaintiff cured the prior structural deficiencies, and that the pleaded facts are sufficient to support negligence. Defs.' Br. 5, 10–11, ECF No. 94-2. The defense nevertheless asks the Court to select its preferred explanations for the alleged discrepancies and to infer reasonable steps and good faith as a matter of law. Rule 12(b)(6) does not permit

that factual choice. The motion should be denied; alternatively, any dismissal should be without prejudice and with leave to amend.

## QUESTION PRESENTED

Whether N.J.S.A. 30:4-27.7(a) requires dismissal at the pleading stage when the SAC plausibly alleges that the Monmouth/PESS screening process relied on disputed factual premises, left individualized dangerousness-history fields blank or incomplete, and issued a screening certificate without reconciling the alleged discrepancies.

Plaintiff respectfully submits that the answer is no.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the SAC on June 11, 2026. ECF No. 83. Monmouth Medical Center, Dr. Chris Fabian, and Theo F. Kalogridis, R.N. (collectively, the "Monmouth Defendants") moved on July 10, 2026 to dismiss Counts One through Three with prejudice under Rule 12(b)(6). ECF Nos. 94, 94-2. Their motion relies on N.J.S.A. 30:4-27.7(a).

The allegations relevant to this motion concern the late-night PESS screening on March 25, 2023. The SAC alleges that a Monmouth Medical Center PESS screener identified as "Theo" was assigned at approximately 1:00 a.m. SAC ¶ 37. It alleges that Mr. Kalogridis documented, repeated, or transmitted a narrative concerning medication overuse and Plaintiff's travel that was materially

inconsistent with the toxicology and travel information described in the pleading. SAC ¶¶ 22–24, 31–32, 38.

The SAC next alleges that Dr. Fabian, acting through Monmouth/PESS, conducted a remote telepsychiatry screening at approximately 1:40 a.m. without documented informed consent and completed a Screening/Clinical Certificate at approximately 2:00 a.m. SAC ¶¶ 39–40. The certificate allegedly found Plaintiff dangerous to self or others based on a delusional system, unspecified psychosis, and alleged medication overuse. SAC ¶ 40.

The same screening documentation allegedly stated "Perception: no hallucinations," while earlier triage documentation had treated hallucinations as part of the reason for escalation. SAC ¶¶ 26, 41. Plaintiff does not allege that an absence of hallucinations medically excludes psychosis or dangerousness. He alleges that the charted factual basis was not reconciled before the certificate issued. The SAC further alleges that PESS forms left fields blank or incomplete, including fields for specific histories of dangerous behavior, even though the certificate was used to support involuntary commitment and transfer. SAC ¶ 42.

Count One applies those allegations to Dr. Fabian's screening and certificate; Count Two applies them to Mr. Kalogridis's screening narrative and documentation; and Count Three pleads vicarious, apparent-agency, and institutional liability against Monmouth Medical Center. SAC ¶¶ 70–85. Paragraph

66 lists allegations involving several different facilities. For this motion, Plaintiff relies only on the Monmouth-related allegations incorporated into Counts One through Three—not CentraState transfer paperwork or Hampton records.

## LEGAL STANDARD

A complaint survives Rule 12(b)(6) when it contains sufficient factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept the complaint's factual allegations as true, construe them in the plaintiff's favor, and determine whether the plaintiff may be entitled to relief under a reasonable reading. *Phillips v. County of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008). The Court does not accept bare legal conclusions, but it also does not choose among competing factual explanations at the pleading stage.

A plaintiff ordinarily need not anticipate and plead around a defense. A defense can support Rule 12(b)(6) dismissal only when its applicability is apparent from the face of the complaint and materials properly considered with it. *Schmidt v. Skolas*, 770 F.3d 241, 248–49 (3d Cir. 2014). Accordingly, regardless of how the statutory immunity is labeled, dismissal on that ground is proper here only if the SAC's allegations, construed in Plaintiff's favor, establish the statutory conditions.

The District of New Jersey has declined to apply this same statute on a motion to dismiss where detailed allegations did not establish reasonable steps

taken in good faith. *Harrington v. Bergen County*, Civil Action No. 14-5764 (SRC), slip op. at 13 (D.N.J. Feb. 23, 2015). *Harrington* involved law-enforcement defendants and an NJCRA claim, but its pleading-stage treatment of the express conditions in N.J.S.A. 30:4-27.7(a) is instructive.

