**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Malinda A. Miller, Esq. (Malinda.Miller@lewisbrisbois.com)
Robert E. Spitzer, Esq. (Robert.Spitzer@lewisbrisbois.com)
Michael A. Vespa, Esq. (Michael.Vespa@lewisbrisbois.com)
One Riverfront Plaza
Newark, New Jersey 07102
Tel: (973) 577-6260
Fax: (973) 577-6261
*Attorneys for Defendants, Hampton Behavioral Health Center, Dr. Michael Houdart, Dr. Atta-Ur Rehman, Anita Giunta, and Jodi Sgouros*

| | |
|---|---|
| BRADLEY CLONAN,<br><br>Plaintiff,<br><br>v.<br><br>CENTRASTATE HEALTHCARE SYSTEM; HAMPTON BEHAVIORAL HEALTH CENTER; MONMOUTH MEDICAL CENTER; DR. CHRIS FABIAN, M.D.; THEO F. KALOGRIDIS, R.N.; DR. STEVEN GUILLEN, M.D.; DR. STEPHEN VAN PELT, M.D.; A. TABASKO, PA-C; ANTONELLA SALONY, R.N.; JORDAN WHITE, R.N.; DR. MICHAEL HOUDART, D.O.; DR. ATTA-UR REHMAN, M.D.; ANITA GIUNTA, L.S.W.; and “INTERN ASHLEY” (John/Jane Doe),<br><br>Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Civil Action No.<br>3:24-cv-11399-RK-RLS |

**DEFENDANTS, HAMPTON BEHAVIORAL HEALTH CENTER, DR. MICHAEL HOUDART, DR. ATTA-UR REHMAN, AND ANITA GIUNTA'S REPLY BRIEF IN RESPONSE TO PLAINTIFF'S OPPOSITION AND IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(5) AND 12(B)(6)**

*Of Counsel:*
Malinda A. Miller, Esq.

*On the Brief:*
Robert E. Spitzer, Esq. & Michael A. Vespa, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES........................................ii

PRELIMINARY STATEMENT........................................1

LEGAL ARGUMENT...............................................4

I. PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD BATTERY AGAINST DEFENDANT HAMPTON BEHAVIORAL HEALTH CENTER AS SET FORTH IN COUNT 11 OF HIS SECOND AMENDED COMPLAINT AS DEFENDANT HAD LAWFUL JUSTIFICATION TO ADMINISTER MEDICATION TO PLAINTIFF.....................................4

II. PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD MEDICAL MALPRACTICE AGAINST DEFENDANT HAMPTON BEHAVIORAL HEALTH CENTER AS SET FORTH IN COUNT 15 OF HIS SECOND AMENDED COMPLAINT AS PLAINTIFF HAS NOT EVEN PLED INTENTIONAL ACTS BY DEFENDANT OR BAD FAITH CONDUCT................8

III. PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD FALSE IMPRISONMENT AGAINST DEFENDANT HAMPTON BEHAVIORAL HEALTH CENTER AS SET FORTH IN COUNT 17 OF HIS SECOND AMENDED COMPLAINT AS DEFENDANT MAINTAINED LEGAL AUTHORITY TO TAKE CUSTODY OF TREAT PLAINTIFF DURING THE COURSE OF TREATMENT....................................12

IV. PLAINTIFF'S CONTENTION THAT N.J.S.A. 30:4-27.7 PROVIDES ONLY "CONDITIONAL" IMMUNITY TO THE DEFENDANTS IS INCORRECT INSOFAR, AS A MATTER OF LAW, THE STATUTE PROVIDES ABSOLUTE IMMUNITY TO THE DEFENDANTS AS TO THE CLAIMS ADVANCED IN THE MATTER AT BAR.................16

V. THE INDIVIDUALLY NAMED DEFENDANTS MUST BE DISMISSED AS PLAINTIFF HAS FAILED TO PERFECT PERSONAL SERVICE OF THE SECOND AMENDED COMPLAINT AS REQUIRED BY THE COURT'S ORDERS OF AUGUST 15, 2025 AND JUNE 10, 2026..........22

CONCLUSION..................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ....................10

Great W. Mining Co. v. Fox Rothschild LLP, 615 F.3d 159(3d Cir. 2010).......................................................6

