**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BRADLEY CLONAN,**<br><br>Plaintiff,<br><br>v.<br><br>CENTRASTATE HEALTHCARE SYSTEM, et al.,<br><br>Defendants. | **Civil Action No. 3:24-cv-11399-RK-RLS**<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (ECF NO. 101)**<br><br>Motion Day: September 8, 2026 |

**ORAL ARGUMENT REQUESTED PURSUANT TO L. CIV. R. 78.1**

**Submitted by Plaintiff Bradley Clonan, Pro Se**

**Bradley Clonan, Pro Se**
2604 W. Rhododendron Drive
Abingdon, MD 21009
Telephone: 732-476-9555
Email: clonanxyz@gmail.com

## TABLE OF CONTENTS


| | |
|---|---|
| **PRELIMINARY STATEMENT** | 5 |
| **FACTUAL AND PROCEDURAL BACKGROUND** | 8 |
| **LEGAL STANDARD** | 11 |
| **ARGUMENT** | 12 |
| **I. THE SAC ADEQUATELY ALLEGES MARYLAND DOMICILE** | 12 |
| **II. SECTION 30:4-27.7 DOES NOT ESTABLISH IMMUNITY ON THE FACE OF THE SAC** | 14 |
| A. Washington confirms that the statutory predicates cannot be presumed at dismissal | 14 |
| B. The statute is conditional and applies only to specified actors and conduct | 16 |
| C. Symptom labels do not conclusively establish the distinct statutory dangerousness elements | 18 |
| D. Section 30:4-27.7 does not reach the independent wrong-number disclosure in Count XX | 21 |
| **III. COUNT VII PLAUSIBLY PLEADS DIRECT AND VICARIOUS LIABILITY** | 21 |
| A. The SAC pleads specific transfer-record and patient-identification failures | 21 |
| B. The SAC identifies underlying agents and conduct within the alleged scope of agency | 25 |
| **IV. COUNT XX EXPRESSLY PLEADS CONFIDENTIALITY, TRAINING, SUPERVISION, AND VICARIOUS LIABILITY** | 27 |

| | |
|---|---|
| **V. COUNT XVI PLAUSIBLY ALLEGES DETENTION WITHOUT PROPER LEGAL JUSTIFICATION** | 28 |
| **VI. COUNT VIII'S CHRONOLOGY IS FACTUALLY DISPUTED; ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE** | 30 |
| **VII. THE CURRENT DOCKET RECORD INDICATES THAT WHITE WAIVED HIS RULE 12(b)(5) DEFENSE** | 31 |
| **VIII. RULE 41(b) DOES NOT REVIVE WHITE'S WAIVED SERVICE DEFENSE OR SUPPORT DISMISSAL WITH PREJUDICE ON THIS RECORD** | 33 |
| **CONCLUSION** | 34 |

# TABLE OF AUTHORITIES

**Cases**


| | |
|---|---|
| Ashcroft v. Iqbal, 556 U.S. 662 (2009) | 11 |
| Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) | 11 |
| Berk v. Choy, 607 U.S. 187, 193–94 (2026) | 11, 30 |
| Carter v. Reynolds, 175 N.J. 402 (2003) | 25 |
| Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347 (3d Cir. 2014) | 11 |
| Crescenzo v. Crane, 350 N.J. Super. 531 (App. Div. 2002) | 27 |
| Di Cosala v. Kay, 91 N.J. 159 (1982) | 26 |
| Estate of Chin v. St. Barnabas Medical Center, 160 N.J. 454 (1999) | 24 |
| Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172 (3d Cir. 1999) | 14, 33 |
| Foman v. Davis, 371 U.S. 178 (1962) | 33 |
| Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) | 11 |
| Frett-Smith v. Vanterpool, 511 F.3d 396 (3d Cir. 2008) | 12 |
| Grayson v. Mayview State Hospital, 293 F.3d 103 (3d Cir. 2002) | 33 |
| Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 (2004) | 12 |
| Hildebrand v. Allegheny County, 923 F.3d 128 (3d Cir. 2019) | 33 |
| Kinsella v. NYT Television, 382 N.J. Super. 102 (App. Div. 2005) | 27 |
| Labega v. Joshi, 470 N.J. Super. 472 (App. Div. 2022) | 24 |
| Leang v. Jersey City Board of Education, 198 N.J. 557 (2009) | 18, 28 |
| Leveto v. Lapina, 258 F.3d 156 (3d Cir. 2001) | 11, 15, 17 |

McCann v. Newman Irrevocable Trust, 458 F.3d 281 (3d Cir. 2006) 12-13
McCurdy v. American Board of Plastic Surgery, 157 F.3d 191 (3d Cir. 1998) 32
Moschella v. Hackensack Meridian Jersey Shore University Medical Center, 258 N.J. 110 (2024) 25
Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984) 33
Schmidt v. Skolas, 770 F.3d 241 (3d Cir. 2014) 12
Washington v. City of Jersey City, No. 24-8597, 2025 WL 1742694 (D.N.J. June 23, 2025) 6, 14-16, 18
West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165 (3d Cir. 2013) 13
Ziemba v. Riverview Medical Center, 275 N.J. Super. 293 (App. Div. 1994) 17

**Statutes and Regulations**

28 U.S.C. § 1332 12
42 C.F.R. § 482.24(b), (c) 22
N.J.S.A. 30:4-27.2 18-19
N.J.S.A. 30:4-27.5 18, 28
N.J.S.A. 30:4-27.7 passim
N.J.A.C. 8:43G-5.2 22-23
N.J.A.C. 8:43G-12.7 22-23
N.J.A.C. 8:43G-15.2 22

