43423.00110-RTE
**MARSHALL DENNEHEY**
By: Steven A. Johnston, Esq.
Attorney I.D. No. 448272024
425 Eagle Rock Avenue, Suite 302
Roseland, NJ 07068
☎973-618-4100 🖷973-618-0685
sajohnston@mdwcg.com
ATTORNEYS FOR DEFENDANTS, CentraState Healthcare System/Atlantic Health System and Jordan White, R.N.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
***(Trenton Vicinage)***

| | |
|---|---|
| BRADLEY CLONAN,<br><br>Plaintiff<br><br>vs.<br><br>CENTRASTATE HEALTHCARE SYSTEM; HAMPTON BEHAVIORAL HEALTH CENTER; MONMOUTH MEDICAL CENTER; DR. CHRIS FABIAN, M.D.; THEO J. KALOGRIDIS, R.N.; DR. STEVEN GUILLEN, M.D.; DR. STEPHEN VAN PELT, M.D.; A. TABASKO, PA-C; ANTONELLA SALONY, R.N.; JORDAN WHITE; R.N.; DR. MICHAEL HOUDART, D.O.; DR. ATTA-UR REHMAN, M.D.; ANITA GIUNTA, L.S.W.; and “INTERN ASHLEY” (John/Jane Doe),<br><br>Defendants. | Civil Action NO.: 3:24-cv-11399-RK-RLS |

**DEFENDANTS, CENTRASTATE HEALTHCARE SYSTEM/ATLANTIC HEALTH SYSTEM AND JORDAN WHITE, R.N., REPLY IN SUPPORT OF THE <u>RULE</u> 12(b)(6) MOTION TO DISMISS**

---

**MARSHALL DENNEHEY, P.C.**
425 Eagle Rock Avenue, Suite 302

*Attorneys for Defendants,*
*CentraState Healthcare System/Atlantic Health System and Jordan White, R.N.*

*On the Brief*
Steven A. Johnston, Esq.

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT....................1

FACTUAL AND PROCEDURAL BACKGROUND....................2

LEGAL ARGUMENT....................3

THIS HONORABLE COURT LACKS DIVERSITY JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS AS HE HAS FAILED TO ADEQUATELY ALLEGE THAT HE IS DOMICILED IN MARYLAND....................3

PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AGAINST CENTRASTATE. ....................4

a. Plaintiff has failed to adequately allege a claim of "institutional negligence" and "false imprisonment" against CentraState....................4

b. Plaintiff has failed to allege that a breach of confidentiality took place or that damages are present. ....................9

PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT, NURSE JORDAN WHITE, UPON WHICH RELIEF CAN BE GRANTED. ....................10

Plaintiff has failed to state a claim against Nurse Jordan and his allegations are contradicted by the medical record incorporated in the Second Amended Complaint by reference. ....................10

DEFENDANT, NURSE JORDAN WHITE, WAIVES SERVICE PURSUANT TO <u>RULE</u> 4....................13

CONCLUSION....................13

## TABLE OF AUTHORITIES

CASES PAGE

*Ashcroft v. Iqbal*, 556 U.S. 662, at 677-678 (2009) ....................4
*Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) ....................6
*Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 493 (3d Cir. 2017) ....................6
*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ....................5, 6
*Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ....................3, 4

Fed. R. Civ. P.

Rule 4 ....................13

## PRELIMINARY STATEMENT

As a threshold matter, this Honorable Court lacks jurisdiction over Plaintiff's state law claims because diversity jurisdiction does not exist. Plaintiff has not adequately plead diversity of citizenship. Plaintiff is currently actively registered to vote in New Jersey which is a public record the Court may take judicial notice of and he has failed to address the issues raised in this Court's prior opinion regarding his inconsistent statements regarding residency.

Plaintiff, Bradley Clonan, has failed to state a claim upon which relief may be granted. The limited factual allegations in the Complaint are contradicted by the medical chart which is incorporated in the Second Amended Complaint by reference. Plaintiff cites the medical chart to support his claims; however, when reviewed in the context of the actual medical chart, Plaintiff's allegations are clearly distortions of the record. Plaintiff had a series of evaluations and assessments by multiple providers prior to his involuntary psychiatric hold. His family members reported unusual behavior, hallucinations, and paranoia. Medical providers noted "paranoia," "irrational thinking," and "flights of ideas." Plaintiff's claim against CentraState is one for negligence based on "ED detention," a missing "rights notice," and errors in "transfer documentation." However, the medical record shows that the Plaintiff was on a medical hold, assessed by a screener and psychiatrist before being transferred for inpatient care, and that any errors in the charting were immaterial when compared with the clear danger he presented to himself and others.

