**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BRADLEY CLONAN,**<br><br>Plaintiff,<br><br>v.<br><br>**CENTRASTATE HEALTHCARE SYSTEM/ ATLANTIC HEALTH SYSTEM, et al.,**<br><br>Defendants. | **Civil Action No. 3:24-cv-11399-RK-RLS**<br><br>**[PROPOSED] LIMITED SUR-REPLY IN FURTHER OPPOSITION TO ECF NO. 101**<br><br>Submitted with Plaintiff's Application under L. Civ. R. 7.1(d)(6) |

**PRELIMINARY STATEMENT**

Plaintiff incorporates ECF No. 102 and does not repeat it. This limited filing addresses the evidence and categorical factual characterizations first presented with ECF No. 109. Plaintiff acknowledges that the records contain adverse descriptions, including paranoia, delusional thinking, insomnia, reported weight loss, impaired insight and judgment, possible prescribed-medication overuse, a family-travel narrative, treatment refusal, and checked danger conclusions. He does not ask the Court to substitute a lay opinion for clinical judgment.

The narrower point is procedural and dispositive at this stage: counsel's categorical description of Plaintiff as a clear danger is an inference drawn from disputed and materially mixed records, not an uncontested fact. The Court need not determine that Plaintiff was safe. It need only decline to treat selected chart labels as conclusive proof of statutory dangerousness, good faith, and reasonable steps on a motion to dismiss.

**I. THE REPLY EXHIBITS DO NOT AUTHORIZE FACTFINDING AGAINST THE PLEADING**

ECF No. 109 submitted selected CentraState pages as confidential Exhibit E and urged the Court to use them to contradict the Second Amended Complaint. Counsel supplied the exact exhibit to Plaintiff on August 16 and confirmed that it is not the entire medical record. The

complete records remain under seal at ECF Nos. 36 and 39 pursuant to ECF No. 55. Plaintiff therefore does not challenge his present access to Exhibit E; he asks that a selected reply-stage excerpt be read in context.

A court may consider a document integral to a complaint without converting a Rule 12(b)(6) motion, but that rule does not make every statement within the document true when the pleading disputes its accuracy or meaning. See Doe v. Princeton University, 30 F.4th 335, 342–43 (3d Cir. 2022). Non-integral outside material must be excluded or addressed through the notice and fair opportunity required by Rule 12(d). Schmidt v. Skolas, 770 F.3d 241, 249–50 (3d Cir. 2014). Exhibit E may show what selected staff recorded; it cannot resolve who supplied disputed collateral information, what was personally observed, or whether the statutory predicates were reasonably satisfied.

The voter evidence illustrates the same point. The SAC alleges that Plaintiff was domiciled in Maryland when this action began, and his ECF No. 102 declaration states that he lived at his Abingdon home and intended Maryland to remain his permanent home. ECF No. 109-4 reflects a New Jersey registration effective in 2007. Plaintiff's official Maryland record reflects his Abingdon address and registration on March 3, 2022. Voter registration is relevant but not dispositive of domicile, which turns on physical presence and intent at commencement. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570–71 (2004); McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286–90 (3d Cir. 2006). At minimum, the reply evidence does not defeat jurisdiction as a matter of law.

## II. SECTION 30:4-27.7 IMMUNITY REMAINS CONDITIONAL AND FACT-DEPENDENT

N.J.S.A. 30:4-27.7 does not create automatic immunity whenever an encounter concerns mental health. Subsection (a) protects specified actors and employers only when the actor proceeds in good faith pursuant to the Act and takes reasonable steps to assess, take custody of,

detain, or transport the individual. Subsection (b) contains additional actor-and-direction requirements. Status, function, good faith, and reasonable steps must therefore be established for the particular defendant and challenged conduct.

Immunity is an affirmative defense. Dismissal is proper only when every predicate appears on the face of the complaint. Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001). Washington v. City of Jersey City declined to presume Section 30:4-27.7 predicates at the pleading stage where the complaint did not establish the statutory purpose, qualifying direction, and reasonable steps. No. 2:24-cv-08597-SDW-JSA, 2025 WL 1742694, at *19–20 (D.N.J. June 23, 2025). Leang and Ziemba applied immunity on developed records; they do not authorize defense-favorable factfinding from selected records at Rule 12. Leang v. Jersey City Board of Education, 198 N.J. 557, 593–95 (2009); Ziemba v. Riverview Medical Center, 275 N.J. Super. 293, 300–03 (App. Div. 1994).

The SAC expressly pleads the opposite of an established defense. It alleges unreconciled observations, incomplete dangerous-behavior fields, failure to review screening rights, an unexplained transfer, a PA-only transfer certification, and objectively inaccurate transfer data. SAC ¶¶ 35, 40–48, 66–67, 101–06. Whether those allegations are ultimately proven is not the present question.

## III. THE RECORD DOES NOT CONCLUSIVELY ESTABLISH THE DISTINCT STATUTORY DANGER ELEMENT

New Jersey law distinguishes symptoms or diagnosis from the serious-harm risk required for involuntary commitment. A clinical certificate must state the specific facts supporting its conclusion. N.J.S.A. 30:4-27.2(b). "In need of involuntary commitment" requires, among other elements, that mental illness cause danger to self, others, or property. Id. § 27.2(m). The danger definitions address probable or substantially likely serious harm in the reasonably foreseeable future. Id. § 27.2(h), (i). Plaintiff does not argue that an assault or express threat is invariably

required, or that calm behavior categorically excludes risk. See State v. Krol, 68 N.J. 236, 259–61 (1975). He argues that the particularized basis remains disputed.