Plaintiff does not use this opposition to add evidence or amend the SAC. Accepted as true and viewed as a whole, the facts pleaded in the SAC plausibly show that the Monmouth Defendants failed to satisfy both statutory conditions.

## ARGUMENT

### I. THE SAC DOES NOT ESTABLISH THE STATUTORY CONDITIONS FOR IMMUNITY ON ITS FACE.

Section 30:4-27.7(a) protects a covered actor who, "acting in good faith" under the civil-commitment statutes, "takes reasonable steps" to assess, take custody of, detain, or transport an individual for mental-health assessment or treatment. The text states two conditions. It does not confer immunity merely because conduct occurred during a PESS screening.

The statute's protection is absolute once those conditions are established, but their applicability is not presumed. *Ziemba* required the covered professionals to make a prima facie showing that they acted in good faith and took reasonable steps before the burden shifted to the plaintiff at summary judgment. 275 N.J. Super. at 301, 645 A.2d at 1280. On this motion, Defendants have supplied no evidentiary

showing, and the SAC's well-pleaded facts do not establish the conditions for them.

Defendants argue that Plaintiff needed to allege, for example, that Dr. Fabian was "intentionally dishonest" or otherwise lacked subjective good faith. Defs.' Br. 10. The statute contains no intentional-dishonesty pleading requirement. More importantly, a possible subjective belief cannot erase the separate reasonable-steps condition. Even assuming subjective good faith, the motion still fails if the SAC plausibly alleges that reasonable steps were not taken.

Defendants' reliance on *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 366 (D.N.J. 2013), does not alter the text. *Hottenstein* decided summary judgment under the New Jersey Tort Claims Act, N.J.S.A. 59:3-3, after discovery; it did not construe N.J.S.A. 30:4-27.7(a). Defs.' Br. 4–5. Even if its discussion of good faith were used by analogy, it would not eliminate Section 30:4-27.7(a)'s independent reasonable-steps requirement.

The defense's own characterization confirms why dismissal is premature. It concedes that the SAC identifies the relevant actors and facts, is straightforward and clear, and sufficiently pleads negligence. Defs.' Br. 5, 10–11. It then asks the Court to hold that the same facts necessarily amount to reasonable steps and good faith. But the SAC alleges the opposite through specific facts. The competing inference cannot be resolved against Plaintiff on Rule 12(b)(6).

## II. THE SPECIFIC ALLEGATIONS PLAUSIBLY SUPPORT A FAILURE TO TAKE REASONABLE STEPS.

The reasonable-steps inquiry must consider the alleged screening process as a whole. Plaintiff does not contend that one blank field, one chart discrepancy, a remote interview, or a toxicology result automatically defeats immunity. He alleges a combined process in which individualized dangerousness information was incomplete, material factual premises were allegedly inaccurate or unsupported, and the resulting certificate did not reconcile the charted discrepancies. SAC ¶¶ 37–42, 66–67, 70–85.

### A. Governing screening requirements make the pleaded omissions and lack of telepsychiatry consent relevant.

The governing law gives concrete content to the reasonable-steps inquiry. The screener's document must provide information regarding the person's history, and the psychiatrist must consider that document together with the psychiatrist's own complete assessment. N.J.S.A. 30:4-27.5(b). The screening service must provide a thorough assessment; its procedures must require recording pertinent information, including the history and nature of the presenting problem, psychiatric and social history, mental status, substance-use history, and any indication of dangerousness. N.J.A.C. 10:31-2.3(b)(3).

The same regulation requires the screener to fully complete all sections of the screening document when involuntary commitment is found necessary; requires the psychiatrist to review that document, consult with the screener,

conduct and document a thorough psychiatric evaluation, and complete all applicable certificate sections; and requires the clinical decision-making and rationale to be clearly documented. N.J.A.C. 10:31-2.3(e), (f)(1)–(3), (l)(1). Telepsychiatry is permitted only under specified conditions, one of which is that screening staff obtain and document the consumer's valid consent. N.J.A.C. 10:31-2.3(i)(3).