Rennie v. Klein, 720 F.2d 266 (3d Cir. 1983)....................5

Youngberg v. Romeo, 457 U.S. 307 (1982) ........................5

Ziemba v. Riverview Medical Center 275 N.J. Super. 293 (App. Div. 1994)..................................15, 16, 17, 18, 19, 20, 21

**STATUTES**

N.J.S.A. 30:4-27.17 ..................................8, 12, 15

N.J.S.A. 30:4-27.7 ..............2, 6, 10, 15, 16, 17, 19, 20, 21

N.J.S.A. 30:4-27.9.......................................13

**RULES**

Fed. R. Civ. P. 6.......................................23

Fed. R. Civ. P. 8(d)(2-3)..................................9

Fed. R. Civ. P. 12(b)(5)..................................1

Fed. R. Civ. P. 12(b)(6)..................................1

**PRELIMINARY STATEMENT**

Defendants, Hampton Behavioral Health Center (hereinafter "Hampton"), Dr. Michael Houdart, Dr. Atta-Ur Rehman, and Anita Guinta (hereinafter collectively "Defendants"), file this reply brief in response to Plaintiff's opposition and in further support of their Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to the Federal Rules of Procedure 12(b)(5) and 12(b)(6).[1]

As to Hampton, Plaintiff's Second Amended Complaint alleges battery and "Vicarious liability for nonconsensual medication" (Count 11), "Institutional Negligence/Professional Negligence in Hampton Evaluation, Treatment, and Continued Confinement" (Count 15), and False Imprisonment (Count 17). As developed within Plaintiff's original moving papers and re-established herein, Counts 11, 15, and 17, of Plaintiff's Second Amended Complaint fail to allege claims as a matter of law. Each of these claims are deficient as a matter of law and must be dismissed.

Despite Plaintiff's diverse and 'shotgun approach, Plaintiff's pleading as to each claim fails as a matter of law as the underlying facts involve Plaintiff's transfer, evaluation, and treatment at Hampton Behavioral Health Center for involuntary

[1] While Jodi Sgouros was included in Defendants' Motion to Dismiss, Plaintiff has advised they are not pursuing claims against Jodi Sgouros in his Second Amended Complaint. Case 3:24-cv-11399-RK-RLS DKT00093-1.

medical treatment. Initially, it is Defendants' position that, as Hampton Behavioral Health Center was providing mental health treatment to Plaintiff in compliance with New Jersey statutes and an Order for Plaintiff's Involuntary Commitment entered by New Jersey's Superior Court, Defendant Hampton Behavioral Health Center is completely immunized per N.J.S.A. 30:4-27.7 and therefore, all claims directed against Hampton Behavioral Health Center must be dismissed with prejudice.

In addition to the substantive grounds for the dismissal of Counts 11, 15, and 17 of Plaintiff's Second Amended Complaint, Defendants maintain their position that Defendants Dr. Michael Houdart, Dr. Atta-Ur Rehman, Anita Guinta must be dismissed since Plaintiff has failed to timely personally serve the individually named Defendants. First, Plaintiff failed to *ever* serve the original or the First Amended Complaint that were filed on December 20, 2024 and April 7, 2025, respectively. Next, Plaintiff failed to comply with the Court's August 15, 2025 Order, which required proper service of the employee Defendants within forty-five days of the issuance of that Order. Thereafter and dispositive to this issue is that per Order dated June 10, 2026, the Court afforded Plaintiff **another** opportunity to file the Second Amended Complaint and effect service "consistent with Court's August 15, 205 Opinion and Order". Case 3:24-cv-11399-RK-RLS DKT0082.

Consistent with and mandated by the August 15, 2025 Order and Opinion, service of the Second Amended Complaint was required to be perfected within forty-five (45) days of the date of that Order or no later than Monday, July 27, 2026. To date, Plaintiff has failed to secure personal service of the Second Amended Complaint on the individually named Defendants and as a matter of law and equity, they must be dismissed from this action.

Relative to the issue of Plaintiff failing to properly serve the individual Defendants and failing to show entitlement to enlarge the time of service, Defendants incorporate all arguments on this issue as set forth in their initial filing to the instant motion and in their opposition brief to Plaintiff’s Cross-Motion to Extend Service as to the employee Defendants. See Case 3:24-cv-11399-RK-RLS DKT00098.

Under these circumstances, Defendants submit that it would be unjust and prejudicial to have Plaintiff’s meritless claims ‘hanging over their heads’ any longer and this matter is ripe for adjudication.