**Rules**

Fed. R. Civ. P. 4 7, 32-34
Fed. R. Civ. P. 5 32
Fed. R. Civ. P. 8 11, 26, 30, 33
Fed. R. Civ. P. 12 passim
Fed. R. Civ. P. 15 31

| | |
|---|---|
| Fed. R. Civ. P. 41 | 7, 33-34 |
| N.J. Ct. R. 4:74-7 | 18 |
| L. Civ. R. 78.1 | 1, 34 |

## PRELIMINARY STATEMENT

Defendants CentraState Healthcare System/Atlantic Health System ("CentraState") and Jordan White, R.N. ask the Court to dismiss the Second Amended Complaint ("SAC," ECF No. 83) with prejudice by drawing factual inferences in their own favor and by treating a conditional statutory defense as automatic. Rule 12 requires the opposite.

The jurisdictional point is straightforward. The Court's August 15, 2025 Opinion identified the missing allegations: residence alone did not establish domicile, and Plaintiff's earlier wording created uncertainty about intent. ECF No. 72 at 27–29. The SAC directly cured that defect. Paragraph 4 alleges that Plaintiff is "a domiciled citizen of Maryland," resides and maintains his home in Maryland, and "intends to remain domiciled in Maryland." The motion first asserts that Plaintiff did not allege Maryland residence with intent to remain, but later reproduces Paragraph 4's express allegation of intent. ECF No. 101 at 7, 10. That facial challenge is contradicted by the pleading itself. If the Court instead treats the challenge as factual, Plaintiff submits his declaration confirming that, when this action commenced on December 20, 2024, he physically lived in Maryland and intended Maryland to be his permanent home.

The merits arguments likewise demand defense-favorable factfinding. The SAC does not contend that calm behavior, reported toxicology results, or a

mistaken weight entry alone makes psychiatric screening unlawful. It pleads a specific sequence: competing observations; an alleged medication-overuse rationale that the SAC says the reported toxicology results did not substantiate; official forms allegedly missing specific dangerous-behavior information; failure to review screening rights; a transfer checklist stating that risks, benefits, and alternatives were not explained; a transfer certification allegedly signed by A. Tabasko, PA-C and lacking a physician signature or countersignature; and transfer records describing a 64.77-kilogram patient with natural teeth as a 170-kilogram patient with dentures. SAC ¶¶ 27–49, 66. Those are factual allegations, not labels. The late weight and denture entries do not decide dangerousness or cause the earlier hold, but they plausibly support Count VII's distinct transfer-record and verification theory.

Section 30:4-27.7 does not immunize every hospital employee whenever psychiatric care is involved. It protects only the specified actors and entities and their respective employers described in the statute, and only when the actor proceeds in good faith pursuant to the Act and takes reasonable steps. In Washington v. City of Jersey City, a recent decision designated not for publication, the court declined to apply this immunity at dismissal because the complaint did not establish the statutory purpose, qualifying direction, or reasonable-steps predicates. No. 24-8597 (SDW) (JSA), 2025 WL 1742694, at *19–20 (D.N.J. June

23, 2025). Washington is factually distinct and persuasive rather than binding, but its predicate-by-predicate method is sound. Defendants may argue in the alternative that White lacked involvement and that any covered conduct was immune; neither alternative establishes dismissal. If White performed no covered statutory function, Section 30:4-27.7 is irrelevant to him. If he did, covered status, good faith, and reasonable steps still must be established.

Finally, White joined the Rule 12 motion at ECF No. 50. Its notice expressly moved under Rules 12(b)(1) and 12(b)(6), and the provided ECF No. 50-1 contents identify no Rule 12(b)(5) defense. ECF No. 72 likewise identified the ECF No. 47 defendants—not White—as the appearing parties who preserved a Rule 12(b)(5) objection, and its final service list omitted White. ECF No. 72 at 1 & n.1, 10–13, 30. If the full ECF No. 50-1 confirms that omission, Rules 12(g)(2) and 12(h)(1)(A) make the then-available defense waived. Rule 41(b) does not revive a waived defense or supply a with-prejudice substitute for an unviolated White-specific service order.

The Court should deny ECF No. 101. At minimum, dismissal with prejudice is unavailable on the jurisdictional and service theories and unwarranted as to any curable pleading issue.

## FACTUAL AND PROCEDURAL BACKGROUND

This action commenced on December 20, 2024. The Court dismissed Plaintiff's federal claims with prejudice on August 15, 2025, declined supplemental jurisdiction over the then-pleaded state claims without reaching their merits, and permitted a Second Amended Complaint that adequately alleged diversity. ECF No. 72 at 25–30. The Court's observation that the former false-imprisonment count appeared "at first glance" to comply with the Act was preliminary dicta in a jurisdictional discussion concerning the First Amended Complaint, not a merits ruling on the later SAC. Id. at 28 n.17.

The SAC alleges complete diversity, an amount in controversy exceeding $75,000, and Maryland domicile. SAC ¶¶ 2–24. As to Plaintiff specifically, it alleges that he is a domiciled Maryland citizen, resides in Abingdon, maintains his Maryland home, and intends to remain domiciled there. SAC ¶ 4.