Plaintiff's assertion of a breach of confidentiality is not supported by the medical chart. However, even if the Court must take the fact that a breach of confidentiality took place for the purpose of the instant motion, Plaintiff has failed to allege any damages as a result of that breach.

Plaintiff asserts that Nurse Jordan White reported that Plaintiff denied pain and was resting comfortably in the medical chart and then failed to correct later providers during the psychiatric

hold. However, Plaintiff did not include in his Second Amended Complaint that the medical chart also states that Nurse White made a notation at 6:48 PM that the Plaintiff had hallucinations and manic behavior in the Initial ED Psychosocial Assessment. Plaintiff has failed to state a claim against Nurse White upon which relief may be granted.

Based on the facts established in the medical chart, which is incorporated by reference in the Second Amended Complaint, Plaintiff has failed to state a claim upon which relief may be granted. Moving Defendants respectfully request that this Honorable Court dismiss the Second Amended Complaint with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

1. On March 24, 2023, Plaintiff arrived at CentraState emergency department for voluntary medical care related to his mental health.

2. Plaintiff presented with hallucinations, manic behavior, and positive toxicology results for prescribed substances.

3. Plaintiff was placed on an involuntary hold and transferred to a psychiatric treatment facility.

4. Plaintiff filed an initial Complaint that was dismissed *sua sponte* by a Court Order on March 25, 2025. The Court's March 25, 2025, Order is attached as **Exhibit A**.

5. Plaintiff filed a First Amended Complaint in April 2025.

6. On August 15, 2025, the First Amended Complaint was dismissed and the Plaintiff granted leave to amend. The Court's August 15, 2025, Order and Opinion Dismissing the First Amended Complaint are attached as **Exhibit B**.

7. In the Opinion dismissing Plaintiff's First Amended Complaint, the Court did not take supplemental jurisdiction of Plaintiff's claims based on diversity and instead instructed Plaintiff to file an amended Complaint addressing citizenship. *See* **Exhibit B**.

8. On June 11, 2026, Plaintiff filed a Second Amended Complaint asserting only state law claims based on diversity jurisdiction. The Plaintiff's Second Amended Complaint is attached as **Exhibit C**.

9. Plaintiff's Second Amended Complaint states that he is domiciled in Maryland with intent to remain but does not address the Court's opinion. Additionally, Plaintiff is currently actively registered to vote in New Jersey. *See* **Exhibit D**.

10. Plaintiff's Second Amended Complaint is framed based on Plaintiff's reading of the CentraState medical record and extensively cites to and relies upon statements in the medical record. As a result, the Second Amended Complaint incorporates the CentraState medical chart by reference. Attached hereto for *in camera* review is a true and accurate copy referenced sections of the CentraState medical chart for Plaintiff's March 24 to 25, 2023, hospitalization as **Exhibit E**.

11. Defendant, Jordan White, RN, is a female and saw the Plaintiff for a total of approximately twenty-six (26) minutes on March 24, 2024.

## LEGAL ARGUMENT

### A) THIS HONORABLE COURT LACKS DIVERSITY JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS AS HE HAS FAILED TO ADEQUATELY ALLEGE THAT HE IS DOMICILED IN MARYLAND.

The determination of where a party is domiciled for the purposes of diversity jurisdiction is a factual finding and is based on the evidence relevant to the time period when the action was commenced. *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972). The Court has explained, "A citizen of the United States can change his domicile instantly. To do so, two elements are necessary. He must take up residence at the new domicile, and he must intend to remain there. Neither the

physical presence nor the intention to remain is alone sufficient." *Id.* Additionally, "Proof of intent to remain permanently is not the test." *Id.* Domicile can change instantaneously depending on the relevant facts. For example, "If the new state is to be one's home for an indefinite period of time, he has acquired a new domicile." *Id.* at 1300-01. Examples of intent to remain include, "his declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *Id.* at 1301 (citations omitted). The burden of establishing diversity rests with the plaintiff. *Id.* (citations omitted).