The contemporaneous forms demonstrate why. The screening certificate used terms including “unspecified,” “no specific suicidal ideation,” and “not specific threats”; its dangerous-behavior history was not particularized. Structured screens recorded low suicide risk, no attempt history, and negative answers to current ideation questions. Dr. Fabian’s remote assessment recorded no hallucinations and full orientation. Those entries coexist with adverse symptom descriptions and checked danger boxes. The Court cannot select one side of that mixed record and deem the legal element adjudicated.

The hallucination source is also unresolved. Early entries attribute hallucinations generically to “family,” but the selected material does not identify the family member, state the exact observation, or describe when and where it occurred. Plaintiff declares that he is unaware of any family member reporting that they personally observed him hallucinating. The identified wife-collateral entry discusses paranoia, sleep difficulty, prescribed medication, no prior psychiatric hospitalization, denials of suicidal and homicidal ideation, and her desire that he return home; it does not state that she observed hallucinations.

The family-drive narrative likewise supplies an inference, not an undisputed dangerous event. Versions of the chart describe the route differently. Plaintiff’s sworn account is Maryland to Pennsylvania and then New Jersey, voluntarily with his wife and children, despite the charts stating there was only one 6-year-old daughter, with an intent to return home. He identifies no collision, citation, injury, threat to a passenger, or other unsafe-driving event. Defendants may argue that the travel, sleep loss, judgment, and other circumstances created foreseeable risk. But counsel’s conclusion cannot substitute for particularized facts or resolve the competing inference on dismissal.

## IV. THE EXAMINATION, VERIFICATION, AND TRANSFER RECORDS CREATE REASONABLE-STEPS DISPUTES

Plaintiff recalls no face-to-face physician examination at CentraState before transfer. He recalls only Dr. Fabian's remote telepsychiatry encounter, lasting approximately five to ten minutes. Dr. Fabian's clinical/screening certificate is dated March 25, 2023. The later March 27 timestamp concerns Dr. Stephen Van Pelt's electronic ED attending attestation—not Dr. Fabian's certificate. The chart reflects that Van Pelt signed that attestation at approximately 1:14 p.m. on March 27, after Plaintiff had already been transferred to and confined at Hampton. A later electronic attestation does not conclusively establish what contemporaneous personal examination, consultation, or verification occurred before transport.

The separate transfer records reinforce that dispute. The form titled "Physician Certification Consent for Transfer" bears A. Tabasko, PA-C's March 25 signature but no attending-physician signature or countersignature. The checklist marks "No" as to whether risks, benefits, and alternatives were explained, records a weight of 170 kilograms, and states that dentures accompanied Plaintiff. Plaintiff alleges that he weighed approximately 64.77 kilograms and had natural teeth. The screening packet also left next-of-kin information blank or incomplete even though the CentraState encounter record listed his mother and spouse with telephone numbers. These objective completion and verification issues do not retroactively prove that the initial screening judgment was wrong for the purpose of this motion. They are directly relevant, however, to the pleaded transfer-phase negligence and to whether every reasonable-steps predicate is indisputably satisfied.

Plaintiff's recollection of the receiving-facility sequence is similarly inconsistent with the proposition that multiple signatures necessarily establish multiple independent examinations. He declares that he never met or spoke with Dr. Atta-ur Rehman and did not recall a face-to-face physician encounter at Hampton until approximately the third day with Dr Houdart. The sealed

Hampton record includes later entries that are separately disputed. Plaintiff cites that sequence only to rebut the reply's categorical inference; he does not ask this sur-reply to decide the separate Hampton claims.

**V. WHITE'S POST-OPPOSITION AGREEMENT MAKES A WITH-PREJUDICE SERVICE SANCTION UNWARRANTED**

On August 12, counsel stated that "Nurse White agrees to waive service of the Second Amended Complaint." Plaintiff does not treat that email as an already executed Rule 4(d) waiver. It is a concrete agreement to complete the waiver and eliminates any practical basis for the requested with-prejudice service or Rule 41(b) sanction. At minimum, the Court should allow a brief period to complete the agreed form rather than dismissing a claim with prejudice.

**CONCLUSION**

The Court should deny ECF No. 101. At minimum, it should decline to resolve statutory dangerousness, good faith, reasonable steps, or disputed chart accuracy in Defendants' favor at Rule 12; consider the reply exhibits only under the proper procedural standard and in the context of the complete sealed record; reject a with-prejudice service sanction as to White; and permit correction of any curable pleading issue without prejudice under Rule 15(a)(2). See Foman v. Davis, 371 U.S. 178, 182 (1962); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

Respectfully submitted,

/S/ Bradley Clonan
Bradley Clonan
Bradley Clonan, Plaintiff Pro Se
2604 W. Rhododendron Drive
Abingdon, Maryland 21009
(732) 476-9555 | clonanxyz@gmail.com
Dated: August 17th, 2026