These provisions do not make every omission negligence or automatically defeat immunity. They do refute Defendants' contention that incomplete dangerousness fields and lack of telepsychiatry consent are legally irrelevant. Defs.' Br. 8–10. The SAC alleges that critical PESS fields were blank or incomplete, Dr. Fabian's remote evaluation lacked documented consent, and the resulting certificate did not reconcile the alleged factual discrepancies. SAC ¶¶ 39–42. Accepted as true, those allegations plausibly support an inference that the required process was not followed and that reasonable steps are not established on the pleading's face.

New Jersey also defines a clinical certificate as a form completed by the examining psychiatrist or physician that states the person needs involuntary commitment and includes the specific facts on which that conclusion is based. N.J.S.A. 30:4-27.2(b). The definitions of dangerousness to self and dangerousness to others or property require consideration of the person's history, recent behavior,

and any recent act, threat, or serious psychiatric deterioration. N.J.S.A. 30:4-27.2(h)–(i). Whether other information existed, what Defendants actually reviewed, and whether the omissions were material are factual questions—not grounds to assume reasonable steps from the SAC.

**B. Defendants' alternative explanations do not defeat the pleaded medication and travel allegations.**

The SAC does not concede that its toxicology results were consistent with medication overuse. It alleges that the blood and urine testing was objective; that the later overuse narrative was materially inconsistent with those results; that Dr. Fabian relied on overuse despite "contrary toxicology results"; that Mr. Kalogridis transmitted a materially inconsistent narrative; and that Monmouth failed to address objective records contradicting that narrative. SAC ¶¶ 30–32, 38, 40–41, 66, 72, 77, 84. Those allegations must be accepted as true at this stage.

Defendants respond that a positive result for an authorized substance is "not at all inconsistent" with possible overuse. Defs.' Br. 7. But their motion identifies no measured excessive concentration, therapeutic range, cutoff, dose history, or laboratory interpretation stating that Plaintiff had overused a medication. It instead asks the Court to infer that overuse remained possible from the reported presence of prescribed substances. That is Defendants' factual inference, not an allegation or concession in the SAC.

Whether the tests were qualitative or quantitative, what measurements or cutoffs they used, what information the screeners actually received, and whether the results reasonably supported an overuse finding are evidentiary questions. Drawing Defendants' preferred inference would resolve disputed facts against the pleader and in favor of the movant—the inverse of the Rule 12(b)(6) standard. *Phillips*, 515 F.3d at 231, 233. The pleaded contradiction therefore cannot be eliminated on this motion.

The travel allegation is likewise more than a disagreement over routing. The SAC alleges that a trip from Maryland through Philadelphia for an employment-related purpose, allegedly supported by records, was recast as a direct, delusion-driven trip to New Jersey. SAC ¶¶ 22–24, 38. If true, that alleged mischaracterization bears on a factual premise used in the screening narrative. The ultimate significance of the route and the information actually conveyed cannot be decided by selecting Defendants' explanation at this stage.

### C. The hallucination and remote-screening allegations are cumulative, not categorical medical propositions.

The SAC alleges that the final screening documentation recorded "Perception: no hallucinations," while earlier triage documentation used hallucinations as part of the basis for escalation. SAC ¶¶ 26, 41. Plaintiff does not contend that a person without hallucinations cannot be psychotic or dangerous. The allegation is relevant because the asserted factual basis changed without an alleged

reconciliation before the certificate issued. Defendants' medically possible explanation may ultimately be correct, but Rule 12(b)(6) does not permit the Court to adopt it over the pleaded inference.

The same limitation applies to the remote-screening allegation. Plaintiff does not contend that telepsychiatry is always improper or that lack of consent, standing alone, resolves immunity. SAC ¶ 39. But the applicable regulation makes documented valid consent a condition of telepsychiatry, and the allegation must be considered with the alleged dangerousness-documentation gaps and disputed factual premises. N.J.A.C. 10:31-2.3(i)(3).