For these reasons and those advanced within Defendants’ original moving papers, it is respectfully submitted that Plaintiff’s Second Amended Complaint must be dismissed in its entirety as to Hampton and the individual Defendants.

## LEGAL ARGUMENT

### I. PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD BATTERY AGAINST DEFENDANT HAMPTON BEHAVIORAL HEALTH CENTER AS SET FORTH IN COUNT 11 OF HIS SECOND AMENDED COMPLAINT AS DEFENDANT HAD LAWFUL JUSTIFICATION TO ADMINISTER MEDICATION TO PLAINTIFF

Plaintiff's claim for battery can be summarized as 1) Hampton Behavioral Health Center owed Plaintiff "a duty not to administer psychotropic medication without consent or lawful justification," 2) Hampton, through its staff, administered Haldol, Risperdal, Cogentin, and other medications "pursuant to Dr. Houdart's orders or facility practice without Plaintiff's consent and without a documented emergency justification," and 3) this nonconsensual medication "constituted intentional, harmful, or offensive physical contact." Case 3:24-cv-11399-RK-RLS DKT00083 PageId: 2667 ¶¶ 123-125.

Plaintiff's claim that Defendants did not have "lawful justification" to administer medication to Plaintiff falls completely flat when considered in context. All of the allegedly tortious acts Plaintiff alleges in Count 11 of his Second Amended Complaint take place during Plaintiff's admission to Hampton Behavioral Health Center from March 25, 2023 to March 30, 2023. Plaintiff's admission to Hampton Behavioral Health Center began after Dr. Fabian completed a screening certificate certifying Plaintiff as a danger to himself or others "based on a delusional system, unspecified psychosis, and alleged medication overuse." Id. at PageId: 2652 ¶ 41. Upon admission Plaintiff was admitted

under Dr. Houdart and diagnosed with unspecified psychosis. Id. at PageId: 2653 ¶ 50. Dr. Houdart then entered an order for the administration of certain medication to treat Plaintiff's psychosis identified in Dr. Fabian's screening certificate. Additionally, a Court Order was entered finding that involuntary commitment was necessary for Plaintiff's health on March 27, 2026 per Plaintiff's Second Amended Complaint.

In New Jersey, the standard by which a mentally ill patient, who has been committed involuntarily to a state institution, must have his constitutional right to refuse antipsychotic drugs measured is whether the patient constitutes a danger to himself or to others. Rennie v. Klein, 720 F.2d 266, 269 (3d Cir. 1983). As that evaluation is the product of the medical authorities' professional judgment, such a judgment and the resulting decision to administer medication is presumed valid unless it is shown to be a substantial departure from accepted professional judgment, practice or standards. Id. at 269 citing Youngberg v. Romeo, 457 U.S. 307, 323 (1982).

These facts make it apparent that Defendants had "lawful justification" to administer medication to Plaintiff. Plaintiff's Second Amended Complaint acknowledges that Dr. Fabian's Screening Certificate certified Plaintiff as "a danger to self or others based on a delusional system, unspecified psychosis, and alleged medication overuse." Case 3:24-cv-11399-RK-RLS DKT00083 PageId:

2652 ¶ 40. Therefore, per Plaintiff's own pleading, Plaintiff was determined to be a danger to himself or to others and as a matter of law Plaintiff's claim for battery fails.

Further, Plaintiff's own claims in his Second Amended Complaint establish that these drugs were "psychotropic medication" to address psychosis that he was diagnosed upon admission. Id. at PageID: 2653 ¶¶ 50 and 118. While Plaintiff can claim that this treatment "was not taken in good faith and did not involve objectively reasonable steps within the meaning of N.J.S.A. 30:4-27.7," this is a self-serving legal conclusion that should not be entertained by the Court. Id. at PageId: 2656 ¶ 66. See Great W. Mining Co. v. Fox Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . [and] only a complaint that states a plausible claim for relief survives a motion to dismiss.")

Therefore, it is impossible for Plaintiff to plead a claim for battery based on a theory that Defendants had duty not to administer psychotropic medication without consent or lawful justification when Plaintiff's own second Amended Complaint makes it evident there was a documented emergency justification. Taking Plaintiff's Second Amended Complaint at face value, Plaintiff has not pled a viable claim for battery against Defendants and as

developed below, cannot overcome the absolute immunity identified in N.J.S.A. 30:4-27.7.