The surviving claims against the moving Defendants arise from two episodes. Counts VII, VIII, and XVI concern the CentraState emergency-department detention and transfer on March 24–25, 2023. Count XX concerns a separate wrong-number voicemail containing psychiatric or medical information.

For the detention and transfer claims, the SAC pleads the following facts. An initial 6:48 p.m. assessment used the labels "hallucinations" and "manic behavior." SAC ¶ 27. At 6:49 p.m., White documented that Plaintiff denied pain,

was resting comfortably, and was alert and oriented. SAC ¶ 28. Other nursing entries allegedly documented calm, oriented, and cooperative behavior. SAC ¶ 29. Toxicology testing was negative for alcohol, benzodiazepines, and illicit drugs and positive for substances Plaintiff alleges were prescribed or authorized; later records nevertheless relied on alleged medication overuse. SAC ¶¶ 30–32. After Plaintiff asked to leave with family, staff secured him and initiated involuntary screening; the flowsheet allegedly marked “No” as to whether the Screening Bill of Rights was reviewed. SAC ¶¶ 33–35.

The SAC further alleges that the screening certificate relied on an alleged delusional system, unspecified psychosis, and medication overuse, while the same screening record stated “Perception: no hallucinations” and left fields concerning specific dangerous conduct blank or incomplete. SAC ¶¶ 40–42. For the later interfacility transfer, the SAC identifies the responsible actors and documents: a transfer certification allegedly signed by A. Tabasko, PA-C and lacking a physician signature or countersignature; the checklist marked “No” as to whether risks, benefits, and alternatives were explained; and the paperwork stated a weight of 170 kilograms and dentures although Plaintiff alleges he weighed 64.77 kilograms and had natural teeth. SAC ¶¶ 43–49. Count VII expressly incorporates SAC ¶¶ 25–36, 43–49, and 66–69, then separately pleads institutional duties,

agency, apparent agency, respondeat superior, breach, and causation. SAC ¶¶ 101–06.

Count VIII alleges that White was a CentraState nurse assigned to assessment, monitoring, or documentation in the emergency department; that his identified 6:49 p.m. entry recorded Plaintiff as resting comfortably and alert and oriented; and that he failed to communicate or escalate the alleged inconsistency while detention continued. SAC ¶¶ 14, 28, 107–11. The identified note predates the approximately 9:54 p.m. refusal of voluntary admission and the 9:57 p.m. screening recommendation. SAC ¶¶ 33–35. The motion contests the sufficiency of the pleaded temporal and causal connection. ECF No. 101 at 16–17.

Count XVI alleges that CentraState intentionally confined Plaintiff after he requested discharge by preventing him from leaving and placing him in a secured or locked room under continuous monitoring, and that the confinement lacked proper legal justification because the required process and an individualized basis had not been established. SAC ¶¶ 148–52.

Count XX is independent of the hold. The SAC alleges that a CentraState staff member identified as "Intern Ashley" left a voicemail at 732-762-9602 rather than the intended 732-672-9602, disclosing Plaintiff's psychiatric location, status, or other medical information to an unauthorized number. SAC ¶¶ 60–61. It expressly pleads duties to protect confidentiality, train and supervise staff, and

verify a recipient's identity and telephone number, as well as vicarious liability and direct negligent training and supervision. SAC ¶¶ 168–72.

## LEGAL STANDARD

A Rule 12(b)(1) challenge is facial when it contests the sufficiency of jurisdictional allegations without presenting competing proof. On a facial attack, the Court applies the Rule 12(b)(6) standard, accepts well-pleaded allegations as true, and draws reasonable inferences for Plaintiff. Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 357–58 (3d Cir. 2014).

Under Rule 12(b)(6), a complaint need only contain enough factual matter, accepted as true, to state a plausible claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court separates factual allegations from legal conclusions, accepts the facts, and asks whether they plausibly show entitlement to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Plausibility is not a probability requirement, and Rule 8 does not require evidentiary materials with the complaint. Iqbal, 556 U.S. at 678; Berk v. Choy, 607 U.S. 187, 193–94 (2026).

An affirmative defense may support Rule 12(b)(6) dismissal only when it is established on the complaint's face; Leveto applied that rule to qualified immunity. Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001). On Rule 12(b)(6), the Court generally considers the complaint, exhibits attached to it, and matters of public

record; it may also consider an undisputedly authentic document integral to or explicitly relied upon in the complaint, but may not use those materials to resolve disputed facts. Schmidt v. Skolas, 770 F.3d 241, 249–50 (3d Cir. 2014). The SAC repeatedly alleges the contents of Defendants' medical and transfer records and expressly identifies the supporting records previously filed under seal. SAC ¶¶ 26–61, 182. To the extent the Court consults the particular hospital-generated records underlying those allegations and their authenticity is undisputed, they may supply source and context for facts already pleaded; they may not be used to add an omitted allegation or resolve a disputed inference against Plaintiff. See Schmidt, 770 F.3d at 249. Any non-integral outside material should be excluded rather than weighed without the notice and opportunity Rule 12(d) requires.

## ARGUMENT

### I. THE SAC ADEQUATELY ALLEGES MARYLAND DOMICILE

Citizenship for 28 U.S.C. § 1332 means domicile: physical presence in a state coupled with intent to remain there indefinitely. McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006); Frett-Smith v. Vanterpool, 511 F.3d 396, 400–01 (3d Cir. 2008). Citizenship is measured when the action begins. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570–71 (2004).