Here, Plaintiff has stated in the Second Amended Complaint that he resides in Maryland and has the intent to remain there. This is insufficient for purposes of diversity jurisdiction given the Plaintiff's past statements – as noted by the Court in the prior Opinion dismissing the First Amended Complaint. *See* **Exhibit B**, pgs. 27-28. As the Court noted, "In his opposition briefs, Plaintiff describes himself as a "law abiding New Jersey resident, (ECF No. 57 at 7), and mentions his intent to seek future medical care in New Jersey (ECF No. 46 at 33)." *Id.* Additionally, Plaintiff is currently actively registered to vote in New Jersey. *See* **Exhibit D**. Plaintiff has failed to allege diversity jurisdiction in the initial Complaint, First Amended Complaint, and now the Second Amended Complaint. As a result, this Honorable Court lacks jurisdiction over Plaintiff's state law claims.

## B) PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AGAINST CENTRASTATE.

### a. Plaintiff has failed to adequately allege a claim of "institutional negligence" and "false imprisonment" against CentraState.

As a threshold matter, any allegations regarding the conduct of the screener, Monmouth Medical Center, and Hampton Behavioral Center cannot be attributed to CentraState. Plaintiff must assert factual allegations against CentraState that establish that there is a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, at 677-678 (2009). The

*entirety* of Plaintiff's claim is that the medical chart establishes that the employees of CentraState were negligent in instituting a psychiatric hold of the Plaintiff. Plaintiff provides no factual allegations to support his claim against CentraState that do not specifically come from the CentraState medical chart. However, the medical chart from CentraState contradicts Plaintiff's claims and can be reviewed by this Honorable Court at the Rule 12(b)(6) Motion to Dismiss stage because it is an integral part of the Plaintiff's claims and explicitly relied upon in the Second Amended Complaint and so is incorporated by reference.

The Plaintiff has continuously referred to and quoted the medical records in this matter. Count VII against CentraState is based, at least in part on a "rights notice" and "transfer documentation." Count XVI alleges false imprisonment. Finally, Count XX is based wholly on a notation by "Intern Ashley" in the medical chart. Moving Defendant, CentraState, asserts that the medical chart from Plaintiff's March 24, 2023, emergency department visit is integral to or explicitly relied upon in Plaintiff's Second Amended Complaint. As a result, this Honorable Court may review and consider the medical chart in deciding the instant 12(b)(6) Motion to Dismiss.

Although the Court is limited to the factual allegations in the complaint in addressing a Rule 12(b)(6) Motion to Dismiss, a defendant, in limited circumstances, may provide additional evidence to the Court for consideration. Where a plaintiff's claim relies on a document in a complaint that is integral to the claims, the Court may consider the document. The Third Circuit Court of Appeals has explained:

> As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *Angelastro*, 764 F.2d at 944. However, an exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *Shaw*, 82 F.3d at 1220 (emphasis added); *see also Trump*, 7 F.3d at 368 n.9 ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the

> plaintiff's claims are based on the document.") (*quoting Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
>
> The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint -- lack of notice to the plaintiff -- is dissipated "where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (*quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)); *see also San Leandro*, 75 F.3d at 808-09. What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent. *See Shaw*, 82 F.3d at 1220.

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). *See also Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 493 (3d Cir. 2017) (allowing an essay in its entirety to be considered by the Court at the Rule 12(b)(6) stage submitted by the defendant in the reply to the opposition where plaintiff quoted to part of the essay in the complaint) and *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).

In the preliminary statement of Plaintiff's Opposition to the instant Motion, Plaintiff states:

> [the Second Amended Complaint] pleads a specific sequence: competing observations; an alleged medication-overuse rationale that the SAC says the reported toxicology results did not substantiate; official forms allegedly missing specific dangerous-behavior information; failure to review screening rights; a transfer checklist stating that risks, benefits, and alternatives were not explained; a transfer certification allegedly signed by A. Tabasko, PA-C and lacking a physician signature or countersignature; and transfer records describing a 64.77-kilogram patient with natural teeth as a 170-kilogram patient with dentures.