**D. Each challenged count ties the alleged deficiencies to the responsible defendant.**

Count One alleges that Dr. Fabian issued the screening certificate after relying on the challenged medication narrative and without reconciling the alleged chart discrepancies. SAC ¶¶ 70–74. Count Two alleges that Mr. Kalogridis documented, repeated, or transmitted the challenged narrative and failed to ensure that dangerousness-history information was complete. SAC ¶¶ 75–79. Count Three alleges that Monmouth is vicariously liable for those acts and directly failed to ensure that its PESS forms, collateral information, and certificate basis were complete, accurate, and reasonably supported. SAC ¶¶ 80–85.

The later grievance and cease-and-desist allegations do not need to establish the 2023 breach. Removing them from the merits analysis would not eliminate the

detailed screening allegations incorporated into Counts One through Three. Defendants therefore cannot obtain dismissal of all three counts by labeling the later communications irrelevant.

**III. ZIEMBA AND LEANG DO NOT CONVERT DEVELOPED-RECORD IMMUNITY RULINGS INTO A PLEADING PRESUMPTION.**

In *Ziemba v. Riverview Medical Center*, the Appellate Division reviewed summary-judgment papers after the issue had been joined and discovery completed. 275 N.J. Super. 293, 297–303, 645 A.2d 1276, 1278–81 (App. Div. 1994). The defendants made a prima facie evidentiary showing that the process was systematic, orderly, and thorough; the plaintiff's expert submission did not provide competent evidence of a standard or breach. *Id.* at 300–02, 645 A.2d at 1280–81. The court held that immunity was absolute once good faith and reasonable steps were established. *Id.* at 300, 645 A.2d at 1280.

That holding does not create a presumption that every screening described in a complaint satisfies the conditions. *Ziemba* resolved those conditions from a developed evidentiary record. Here, the Monmouth Defendants have made no evidentiary showing on a Rule 12 motion, and the SAC alleges a materially different process. The Court need not decide now whether Plaintiff will ultimately prove a professional standard and breach; it need only decide whether the complaint itself conclusively establishes immunity. It does not.

*Leang v. Jersey City Board of Education* likewise applied Section 30:4-27.7(b) to emergency medical transport personnel on an undisputed summary-judgment record showing that they transported the plaintiff at police direction. 198 N.J. 557, 594–96, 969 A.2d 1097 (2009). It concerned subsection (b), not a screening service's alleged failure to take reasonable steps under subsection (a), and it reinforces that the statutory predicates were established from a record rather than presumed from a pleading.

By contrast, *Harrington* addressed Section 30:4-27.7(a) on Rule 12(b)(6) and declined immunity where the well-pleaded allegations did not establish reasonable steps taken in good faith. Slip op. at 13. Plaintiff's allegations are different from *Harrington*'s, but the procedural principle is the same: statutory conditions that are not established on the complaint's face cannot be supplied by defense-favorable inferences.

## IV. DISMISSAL WITH PREJUDICE IS NOT WARRANTED.

If the Court identifies a curable pleading deficiency, it should not dismiss with prejudice. A district court ordinarily must permit a curative amendment—particularly for a pro se litigant—unless amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245; *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); Fed. R. Civ. P. 15(a)(2).

Defendants do not establish futility. Their motion acknowledges that the SAC is clear, identifies the relevant actors and allegations, and pleads negligence, but disputes the inferences those facts support. Defs.' Br. 5, 10–11. Defendants nevertheless seek a with-prejudice dismissal of claims arising from March 2023, a result that could foreclose adjudication on the merits. If the Court concludes that more specificity is required as to any defendant, the appropriate course is amendment in this pending action. Plaintiff requests leave to amend and asks that the Court identify the deficiency. Plaintiff does not concede that amendment is necessary, does not concede any limitations defense, and does not attempt to add new facts through this opposition.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny the Monmouth Defendants' motion to dismiss. Alternatively, if the Court dismisses any part of Counts One through Three, Plaintiff requests dismissal without prejudice and leave to amend unless the Court finds amendment inequitable or futile.

Respectfully submitted,

Bradley Clonan, Plaintiff Pro Se

/S/Bradley Clonan

Bradley Clonan

2604 W. Rhododendron Drive
Abingdon, Maryland 21009
(732) 476-9555
clonanxyz@gmail.com

Dated: July 10, 2026