In conclusion, as a matter of law, Count 11 of Plaintiff's Second Amended Complaint must be dismissed with prejudice.

## II. PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD MEDICAL MALPRACTICE AGAINST DEFENDANT HAMPTON BEHAVIORAL HEALTH CENTER AS SET FORTH IN COUNT 15 OF HIS SECOND AMENDED COMPLAINT AS PLAINTIFF HAS NOT EVEN PLED INTENTIONAL ACTS BY DEFENDANT OR BAD FAITH CONDUCT

Plaintiff's claim for medical malpractice is equally deficient as a matter of law. As discussed above, N.J.S.A. 30:4-27.7 provides absolute immunity to mental health providers who were "acting in good faith" and took "reasonable steps" in treating the involuntarily committed. See N.J.S.A. 30:4-27.7(a-b). Nowhere in Count 15 of Plaintiff's Second Amended Complaint does substantiate claims of bad faith conduct or intentionally harm to Plaintiff. Plaintiff himself acknowledges this insofar as Plaintiff verbatim identifies their "instructional negligence claim" as:

> [F]ailure to perform an independent intake assessment, verify sending-facility records, ensure medication and confinement were clinically and legally justified, and discharge Plaintiff once confinement lacked justification [Second Amended Complaint ¶ 143]; breach of each duty, including continued confinement and medication after Hampton's own records stated "No justification for Hospitalization documented' and 'added by mistake' [Second Amended Complaint ¶ 144]; and resulting injury [Second Amended Complaint ¶ 147]. The count also pleads gross negligence in the alternative. [Second Amended Complaint ¶¶ 69 and 146]

Case 3:24-cv-11399-RK-RLS DKT00093-1 PageID: 2973.

Plaintiff acknowledges that these claims are based on common negligence and/or gross negligence but does not assert that they were caused by intentional bad faith. Per Plaintiff's own claims, all the alleged negligent acts are downstream from Plaintiff's

admission to Hampton Behavioral Health Center and a purported failure to assess Plaintiff. Yet, Plaintiff's own Second Amended Complaint admits he was evaluated by Dr. Rehman. Plaintiff's claim that the moving Defendants are incorrect to conclude that Dr. Rehman "personally evaluated" Plaintiff is nonsensical. Paragraph 52 of Plaintiff's Second Amended Complaint explicitly says "On March 26, 2023, Defendant Dr. Atta-ur Rehman **evaluated** Plaintiff at Hampton Behavioral Health Center." Case 3:24-cv-11399-RK-RLS DKT00083 PageID: 2654 ¶ 52 (emphasis added). Plaintiff's Second Amended Complaint identifies Dr. Atta-ur Rehman as Plaintiff's "evaluator" at Hampton Behavioral Health Center. Id. at PageID: 2647 ¶ 16. While Plaintiff can claim they are permitted to make "alternate and even inconsistent pleading[s]" per Fed. R. Civ. P. 8(d)(2-3) the rule of civil procedure explicitly permits this for "claims or defenses" and not factual statements. See Fed. R. Civ. P. 8(d)(2-3).

Per Plaintiff's Complaint, Plaintiff alleges that Hampton "otherwise relied on the flawed CentraState and Monmouth/PESS records, during [the Hampton] intake process" and that Hampton Behavioral Health Center's purportedly tortious conduct stemmed from reliance on these records from the aforementioned medical providers. Case 3:24-cv-11399-RK-RLS DKT00083 PageID: 2653 ¶ 50.[2]

---

[2] Plaintiff also alleges that "Hampton paperwork included a handwritten notation indicating that Hampton did not independently

The moving Defendants then personally evaluated Plaintiff themselves and diagnosed Plaintiff with unspecified psychosis. As the moving Defendants both relied on a prior medical provider's medical records and personally evaluated Plaintiff the moving Defendants took "reasonable steps to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment." Defendant Hampton Behavioral Health Center is entitled to immunity from Plaintiff's claims sounding in medical malpractice per N.J.S.A. 30:4-27.7.