Paragraph 4 pleads both elements in plain terms. Plaintiff resides and maintains his home in Maryland—physical presence—and intends to remain domiciled there—intent. SAC ¶ 4. The motion says Plaintiff did not allege Maryland residence with intent to remain, ECF No. 101 at 7, but later quotes the SAC's allegation that Plaintiff "intends to remain domiciled in Maryland," id. at 10. The quoted pleading disproves the argument.

Nor does an earlier filing's imprecise phrase "New Jersey resident," or a statement about future New Jersey medical care defeat the amended allegation. Residence alone does not establish domicile; domicile requires physical presence plus intent to remain indefinitely. McCann, 458 F.3d at 286. A superseded allegation is not a binding judicial admission and does not displace the operative pleading, although it may later be considered as evidence. West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165, 171–73 (3d Cir. 2013). Employment of a spouse and anticipated out-of-state medical care do not establish where Plaintiff made his permanent home.

The motion supplies no new declaration or other sworn evidence contradicting Maryland domicile. It relies on prior docket statements, so the Court may view the challenge as facial or factual. Under either treatment, Plaintiff's accompanying declaration confirms that he has lived in and maintained his home in Maryland since December 2021; physically lived there when this action

commenced; regarded Maryland as his true and permanent home; intended to remain there indefinitely; continues to live there today; and continues to intend to remain there indefinitely.

The SAC also alleges that every known Defendant is a New Jersey citizen or otherwise is not a Maryland citizen, and that the amount in controversy exceeds $75,000. SAC ¶¶ 2–24. ECF No. 101 contests neither proposition. Diversity jurisdiction is adequately alleged. Any jurisdictional dismissal, moreover, must be without prejudice. Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 182 (3d Cir. 1999).

## II. SECTION 30:4-27.7 DOES NOT ESTABLISH IMMUNITY ON THE FACE OF THE SAC

### A. Washington confirms that the statutory predicates cannot be presumed at dismissal

Washington v. City of Jersey City addresses Section 30:4-27.7 at the motion-to-dismiss stage. No. 24-8597 (SDW) (JSA), 2025 WL 1742694, at *19–20 (D.N.J. June 23, 2025) (not for publication). The hospital defendants invoked subsection (b) for EMTs responding to a mental-health call. Id. The court declined to apply immunity because the allegations did not establish that institutional commitment was sought, that the hotline dispatched the EMTs pursuant to the

involuntary-commitment statutes, that direction came through the pathway subsection (b) requires, or that reasonable steps were taken. Id. The court did not infer missing predicates merely from a mental-health crisis call and emergency response. Id.

Washington therefore illustrates the proper pleading-stage method: identify the invoked subsection, covered actor or employer, statutory purpose, any required direction, and reasonable steps, then ask whether the complaint itself establishes each predicate. A defendant cannot replace that analysis with the general proposition that the events involved mental-health care. An affirmative defense supports dismissal only when its complete basis appears on the complaint's face. Leveto, 258 F.3d at 161.

The facts are not identical. Washington alleged no effort to commit the decedent, while the SAC here alleges that a screening and transfer process was pursued. But that difference does not establish CentraState's or White's statutory status, the required direction to White, good faith, or reasonable steps. Nor does it allow Defendants to supply those elements through their preferred reading of disputed records. Washington is persuasive precisely because it applies the text predicate by predicate at Rule 12, rather than treating any mental-health response as categorically immune.

Here, the SAC identifies Monmouth Medical Center/PESS as the screening service and its personnel as the screening actors. SAC ¶¶ 7–9, 37–42. It identifies CentraState as the emergency-department entity and White as a CentraState nurse, while alleging concrete defects relevant to reasonable steps: unreconciled entries, incomplete dangerous-behavior fields, a rights-notice failure, an unexplained transfer, and materially inaccurate transfer data. SAC ¶¶ 5, 14, 35, 40–48, 66–67, 105. As in Washington, the Court should not presume the missing statutory links or resolve the pleaded disputes in favor of the immunity claimant.

**B. The statute is conditional and applies only to specified actors and conduct**

Section 30:4-27.7(a) protects the specified actors and entities and their respective employers only when acting in good faith pursuant to the Act and taking reasonable steps to assess, take custody of, detain, or transport an individual for mental-health assessment or treatment. N.J.S.A. 30:4-27.7(a). Subsection (b) separately protects specified emergency-services or medical-transport personnel and their employers when they act in good faith, take reasonable steps, and act at the direction of a subsection (a) person. N.J.S.A. 30:4-27.7(b).

The motion treats any involvement in psychiatric detention as enough. It is not. The SAC identifies Monmouth Medical Center/PESS as the screening service and Chris Fabian and Theo Kalogridis as the PESS screening actors; it does not identify CentraState as a designated screening service. SAC ¶¶ 7–9, 37–42. It

identifies CentraState as a general healthcare entity operating an emergency department and White as a CentraState nurse. SAC ¶¶ 5, 14. The pleading does not establish that CentraState was the employer of a covered subsection (a) actor, that White was a designated screening-service or short-term-care-facility staff person, or that White fit subsection (b)'s defined category of an emergency-services or medical-transport person acting at a subsection (a) actor's direction.