*See* Plaintiff's Opposition to the instant Motion previously filed of record, pg. 8. This is the sum and substance of Plaintiff's negligence claim against CentraState asserted in Count VII. The alleged "competing observations" are an opinion and not factual. This is contradicted in the medical record which the Second Amended Complaint clearly incorporates by reference. Plaintiff conveniently leaves out the following from his recitation of the facts:

- The "reason for visit" in March 24, 2023, was "hallucinations" and "paranoia." **Exhibit E**, Pg. 1-2.
- At 6:48 p.m., an initial ED psychosocial assessment **completed by Nurse Jordan White** described Plaintiff as expressing hallucinations and manic behavior who then also noted "Patient denies pain and is resting comfortably" at 6:49 PM. She does not refer to orientation at that time. *Id.*, Pg. 11.
- The screening assessment completed on March 25, 2023, at 00:30, notes that the "reason for the screening" was: "Patient referred by CSHC Crisis Patient called 911 reporting he had evidence his family is in danger. Patient paranoid, experiencing persecutory delusions, patient hyperverbal, perseverating, with grossly impaired insight and judgment." *Id.*, Pg. 16.
- The screener described the Plaintiff's mental health illness history as "Patient has no known psychiatric history; however, patient is prescribed Adderall." *Id.*, Pg. 16.
- When stating the Plaintiff was a danger to himself, the screener stated in its entirety, "Patient paranoid, believes he and his family are in danger. Patient is overtaking prescribed medications, not sleeping, lost a significant amount of weight over 1 month." *Id.*, Pg. 17.
- When stating the Plaintiff was a danger to others, the screener stated in its entirety, "Patient drove wife and 6 year old daughter from MD to NJ believing his previous employer was going to harm his family." *Id.*, Pg. 17.
- The screener's least restrictive setting rational is as follows: "Patient paranoid, delusional, impulsive, with grossly impaired insight and judgment. Patient is currently a danger to self and others due to mental illness and currently meets criteria for commitment. Requires STCF for safety, stabilization and compliance." *Id.*, Pg. 20.

- Dr. Chris Fabian then conducted a tele-psychiatric assessment of the Plaintiff noting that the Plaintiff had "psychotic decompensation" and a "delusional system about his employer." *Id.*, Pg. 26. He does also refer to possible stimulant/Adderall overuse.
- Although Dr. Fabian found that the Plaintiff's perceptions did not include "hallucinations" and that he was "fully oriented," this is not a complete picture of the assessment as Dr. Fabian notes the Plaintiff's thought content was "paranoid, idiosyncratic, cryptic"; that his association and thought processes were "circumstantial"; that his attitude and behavior were "thoroughly convinced re his delusional thinking"; and that his insight and judgement were "Nil/poor." *Id.*, Pgs. 27-28.
- Dr. Fabian's diagnoses were "psychotic disorder" and "rule out mood disorder with psychotic features" and "rule out psychoactive substance induced delusional disorder." *Id.*, Pg. 29.
- Dr. Fabian found that Plaintiff had "bizarre behavior as a result of his delusional system; paranoid, grandiose; no insight, cannot care for self." *Id.*, Pg. 29-30.
- The medical record also indicates that the Plaintiff's family called EMS stating he was having hallucinations. *Id.*, Pg. 36.
- Plaintiff's mother reported that Plaintiff took his family from Maryland to New Jersey because he believed he was not safe in Maryland, that this was the most frantic she had seen him, and that he needed inpatient admission. *Id.*, Pg. 57.

The above are only a selection of the inconsistencies that the medical records depict when compared to Plaintiff's Second Amended Complaint. The medical chart is incorporated in the Second Amended Complaint by reference and he has quoted, referred to, and relied on the medical chart to support and frame his state law claims. The medical chart contradicts Plaintiff's assertions

of negligence and even supports the lack of diversity jurisdiction as he fled Maryland for New Jersey believing his family was unsafe in Maryland. Plaintiff's characterizations and opinions cannot be taken as true and the medical record supports the decision of CentraState's staff in placing Plaintiff on an involuntary hold for his safety and the safety of his family. Moving Defendant, CentraState, respectfully requests that this Honorable Court deny Count VII and XVI of the Second Amended Complaint, with prejudice, as Plaintiff has failed to state a claim upon which relief may be granted.