It must be again emphasized Plaintiff also makes the conclusory allegation that "Plaintiff alleges that Hampton's conduct was not in good faith and did not constitute reasonable steps within the meaning of N.J.S.A. 30:4-27.7 and was at minimum grossly negligent" should not be taken as conclusive grounds for Defendants' Motion to Dismiss to be denied. See Ashcroft v. Iqbal 556 U.S. 662, 669 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Again, taking Plaintiff's Second Amended Complaint at face value, Plaintiff has not pled a viable claim for medical malpractice against Defendants and as developed below, cannot overcome the absolute immunity identified in N.J.S.A. 30:4-27.7.

---

evaluate Plaintiff" yet, as discussed previously, Plaintiff's Complaint alleges that Defendant Dr. Atta-Ur Rehman evaluated Plaintiff.

In conclusion, as a matter of law, Count 15 of Plaintiff's Second Amended Complaint must be dismissed with prejudice.

**III. PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD FALSE IMPRISONMENT AGAINST DEFENDANT HAMPTON BEHAVIORAL HEALTH CENTER AS SET FORTH IN COUNT 17 OF HIS SECOND AMENDED COMPLAINT AS DEFENDANT MAINTAINED LEGAL AUTHORITY TO TAKE CUSTODY OF TREAT PLAINTIFF DURING THE COURSE OF TREATMENT**

Plaintiff's final claim, asserting false imprisonment, is just as deficient as a matter of law as his previously discussed state law claims. Plaintiff's argument against dismissal of this claim is based on his belief that the moving Defendants did not have legal authority to continue treating Plaintiff due to Dr. Atta-Ur Rehman "allegedly wrote 'no justification for hospitalization documented'" during their evaluation of Plaintiff. Case 3:24-cv-11399-RK-RLS DKT00093-1 PageID: 2975

N.J.S.A. 30:4-27.17 requires a treatment team at an outpatient treatment provider to "administratively discharge a patient from involuntary commitment status if the treatment team determines that the patient no longer needs involuntary commitment to treatment." N.J.S.A. 30:4-27.17(a). While Plaintiff claims that Defendants legal justification to treat Plaintiff stopped on March 26, 2023 during Dr. Ahman's evaluation of Plaintiff, this is fundamentally incorrect. The purported note to Plaintiff's medical record indicating "No justification for Hospitalization documented" is not conclusive on this issue and Plaintiff's allegations in his Second Amended Complaint must be considered in the aggregate.

A short-term care or psychiatric facility, or a special psychiatric hospital, may detain a person admitted to the facility involuntarily by referral from a screening service without a temporary court order for no more than 72 hours from the time the screening certificate was executed. See N.J.S.A. 30:4-27.9(a). Per Plaintiff’s Complaint, Plaintiff was legally committed from March 25, 2025 at 2:00 A.M., when Dr. Fabian signed Plaintiff’s Screening Certificate, to March 28, 2025, at 2:00 A.M. (i.e. 72 hours). Case 3:24-cv-11399-RK-RLS DKT00083 PageID: 2652 ¶ 40. At this time Dr. Fabian certified Plaintiff as a danger to self or others “based on a delusional system, unspecified psychosis, and alleged medication overuse.” Id.

Plaintiff’s Second Amended Complaint next alleges that Plaintiff was transported from Defendant CentraState to Hampton Behavioral Health Center on March 25, 2025 at 12:38 PM. Id. at ¶ 49. Plaintiff was admitted under Dr. Michael Houdart who diagnosed Plaintiff with unspecified psychosis. Id. at ¶ 50 at While Plaintiff claims Dr. Houdart entered a note indicating “No justification for hypostatization documented” Plaintiff acknowledges the doctor entered a psychiatric diagnosis (consistent with Dr. Fabian’s findings before Plaintiff’s transfer). Id. at ¶ 52.

Plaintiff’s Complaint alleges that on March 27, 2023 a Temporary Order for Involuntary Commitment was entered by the

Superior Court of New Jersey. Id. at ¶ 54. Plaintiff received treatment at Hampton Behavioral Health Center from March 27, 2023 until March 30, 2023 when Plaintiff was discharged from the facility. Id. at ¶ 68.

As Plaintiff claims that Dr. Atta-ur Rehman evaluated Plaintiff and maintained Plaintiff's psychiatric diagnosis first observed by Dr. Fabian, the moving Defendants acted in good faith to take custody of and treat Plaintiff during their involuntary commitment from March 25, 2023 to March 27, 2023. The March 27, 2023 Temporary Order for Involuntary Commitment entered by the Court continued Defendants' authority from March 27, 2023 to March 30, 2023 when Plaintiff was discharged.