Even covered status would not end the inquiry. Good faith, action pursuant to the Act, and reasonable steps are distinct statutory predicates. The SAC alleges facts directed to those predicates: competing or incomplete screening entries, fields concerning specific dangerous conduct allegedly left blank, a rights-notice failure, an unexplained transfer, and objectively inaccurate transfer information. SAC ¶¶ 35, 40–48, 66–67, 105. Those allegations principally concern CentraState. As to White, the SAC separately alleges a nursing assessment and monitoring or documentation role, together with a failure to communicate or escalate the alleged inconsistency. SAC ¶¶ 14, 28, 108–10. At this stage those allegations are accepted; their medical significance and ultimate proof are not adjudicated. Leveto, 258 F.3d at 161.

Ziemba v. Riverview Medical Center does not compel pleading-stage dismissal. It arose after issue was joined and discovery was completed, on a summary-judgment record where defendants made a prima facie showing and

plaintiff failed to respond with competent evidential material. 275 N.J. Super. 293, 298–303 (App. Div. 1994). Leang v. Jersey City Board of Education likewise applied Section 30:4-27.7 at summary judgment on a record establishing the medical defendants' covered transport function and direction by police. 198 N.J. 557, 593–95 (2009). Those cases confirm that status, direction, good faith, and reasonable steps must be established rather than assumed. Washington applies that principle at dismissal.

### C. Symptom labels do not conclusively establish the distinct statutory dangerousness elements

New Jersey law did permit a designated screening service to detain a person for up to twenty-four hours while completing an assessment. N.J.S.A. 30:4-27.5(a). Plaintiff therefore does not contend that a clinical certificate had to precede every minute of screening detention. The question is whether the moving Defendants have established on the SAC's face that CentraState had legal authority for the alleged confinement and transfer and that each conditional immunity predicate was satisfied. They have not.

The Act distinguishes possible mental illness from the criteria for involuntary commitment. A clinical certificate must state the "specific facts" supporting the conclusion that a person needs involuntary commitment. N.J.S.A. 30:4-27.2(b); see also N.J. Ct. R. 4:74-7(b)(3)(A). "In need of involuntary

commitment" requires, among other things, mental illness causing danger to self, others, or property; unwillingness to accept appropriate treatment voluntarily after it has been offered; and a need for specified treatment because other services are not appropriate or available. N.J.S.A. 30:4-27.2(m). "Dangerous to self" requires, by reason of mental illness, a threat or attempt of suicide or serious bodily harm, or behavior indicating inability to satisfy the need for nourishment, essential medical care, or shelter such that substantial bodily injury, serious physical harm, or death probably will result within the reasonably foreseeable future. For the inability-to-meet-essential-needs branch, a person is not deemed unable to satisfy those needs if willing and available others can provide supervision and assistance. The determination must take account of the person's history, recent behavior, and any recent act, threat, or serious psychiatric deterioration. N.J.S.A. 30:4-27.2(h). Danger to others or property requires, by reason of mental illness, a substantial likelihood of serious bodily harm or serious property damage within the reasonably foreseeable future under the statutory criteria. N.J.S.A. 30:4-27.2(i).

The motion relies on the pleaded labels "hallucinations," "manic behavior," and possible medication overuse. ECF No. 101 at 14–16. Those facts may support a permissible defense inference, and Plaintiff does not contend that calmness or orientation necessarily excludes danger. But the labels do not, by themselves, establish each distinct statutory element. The SAC alleges that fields concerning

specific dangerous conduct were blank or incomplete, the same screening record said “Perception: no hallucinations,” other contemporaneous entries described calm and oriented behavior, and Plaintiff wished to leave with family. SAC ¶¶ 27–29, 33, 40–42, 66. At Rule 12, the Court need not choose Defendants’ inference or treat the statutory elements as conclusively adjudicated.

The toxicology allegations illustrate the same limit. The SAC alleges qualitative results but no quantitative dose data establishing overuse, impairment, or dangerousness. Conversely, negative results for other substances do not independently disprove psychiatric symptoms, and a positive result for an authorized substance does not itself establish safe dosing. The pleading-stage point is narrower: the alleged results do not conclusively establish the later assertion of medication overuse, and the significance of the records cannot be resolved against Plaintiff from the pleadings alone. SAC ¶¶ 30–32, 40, 66.

Nor does calm or oriented behavior categorically exclude dangerousness. Its significance is contextual: it was one set of contemporaneous observations to be considered with the symptom labels and statutory criteria. The SAC relies on the alleged process as a whole, not on a calm-equals-safe syllogism.

### D. Section 30:4-27.7 does not reach the independent wrong-number disclosure in Count XX

Count XX concerns a wrong-number voicemail and duties to protect confidential medical information. SAC ¶¶ 60–61, 168–72. Leaving a psychiatric voicemail for an allegedly unauthorized number is not assessment, custody, detention, or transportation under Section 30:4-27.7. The motion offers no reason the statute would immunize that separate event. Count XX therefore cannot be dismissed on this defense.

## III. COUNT VII PLAUSIBLY PLEADS DIRECT AND VICARIOUS LIABILITY

### A. The SAC pleads specific transfer-record and patient-identification failures

Defendants' assertion that the weight and dentures entries are "immaterial" because they do not negate hallucinations addresses the wrong claim. ECF No. 101 at 14–15. Count VII does not allege that weight or dentures, standing alone, disproved dangerousness. It alleges independent patient-identification, accurate-record, transfer-documentation, and verification failures during an involuntary interfacility transfer. SAC ¶¶ 48, 101–06.