**b. Plaintiff has failed to allege that a breach of confidentiality took place or that damages are present.**

Plaintiff has alleged a breach of confidentiality claim because an individual identified as "Intern Ashley" called an incorrect phone number and left "a voicemail that disclosed Plaintiff's psychiatric location, psychiatric status, or other confidential medical information to an unauthorized number." *See* **Exhibit C**, ¶ 165. Again, as noted above, the Court may consider the medical record in evaluating the validity of this claim at the Motion to Dismiss stage. Moving Defendant cannot identify in the medical chart where "Intern Ashley" called the incorrect number and left a voicemail. To the extent that any employee or agent of CentraState dialed an incorrect phone number and left a voicemail, Plaintiff has not alleged any damages.

There is only one reference in the medical chart to the incorrect phone number referenced by Plaintiff in the Second Amended Complaint:

> 1157 Call placed to Hampton Admissions regarding pick up time. Spoke with Nicole to advise that the client will be picked up at around 1230. Call placed to patient's wife, Gabriella [incorrect phone number cited by Plaintiff] voicemail left requesting a return call to confirm that message was received. Electronically signed by Adam Jacobs at 3/25/2023 12:01 PM

*See* **Exhibit C**, ¶ 60; and **Exhibit E**, pg. 60. At this stage of the litigation, the Court must take the fact that the wrong number was called as true. However, Plaintiff has failed to allege that any personal information was disclosed or that any damages resulted from the erroneous voicemail.

### C) PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANT, NURSE JORDAN WHITE, UPON WHICH RELIEF CAN BE GRANTED.

#### a. Plaintiff has failed to state a claim against Nurse Jordan and his allegations are contradicted by the medical record incorporated in the Second Amended Complaint by reference.

Nurse Jordan White is a named Defendant in the Second Amended Complaint and is only specifically referred to in Count VIII, "Professional Nursing Negligence/Negligent Documentation and Escalation." Plaintiff's basis for this Count is that Nurse Jordan White entered a note at 6:49 PM allegedly stating "Plaintiff denied pain, was resting comfortably, and was alert and oriented x3" and then did not intervene during the later psychiatric hold. **Exhibit C**, ¶ 28. Plaintiff alleges that Nurse White's omission in "documenting or escalating the inconsistency between those observations and the continued involuntary hold" constitutes medical malpractice. *Id.* at ¶ 109. Additionally, Plaintiff alleges "that [Nurse] White's conduct contributed to the continuation of Plaintiff's secured detention and to the failure of later actors to receive a complete and balanced record of Plaintiff's presentation." *Id.* at ¶ 110. Plaintiff refers to Nurse White as a male using "he/him" pronouns when in fact Nurse White is female. Additionally, the record indicates that she interacted with Plaintiff for a total of approximately twenty-six (26) minutes.

Paragraph 27 of the Second Amended Complaint states in its entirety: "At approximately 6:48 p.m., an initial ED psychosocial assessment described Plaintiff as expressing hallucinations and manic behavior. Plaintiff alleges that other contemporaneous assessments documented him as calm or resting, creating a material contradiction in the charted basis for psychiatric escalation." Plaintiff's claims against Nurse White rest on medial documentation at 6:48 PM and 6:49 PM as

specifically referred to in paragraphs 28 and 29 of the Second Amended Complaint. Plaintiff makes the conclusion that a hallucinating and manic patient cannot be resting comfortably without pain. This is not a factual allegation but a medical opinion by the Plaintiff which he is not qualified to make and that the Court does not have to take as true at the Motion to Dismiss stage.

At paragraph 27 of the Second Amended Complaint, Plaintiff states, “ED psychosocial assessment described Plaintiff as expressing hallucinations and manic behavior.” The Court must take this fact as true for the purposes of the Motion to Dismiss as it is a factual allegation asserted by the Plaintiff in the instant Complaint. Regardless of Nurse White’s observations at 6:49 PM, the Second Amended Complaint alleges that at 6:48 PM a medical provider noted in an ED Psychosocial Assessment that the Plaintiff had “hallucinations” and “manic behavior.” Even though Plaintiff has conveniently not included in the Second Amended Complaint the author of this Assessment, the Court must take it as true for the purpose of evaluating the 12(b)6 Motion. At the same time, Plaintiff alleges that nursing care transitioned to Defendant, Antonella Salony, R.N. between approximately March 24, 2023, at 7:14 PM and March 25, 2023, at 7:49 AM. *Id.* at ¶ 29. Plaintiff alleged that it was Nurse Salony, and not Nurse White, who provided nursing care and monitoring between those times. Taking this allegation as true, Nurse White was no longer involved in Plaintiff’s care after 7:14 PM.