It must be again emphasized that, per Plaintiff's Second Amended Complaint, Count 17 "does not seek to invalidate or review the facially valid state-court Temporary Order." Id. at ¶ 155. If Plaintiff does not object to the validity of the Temporary Order then they have no grounds to argue that Defendant did not have legal authority and/or legal justification to ensure they remained at Hampton Behavioral Health Center for treatment.

In sum, even a liberal reading of Plaintiff's Second Amended Complaint results in the reality that Plaintiff cannot sustain Count 17 as a matter of law as Defendants maintained legal authority to take custody of Plaintiff during their entire course of treatment at Hampton Behavioral Health Center. Once again,

taking Plaintiff's Second Amended Complaint at face value, Plaintiff has not pled a viable claim for false imprisonment against Defendants and as developed below, cannot overcome the absolute immunity identified in N.J.S.A. 30:4-27.7.

In conclusion, as a matter of law, Count 17 of Plaintiff's Second Amended Complaint must be dismissed with prejudice.

**IV. PLAINTIFF'S CONTENTION THAT N.J.S.A. 30:4-27.7 PROVIDES ONLY "CONDITIONAL" IMMUNITY TO THE DEFENDANTS IS INCORRECT INSOFAR, AS A MATTER OF LAW, THE STATUTE PROVIDES ABSOLUTE IMMUNITY TO THE DEFENDANTS AS TO THE CLAIMS ADVANCED IN THE MATTER AT BAR**

Plaintiff's contention that N.J.S.A. 30:4-27.7 ("the immunity statute") only offers conditional immunity is fundamentally incorrect as a matter of law.

While N.J.S.A. 30:4-27.7 does not provide explicit definitions for the terms "good faith" and "reasonable steps," the Courts have previously considered the application of the immunity statute in almost identical contexts to those before the Court today. In Ziemba v. Riverview Medical Center, 275 N.J. Super. 293 (App. Div. 1994), the New Jersey Appellate Division was tasked with reviewing an order from a New Jersey trial court that denied a Motion for Summary Judgment filed by a medical facility who treated the Plaintiff after Plaintiff had a domestic altercation with his wife, expressed a plan to kill himself to colleagues at the fire department where he worked, and was transported to Riverview Medical Center by Colt Necks Police for a mental health evaluation.

The Plaintiff in Ziemba, proceeding *pro se*, filed suit against a number of medical providers including Defendant Riverview Medical Center and their individually named employees Augustine Tambini, Patricia Webb, R.N. and Dennis Wong, M.D. alleging that the medical providers were liable for negligence and medical

malpractice in their “diagnosis, treatment, and supervision of him.” Ziemba, 275 N.J. Super. at 297. Plaintiff also alleged that Defendant Dr. Wong, while evaluating Plaintiff on behalf of Riverview Medical Center, “did not take reasonable steps as required by the statute to assess [him] and evaluate the information provided by . . . Webb and Tambini prior to making the final decision to have [Plaintiff] involuntarily committed." Id. at 297. As it relates to Defendants Webb and Tambini, Plaintiff alleged they "did not take reasonable steps as required by the statute to assess [him] and evaluate the information provided by the Colts Neck Police prior to making the final decision to have [him] involuntarily committed." Id. at 297.

Defendants ultimately filed for Summary Judgment on the ground that they were immune from liability under N.J.S.A. 30:4-27.7. The trial court denied the motion on the ground that defendants were not entitled to immunity under the statute as a matter of law because “genuine issues of material fact existed as to whether defendants acted in good faith and took reasonable steps in committing plaintiff involuntarily for psychiatric treatment.” Ziemba at 297-298.

On appeal, the Appellate Division concluded that the trial court was incorrect in determining there was no genuine issues of material fact and that summary judgment was appropriate. The Appellate Division observed:

> "Balanced against this cautious approach to involuntary civil commitment is the notion that such commitment is best decided by appropriate mental health care professionals, and, as such, the commitment decision is discretionary. To protect this discretionary procedure and to allow mental health care workers to perform their jobs freely, the Legislature has provided immunity from civil and criminal liability for those involved in the commitment of an individual for mental health reasons… Thus, those involved in the involuntary commitment process enjoy an **absolute immunity from civil or criminal liability if they acted in good faith and took reasonable steps toward effectuating the commitment."**

Id. at 300 (emphasis added).