The alleged duties have concrete regulatory context. Medicare-participation standards require participating hospitals' medical records to be accurately written and to contain information supporting diagnosis, admission and continued

hospitalization, consultative findings, nursing notes, laboratory reports, vital signs, and information needed to monitor the patient. 42 C.F.R. § 482.24(b), (c), (c)(4)(iii), (c)(4)(vi). New Jersey requires an identification system from admission through release and detailed interfacility-transfer process, including a valid basis for transfer; approval from a physician and the receiving hospital or health-care facility; informed consent as specified by the applicable rule; the signature of the physician who ordered the transfer; the patient's condition; and relevant information sent with the patient. N.J.A.C. 8:43G-5.2(b), (e), 8:43G-12.7(p)–(q). The Code also prescribes how an identified recording error must be corrected while preserving the original entry. N.J.A.C. 8:43G-15.2(l). That correction rule does not itself decide when an error should have been discovered. These regulations supply context for the pleaded negligence theories; Plaintiff has not assert a freestanding private claim under them.

The SAC matches those subjects with concrete alleged facts. The checklist said risks, benefits, and alternatives were not explained; the transfer certification was allegedly signed by A. Tabasko, PA-C and lacked a physician signature or countersignature; and the transfer paperwork described a 170-kilogram patient—105.23 kilograms, or approximately 232 pounds, above Plaintiff's alleged actual weight—and represented that dentures were sent although Plaintiff allegedly had natural teeth. SAC ¶¶ 45–48, 102–03. No psychiatric judgment is needed to

recognize the objective difference between those descriptors and the person alleged.

New Jersey's hospital-transfer rules require, among other things, a valid basis for transfer, approval from a physician and the receiving hospital or health-care facility, informed consent as specified by the applicable rule, the signature of the physician who ordered transfer, the patient's condition, and information collected by the sending department. N.J.A.C. 8:43G-5.2(b), (e), 8:43G-12.7(p)–(q). The SAC alleges that Dr. Fabian issued the screening certificate and Tabasko signed a separate transfer certification. SAC ¶¶ 8, 40, 45. Plaintiff therefore does not argue that a PA-C signed the psychiatric commitment certificate or that a PA-C can never sign any transfer document. The narrower issue is whether the alleged transfer record and any separate physician approval or signature satisfied the applicable transfer requirements.

Materiality is claim- and phase-specific. Defendants' categorical immateriality argument goes too far. Weight is objective patient information capable of affecting clinical, equipment, and transport decisions, including weight-sensitive dosing; a dentures entry may also function as transferred property or patient information. The point is not that CentraState actually calculated a dose from 170 kilograms. It is that a 105.23-kilogram discrepancy and a nonexistent-dentures entry are not intrinsically irrelevant to whether sending staff verified the

information transmitted with Plaintiff. Plaintiff does not allege an actual incorrect dose, lost property, transport of a different person, or a hospital-wide practice from one event. The narrow inference is that material objective information on the transfer record allegedly did not describe Plaintiff and may not have been adequately verified. Its source, authorship, correction, propagation, and use are matters for discovery, substantially reflected in Defendants' records and knowledge. The discrepancies bear on the transfer-phase negligence theory and reasonable steps; they do not independently resolve dangerousness. SAC ¶¶ 103, 105–06.

Chronology limits but does not erase materiality. Transfer-form entries made late on March 25 could not have caused the earlier decision to begin screening, and Plaintiff does not rely on them for that causal step. Read chronologically, Count VII alleges that the detention and rights-process conduct contributed to detention and screening, while the transfer-document and verification conduct contributed to the later transfer and exposure to subsequent confinement or treatment. SAC ¶¶ 35, 43–48, 103–06. A statutory or regulatory violation is ordinarily evidence of negligence—not negligence per se—and is relevant only if causally connected to the injury. Labega v. Joshi, 470 N.J. Super. 472, 489–92 (App. Div. 2022). Estate of Chin recognizes a narrow common-knowledge exception only where professional negligence is readily apparent to lay jurors. 160 N.J. 454, 469–71

(1999). Plaintiff invokes that narrow principle for the objective transcription and patient-information discrepancies, not for psychiatric diagnosis or any technical nursing standard that may require expert proof.

**B. The SAC identifies underlying agents and conduct within the alleged scope of agency**

CentraState argues that vicarious liability fails because no employee tort is alleged. Count VII itself alleges that CentraState employees or apparent agents performed the challenged detention, nursing-monitoring, transfer-certification, and transfer-documentation functions in the emergency department and acted within the scope of agency. SAC ¶¶ 104–06. Elsewhere, the SAC identifies Guillen, Van Pelt, Tabasko, Salony, and White and alleges their respective roles. SAC ¶¶ 10–14, 28–29, 35, 43–49. Read as a whole, those allegations give notice of the agency relationship, underlying conduct, and alleged scope.

Under respondeat superior, a master may be liable for a servant's tort committed within the scope of the master-servant relationship. Carter v. Reynolds, 175 N.J. 402, 408–09 (2003). In the affidavit-of-merit context, Moschella held that a physician need not be individually named where the complaint asserted vicarious liability through Doe agents, the affidavit identified the physician, and agency and scope were uncontested. Moschella v. Hackensack Meridian Jersey Shore University Medical Center, 258 N.J. 110, 127–29 (2024). That setting is narrower

than this pleading dispute, but it rejects a categorical rule that every underlying hospital agent must be named as an individual defendant. Here, Count VII alleges both identified and other employee or apparent-agent conduct within scope. SAC ¶¶ 104–06.