No other allegations of medical malpractice are alleged against Nurse White, only that she allegedly noted the Plaintiff “denied pain, was resting comfortably, and was alert and oriented x3” at 6:49 PM and then did not “intervene” or “escalate” alleged discrepancies in the medical record when Dr. Guillen allegedly “transitioned to from medical clearance and a requested discharge to involuntary psychiatric screening or detention without reconciling the objective toxicology results and calm or resting observations.” **Exhibit C**, ¶ 28 and 30. The alleged omission of Nurse White

is not a factual allegation that must be taken as true. Plaintiff also alleged that Nurse White was replaced by Nurse Salony prior to the involuntary psychiatric hold. On the face of the Second Amended Complaint, Plaintiff has failed to successively allege any claims of medical malpractice on the part of Nurse White.

Here, as noted above, Plaintiff's claim against Nurse White relies on her notation in the medical records. Plaintiff has quoted Nurse White in the Complaint to support his allegations. *See* **Exhibit C**, ¶ 29. The Plaintiff clearly has access to his medical record and has quoted Nurse White's note. Moving Defendant, Nurse White, asserts that Plaintiff has failed to provide the complete context to the Court. Specifically, paragraph 28 of the Second Amended Complaint, cited in its entirety above, is written in the passive voice. Plaintiff, conveniently, or worse, intentionally, has left out that it was Nurse Jordan White who completed the Initial ED Psychosocial Assessment at 6:48 PM which found that there were "exceptions to within defined limits" of the Plaintiff's psychosocial behavior. *See* **Exhibit E**. As a result, the Plaintiff's allegation that Nurse White committed medial malpractice by stating that the Plaintiff was calm and then failed to act when he was placed on an involuntary psychiatric hold is not consistent with the medical record that Plaintiff cites to support his claim.

In the Second Amended Complaint and, again, in the Opposition to the instant Motion. Plaintiff asserts that Nurse White's "duty to document, monitor, communicate material observations, and escalate a material inconsistency" is the basis for the medical malpractice claim. This is integrally based on Nurse White's medical notations at 6:48 PM and 6:49 PM. *See* **Exhibit C**, ¶¶ 27, 28. The medical record specifically establishes that it was in fact Nurse White who completed the ED Psychosocial Assessment at 6:48 PM and so there is no inconsistency to report – Nurse White found that the Plaintiff was having hallucinations and manic behavior at the time

he was resting and calm. A fact that Plaintiff conveniently leaves out of paragraph 27 of the Second Amended Complaint. Plaintiff explicitly relies upon the notes of Nurse White to support his claim and so the Court may consider the document attached as **Exhibit E** in deciding the Rule 12(b)(6) Motion to Dismiss. No amendment of the Second Amended Complaint can cure the fact that Nurse White noted the Plaintiff had "hallucinations" and "manic behavior" at 6:48 PM. Plaintiff has failed to state a claim against Nurse White. There is no amendment that can cure his inconsistent representations to the Court. As a result, Moving Defendant, Nurse White, respectfully requests that this Honorable Court dismiss Plaintiff's Second Amended Complaint against her **with prejudice** for failure to state a claim upon which relief may be granted.

**D) DEFENDANT, NURSE JORDAN WHITE, WAIVES SERVICE PURSUANT TO RULE 4.**

Since the filing of the instant Motion, Plaintiff has asked counsel for Nurse White to waive service. Nurse Jordan White has agreed to waive service pursuant to Federal Rule of Civil Procedure 4. As a result, the issue of service as to Nurse Jordan White only is now moot.

## CONCLUSION

Moving Defendants assert that this Honorable Court lacks jurisdiction over the Plaintiff's state law claims as diversity jurisdiction has not been adequately alleged in the Second Amended Complaint. Furthermore, based on the facts established in the medical chart which is incorporated by reference in the Second Amended Complaint, Plaintiff has failed to state a claim upon which relief may be granted. Moving Defendants respectfully request that this Honorable Court dismiss the Second Amended Complaint with prejudice.

By: ______________________________
Steven A. Johnston, Esq.

Date: August 12, 2026