The Ziemba Court's decision that absolute immunity applied was based on their conclusion that the Defendants engaged in a "systematic, orderly and thorough evaluation of plaintiff prior to involuntarily committing him." Id. at 300-301. This process, step by step, entailed:

1. Colts Neck police interviewed Plaintiff and ultimately took Plaintiff to Riverview Medical Center for evaluation.
2. Webb interviewed and evaluated Plaintiff and completed the appropriate psychiatric examination form. Webb then discussed her findings and evaluation with Tambini.
3. Webb also contacted Dr. Wong to advise that plaintiff was being screened for possible commitment and discussed her evaluation with Dr. Wong.

4. Tambini interviewed and evaluated plaintiff, completing the three-page Monmouth Medical Center Screening Form.
5. Tambini then discussed his evaluation with Webb and Dr. Wong. Finally, Dr. Wong interviewed and evaluated plaintiff.
6. Dr. Wong then executed a physician's certificate for Plaintiff's involuntary commitment.

Id. at 300-301.

Based on this, the Ziemba Court concluded that the above process "did not violate the letter or spirit of N.J.S.A. 30:4-27.1 et seq. or any other standard of professional care" and, as the Defendants made a prima facie showing that they acted in good faith and took reasonable steps to assess, take custody of and detain Plaintiff for purposes of mental health assessment or treatment and, therefore, they were entitled to immunity under N.J.S.A. 30:4-27.7.

Plaintiff's Complaint alleges that on March 25, 2023, at approximately 1:00 AM, staff of Defendant Monmouth Medical Center, specifically a screener identified as "Theo" was assigned to evaluate Plaintiff. Case 3:24-cv-11399-RK-RLS DKT00083 PageId: 2651 ¶ 37. Plaintiff then alleges on March 25, 2023, at approximately 1:40 AM, Defendant Dr. Chris Fabian, acting on behalf of Defendant Monmouth Medical Center, conducted a remote tele physiatry screening of Plaintiff. On that same day at approximately

2:00 AM Dr. Fabian completed a Screening Certificate certifying Plaintiff as a danger to self or others. Id. at ¶¶ 39-40.

Plaintiff was accepted for transfer to Hampton Behavioral Health Center on March 25, 2023, at approximately 9:13 AM with the actual transfer taking place at approximately 12:38 PM that day. Id. at ¶¶ 43 and 49. Plaintiff then underwent mental health treatment at Hampton Behavioral Health Center from March 25, 2023, to March 27, 2023. On March 27, 2023, a Temporary Order for Plaintiff's Involuntary Commitment was entered by the Superior Court of New Jersey. Id. at ¶ 54. Plaintiff was ultimately discharged from Hampton Behavioral Health Center on March 30, 2023. Id. at ¶ 59.

Even accepting Plaintiff's chronology of events, the course of treatment in question is almost identical to the course of treatment discussed in Ziemba where absolute immunity was found to apply. Considering Plaintiff's own claims in their Second Amended Complaint, it is evident that Defendants acted in good faith and took reasonable steps to assess, take custody of and detain Plaintiff for purposes of mental health assessment or treatment and, therefore, they were entitled to immunity under N.J.S.A. 30:4-27.7.

Plaintiff's contention that N.J.S.A. 30:4-27.7's text does not apply for "the forcible administration of psychotropic medication to a patient who has refused it" or a facility's duty

to discharge a patient once the facility's treatment team determines that involuntary commitment is no longer needed" is equally meritless. Case 3:24-cv-11399-RK-RLS DKT00093-1 PageId: 2971. The Ziemba Court explicitly acknowledged that "those involved in the involuntary commitment process enjoy an absolute immunity from civil or criminal liability." Ziemba at 300. This "involvement" in the involuntary commitment process would naturally extend to the treatment in question which would involve the administration of medication and determining next steps, such as discharge, with the patient's treatment.

In conclusion, N.J.S.A. 30:4-27.7, is an absolute immunity to all of Plaintiff's claims as advanced in the Second Amended Complaint against the moving Defendants.