The motion also overreads Di Cosala. That decision treats negligent hiring and retention as direct torts distinct from respondeat superior. Di Cosala v. Kay, 91 N.J. 159, 172–74 (1982). Nothing in Di Cosala purports to exhaust every possible theory of direct institutional negligence. Defendants mistakenly characterize Count VII as "Intentional Negligence," but the SAC captions it "Institutional Negligence." Regardless of label, Rule 8(e) directs that pleadings be construed to do justice, and Count VII substantively alleges duties, breach, causation, damages, and alternative direct and derivative theories. SAC ¶¶ 101–06; Fed. R. Civ. P. 8(d)(2), (e). If the Court finds the direct systems theory insufficiently detailed, that would not eliminate the separately pleaded vicarious theory.

The fact that ECF No. 101 was filed only on behalf of CentraState and White does not determine whether other alleged employees or agents committed a tort within scope. Nor can CentraState plausibly claim it lacked fair notice: its motion identifies the precise paragraphs, actors, and record entries and contests their significance on the merits. At minimum, the vicarious theory should not be

dismissed merely because every alleged agent is not represented by the same counsel or named as an individual movant.

## IV. COUNT XX EXPRESSLY PLEADS CONFIDENTIALITY, TRAINING, SUPERVISION, AND VICARIOUS LIABILITY

The motion says the SAC contains no negligent-training or supervision claim. ECF No. 101 at 12–13. Paragraphs 169 and 170 say the opposite. They allege duties to train and supervise staff regarding confidential communications and direct liability for negligent training, supervision, and communication procedures concerning psychiatric patients and confidential medical information. SAC ¶¶ 169–70. Paragraphs 60–61 identify the transposed digits, the intended and actual numbers, and the type of sensitive information allegedly made accessible to an unauthorized number. Paragraphs 170–72 plead agency, breach, causation, and harm.

Crescenzo held that a physician's unauthorized release of privileged treatment records could support damages. Crescenzo v. Crane, 350 N.J. Super. 531, 547–50 (App. Div. 2002). Kinsella held that patients' identities and the fact of hospital admission are protected from disclosure and that admission to a particular unit may itself reveal medical status. Kinsella v. NYT Television, 382 N.J. Super. 102, 107–10 (App. Div. 2005). Plaintiff does not rely on HIPAA or a regulation as

an independent private cause of action. The claim remains one for common-law confidentiality, negligence, and vicarious liability.

The exact voicemail wording, ownership and receipt of the number, Ashley's employment status, verification procedures, and training history are facts to be confirmed in discovery. The SAC already pleads a particular transposed number, an unauthorized destination, sensitive information, agency, breach, and harm. SAC ¶¶ 60–61, 168–72. Direct negligent training may ultimately require facts showing notice of a deficient practice or another basis for institutional fault. If the Court finds that direct theory inadequately detailed, it should dismiss only that theory without prejudice; the independent vicarious-liability and confidentiality theories should remain.

## V. COUNT XVI PLAUSIBLY ALLEGES DETENTION WITHOUT PROPER LEGAL JUSTIFICATION

False imprisonment requires detention against the person's will and absence of proper legal authority or justification. Leang, 198 N.J. at 591. The SAC alleges both: after Plaintiff asked to leave, CentraState prevented him from leaving and placed him in a secured room under continuous monitoring; it further alleges that the confinement lacked a legally sufficient individualized basis and reasonable statutory process. SAC ¶¶ 33–35, 148–52.

Section 30:4-27.5(a) can authorize a designated screening service to detain a person during an assessment for up to twenty-four hours. The SAC itself alleges that an on-call psychiatrist recommended involuntary screening at approximately 9:57 p.m. and that Monmouth/PESS personnel evaluated Plaintiff later. SAC ¶¶ 34, 37–42. Those allegations may support authority after a qualifying direction, but they do not establish on the pleading's face CentraState's own statutory status, which actor prevented departure at which time, when any qualifying direction became operative, or whether the continued secured detention satisfied the Act's requirements. The title "pre-certificate" alone does not resolve those questions.

Those issues cannot be decided by assuming CentraState's status and authority. Nor did ECF No. 72 decide them. The Court dismissed the former state claims without prejudice for lack of jurisdiction and denied the merits motions as moot. ECF No. 72 at 25–30. Its footnote offered only an "at first glance" observation about a different pleading. Id. at 28 n.17. Paragraph 35 specifically alleges that CentraState staff prevented Plaintiff from leaving and placed him in secured isolation, and Count XVI expressly incorporates that paragraph. The SAC therefore attributes the confinement to human agents acting for CentraState and alleges detention, lack of consent, and absence of proper legal authority. SAC ¶¶ 35, 148–52.

## VI. COUNT VIII'S CHRONOLOGY IS FACTUALLY DISPUTED; ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE

White characterizes Count VIII as requiring him to overturn later physicians. It does not. The alleged duty is to document, monitor, communicate material observations, and escalate a material inconsistency—not to make the ultimate commitment decision. SAC ¶ 108. The SAC identifies White, his 6:49 p.m. observation, the later secured detention, and the alleged failure to communicate or escalate. SAC ¶¶ 14, 28, 107–11. It therefore alleges a specific omission rather than merely naming White because he was present.