## V. THE INDIVIDUALLY NAMED DEFENDANTS MUST BE DISMISSED AS PLAINTIFF HAS FAILED TO PERFECT PERSONAL SERVICE OF THE SECOND AMENDED COMPLAINT AS REQUIRED BY THE COURT'S ORDERS OF AUGUST 15, 2025 AND JUNE 10, 2026

To date, Plaintiff has failed to secure personal service of ***any*** Complaint, including the Second Amended Complaint as required by Federal Rules of Civil Procedure and the Court's Orders of August 15, 20225 and June 10, 2026. In the Court's Opinion dated August 15, 2025, the Court acknowledged that Defendants Dr. Michael Houdart, Dr. Atta-Ur Rehman, Anita Guinta, and Jodi Sgouros had not been properly served within ninety (90) days of when Plaintiff filed his initial Complaint as required under Rule 4(m). Case 3:24-cv-11399-RK-RLS DKT0072. The Court also recognized that Plaintiff's attempt at service to the aforementioned employee Defendants, via leaving the summons and First Amended Complaint with a receptionist at Hampton Behavioral Health Center, did not constitute proper service. Case 3:24-cv-11399-RK-RLS DKT0072. The Court, in its Opinion dated August 15, 2025, mindful of Plaintiff's pro se status "and having now clarified the impropriety of Plaintiff's attempts at service to date, Plaintiff is afforded **one final opportunity** to properly serve [Defendants Dr. Michael Houdart, Dr. Atta-Ur Rehman, Anita Guinta, and Jodi Sgouros] within forty-five days of this Opinion being issued. Id. (emphasis added).

Of critical import to this Motion is that the Court's corresponding Order dated August 15, 2025 confirmed *inter alia*

that "should Plaintiff choose to file a Second Amended Complaint, Plaintiff must also file proof of proper service of the following Defendants within forty-five (45) days of issuance of this Order:". Case 3:24-cv-11399-RK-RLS DKT0073. In turn the Letter Order dated June 10, 2026, afforded Plaintiff yet another 'bite at the apple', permitting the filing of a Second Amended Complaint "consistent with the Court's August 15, 2025 Opinion and Order". Case 3:24-cv-11399-RK-RLS DKT0082. Based on the timing as delineated in the August 15, 2025 Order and Opinion, the deadline for Plaintiff to serve and fie proof of proper service expires today, Monday, July 27, 2026[3]. Despite the Court's indulgence, Plaintiff has still failed to effectuate proper service of *any* Complaint, on Defendants Dr. Michael Houdart, Dr. Atta-Ur Rehman, and Anita Guinta, much less secure personal service and file proof of same in the time set forth by this Honorable Court.

Rather than regurgitate the factual and legal bases as to why Plaintiff is not entitled to an extension of time to perfect service, Defendants incorporate all arguments on this issue as set forth in their initial filing to the instant motion and in their opposition brief to Plaintiff's Cross-Motion to Extend Service as

---

[3] Since the time for the filing of proof of service expired on Saturday, July 25, 2026, per Fed. R. Civ. P. 6, the deadline is extended to Monday, July 27, 2026.

to the employee Defendants. See Case 3:24-cv-11399-RK-RLS DKT00098.

For these reasons, those advanced within Defendants' original moving papers and in their opposition to Plaintiff's Cross-Motion to Extend Service, it is respectfully submitted that as a matter of law and equity, Plaintiff's Second Amended Complaint must be dismissed in its entirety as to the individual Defendants.

## CONCLUSION

Plaintiff' Second Amended Complaint must be dismissed as to Hampton as Counts 11, 15, and 17, which are directed at Hampton, fail to allege claims as a matter of law. Assuming arguendo, this Honorable Court finds that Plaintiff has set forth potentially cognizable claims (which he has not), dismissal of the Second Amended Complaint is appropriate since Defendants are entitled to immunity pursuant to relevant case and statutory law. Further, the Second Amended Complaint against Defendants, Dr. Michael Houdart, Dr. Atta-Ur Rehman and Anita Giunta, must be dismissed with prejudice due to Plaintiff's failure to properly serve the individually named Defendants in the time and manner prescribed by the Court's Orders of August 15, 2025 and June 10, 2026.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Attorneys for Defendants, Hampton Behavioral Health Center, Dr. Michael Houdart, Dr. Atta-Ur Rehman, Anita Giunta, and Jodi Sgouros*

BY: ***_/s/ Robert E. Spitzer***
Robert E. Spitzer, Esq.

DATED: July 27, 2026