The chronology is nonetheless a fair issue. White's identified 6:49 p.m. note precedes the approximately 9:54 p.m. refusal and 9:57 p.m. screening recommendation by about three hours, and the SAC identifies no later White-authored note. SAC ¶¶ 28, 33–35. Paragraphs 14 and 109 allege a monitoring role and failure to escalate while detention continued, but the precise shift, knowledge, communications, and causal effect are not detailed. Berk holds that Rule 8 does not require evidentiary materials with a complaint. 607 U.S. at 193–94. It does not excuse a missing essential fact. Reading the SAC as a whole, the identified actor, note, alleged role, omission, and harm provide fair notice; if the Court disagrees, the deficiency is potentially curable rather than a basis for dismissal with prejudice.

Defendants may argue in the alternative that White lacked involvement and that any covered conduct was immune, so the Court need not treat the positions as a formal contradiction. But neither alternative proves dismissal. If White's alleged nursing conduct does not place him within one of Section 30:4-27.7's covered actor-and-function categories, the statute does not immunize that conduct. If it does, covered status, good faith, action pursuant to the Act, and reasonable steps remain separate predicates.

If the Court concludes that Count VIII needs a more precise chronology connecting White's shift, knowledge, communications, and conduct to the detention, the remedy should be dismissal without prejudice to a properly supported Rule 15 motion. Plaintiff does not ask the Court to accept new merits facts through this brief.

## VII. THE CURRENT DOCKET RECORD INDICATES THAT WHITE WAIVED HIS RULE 12(b)(5) DEFENSE

The August 15, 2025 Opinion identifies White as an ECF No. 50 movant. ECF No. 72 at 1 & n.1. ECF No. 50 expressly sought dismissal under Rules 12(b)(1) and 12(b)(6), and the provided contents of the accompanying brief identify no Rule 12(b)(5), insufficient-process, or insufficient-service argument. Consistently, the Court's service analysis identified the ECF No. 47 defendants as

the appearing parties who had asserted Rule 12(b)(5), allowed those defendants to renew it, and ordered service on those four defendants and eight specified nonappearing defendants. Id. at 10–13, 30. White was not on that service list.

If the complete ECF No. 50-1 confirms the omission reflected by the notice, provided contents, and ECF No. 72, White waived the then-available Rule 12(b)(5) defense by filing his first Rule 12 motion without it. Fed. R. Civ. P. 12(g)(2), 12(h)(1)(A); McCurdy v. American Board of Plastic Surgery, 157 F.3d 191, 194–95 (3d Cir. 1998). An objection to service of the Complaint or First Amended Complaint was available then. The SAC did not restart Rule 4 service as to an appearing, represented party; amended pleadings are served on counsel under Rule 5. Fed. R. Civ. P. 5(a)(1)(B), 5(b)(1). Rule 5(a)(2)'s new-claim exception applies to a party in default for failure to appear, and White had appeared.

The March 25, 2025 Order predates White's appearance and ECF No. 50. ECF No. 101 at 17–18. If the complete filing confirms omission, the earlier order does not erase White's later waiver. Rule 4(l)(3) separately provides that failure to file proof does not affect otherwise valid service, but Plaintiff relies on the docket-supported Rule 12 waiver—not Rule 4(l)(3)—as the principal answer.

Waiver is defendant-specific. This opposition addresses White because he is the only individual moving at ECF No. 101. The same analysis may apply to

another defendant only after examining that party's own first Rule 12 filing and whether the defense was then available.

## VIII. RULE 41(b) DOES NOT REVIVE WHITE'S WAIVED SERVICE DEFENSE OR SUPPORT DISMISSAL WITH PREJUDICE ON THIS RECORD

ECF No. 101 identifies no White-specific service obligation in the August 15, 2025 Order that Plaintiff violated. If the complete prior filing confirms waiver, Rule 41(b) cannot be used to evade it. In any event, dismissal with prejudice as a sanction ordinarily requires analysis of the six Poulis factors. Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 868 (3d Cir. 1984); Hildebrand v. Allegheny County, 923 F.3d 128, 132 (3d Cir. 2019). The motion analyzes none. There is no finding of willful noncompliance, White-specific prejudice from a violated order, ineffectiveness of lesser sanctions, or abandonment.

Rule 4(m), even when applicable, calls for dismissal without prejudice or an extension—not dismissal with prejudice. A Rule 12(b)(1) dismissal likewise must be without prejudice. Figueroa, 188 F.3d at 182. And if the Court identifies a curable Rule 8 deficiency in any state claim, amendment should ordinarily be permitted unless inequitable or futile. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002); Foman v. Davis, 371 U.S. 178, 182 (1962). The Court should deny the requested with-prejudice disposition.

## CONCLUSION

For these reasons, Plaintiff respectfully requests denial of ECF No. 101. Alternatively, any jurisdictional or curable claim-specific dismissal should be without prejudice; the Rule 41(b) request should be denied; and White's service objection should be rejected as waived if the complete ECF No. 50 filing confirms the omission reflected in the available record.

Plaintiff joins Moving Defendants' request for oral argument. ECF No. 101 at 2; L. Civ. R. 78.1. Plaintiff will appear if ordered; argument would assist on domicile, immunity, liability, and waiver. The request does not alter the jury demand.

Respectfully submitted:
Date July 29th, 2026
/S/ Bradley Clonan
Bradley Clonan
Bradley Clonan, Pro Se
732-476-9555
clonanxyz@gmail.com
2604 W. Rhododendron Drive, Abingdon, MD 21009